Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

Ashley Keller (*pro hac vice forthcoming*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice forthcoming*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice forthcoming*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Petitioners*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JAMAL ADAMS, et al.,<br><br>    *Petitioners*,<br><br>vs.<br><br>POSTMATES INC.,<br><br>    *Respondent*. | Case No. 3:19-cv-03042<br><br>**MOTION TO COMPEL ARBITRATION**<br><br>**Date**: July 8, 2019<br>**Time**: 9:30 a.m. |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, July 8, 2019, at 9:30 a.m. or as soon thereafter as the matter may be heard, Petitioners will and hereby do move this Court, pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, for an order compelling Respondent Postmates Inc. to arbitrate Petitioners' claims in this action.

This motion is based on this notice of motion, the attached memorandum of points and authorities, the declarations of Ashley Keller and Tom Kayes, all records on file with this Court, and such other and further oral and written arguments as may be presented at, or prior to, the hearing on this matter.

Dated: June 3, 2019             Respectfully submitted,

/s/ Keith A. Custis
Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California  90067
(213) 863-4276

Ashley Keller (*pro hac vice forthcoming*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice forthcoming*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice forthcoming*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Petitioners*

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................... 1

II.    BACKGROUND ..................................................................................................... 3

    A.    Postmates Requires Couriers to Sign a Fleet Agreement That Contains a Broad Arbitration Clause. .................................................................................. 3

    B.    After Counsel Notified Postmates of Petitioners' Intent to Arbitrate, Postmates Contacted Petitioners Directly in an Attempt to Alter the Arbitration Agreement. ..... 4

    C.    Postmates Failed to Pay the Filing Fees it Owed by AAA's Deadline and Resorted to Meritless, Eleventh-Hour Stall Tactics. ....................................... 7

III.    STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4) .......................................... 8

IV.    ARGUMENT ........................................................................................................... 8

    A.    The Parties Entered into a Valid Arbitration Agreement that Covers the Present Disputes. ................................................................................................ 8

        1.    The Parties Entered Into a Valid Arbitration Agreement. ..................................... 9

        2.    The Arbitration Agreement Covers the Present Dispute. ..................................... 9

    B.    The Court Should Enforce the Arbitration Provisions and Require Postmates to Pay Outstanding Arbitration Fees. ............................................................. 10

V.    CONCLUSION ..................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**  PAGE(s)

*Bridgeport Mgmt., Inc. v. Lake Mathews Mineral Props., Ltd.*,
  No. 14-cv-00070-JST, 2014 WL 953831 (N.D. Cal. Mar. 6, 2014) .......... 9

*Brown v. Dillard's, Inc.*,
  430 F.3d 1004 (9th Cir. 2005) .......... 11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) .......... 9

*Garcia v. Mason Contract Prods., LLC*,
  No. 08-23103-CIV, 2010 WL 3259922 (S.D. Fla. Aug. 18, 2010) .......... 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) .......... 9, 10

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) .......... 9

*Lee v. Postmates Inc.,*,
  No. 3:18-cv-03421-JCS, 2018 WL 4961802 (N.D. Cal. Oct. 15, 2018) .......... 9

*McLellan v. Fitbit, Inc.*,
  No. 3:16-cv-00036-JD, 2018 WL 3549042 (N.D. Cal. July 24, 2018) .......... 10, 11

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) .......... 9

*Pre-Paid Legal Servs., Inc. v. Cahill*,
  786 F.3d 1287 (10th Cir. 2015) .......... 11

*Rapaport v. Soffer*,
  No. 2:10-cv-00935-KJD-RJJ, 2011 WL 1827147 (D. Nev. May 12, 2011) .......... 11

*Sink v. Aden Enters., Inc.*,
  352 F.3d 1197 (9th Cir. 2003) .......... 11

*Stowell v. Toll Bros*,
  No. 06-cv-2103, 2007 WL 30316 (E.D. Pa. Jan. 4, 2007) .......... 11

*Unite Here Int'l Union v. Shingle Spring Band of Miwok Indians*,
  No. 2:16-cv-00384-TLN-EFB, 2016 WL 4041255 (E.D. Cal. July 25, 2016) .......... 9

