Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California  90067
(213) 863-4276

Ashley Keller (*pro hac vice forthcoming*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice forthcoming*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice forthcoming*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Petitioners*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JAMAL ADAMS, et al., | Case No. 3:19-cv-03042 |
| *Petitioners,* | **DECLARATION OF ASHLEY KELLER** |
| vs. | |
| POSTMATES INC., | |
| *Respondent.* | |

I, Ashley Keller, declare based on personal knowledge as follows:

1. I am a partner at Keller Lenkner LLC, counsel for Petitioners in this matter.

2. I have personal knowledge of the facts stated herein, and if called upon as a witness, I could and would testify competently thereto.

3. This declaration is submitted in support of Petitioners' Motion to Compel Arbitration.

4. On March 6, 2019, Keller Lenkner informed Postmates that it represented more than 3,000 couriers in California and Illinois who intended to initiate individual arbitrations against Postmates. That communication included a list of over 3,000 Keller Lenkner clients and their identifying information. Keller Lenkner also offered to discuss resolving those couriers' claims in an alternative manner, such as through mediation, so long as the process occurred expeditiously. Attached as Exhibit A is a true and correct copy of Keller Lenkner's letter to Postmates, dated March 6, 2019.

5. In response, Postmates informed us that it would be retaining outside counsel, and Dhananjay Manthripragada of Gibson, Dunn & Crutcher LLP later contacted me to state that his firm had been retained to represent Postmates as outside counsel in these matters. Mr. Manthripragada asked me to send our clients' demands to him directly.

6. On March 28, 2019, I sent an updated list of client names and identifying information, to Postmates's outside counsel.

7. At that time, Petitioners were covered by Postmates's 2018 Fleet Agreement, which required that Postmates pay all arbitration filing fees. Attached as Exhibit B is a true and correct copy of Postmates' 2018 Fleet Agreement, effective May 11, 2018.

8. On April 5, 2019, our clients began informing us that Postmates was requiring them to agree to a new Fleet Agreement before allowing them to sign into the Postmates app to make deliveries. The new agreement purported to require couriers to split the administrative costs of arbitration equally with Postmates. Attached as Exhibit C is a true and correct copy of Postmates's 2019 Fleet Agreement, effective April 3, 2019.

9. On April 5, 2019, I emailed Postmates's outside counsel to object that Postmates's counsel had knowingly directed a communication to be sent to Keller Lenkner clients directly regarding a matter material to Keller Lenkner's representation. Attached as Exhibit D is a true and correct copy of my email to Postmates's counsel, dated April 5, 2019.

10. Postmates's counsel responded to my April 5 email and asserted that Postmates's communication with Keller Lenkner's clients—requiring them to sign the 2019 Fleet Agreement—was "in the ordinary course," and that Postmates did not understand the basis for our contention that the revised Fleet Agreement concerned a matter within the scope of our representation of Petitioners. Postmates's counsel then invited us to contest the effect of the new fee provision with individually empaneled arbitrators. Postmates's counsel did not dispute, however, that Postmates's attorneys had signed off on the new legal agreement with Petitioners altering the terms governing arbitration, knowing that the agreement would be sent directly to thousands of couriers who were already seeking arbitration and were represented by counsel.

11. During my discussions with Postmates's counsel in March, April, and May 2019, I repeatedly offered to negotiate an alternative to arbitration, such as mediation. However, the parties were ultimately unable to agree on a mutually acceptable alternative.

12. Ultimately, Keller Lenkner submitted 5,274 individual arbitration demands to AAA on behalf of Petitioners:

- April 22, 2019 — 4,925 individual demands; and
- May 13, 2019 — 349 individual demands.

13. In a letter accompanying the arbitration demands on April 22, 2019, Keller Lenkner explained that it believed the fee provision of the 2019 Fleet Agreement was unconscionable and unenforceable because (a) as a procedural matter, it was obtained from Petitioners by circumventing their counsel and (b) as a substantive matter, it purported to obligate Petitioners to pay more fees than they would be required to pay if they filed their claims in court.

14. On Friday, April 26, 2019, AAA sent a letter invoicing Petitioners for their portion of the filing fees necessary to commence the 4,925 demands served on April 22, 2019. 4,593

Petitioners submitted declarations averring that their combined household income was less than 300% of the federal poverty level. For those Petitioners, AAA waived the arbitration filing fees pursuant to Cal. Code Civ. Pr. § 1284.3. Petitioners who were ineligible for a fee waiver paid their fees, totaling $99,600, on Monday, April 29, 2019.[1] Attached as Exhibit E is a true and correct copy of AAA's invoice to Keller Lenkner, dated April 26, 2019.

15. On May 10, 2019, AAA sent an email to Postmates's counsel setting May 31, 2019, as the deadline for Postmates to pay the filing fees—$1,900 per claimant—necessary to commence the 4,925 arbitration demands served on April 22, 2019.

16. On May 16, 2019, AAA sent an email to Postmates's counsel setting June 6, 2019, as the deadline for Postmates to pay the filing fees—$2,200 per claimant—necessary to commence the 349 arbitration demands served on May 13, 2019.

17. On May 31, 2019, at 5:57 p.m. Pacific Time, Postmates sent an *ex parte* letter to AAA lodging three objections to the form and substance of Petitioners' demands, and to AAA's determination of the fees owed by each party. To my knowledge, Postmates had never previously raised those objections with AAA or Petitioners. AAA forwarded the letter to me to give Keller Lenkner an opportunity to respond. Attached as Exhibit F is a true and correct copy of Postmates's May 31, 2019 letter.

18. On June 3, 2019, Keller Lenkner sent a letter to AAA responding to Postmates's May 31 letter. Attached as Exhibit G is a true and correct copy of Keller Lenkner's June 3, 2019 letter.

19. As of June 3, 2019, Keller Lenkner had received no indication from AAA or Postmates that AAA had received payment from Postmates.

20. Postmates's counsel has never indicated to me that Postmates believes its arbitration agreements are unenforceable or do not cover Petitioners' misclassification claims.

---

[1] All Petitioners whose claims were raised in the second set of demands stated that they stopped driving for Postmates prior to April 3, 2019, and did not agree to the 2019 Fleet Agreement. Those Petitioners are thus covered by the 2018 Fleet Agreement, which provides that Postmates is responsible for all arbitration filing fees.

21. Attached as Exhibit H is a true and correct copy of Postmates's Petition to Compel Arbitration in *Rimler v. Postmates Inc.*, No. CGC-18-567868 (Cal. Sup. Ct. Aug. 17, 2018).

22. Attached as Exhibit I is a true and correct copy of Postmates's Motion to Compel Arbitration in *Winns v. Postmates Inc.*, No. CGC-17-562282 (Cal. Sup. Ct. Jan. 23, 2018).

I affirm that the foregoing is true under penalty of perjury under the laws of the United States.

Signed on June 3, 2019 in Chicago, Illinois

/s/ Ashley Keller
Ashley Keller

**CERTIFICATE OF SERVICE**

I certify that I shall cause the foregoing document to be served on Postmates Inc. at its headquarters at 201 Third Street, Suite 200, San Francisco, California 94103.

Dated: June 3, 2019                    /s/ Keith A. Custis