# Exhibit G

Keller | Lenkner

June 3, 2019

Ms. Heather Santo – heathersanto@adr.org
American Arbitration Association
1301 Atwood Ave., Suite 211N
Johnston, RI 02919

VIA ELECTRONIC DELIVERY

Re: Individuals v. Postmates, Case # 01-19-0001-2994

Dear Ms. Santo:

I write in response to your email of May 31, 2019, in which you requested a response to the *ex parte* letter you received that day from counsel for Postmates Inc., Dhananjay Manthripragada. In that letter—which you received at 8:57 p.m. local time on the due date for Postmates's filing fees—Postmates for the first time raised three grounds on which it claims AAA should suspend the payment deadline. As explained below, each ground is meritless.

First, Claimants have met their filing requirements. Postmates does not dispute that it is party to a valid arbitration agreement with each Claimant that covers each Claimant's dispute. Postmates concedes that it has notice of each Claimant's arbitration demand. And Postmates admits that AAA already determined that Claimants' "demands have met AAA's filing requirements." Postmates Letter at 1. Nevertheless, Postmates contends that Claimants have not met their filing requirements because (i) some of Claimants' demands were sent to Postmates's outside counsel in electronic format, instead of being delivered to Postmates's headquarters in hard copy, and (ii) Keller Lenkner provided an individual demand detailing the claims being asserted by each Claimant along with a spreadsheet containing each Claimant's individualized information, instead of thousands of individual demands that repeated the same claims and prayers for relief verbatim.

The most charitable reaction we can muster to these grievances is bewilderment.

Our firm first contacted Postmates on March 6, 2019, by sending demands for arbitration on behalf of 3,000 Claimants to Postmates's headquarters, as required by the Fleet Agreement. Those demands were sent by hand delivery. They included a list of each Claimant's name and address, as well as a demand describing the claims at issue and relief sought by each individual Claimant. In a cover letter, we stated that the demand set forth the claims that were being raised and the relief sought by each Claimant, and that we planned to demand arbitration on behalf of additional clients.[1]

On March 22, Mr. Manthripragada informed me that he had been retained by Postmates to handle these matters. He asked me to send our pending demands to him. Having been informed that Postmates was represented by counsel, Keller Lenkner directed all future communications—

[1] As part of our good-faith attempt to resolve these matters without proceeding to individualized arbitration, we did not simultaneously serve the demands on AAA.

including demands for all of the Claimants currently seeking AAA arbitration against Postmates—to Mr. Manthripragada, rather than contacting his client directly.

I have been in regular contact with Mr. Manthripragada for the past three months. At no time did he suggest that he would prefer we send demands directly to his client rather than to him, or in hard copy rather than electronically. Mr. Manthripragada never mentioned that his client would insist on receiving thousands of paper demands rather than a spreadsheet containing the same information. None of that is surprising. There would be no benefit to Postmates if we sent thousands of pages of materially identical demands to its headquarters, instead of sending a spreadsheet containing the same information to Mr. Manthripragada.

Postmates cannot and does not claim it lacks notice that Claimaints seek individual arbitration or that they allege misclassification. Its eleventh-hour insistence on reams of useless paper is nothing but a delay tactic. Regardless, Postmates's position involves a dispute over whether Claimaints have complied with the Fleet Agreement, which is a question reserved exclusively for arbitration.

As Postmates concedes, AAA has determined that Claimants properly invoked arbitration under the AAA Rules. Postmates argues only that Claimants have failed to comply with *additional* requirements imposed by Postmates's Fleet Agreement. But the Fleet Agreement contains a delegation clause stating that "[*o]nly an arbitrator* . . . shall have the *exclusive* authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision." Fleet Agreement § 10A.ii (emphases added).[2] Claimants have complied with the Fleet Agreement—particularly when considered in light of the parties' course of dealing (e.g., Postmates's decision to retain Mr. Manthripragada, Mr. Manthripragada's request that Keller Lenkner communicate with him directly, and the consistent manner in which counsel have communicated elecontronically over the past 10 weeks). Postmates is free to raise its frivolous arguments to the contrary with individual arbitrators. But because Postmates does not dispute that it is subject to a valid agreement to arbitrate with each Claimant on an individual basis, this dispute about compliance with the Fleet Agreement must be arbitrated. That cannot happen until Postmates pays its share of the filing fees so that arbitration can commence.[3]

