Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

*Attorneys for Petitioners*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

|  |  |
|---|---|
| JAMAL ADAMS, et al., | Case No. 4:19-cv-03042-SBA |
| *Petitioners,* | **REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION** |
| vs. | *[Second Declaration of Ashley Keller Filed Concurrently in Support]* |
| POSTMATES INC., | **Hearing:** |
| *Respondent.* | **Date**: July 10, 2019 |
|  | **Time:** 2:00 p.m. |
|  | **Judge:** Hon. Saundra B. Armstrong |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

    I.   Petitioners Unequivocally Do Not Seek "Class Arbitration." ................................... 2

        A.   Class Proceedings Seek Class Relief. .................................................................. 3

        B.   Petitioners Seek Individual Arbitration to Obtain Individual Relief. ....................... 5

    II.   Postmates's Attacks on the Sufficiency of Petitioners' AAA Filings and Petitioners' Counsel Are Legally Irrelevant and False. .................................................. 7

        A.   Petitioners Properly Filed Individual Demands and Satisfied Their Fee Obligations. .............. 7

        B.   Postmates Responded by Obstructing and Delaying Individual Arbitration. ........................... 8

        C.   Postmates's Claim That Counsel Are Engaged in "Extortion" Is a Baseless Smear. ................ 9

        D.   Petitioners' Counsel Represents Petitioners and Will Zealously Pursue Their Claims. .......... 10

CONCLUSION...................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(s)**

*AT&T Mobility LLC v. Bernardi*,
  Nos. C-11-03992 CRB, C-11-04412 CRB, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011) ........ 4, 5, 6

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011).................................................................................................................. 3, 4

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ....................................................................................................... 2

*Coleman v. Quaker Oats Co.*,
  232 F.3d 1271 (9th Cir. 2000) ....................................................................................................... 5

*Epic Systems Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)................................................................................................................... 4

*Gray v. Swanney-McDonald, Inc.*,
  436 F.2d 652 (9th Cir. 1971) ......................................................................................................... 3

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002).......................................................................................................................... 2

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ....................................................................................................... 10

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019)................................................................................................................... 3

*Parson v. Johnson & Johnson*,
  749 F.3d 879 (10th Cir. 2014) ...................................................................................................... 4

*S.F. Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*,
  213 Cal. App. 4th 1212 (2013) ..................................................................................................... 8

*Schoenduve Corp. v. Lucent Techs., Inc.*,
  442 F.3d 727 (9th Cir. 2006) ..................................................................................................... 2, 9

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010)....................................................................................................................... 3

*Tanoh v. Dow Chemical Co.*,
  561 F.3d 945 (9th Cir. 2009) ......................................................................................................... 4

**RULES**

Fed. R. Civ. P. 8 ............................................................................................................................. 1, 9

Fed. R. Civ. P. 11 .............................................................................................................................. 2

| | |
|---|---|
| **RULES CONT.** | **PAGE(s)** |

Fed. R. Civ. P. 20 .......................................................................................................... 5

**OTHER AUTHORITIES**

Class Action, Black's Law Dictionary (11th ed. 2019) ............................................... 3

Oakland Municipal Code Ch. 5.92 .............................................................................. 9

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO. 4:19-cv-03042-SBA

### INTRODUCTION

This is a motion to compel arbitration of claims that the parties agree must be arbitrated. Postmates's assertion that Petitioners' individual arbitration demands are actually a "class arbitration" ignores reality. Its critiques of Petitioners' arbitration demands are contrary to the parties' contract and must be decided by individual arbitrators. And its attacks on Petitioners' counsel are unfounded and irrelevant. Nothing in Postmates's opposition papers changes the result: this Court should enforce the Fleet Agreement and compel arbitration.

Each Petitioner filed an individual arbitration demand on AAA's standard demand form; each paid an individual filing fee or submitted an individual fee waiver; and each seeks an individual proceeding before an individual arbitrator. AAA agrees that Petitioners "met the filing requirements," and it is prepared to appoint "individual arbitrators." Evangelis Decl., Ex. F. If Postmates would honor its own contract, AAA would empanel individual arbitrators to conduct individual arbitrations of Petitioners' claims. But Postmates has ignored AAA's filing-fee deadlines—causing Postmates's chosen arbitral forum to "clos[e] [Petitioners'] cases" due to Postmates's refusal to proceed. Second Keller Decl. ¶ 30.