**STATUTE**

9 U.S.C. § 4 .......... 8

**RULES**

Cal. Code Civ. Proc. 1284.3(a) .......... 8, 13

Cal. R. Prof. Conduct 4.2(a) .......... 5

**OTHER**

Postmates's Motion to Compel, *Lee v. Postmates Inc.*,
  No. 3:18-cv-03421-JCS (N.D. Cal. July 20, 2018) .......... 1, 4

# TABLE OF AUTHORITIES

**OTHER CONT.** **PAGE(s)**

Postmates's Motion to Compel, *Lee v. Postmates Inc.*,
  No. 3:18-cv-03421-JCS (N.D. Cal. Nov. 5, 2018) ................................................................. 4

Postmates's Petition for Order Compelling Arbitration, *Rimler v. Postmates Inc.*,
  No. CGC-18-567868 (Cal. Super. Ct. Aug. 17, 2018) ......................................................... 4

P ostmates's Motion to Compel, *Winns v. Postmates Inc.*,
  No. CGC-17-562282 (Cal. Super. Ct. Jan. 23, 2018) ..................................................... 3, 4

AAA Employment Arbitration Rule 4 ................................................................................. 7

AAA Employment Arbitration Rule 43 ............................................................................. 13

AAA Employment/Workplace Fee Schedule ...................................................................... 6

Cal. Ethics Standards for Neutral Arbitrators in Contractual Arbitration ................................. 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Postmates Inc. is an on-demand delivery service through which customers may order food and other items from participating merchants. Postmates pays couriers to deliver customers' orders. Effectively all of Postmates's revenue comes from deliveries.

Petitioners are 5,257 couriers who work for Postmates. Together with other couriers, Petitioners are Postmates's core workforce. Despite Petitioners' importance to Postmates, Postmates does not treat Petitioners as employees. Instead, Postmates misclassifies them as independent contractors—unlawfully depriving them of a minimum wage, overtime pay, and other protections required by federal, state, and local law. Each Petitioner has filed an individual demand for arbitration against Postmates to recover backpay and related penalties he or she is owed for these violations.

For years, Postmates has required its couriers to sign a Fleet Agreement that contains a sweeping arbitration clause. The arbitration clause prohibits couriers from joining together to bring class-action claims against Postmates, and it further prohibits class proceedings in arbitration. Under the agreement, any courier who wishes to bring a legal claim against Postmates must do so individually. When challenged on that point, Postmates has successfully relied on a line of case law holding that arbitration offers a fair, efficient, and expeditious procedure for vindicating employees' claims. Indeed, Postmates has consistently argued that "courts must enforce class action waivers contained in arbitration agreements." Postmates's Mot. to Compel Arbitration at 8, *Lee v. Postmates Inc.*, No. 3:18-cv-03421-JCS, Dkt. No. 14 (N.D. Cal. July 20, 2018).

To avoid addressing its couriers' misclassification claims, Postmates on multiple occasions has asked this very Court to enforce its arbitration agreement, arguing that its drivers "knowingly entered into an enforceable agreement" under which a courier's challenge to "her classification as an independent contractor is expressly covered." *Id.* at 10. But now that Postmates faces claims from more than a handful of individual couriers, it turns out that Postmates is unwilling to abide

by its own agreements and participate in individual arbitrations. Instead of complying with the very arbitration agreements it has used to prevent class actions, Postmates has declined to pay the filing fees necessary to commence arbitration with even a single courier. It has even attempted to rewrite its arbitration agreement with claimants it knows are represented by counsel and pursuing arbitration. After receiving notice that thousands of its drivers planned to seek arbitration with the aid of counsel, Postmates changed its Fleet Agreement to increase the share of arbitration fees those drivers would need to pay. And when faced with a deadline to pay even its reduced share of those fees, Postmates deployed transparent stall tactics. This motion asks the Court to require Postmates to honor the contract it drafted and has wielded as a club against any courier who dared to file a lawsuit seeking to enforce his or her rights.

Petitioners' right to relief flows from two indisputable premises:

*First*, the arbitration agreements Petitioners signed require Postmates to arbitrate Petitioners' claims. Postmates's Fleet Agreement requires arbitration of "any and all claims" between couriers and Postmates, "including but not limited to those arising out of or relating to [the Fleet] Agreement" and each courier's "classification as an independent contractor." 2018 Fleet Agreement § 11A.i (effective May 11, 2018), Keller Decl., Ex. B ("2018 Fleet Agreement"); *see also* 2019 Fleet Agreement § 10A.i (effective Apr. 3, 2019), Keller Decl., Ex. C ("2019 Fleet Agreement"). There can be no dispute that Petitioners' misclassification claims fall within the scope of the arbitration clause. And even if there were a dispute regarding the enforceability or scope of the arbitration requirement, Postmates's arbitration agreement reserves that question for the arbitrator. *See* 2018 Fleet Agreement § 11A.ii ("Only an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision.").