<u>Second</u>, Claimants are eligible for hardship-based fee waivers. According to Postmates, (i) such waivers are available only in consumer arbitrations, which are limited to situations in which the claimant was "*required* to accept the arbitration provision in the contract," and (ii) the Claimants in this matter were not required to accept the arbitration provision because they were allowed to "opt-out." Once again, Postmates has raised this argument at the last possible moment; AAA determined five weeks ago that 4,593 Claimants had met their filing obligation via fee waiver. Regardless, both premises of Postmates's argument are false.

---

[2] The 2019 Fleet Agreement is available at http://fleet.postmates.com/legal/agreement.

[3] To the extent AAA would like to receive Claimants' individual information via separate but materially identical demands, we can promptly provide AAA and Postmates with the thousands of duplicative documents Postmates now requests. But that will not give AAA or Postmates any information they do not already have—and as Postmates concedes, AAA already determined that Claimants have met their filing requirements.

Every Postmates courier must agree to the Fleet Agreement in full before being allowed to work for Postmates. Not a single Claimant was given the option of signing a Fleet Agreement that did not contain an arbitration requirement. Although couriers are allowed to opt out of arbitration, they may do so only *after accepting* the arbitration provision. That is no mere technicality. Postmates designed the process precisely because it knew that few couriers would escape arbitration if they were required first to accept the arbitration provision as part of Postmates's boilerplate contract before taking additional steps to opt out of arbitration. All Claimants were required to accept the arbitration provision before they could start working for Postmates. Therefore, these arbitrations qualify as consumer arbitrations under Section 1284.3(a) of the California Code of Civil Procedure. In any event, Postmates is also wrong that fee waivers are available only in consumer arbitrations. As Postmates expressly acknowledges in the next paragraph of its letter, AAA may grant a fee waiver to "any party" based on hardship. *See* AAA EMP. R. 43. Postmates's belated objections offer no basis for AAA to depart from its prior determination that the relevant Claimants have met the requirements to obtain fee waivers.[4]

Third, Postmates argues that AAA should not "shift costs waived by . . . fee waivers to Postmates." Postmates Letter at 2. That objection is puzzling, because AAA's invoices made clear that Postmates owed only the respondent's share of filing fees ($1,900) for cases involving a fee waiver, and that it did not owe the Claimant's $300 fee that had been waived. AAA has invoiced Postmates for the full $2,200 filing fee only for demands filed by Claimants proceeding under the 2018 Fleet Agreement, which unambiguously assigns the entire fee to Postmates. In any event, we defer to AAA in the application of its own rules and standard practices on this issue.

* * *

When a party fails to pay a filing-fee invoice by the applicable deadline, we understand that AAA's standard practice is to send the party a final invoice and, if that invoice is not paid, to dismiss the demands for non-payment. Postmates failed to comply with the May 31 deadline AAA set for payment of its filing fees. The excuses it offered for the first time on the night of May 31 are meritless and dilatory. Accordingly, we request that AAA follow its standard practice of sending a final invoice to Postmates that must be paid within one week.

Sincerely,

Ashley C. Keller

cc: Dhananjay Manthripragada – dmanthripragada@gibsondunn.com
Michele Maryott – mmaryott@gibsondunn.com
Theane Evangelis – tevangelis@gibsondunn.com

---

[4] Of the 4,593 Claimants who submitted fee waivers, 2,289 have informed us that they have not worked for Postmates since it implemented the 2019 Fleet Agreement. Those Claimants have demanded arbitration under the 2018 Fleet Agreement, which obligates Postmates to pay all of their filing fees. Should AAA revisit its determination regarding fee waivers, we will provide a list of those Claimants so that AAA can invoice Postmates for the additional fees it will owe.