Under the delegation clause Postmates wrote into its Fleet Agreement, the only dispute this Court can consider is whether the parties may pursue a "class and/or collective action" or "representative action." Campbell Decl., Ex. A §§ 11B.ii–iv, Ex. B §§ 10B. ii–iv. Lacking any other basis for judicial intervention, Postmates is reduced to arguing that Petitioners' individual arbitration demands constitute an impermissible "class arbitration." But no matter how many times Postmates says so, that assertion does not pass the straight-face test. A "class arbitration" is one in which a representative plaintiff's proceeding will resolve the claims of absent parties. Here, each Petitioner has demanded a separate arbitration raising solely his or her own claims—in other words, the *opposite* of "class arbitration."

Under the Federal Arbitration Act, that is the end of the matter, and this Court should compel Postmates to individual arbitrations with Petitioners. But notwithstanding the limited scope of this Court's authority (which Postmates does not dispute), Postmates spends much of its opposition attacking the sufficiency and service of Petitioners' arbitration demands and impugning the integrity of Petitioners' counsel. These are the arguments of an employer desperate to escape the consequences of its own arbitration clause. Petitioners' demands would satisfy Rule 8 if filed in this Court, and there is no "code

of pleading" in arbitration, where parties "must accept . . . loose procedural requirements." *Schoenduve Corp. v. Lucent Techs., Inc*., 442 F.3d 727, 733 (9th Cir. 2006) (internal quotation marks omitted).  As for any "shakedown," Opp'n at 1, parties who give their adversary a choice between arbitrating a matter and mediating it are not engaged in an "extortion scheme," *id.* at 2, and accusing one's opposing counsel of criminal behavior based on such a routine feature of civil litigation is reckless and unprofessional. Postmates also has no foundation for its claim that Petitioners' counsel may not "actually represent[]" their clients.  *Id.* at 7 n.5.  That accusation does not even clear the Rule 11 bar.  Likewise, while Postmates asserts that Petitioners' counsel "obviously" are incapable and "have no intention" of litigating these matters, *id.* at 1, 15, Postmates has no knowledge with which to assess its opponents' resources or legal strategy, and it is gravely mistaken.

Petitioners respectfully ask this Court to compel arbitration and hold Postmates to the Fleet Agreement it drafted and imposed on its couriers.

## ARGUMENT

### I.   Petitioners Unequivocally Do Not Seek "Class Arbitration."

After concluding that each Petitioner met the filing requirements to initiate individual arbitration, AAA imposed three successive deadlines for Postmates to pay the filing fees it owes under the Fleet Agreement: May 31, June 6, and June 13, 2019.  Second Keller Decl. ¶¶ 16–17, 22.  Postmates refused to comply.  *Id.* ¶¶ 19, 21, 26.  No Petitioner's arbitration may commence until Postmates pays its fees.

In deciding motions to compel arbitration, courts analyze: (1) whether the parties have entered into a valid arbitration agreement and (2) whether the agreement covers the dispute.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002).  Where those factors are established, the FAA "requires the court to enforce the arbitration agreement" and compel arbitration.  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Here, all parties agree that Postmates's Fleet Agreement is (1) valid and (2) requires arbitration of Petitioners' misclassification claims.  And all parties agree that the Fleet Agreement contains a broad delegation clause, which requires that "any dispute relating to the interpretation, applicability, enforceability, or formation" of the Fleet Agreement be decided by an arbitrator, not a court.  Campbell Decl., Ex. A § 11A.ii, Ex. B § 10A.ii.  The only exception to the delegation clause authorizes a court to

consider disputes about whether Petitioners may pursue a class, collective, or representative action.  *Id.*, Ex. A § 11B.iv, Ex. B § 10B.iv.  In light of the delegation clause, Postmates has only one option to oppose Petitioners' motion: it must argue that Petitioners are attempting to pursue a class arbitration.  That argument is borderline frivolous.