*Second*, Postmates has breached its contractual obligation to commence arbitration. Petitioners have satisfied their filing obligations, including paying $99,600 in filing fees. The American Arbitration Association ("AAA"), which the Fleet Agreement states shall administer Petitioners' demands for arbitration, imposed a deadline of May 31, 2019 for Postmates to pay its

corresponding share of the filing fees necessary to commence arbitration for nearly all Petitioners.[1] Postmates failed to pay those fees by the deadline, and instead asserted meritless objections to Petitioners' method of service and fee obligations—objections it could have raised weeks earlier. Postmates's refusal to pay its share of the fees means none of the expeditious arbitrations promised by Postmates's Fleet Agreement can so much as begin.

The Court should grant this motion and require Postmates to abide by its agreement by (1) paying all arbitration filing fees due for Petitioners' pending demands for arbitration within 14 days of this Court's Order, and (2) paying future AAA invoices related to Petitioners' arbitrations within 14 days of receipt of those invoices.

## II.    BACKGROUND

**A.    Postmates Requires Couriers to Sign a Fleet Agreement That Contains a Broad Arbitration Clause.**

Since at least 2015, Postmates has required its couriers to sign a Fleet Agreement containing an arbitration provision. *See* Postmates's Mot. to Compel Arbitration at 12–13, *Winns v. Postmates Inc.*, No. CGC-17-562282 (Cal. Super. Ct. Jan. 23, 2018), Keller Decl., Ex. I (discussing the arbitration provision in Postmates's 2015 Fleet Agreement). As relevant here, Postmates updated its Fleet Agreement effective May 11, 2018, and required every courier to sign the agreement to continue working as a courier. *See* 2018 Fleet Agreement.[2]

The 2018 Fleet Agreement provides that Postmates and the courier "mutually agree to resolve any disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court." *Id.* § 11A. This arbitration requirement applies broadly to "any and all claims between the Parties, including but not limited to those arising out of or relating to this

---

[1] As discussed below, Petitioners served their arbitration demands on Postmates in two waves. First, 4,925 Petitioners served their demands on April 22, 2019. AAA gave Postmates until May 31, 2019 to pay its share of the filing fees necessary for those Petitioners to commence arbitration. Second, 349 Petitioners served their demands on May 13, 2019. AAA gave Postmates until June 6, 2019 to pay the filing fees necessary for those Petitioners to commence arbitration.

[2] Postmates allows couriers to opt out of the arbitration provision by submitting a specific opt-out notice to Postmates within 30 days of signing the agreement; all couriers must first sign the full agreement and opt out afterwards. *See* 2018 Fleet Agreement § 11B.ix. Thus, only a courier who carefully reviews Postmates's boilerplate contract and submits a specific notice can avoid the arbitration requirement.

Agreement, the Contractor's classification as an independent contractor, . . . and all other aspects of the Contractor's relationship with Postmates, past or present, whether arising under federal, state, or local law." *Id.* § 11A.i.  To the extent the parties have any disputes over the enforceability or scope of the arbitration requirement, the agreement provides that those dispute themselves must be decided by an arbitrator. *Id.* § 11A.ii ("Only an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision.").

The arbitration required under the agreement must be individual; the parties cannot seek class or representative decision-making, whether in court or in arbitration. *See id.* §§ 11B.ii, iii (providing that "any and all disputes or claims between the parties will be resolved in individual arbitration," and that the parties "waive their right to have any dispute or claim brought, heard or arbitrated as a class and/or collective action" or "representative action").  The agreement provides that arbitration will be administered by AAA. *Id.* § 11B.vi.  Under the 2018 agreement, "Postmates shall pay the arbitrator's and arbitration fees and costs, unless applicable law requires otherwise." *Id.*

Postmates has repeatedly relied on its Fleet Agreement to force couriers' misclassification claims to arbitration and eliminate their ability to litigate collectively.  *See* Postmates's Mot. to Compel Arbitration, *Lee*, Dkt. No. 36 (N.D. Cal. Nov. 5, 2018); Postmates's Mot. to Compel Arbitration, *Lee,* Dkt. No. 14; Postmates's Petition for Order Compelling Arbitration, *Rimler v. Postmates Inc.*, No. CGC-18-567868 (Cal. Super. Ct. Aug. 17, 2018), Keller Decl., Ex. H; Postmates's Mot. to Compel Arbitration, *Winns*.  In doing so, Postmates has explained that a courier must "resolve any dispute with Postmates—including her classification as an independent contractor—through final and binding arbitration." *Lee*, Dkt. No. 14 at 4.