### A.    Class Proceedings Seek Class Relief.

Postmates insists that Petitioners seek a contractually barred "class arbitration," Opp'n at 9–15, but it makes no attempt to define that term.  That is no accident.  As the Ninth Circuit has explained—in the very context of employment claims like those raised by Petitioners—terms such as "collective action" can "apply only to a representative action . . . brought by an employee or employees for and in behalf of himself or themselves and other employees similarly situated."  *Gray v. Swanney-McDonald, Inc.*, 436 F.2d 652, 655 (9th Cir. 1971); *see also* Class Action, Black's Law Dictionary (11th ed. 2019) (defining a class action as a "lawsuit in which the court authorizes a single person or a small group of people to represent the interests of a larger group," and in which "a person whose interests are or may be affected does not have an opportunity to protect his or her interests by appearing personally or through a personally selected representative").  Put differently, the key question in determining whether an action is a class, collective, or representative action is whether it is "brought for the benefit of unnamed plaintiffs, or in the name of any plaintiff who [is] suing in a representative capacity."  *Gray*, 436 F.2d at 655.

The "clear Supreme Court precedent" cited by Postmates, Opp'n at 2, 9–11, defines class arbitration the same way: "Classwide arbitration *includes absent parties* . . . ."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 347–48 (2011) (emphasis added); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010) (noting that in class arbitration, the arbitrator "no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties").  Indeed, the Supreme Court's concern over "class arbitration" flows directly from the premise that it resolves the legal rights of absent parties.  Class arbitration "*requires* procedural formality," which is inconsistent with traditional arbitration, because "absent parties [will] be bound by the results."  *Concepcion*, 563 U.S. at 349 (emphasis in original); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) ("Class arbitration . . . raises serious due process concerns by adjudicating the rights of absent members of the plaintiff class.").  And when many

arbitration demands are "*decided at once*, the risk of an error will often become unacceptable" without multilayered appellate review. *Concepcion*, 563 U.S. at 350 (emphasis added). Such concerns are not present in individual arbitration, and the cases on which Postmates relies say nothing to the contrary.[1]

This widely understood definition of class proceedings applies in other areas of the law. For instance, in *Tanoh v. Dow Chemical Co.*, the Ninth Circuit considered a company's argument that seven separate state-court actions, each brought by fewer than 100 people and each raising the same claims against the same company, should be considered a single mass action subject to removal under the Class Action Fairness Act. 561 F.3d 945, 951 (9th Cir. 2009). Rejecting the argument that the plaintiffs had engaged in improper gamesmanship, the court recognized the well-established rule that plaintiffs are the "masters of their complaint." *Id.* at 953–54. Although the plaintiffs' claims *could* have been joined in a single proceeding, they were not a mass action because the plaintiffs did not seek collective adjudication. *Id; see also Parson v. Johnson & Johnson*, 749 F.3d 879, 886 (10th Cir. 2014) ("[I]t seems clear that the plaintiffs' choice to file separate suits . . . cannot simply be disregarded as procedural gamesmanship and their 'civil action' summarily treated as a single one containing 650 plaintiffs.").

In determining whether a plaintiff is bringing a class proceeding, courts also look to the relief the plaintiff seeks. The very case upon which Postmates relies most heavily, *see* Opp'n at 10, 11, 13, reflects this basic principle. In *AT&T Mobility LLC v. Bernardi*, AT&T sought a preliminary injunction to stop two arbitrations filed by its customers. Nos. C-11-03992 CRB, C-11-04412 CRB, 2011 WL 5079549, at *2 (N.D. Cal. Oct. 26, 2011). The law firms representing those customers also represented more than 1,000 other customers who had filed similar arbitration demands. *Id.* AT&T's arbitration clause allowed for an injunction in arbitration "only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." *Id.* at *5. But none of the demands sought any "relief affecting only the individual claimants, such as an adjustment to an individual rate