**B.     After Counsel Notified Postmates of Petitioners' Intent to Arbitrate, Postmates Contacted Petitioners Directly in an Attempt to Alter the Arbitration Agreement.**

On March 6, 2019, counsel informed Postmates that it represented "more than 3,000 couriers in California and Illinois" who intended to initiate individual arbitrations against

Postmates. Keller Decl. ¶ 4. In that communication, counsel provided Postmates with a list of over 3,000 clients that included each client's name and identifying information. *Id.* After Postmates retained outside counsel, Petitioners' counsel sent an updated list of client names and identifying information to Postmates's counsel on March 28, 2019. *Id.* ¶ 6. Although they had no obligation to do so under their contract with Postmates, Petitioners stated that they would be open to an alternative process to resolve their claims, such as mediation, in order to avoid the transaction costs of thousands of individual arbitrations. *Id.* ¶ 4. Petitioners stated that they would consider delaying arbitration in favor of such an alternative process only if it occurred expeditiously. *Id.*

On April 3, 2019, Postmates began requiring all couriers who signed into the Postmates courier app—including Petitioners—to agree to a new Fleet Agreement before being allowed to make deliveries. *See* 2019 Fleet Agreement. The new agreement continued to require arbitration. But unlike the 2018 Fleet Agreement, which obligated Postmates to pay all the fees associated with arbitration, the new agreement purported to require couriers to bear half of the administrative costs of arbitrations that were being forced on them by Postmates's arbitration agreement. *See* 2019 Fleet Agreement § 10B.vi.2 ("Postmates and [the courier] shall equally share filing fees and other similar and usual administrative costs.").

On April 5, 2019, Petitioners' counsel emailed Postmates's counsel to object that Postmates's attorneys had knowingly communicated directly with counsel's clients regarding a matter material to counsel's representation. *See* Keller Decl. ¶ 9; *see also* CAL. R. PROF. CONDUCT 4.2(a) ("[A] lawyer shall not communicate directly *or indirectly* about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer.") (emphasis added). Postmates's counsel responded that the communication with Petitioners had been "in the ordinary course," and that Postmates did not understand the basis for Keller Lenkner's contention that the revised Fleet Agreement concerned a matter within the scope of the firm's representation of Petitioners. Keller Decl. ¶ 10. Postmates's counsel then invited Keller Lenkner to contest the effect of the supposedly immaterial new fee provision with individually empaneled arbitrators. *Id.* Postmates did not

dispute, however, that Postmates attorneys signed off on the new legal agreement knowing that the agreement would be sent directly to thousands of couriers who already were seeking arbitration against Postmates and were represented by counsel. *Id.*

Notwithstanding the dispute over Postmates's having contacted Petitioners directly about the terms of their arbitrations even when it knew Petitioners were represented by counsel, Petitioners continued, throughout April and May 2019, to offer to negotiate an alternative to arbitration. *Id.* ¶ 11. Ultimately, however, the parties were unable to agree on an alternative process.

On April 22, 2019, 4,925 Petitioners served individual arbitration demands against Postmates with AAA. *Id.* ¶ 12. Petitioners explained that they believed the new fee provision of the 2019 Fleet Agreement was unconscionable and unenforceable because (a) as a procedural matter, it was obtained from Petitioners by circumventing their counsel and (b) as a substantive matter, it purported to obligate Petitioners to pay more fees than they would be required to pay if they filed their claims in court. *Id.* ¶ 13. AAA determined that any dispute over the fee provision must be resolved by individual arbitrators. Kayes Decl. ¶ 8. AAA did not require Petitioners to pay half of the administrative fee, as that would be contrary to AAA rules. *See* AAA Employment/Workplace Fee Schedule at 1 (effective Oct. 1, 2017), *available at* https://www.adr.org/sites/default/files/Employment_Fee_Schedule.pdf. But it required Petitioners to pay the default AAA fee of $300 per claimant in order to proceed to arbitration, at which time they could raise the fee dispute with the arbitrators appointed to their cases. *See id.*; Keller Decl. ¶ 14. Petitioners paid their share of the filing fees, totaling $99,600, within one business day of receiving invoices from AAA. Keller Decl. ¶ 14.[3]