---

[1] Postmates cites *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), and *Concepcion* for the proposition that courts should police "devices and formulas," such as class arbitration, that interfere with individual arbitration. Opp'n. at 9, 15. But *Epic Systems* and *Concepcion* expressly equated class arbitration with representative actions. *See Epic Sys. Corp.*, 138 S. Ct. at 1623 (class arbitration requires arbitrators to address "whether the named class representatives are sufficiently *representative* and typical of the class" and how to protect the rights of "absent class members" (emphasis added)). Those cases provide no support for the proposition that an individual who seeks relief only for himself or herself is pursuing a class action.

plan." *Id.* at *7.   Rather, each claimant was "seeking the same, non-individualized relief: injunction of the [AT&T]/T-Mobile merger." *Id.* at 6.   Because the demands did not seek any individual relief, the Court held that they sought class arbitration. *See id.* at *10; *id.* at *7 ("Granting relief in one arbitration would secure the relief sought by each of the 1,000 or more individuals seeking arbitration." (internal quotation marks and citation omitted)).[2]

Postmates is correct that courts "prioritize substance and function" and "need not accept the label a party places on a claim."   Opp'n at 10 (internal quotation marks and citation omitted).   But it is Postmates that relies on mere labels by repeatedly calling Petitioners' demands "class arbitration" without defining the term.   The record shows that in "substance and function," Petitioners' actions are individual.

### B.   Petitioners Seek Individual Arbitration to Obtain Individual Relief.

Petitioners' very first communication to Postmates agreed that the Fleet Agreement "requires individual arbitration," and it stated that Petitioners intended to "serve individual demands for arbitration" that would result in the empanelment of an individual arbitrator for each Petitioner.   Evangelis Decl., Ex. A.   Petitioners' initial demands to AAA described "each [Petitioner's] claims" and discussed the filing fee for "each [Petitioner's] arbitration." *Id.*, Ex. B at 1.   Petitioners' counsel advanced more than $99,000 in individual filing fees.   First Keller Decl. ¶ 14.   When Postmates wrongly suggested that Petitioners' initial demands were insufficient to trigger individual arbitration, Petitioners removed any doubt by sending fully individualized demands on AAA's demand forms. *See, e.g.*, Evangelis Decl., Ex. H.   Each of those demands raises only one Petitioner's claims on his or her own behalf, not in a representative capacity. *Id*.   AAA agreed, and at all times planned to administer individual arbitrations. *See id.*, Exs. F & I.

The record also shows that each Petitioner seeks individual relief.   Postmates has misclassified each Petitioner as an independent contractor, depriving him or her of a minimum wage and overtime, among other benefits. *See id.*, Ex. H.   Each Petitioner thus seeks unpaid wages, liquidated damages, and statutory penalties for his or her individual injury. *Id.*   Should an arbitrator rule that one Petitioner is entitled to damages, that decision will have no bearing on whether another Petitioner receives damages.   Likewise, Petitioners concede that, in light of the class waiver in the Fleet Agreement, any injunctive relief

---

[2] Postmates's reliance on *Coleman v. Quaker Oats Co*., 232 F.3d 1271 (9th Cir. 2000), is even further afield.   That case did not involve arbitration or discuss class actions at all.   It simply held that a district court did not abuse its discretion by denying joinder under Rule 20 due to the potential unfairness of a joint proceeding based on the circumstances of that case.

obtained by a Petitioner must be limited to Postmates's treatment *of that Petitioner alone*.  Lest there be any doubt, each Petitioner hereby represents that he or she seeks relief in arbitration *only* for himself or herself, and expressly waives any argument that a decision in one Petitioner's individual arbitration would affect the legal rights of any other Postmates courier.  Petitioners' individual demands bear no resemblance to *Bernardi*, in which "[g]ranting relief in one arbitration would secure the relief sought by each of the 1,000 or more individuals seeking arbitration."  2011 WL 5079549, at *7.

Because Postmates cannot show that Petitioners seek to participate in any sort of representative action, it shifts to the argument that Petitioners' demands all contain similar information.  Opp'n at 11, n.6.  But that is precisely what one would expect when a class waiver forces separate, individual arbitrations.  Misclassification claims like Petitioners' are routinely pursued in class actions because such claims involve common questions that predominate over individualized issues.  Given that Postmates has blocked its couriers from pursuing a class action and required them each separately to plead the same claims based on the same corporate misclassification policy, it is hardly surprising that Petitioners' demands assert similar facts.  If 5,000 plaintiffs filed 5,000 individual complaints in court, the cases would not qualify as a class action merely because the complaints used the same words to state the parties' individual claims.  The same is true in arbitration.  Petitioners have honored the parties' contract and refrained from pursuing a representative action.  Postmates may not now invent an extra-contractual requirement of *sufficiently unique*, individualized pleading.