On May 13, 2019, another 349 Petitioners served demands against Postmates with AAA. *Id.* ¶ 12. All of those Petitioners stated that they had stopped driving for Postmates prior to April 3, 2019, and therefore had not agreed to the 2019 Fleet Agreement. *See id.* at 3 n.2. Accordingly,

---

[3] Many Petitioners submitted declarations averring that their combined household income was less than 300% of federal poverty level. *Id.* For those Petitioners, AAA waived the filing fee. *Id.*

6
MOTION TO COMPEL ARBITRATION
CASE NO. 3:19-cv-03042

they demanded that Postmates pay all applicable filing fees pursuant to the 2018 Fleet Agreement. *Id.*

On May 10, 2019, AAA imposed a deadline of May 31, 2019 for Postmates to pay its share of the filing fees necessary to commence arbitration for the first set of demands ($1,900 per Petitioner). *Id.* ¶ 15. On May 16, 2019, AAA imposed a deadline of June 6, 2019 for Postmates to pay the filing fees necessary to commence arbitration for the second set of demands ($2,200 per Petitioner). *Id.* ¶ 16.[4] AAA will not commence arbitration until it receives all of the required filing fees for each case. *See* AAA Employment Arbitration Rules, Rule 4, *available at* https://www.adr.org/sites/default/files/EmploymentRules_Web2119.pdf.

**C.    Postmates Failed to Pay the Filing Fees it Owed by AAA's Deadline and Resorted to Meritless, Eleventh-Hour Stall Tactics.**

Postmates did not comply with AAA's May 31, 2019 deadline. Instead, at 5:57 p.m. Pacific Time on the day its fees were due, Postmates sent an *ex parte* letter to AAA. Keller Decl., Ex. F. Significantly, the letter did not dispute that Postmates is a party to valid arbitration agreements that cover each Petitioner's claims. *Id.* Moreover, Postmates conceded that AAA had already determined that Petitioners' "demands have met AAA's filing requirements." *Id.* at 1. Instead, Postmates raised three meritless process objections that it had never previously raised with AAA or Petitioners. Keller Decl. ¶ 17.[5]

First, Postmates objected that, after its outside counsel informed Petitioners that he had been retained to handle these matters, Petitioners sent subsequent demands to outside counsel in electronic form instead of delivering them in hard copy to the generic address contained in Postmates's Fleet Agreement. Keller Decl., Ex. F at 1. Relatedly, Postmates complained that Petitioners' counsel provided a single demand detailing claims that are common to each Petitioner and then sent each Petitioner's individualized information in a separate spreadsheet. *Id.* at 1–2.

---

[4] As noted, 349 Petitioners are covered by AAA's June 6 deadline rather than its May 31 deadline. *Id.* ¶ 11. Having already refused to pay the filing fees for the first 4,925 Petitioners, Postmates has made clear through its actions that it is not willing to pay the filing fees for the remaining 349 Petitioners either.

[5] AAA forwarded the letter to Petitioners to give them an opportunity to respond. *Id.*

Second, Postmates argued that Petitioners were not eligible for hardship-based fee waivers under the California Code of Civil Procedure, § 1284.3(a), because that provision applies only to agreements that an employee is "required to accept," and couriers are allowed to opt out of the Fleet Agreement's arbitration provision. *Id.* at 2. Third, Postmates objected that AAA might improperly shift fees from Petitioners who received waivers to Postmates. *Id.*

None of these objections presents issues for this Court to decide, because Postmates's own contract dictates that such objections are properly lodged with individual arbitrators, not AAA or this Court. Petitioners describe them here only because, as explained below, they confirm that Postmates is unwilling to comply with its own arbitration agreement.

### III.  STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4)

Whether the Court should compel Postmates to adhere to the arbitration provisions in its Fleet Agreement and require it to pay the AAA filing fee for all of Petitioners' pending arbitration demands.