Postmates also suggests that Petitioners must be seeking a class action because they offered to participate in a global mediation.  Opp'n at 12.  That argument is passing odd.  Postmates *accepted* Petitioners' invitation and engaged in AAA-administered mediation, which ended in an impasse.  Evangelis Decl., Ex. I.  Postmates's Fleet Agreement does not prohibit parties from agreeing to group mediation, and the fact that Petitioners offered and Postmates accepted an alternative to individual arbitration says nothing about what Petitioners pursued after that alternative failed.  Postmates further suggests that Petitioners must be seeking class arbitration because AAA administered Petitioners' arbitrations collectively.  Opp'n at 12.  But AAA is not a party to any contract with Postmates, and nothing in the Fleet Agreement purports to regulate how AAA deals with the task of administering numerous individual arbitrations.  AAA's decision to request payment for each arbitration in a single email or to

globally reject Postmates's meritless grounds for refusing to proceed with any arbitrations does not convert Petitioners' separate arbitrations into a class action.

Postmates's arguments invite questions: Could a single law firm *ever* bring individual arbitrations on behalf of 5,000 couriers? If so, how could those couriers meet Postmates's extra-contractual standards? Would the couriers' counsel be required to send each individual demand to Postmates in a separate envelope? Should counsel send 5,000 individual emails to AAA? Or ask AAA to send Postmates 5,000 individual invoices as opposed to a single, sum total of fees owed? Nothing in the Fleet Agreement requires such absurdities. While Postmates has deigned to defend against "at least fifty" individual arbitrations, Opp'n at 5, it simply is not willing to accept individual arbitration when a large number of claimants seek it. Postmates must take "yes" for an answer and respect its own arbitration clause.

## II.    Postmates's Attacks on the Sufficiency of Petitioners' AAA Filings and Petitioners' Counsel Are Legally Irrelevant and False.

Finding no comfort in the facts or the law, Postmates instead resorts to mischaracterizing the record and lobbing ad hominem attacks at Petitioners' counsel. Under the Fleet Agreement's delegation clause, none of these arguments is properly before the Court. But the distortions cannot go unanswered.

### A.    Petitioners Properly Filed Individual Demands and Satisfied Their Fee Obligations.

Petitioners' counsel first raised Petitioners' claims with Postmates on March 6, 2019. Second Keller Decl. ¶ 4. It is undisputed that Postmates's outside counsel then asked Petitioners' counsel to communicate with outside counsel directly. *Id.* ¶ 5. Consistent with that request and their professional responsibilities, Petitioners' counsel directed all future communications—including demands for the remaining Petitioners—to Postmates's outside counsel.

Petitioners formally initiated arbitration by serving arbitration demands on AAA and Postmates on April 22 and May 13, 2019. *Id.* ¶¶ 10, 13. Petitioners' demands consisted of two documents: a spreadsheet containing individualized information regarding each Petitioner, and a single document containing allegations and claims raised by each Petitioner. *Id.* ¶ 15, Evangelis Decl., Ex. H. Under AAA rules, a claimant must pay a filing fee, capped at $300, when he or she submits a demand for arbitration, unless the agreement calls for the respondent to shoulder a greater share of fees. AAA Employment Fee Schedule at 1, https://www.adr.org/sites/default/files/Employment_Fee_Schedule.pdf. Given the low

income earned by Postmates couriers, many Petitioners were eligible for, and submitted, individual hardship-based fee waivers. First Keller Decl. ¶ 14. Counsel paid individual filing fees for the remaining Petitioners. *Id.* AAA determined that Petitioners' demands and fee waivers met its requirements, and it directed Postmates to pay its share of the filing fees. Second Keller Decl. ¶¶ 16–17.