### IV.  ARGUMENT

Petitioners and Postmates have entered into valid agreements to arbitrate, and Petitioners have met all the requirements to proceed with arbitration. But even though Postmates previously enforced its arbitration agreement to avoid facing claims in court, it now refuses to pay the arbitration filing fees required by its contract and AAA rules. Postmates's actions make clear that it does not actually support arbitration; rather, it supports avoiding any claims by its couriers, no matter the forum. That is not a choice that Postmates's contract allows it to make. This Court should order Postmates to comply with the contract it drafted.

**A.  The Parties Entered into a Valid Arbitration Agreement that Covers the Present Disputes.**

Under the FAA, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In deciding whether to compel arbitration, courts generally analyze two "gateway"

issues: (1) whether the parties have entered into a valid arbitration agreement, and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002).[6] Where, as here, the parties have delegated questions regarding the interpretation, enforceability, or scope of an arbitration clause to an arbitrator, the court need only determine that the parties have entered into a valid arbitration agreement. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). All questions covered by the delegation clause must themselves be resolved by an arbitrator.

Where the parties have formed a valid agreement to arbitrate, "the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). As detailed below, the parties have entered into a valid arbitration agreement that covers the present disputes. The Court must compel Postmates to arbitrate Petitioners' claims.

### 1. The Parties Entered Into a Valid Arbitration Agreement.

There is no question that the parties entered into a valid arbitration agreement. *See generally* Keller Decl., Exs. B–C. Each Petitioner signed the Fleet Agreement containing a sweeping arbitration provision; Petitioners were required to do so in order to deliver for Postmates. Postmates has successfully argued that position in this Court. *See Lee*, No. 18-cv-03421-JCS, 2018 WL 4961802, at *10 (N.D. Cal. Oct. 15, 2018). And the Ninth Circuit has held that arbitration provisions similar to those at issue here are enforceable. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016).

### 2. The Arbitration Agreement Covers the Present Dispute.

As a threshold matter, the fact that the parties have entered into a valid arbitration agreement is sufficient by itself to compel arbitration, because Postmates's Fleet Agreement

---

[6] Petitioners can institute a court action by petitioning to compel arbitration, which they have done here. *See, e.g., Unite Here Int'l Union v. Shingle Spring Band of Miwok Indians*, No. 2:16-cv-00384-TLN-EFB, 2016 WL 4041255, at *3 (E.D. Cal. July 25, 2016) ("[T]he Ninth Circuit and district courts in this circuit routinely treat petitions to compel arbitration as capable of instituting a court action."); *Bridgeport Mgmt., Inc. v. Lake Mathews Mineral Props., Ltd.*, No. 14-cv-00070-JST, 2014 WL 953831, at *3 (N.D. Cal. Mar. 6, 2014) (permitting the petitioner to institute suit by filing a petition to compel arbitration).

delegates to the arbitrator any question regarding the scope of the arbitration agreement. *See* 2018 Fleet Agreement § 11A.ii ("Only an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision."); 2019 Fleet Agreement § 10A.ii (same). Any dispute about whether or how the arbitration agreement between Postmates and Petitioners applies to Petitioners' claims must itself be resolved in arbitration. *See Schein*, 139 S. Ct. at 530 ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator.").

Regardless, there also can be no question that the arbitration agreement covers the present dispute: "any and all claims between the [p]arties, including but not limited to those arising out of or relating to this [Fleet Agreement]," shall be subject to binding arbitration. 2018 Fleet Agreement § 11A.i; *see also* 2019 Fleet Agreement § 10A.i (same). Petitioners demand arbitration because Postmates has misclassified them as independent contractors. The Fleet Agreement explicitly identifies a dispute over a courier's "classification as an independent contractor" as one that must be arbitrated. *See* 2018 Fleet Agreement § 11A.i; *see also* 2019 Fleet Agreement § 10A.i.

**B.     The Court Should Enforce the Arbitration Provisions and Require Postmates to Pay Outstanding Arbitration Fees.**

AAA determined that Petitioners met their filing requirements and set a deadline of May 31, 2019, for Postmates to pay filing fees for the first 4,925 Petitioners. Keller Decl. ¶ 15. Postmates did not comply with that deadline, in violation of its own arbitration agreement. *Id.* ¶ 19; Exs. B–C.