**B.    Postmates Responded by Obstructing and Delaying Individual Arbitration.**

After Petitioners notified Postmates of their desire to initiate arbitration, Postmates demanded that Petitioners sign a revised arbitration agreement eliminating Postmates's responsibility to pay all AAA fees. *See* First Keller Decl. ¶¶ 8–10. As Postmates fails to dispute, Postmates's attorneys signed off on sending this revised legal agreement to Petitioners *directly*, in violation of an attorney's ethical duty to avoid contacting a party known to be represented by counsel. *See S.F. Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*, 213 Cal. App. 4th 1212, 1235 (2013) ("[A]n attorney is prohibited from drafting documents, correspondence, or other written materials, to be delivered to an opposing party represented by counsel even if they are prepared at the request of the client, are conveyed by the client and appear to be from the client rather than the attorney."). Petitioners believe that this renders the new fee terms unenforceable; but because this raises a dispute "relating to the . . . enforceability" of the revised agreement, Campbell Decl., Ex. A § 11A.ii, Ex. B § 10A.ii, Petitioners paid their share of filing fees pursuant to AAA rules and agreed to raise their arguments about the new agreement's applicability with individually empaneled arbitrators. Evangelis Decl., Ex. B.

After increasing the cost to Petitioners to initiate individual arbitrations, Postmates next attempted to stall the commencement of arbitration by refusing without explanation to pay the filing fees AAA said it owed. Although Postmates's opposition obscures the chronology, Postmates simply ignored AAA's payment request for three weeks. *See* First Keller Decl. ¶¶ 15–19. Only on the night of AAA's filing-fee deadline—some five weeks after Petitioners had served their initial demands with AAA—did Postmates object for the first time to the form, substance, and service of Petitioners' demands. Evangelis Decl., Ex. E. AAA rejected each objection as inconsistent with AAA rules; it again confirmed that Petitioners had "met the filing requirements under [AAA] Rules and Fee Schedule"; and it emphasized that further disputes must be decided by "individual arbitrators." *Id.*, Ex. F. In the interest of avoiding further delay by Postmates, however, Petitioners' counsel arranged for an individual demand for each Petitioner to be

delivered by hand, in hard copy, on AAA's official demand form, to Postmates's headquarters, thereby rendering Postmates's objections moot.  *Id.*, Ex. H; Second Keller Decl. ¶ 25.

Even after Petitioners filed individual demands on AAA's form, Postmates still is not satisfied. Postmates fails to identify any information that is missing from the demands, but it objects that they are "identical, generic[, and] interchangeable." Opp'n at 11, n.6.  That is false.  Each demand provides and distinguishes between the relevant individual information regarding each Petitioner, including the individual location and contact information of each Petitioner, which arbitration agreement and state laws govern that Petitioner's claims, and whether the Petitioner submitted a fee waiver.  *See* Evangelis Decl., Ex. H.  And each demand describes the nature of the claim, the facts giving rise to the cause of action, and the remedies sought.[3]  *Id.*  This information would be sufficient to file a claim in federal court. *See* FED. R. CIV. P. 8.  It is certainly sufficient to file a demand in "informal and flexible" arbitration.  *See Schoenduve Corp.*, 442 F.3d at 733 ("The parties agreed to arbitration . . . and must accept the loose procedural requirements along with the benefits which arbitration provides. . . . [W]e will not develop a code of pleading here.") (internal quotation marks omitted).

## C.   Postmates's Claim That Counsel Are Engaged in "Extortion" Is a Baseless Smear.

Postmates accuses Petitioners' counsel of "extortion," contending that counsel "threatened" Postmates and demanded an "exorbitant and unjustified settlement." Opp'n at 1–2.  Those accusations are false, and ironic.