Numerous courts have found that conduct similar to Postmates's constitutes breach of an agreement to arbitrate. For instance, in *McLellan v. Fitbit, Inc.*, this Court granted the defendant's motion to compel the plaintiff's misrepresentation claims to arbitration, based on the defendant's Terms of Service. No. 3:16-cv-00036-JD, 2018 WL 3549042, at *1–2 (N.D. Cal. July 24, 2018). When the plaintiff then demanded arbitration, the defendant "turned to 'the dark side'" and refused

to pay the filing fees it owed under the same Terms of Service upon which it relied to compel arbitration. *Id.* at *2–4. Considering that conduct, the Court held that the defendant avoided waiving its right to arbitration only because the defendant paid the filing fees after the Court expressed concern. *Id.* at *4–6. The defendant's counsel, however, was not so lucky; the Court imposed sanctions on that counsel for "delay[ing] and imped[ing] the arbitration on frivolous grounds." *Id.* at *6.

Other courts have expressed similar concerns when a corporation refused to pay the arbitration filing fees required by its agreement with a consumer or employee. *See, e.g.*, *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1009–10 (9th Cir. 2005) (finding that a defendant that "breached its [arbitration] agreement . . . by refusing to participate in the arbitration proceedings . . . cannot now enforce it"); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1200 (9th Cir. 2003) (affirming the district court's conclusion that the defendant defaulted on its arbitration agreement, and holding that such default "precludes any attempt by [defendant] again to stay district court proceedings pending a further reference to arbitration"); *see also Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015) (lifting stay following termination of arbitration based on party's refusal to pay fees); *Rapaport v. Soffer*, No. 2:10-cv-00935-KJD-RJJ, 2011 WL 1827147, at *2–3 (D. Nev. May 12, 2011) (denying the defendant's motion to compel arbitration and proceeding with litigation after the arbitration was terminated due to defendant's nonpayment of fees); *Garcia v. Mason Contract Prods., LLC*, No. 08-23103-CIV, 2010 WL 3259922, at *1–2 (S.D. Fla. Aug. 18, 2010) (granting motion to reopen case after "Defendant persistently refused to timely pay its share of the arbitrator's fee"); *Stowell v. Toll Bros*, No. 06-cv-2103, 2007 WL 30316, at *1 (E.D. Pa. Jan. 4, 2007) (holding that "failure to remit the filing fee constitutes default"). Postmates's failure to pay the filing fees invoiced by AAA is a breach of Postmates's contract with Petitioners and warrants an order from this Court compelling arbitration.

While Postmates's breach of its fee obligations is itself a sufficient basis to grant this motion, Postmates's eleventh-hour stall tactics further underscore that Postmates is unwilling to honor the arbitration process it designed. In attempting to avoid its fee obligations, Postmates

implicitly conceded that Petitioners' claims are governed by a valid arbitration agreement, and it expressly recognized that AAA has determined that Petitioners properly met the filing requirements under AAA Rules. Keller Decl., Ex. F at 1. Postmates argued to AAA only that Petitioners failed to comply with *additional* requirements imposed by Postmates's Fleet Agreement. *Id.* But the Fleet Agreement contains a delegation clause stating that "[*o*]*nly an arbitrator*, and not any federal, state, or local court or agency, shall have the *exclusive* authority to resolve any dispute relating to the interpretation, *applicability*, enforceability, or formation of this Mutual Arbitration Provision." 2019 Fleet Agreement § 10A.ii. (emphasis added). Postmates's own contract therefore requires that it raise any disputes arising from the interpretation of its Fleet Agreement solely with individual arbitrators. That cannot happen until Postmates pays its share of the filing fees so arbitration can commence.

Although the substance of Postmates's objections must be decided by individual arbitrators, the absurdity of those objections warrants a brief description.[7] First, Postmates's assertion that Petitioners' demands were improperly delivered is wholly inconsistent with Postmates's previous interactions with Petitioners and AAA. Upon receiving Petitioners' initial communication in hard copy, including draft arbitration demands, Postmates retained outside counsel. Keller Decl. ¶ 5. Postmates's outside counsel then asked Petitioners to communicate with them directly. *Id.* At no point during the following three months did Postmates's counsel suggest that Postmates preferred to receive thousands of materially similar demands in hard copy form. *Id.* ¶ 17. Postmates raised the objection for the first time on the night its filing fees were due. *Id.* It is a transparent stall tactic to have directed Petitioners to communicate with outside counsel, accepted documents in electronic form without objection, and then suggested more than a month later that Postmates should not have to commence arbitration because the same information was not delivered in hard copy to corporate headquarters.