An offer to "explore . . . an alternative process for resolving our clients' claims" is not a threat, but an entirely commonplace willingness to seek a cost-effective means of resolution.  Evangelis Decl., Ex. A.  There is nothing "extortionate," "manipulat[ive]," Opp'n at 2, 5, or even unusual about a law firm offering the option of mediating its clients' claims.  Moreover, Petitioners' counsel has never proposed *any* settlement figure, much less an "exorbitant" or "unjustified" one.  Second Keller Decl. ¶ 11.  In proposing an alternative to individual arbitrations, counsel of course referred to Postmates's costs of

---

[3] It is neither surprising nor inappropriate that the demands cite multiple potential municipal codes that could apply to Petitioners. *See* Opp'n at 11. Petitioners' work requires them to travel through numerous municipalities. Whether the ordinances in those municipalities apply depends on how long a Petitioner works in each one. *See, e.g.*, Oakland Municipal Code Ch. 5.92. That information is uniquely within Postmates's control, and Postmates has refused to produce it. *See* Second Keller Decl. ¶ 6. In such a situation, it is entirely commonplace for plaintiffs in court and claimants in arbitration to list all potential causes of action that could apply.

proceeding under the Fleet Agreement; under black-letter law, the "expense, complexity, and likely duration of further litigation" and "the stage of the proceedings" are appropriate factors to consider in assessing the reasonableness of any settlement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). If raising those considerations was "extortion," it is unclear how any party in a good-faith settlement discussion could avoid such a charge. Ironically, Postmates's accusation reconfirms that Petitioners seek *individual*, not class arbitration. Postmates's attacks on opposing counsel all stem from the fact that AAA is requiring Postmates to pay *individual* filing fees before commencing *individual* arbitration. Admittedly, those fees add up to a substantial expense, just as Petitioners' counsel predicted. But that is a result of the arbitration process Postmates wrote into its contract. Reminding Postmates of the unambiguous costs of defending against Petitioners' actions is a commonplace aspect of settlement discussions, not "an extortion scheme."

### D. Petitioners' Counsel Represents Petitioners and Will Zealously Pursue Their Claims.

Postmates does not identify a single fact to support its wild claim that Petitioners' counsel does not represent Petitioners. Opp'n at 1, 7 n.5, 15. Postmates also fails to disclose to the Court that Petitioners' counsel offered to share Petitioners' engagement agreements with the AAA-appointed mediator, who could have confirmed their validity for Postmates. Second Keller Decl. ¶ 33. Postmates ignored that offer once, so counsel repeat it here.[4] Finally, Petitioners' counsel are fully prepared to litigate Petitioners claims individually and will continue to spend the time and resources necessary to vindicate Petitioners' rights. *See id.* ¶ 34. Postmates has no standing—let alone knowledge—to claim otherwise.

### CONCLUSION

Each Petitioner has a right to arbitrate his or her misclassification claims under the Fleet Agreement. Each Petitioner submitted a separate, individual demand that satisfies the filing requirements of AAA and the parties' contracts. Each Petitioner paid an individual filing fee or submitted an individual fee waiver. And each Petitioner seeks to resolve only his or her claims and to obtain only a personal remedy in arbitration. For all the foregoing reasons, this Court should grant Petitioners' motion and compel Postmates to participate in individual arbitration as required by its Fleet Agreement.

---

[4] Although Postmates's false accusations should not be rewarded with delay, Petitioners' counsel are willing to promptly provide the Court with any engagement letters it may wish to review *in camera*.

Dated: June 24, 2019                    Respectfully submitted,


                                        /s/ Ashley Keller
                                        Ashley Keller (*pro hac vice*)
                                          ack@kellerlenkner.com
                                        Travis Lenkner (*pro hac vice*)
                                          tdl@kellerlenkner.com
                                        Marquel Reddish (*pro hac vice*)
                                          mpr@kellerlenkner.com
                                        KELLER LENKNER LLC
                                        150 N. Riverside Plaza, Suite 4270
                                        Chicago, Illinois 60606
                                        (312) 741-5220

                                        Keith A. Custis (#218818)
                                          kcustis@custislawpc.com
                                        CUSTIS LAW, P.C.
                                        1875 Century Park East, Suite 700
                                        Los Angeles, California 90067
                                        (213) 863-4276

                                        *Attorneys for Petitioners*

REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
CASE NO. 4:19-cv-03042-SBA

**CERTIFICATE OF SERVICE**

I certify that I caused the foregoing document to be served on all ECF-registered counsel via the Court's CM/ECF system on June 24, 2019.


Dated: June 24, 2019                    /s/ Ashley Keller