Second, Postmates's argument that its couriers are not eligible for fee waivers was likewise raised only at the last minute, even though AAA determined five weeks earlier that 4,593

---

[7] Petitioners' June 3, 2019 letter in response to AAA more fully disposes of each objection. *See* Keller Decl., Ex. G.

1  Petitioners had met their filing obligation via fee waiver. *Id.* ¶ 14. Moreover, Postmates's claim
2  that fee waivers are unavailable under California Code of Civil Procedure § 1284.3(a) because
3  Petitioners are not "required to accept the arbitration provision" ignores AAA's rules and the Fleet
4  Agreement.[8] Keller Decl., Ex. F at 2. AAA provides that it may grant a fee waiver to "any party"
5  based on hardship, independently of Section § 1284.3(a). *See* AAA Employment Arbitration
6  Rules, Rule 43, *available at* https://www.adr.org/sites/default/files/EmploymentRules
7  _Web 2119.pdf. And it has done so here. Moreover, while it is true that Postmates couriers may
8  opt-out of arbitration, they may do so only *after accepting* the Fleet Agreement and its arbitration
9  requirement and then subsequently submitting an opt-out notice. 2019 Fleet Agreement § 10B.ix
10 ("Your opt-out notice must be postmarked or received by Postmates within thirty (30) days of
11 [y]our *acceptance of this Agreement*.") (emphasis added). This series of hoops is no mere
12 technicality but, rather, helps ensure that very few couriers actually opt out of arbitration.
13 Petitioners were "required to accept the arbitration provision" in order to work for Postmates,
14 making them eligible for fee waivers under Section 1284.3(a) as well as under AAA's general
15 hardship-waiver policy.
16         Third, Postmates's final objection—that AAA should not shift Petitioners' waived fees to
17 Postmates—is puzzling, because AAA's payment instructions do not contain any fee-shifting:
18 AAA instructed Postmates to pay only the respondent's filing fee ($1,900) for cases in which
19 Petitioners secured a fee waiver. Keller Decl. ¶ 15. AAA invoiced Postmates for both the
20 claimant's and the respondent's filing fee ($2,200 total) *only* for cases covered by the 2018 Fleet
21 Agreement, which expressly obligates Postmates to pay all fees. *Id.* ¶ 16, at 3 n.2.
22         Postmates has never suggested to Petitioners—nor could it suggest—that the arbitration
23 agreement it drafted is unenforceable or fails to cover Petitioners' claims. *Id.* ¶ 20. And until the
24 night of AAA's deadline for Postmates to pay its filing fees, Postmates never disputed AAA's

---

[8] Section 1284.3(a) requires that arbitration forums grant fee waivers to certain claimants in a "consumer arbitration." While Section 1284.3(a) does not define that term, California's Ethics Standards for Neutral Arbitrators in Contractual Arbitration state the term includes arbitrations brought by an employee who "was required to accept the arbitration provision in the contract." *See* https://www.courts.ca.gov/documents/ethics_standards_neutral_arbitrators.pdf.

determination that Petitioners have met their filing requirements or AAA's determination of the filing fees Postmates owes under its own Fleet Agreement. *Id.* ¶ 17. Postmates simply ignored its obligations under its contract, then attempted to avoid those obligations through last-minute stall tactics. As a result, thousands of couriers remain unable to seek relief for their claims.

This court should find that Postmates has breached its agreement to arbitrate and order Postmates to remedy that breach by paying all fees necessary to commence arbitration on Petitioners' pending demands.

## V.   CONCLUSION

For the foregoing reasons, Petitioners' motion to compel arbitration should be granted. This Court should require Postmates to (1) pay all arbitration filing fees due for Petitioners' pending demands for arbitration within 14 days of this Court's Order, and (2) pay future invoices related to Petitioners' arbitrations within 14 days of receipt of those invoices

Dated: June 3, 2019

Respectfully submitted,

/s/ Keith A. Custis
Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California  90067
(213) 863-4276

Ashley Keller (*pro hac vice forthcoming*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice forthcoming*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice forthcoming*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Petitioners*

## CERTIFICATE OF SERVICE

I certify that I shall cause the foregoing document to be served on Postmates Inc. at its headquarters at 201 Third Street, Suite 200, San Francisco, California 94103.

Dated: June 3, 2019                    /s/ Keith A. Custis