Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

*Attorneys for Petitioners*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| JAMAL ADAMS, et al., | Case No. 4:19-cv-03042-SBA |
| *Petitioners,* | |
| vs. | **OPPOSITION TO CROSS-MOTION TO COMPEL ARBITRATION** |
| POSTMATES INC., | *[Fourth Declaration of Ashley Keller Filed Concurrently In Support]* |
| *Respondent.* | **Hearing:** |
| | **Date:**  September 11, 2019 |
| | **Time:**  2:00 p.m. |
| | **Judge:**  Hon. Saundra B. Armstrong |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................3

    I.  An Arbitrator Must Resolve the Parties' Dispute. ........................................... 3

    II.  Petitioners Unequivocally Do Not Seek "Class Arbitration." ....................... 4

        A. "Class Arbitration" is a Representative Action. ........................................ 5

        B. Petitioners' Demands Are Individual, Not Representative. ...................... 6

    III.  Postmates's Meritless Grievances Are Unrelated to "Class Arbitration."....................... 7

        A. Petitioners Submitted Detailed, Individualized Demands, the Sufficiency of Which Can Be Decided Only by an Arbitrator. ....................... 8

        B. Any "Settlement Pressure" Postmates Faces is Due to Its Own Employment Practices. .......... 9

        C. Postmates Seeks Class Treatment Through an Arbitration "Payment Plan." ......................... 10

        D. Postmates Admits that Each Individual Petitioner Has Joined This Action to Individually Compel Arbitration. ........................... 12

    IV.  Postmates's "Cross-Motion To Compel" is a Transparent Effort to Delay Arbitration and Should Be Denied in an Expedited Manner. ........................... 13

        A. Postmates's "Cross-Motion To Compel" Individual Arbitration is Simply Another Attempt to Delay It.................... 13

        B. The Relief Postmates Seeks is Inconsistent With a Proper Motion to Compel. ..................... 14

CONCLUSION..................................................................................................................15

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .................................................................................... 8

4

*AT&T Mobility LLC v. Bernardi,*
5   Nos. C-11-03992 CRB, C-11-04412 CRB, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011) ............... 7

6

*AT&T Mobility LLC v. Concepcion,*
7   563 U.S. 333 (2011) ........................................................................................................... 5, 6

8

*Blair v. Rent-A-Center, Inc.,*
    No. 17-17221, 2019 WL 2701333 (9th Cir. June 28, 2019) ........................................... 6, 7, 9

9

*Conley v. Gibson,*
10   355 U.S. 41 (1957) ................................................................................................................... 9

11

*Dees v. Billy,*
    394 F.3d 1290 (9th Cir. 2005) ............................................................................................... 13

12

*Desimoni v. TBC Corporation,*
13   No. 2:15-cv-366-FtM-99CM, 2017 WL 1381600 (M.D. Fla. Apr. 18, 2017) ........................... 7

14

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
15   139 S. Ct. 524 (2019) ............................................................................................................... 4

16

*Lamps Plus, Inc. v. Varela,*
    139 S. Ct. 1407 (2019) ............................................................................................................. 5

17

*Mohamed v. Uber Techs., Inc.,*
18   848 F.3d 1201 (9th Cir. 2016) ................................................................................................. 4

19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
20   460 U.S. 1 (1983) ............................................................................................................. 13, 15

21

*Rapaport v. Soffer,*
    No. 2:10-CV-00935-KJD-RJJ, 2011 WL 1827147 (D. Nev. May 12, 2011) ............................ 11

22

*Sakkab v. Luxottica Retail N.A., Inc.,*
23   803 F.3d 425 (9th Cir. 2015) ........................................................................................... 5, 6, 9

24

*Schoenduve Corp. v. Lucent Techs., Inc.,*
    442 F.3d 727 (9th Cir. 2006) ................................................................................................... 9

25

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
26   559 U.S. 662 (2010) ................................................................................................................. 5

27

*Tillman v. Tillman,*
28   825 F.3d 1069 (9th Cir. 2016) ............................................................................................... 12

*Zaborowski v. MHN Gov't Servs., Inc.*,
    601 F. App'x 461 (9th Cir. 2014) ........................................................................................... 10

**STATUTES**

9 U.S.C. § 3 ........................................................................................................................... 15

9 U.S.C. § 4 ........................................................................................................................... 12

**OTHER AUTHORITIES**

Postmates's Mot. to Compel, *Costa v. Postmates Inc.*,
    No. 3:19-cv-03046-JST (June 13, 2019), Dkt. No. 23 .......................................... 4, 10

**RULES**

Fed. R. Civ. P. 8 ..................................................................................................................... 8

# INTRODUCTION

In a "class action," a representative plaintiff seeks relief for absent parties.  Postmates cannot and does not contend that Petitioners seek relief for anyone but themselves.  It cannot and does not contend that Petitioners challenge the validity or enforceability of the class-action-waiver provision.  And it does not cite a single authority that contradicts the universal definition of a "class action."  Instead, Postmates ignores its own delegation clause and asks the Court to treat the term "class action" as an empty vessel that can be reworked to cover any features of AAA arbitration that Postmates decides it does not like.

As a threshold matter, the Fleet Agreement delegates all issues of arbitrability to an arbitrator.  It allows judicial relief only for claims that the class-action-waiver provision is "unenforceable, unconscionable, void, or voidable."  Campbell Decl., Exs. A § 11B.iv, B § 10B.iv, Dkt. No. 228-4.  No Petitioner has suggested that the provision is "unenforceable, unconscionable, void, or voidable," and Postmates does not claim otherwise.  Postmates argues only that Petitioners somehow have not complied with the class-action-waiver provision.  But that (incorrect) argument does not speak to the validity or enforceability of the waiver provision itself.  As a result—under the plain terms of the delegation clause—whether Petitioners have complied with the class-action-waiver provision is not properly before this Court.  Postmates must make its meritless argument to individual arbitrators, and that cannot happen until arbitration commences.

Even if this Court had authority to resolve this dispute, it could easily reject Postmates's arguments that Petitioners have engaged in "class arbitration."  Postmates says Petitioners' individual arbitration demands must contain more detail, but that is an attack on the sufficiency of each Petitioner's pleadings; it says nothing about whether any Petitioner seeks relief for an absent party.  Similarly, the fact that AAA—which is the neutral forum Postmates selected, and is not a party to the Fleet Agreement—sent a single invoice for Postmates's share of individual filing fees creates no risk that the award in any one Petitioner's arbitration will determine any other Petitioner's relief.  In reality, it is Postmates that seeks group resolution, demanding that all Petitioners accede to a "payment plan" for Postmates's collective filing-fee obligations instead of pursuing their own individual arbitrations immediately, as is their right under the Fleet Agreement.

If Postmates's "cross-motion" has a familiar ring, that is because all of its arguments were fully briefed in—and are lifted nearly verbatim from—Postmates's Opposition to Petitioners' Motion to Compel Arbitration. That is a sign of Postmates's desperation. After years of forcing disputes out of court and into arbitration, Postmates now wants to obscure the inescapable truth: it is unwilling to shoulder the expense of individual arbitration when a significant number of claimants seek it. As is now clear, Postmates will resort to obstruction and delay to thwart the very arbitral process it established in its contract and forced its couriers to accept. Postmates has refused to comply with <u>three</u> AAA deadlines for the filing fees it owes to proceed with Petitioners' arbitrations. Yet it now pretends that it too is eager to arbitrate, slapping a new label on its Opposition and purporting to seek an order "compelling" arbitration. But as Postmates itself has observed, a party's self-interested label is not controlling.

Even a cursory review of the "cross-motion" exposes it as a duplicative surreply in opposition to Petitioners' Motion to Compel. The "cross-motion" contains the same section headers, cites the same cases, and makes the same arguments as Postmates's Opposition. Most revealing of all, Postmates's amorphous request for relief does not seek to compel Petitioners to do <u>anything</u>, let alone arbitrate. Instead, its "cross-motion" merely "seeks an order compelling each Petitioner <u>wishing</u> to pursue his or her claims against Postmates to" refile it in a way that somehow avoids Postmates's amorphous idea of a class action. Cross-Mot. at 14 (emphasis added), Dkt. No. 228. In other words, Postmates seeks an order denying Petitioners' Motion to Compel—at which point, Petitioners could choose to attempt arbitration again if they wished. They would not be compelled to take any action at all.

No matter how many times Postmates repackages its Opposition, the core issue is straightforward. If "class action" means whatever Postmates deems inconvenient when facing more than a few individual disputes at a time, then Petitioners' Motion to Compel should be denied. But the universal definition of a "class action" is a matter where an individual litigates on behalf of absent parties. Here—at every turn— each Petitioner has sought an individual arbitration that would afford individual relief. On that basis, Petitioners' Motion must be granted and the so-called "cross-motion" should be denied.

**ARGUMENT**

**I.     An Arbitrator Must Resolve the Parties' Dispute.**

Postmates admits that Petitioners' misclassification claims are covered by the parties' arbitration agreement.  Cross-Mot. at 9.  Postmates merely contests <u>the manner</u> in which Petitioners have pursued arbitration under that agreement.  As Postmates concedes, the Fleet Agreement "contains a delegation clause delegating many arbitrability issues to an arbitrator."  Cross-Mot. at 10; *see* Campbell Decl., Ex. B § 10A.ii (stating that "[o]nly an arbitrator . . . shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation" of the agreement).  It follows that Postmates must raise the arguments in its "cross-motion" only before individual arbitrators, not this Court.

To avoid that conclusion, Postmates selectively quotes from the parties' delegation clause.  Postmates says only that the clause "'shall not apply to any dispute relating to or arising out of the Class Action Waiver and Representative Action Waiver, which must proceed in a court of competent jurisdiction and cannot be heard or arbitrated by an arbitrator.'"  Cross-Mot. at 4 (quoting Campbell Decl., Ex. B § 10A.ii).  Thus, according to Postmates, "this Court has exclusive authority to determine the threshold issue of whether the parties have agreed to arbitrate on a de facto classwide basis."  Cross-Mot. at 10.

Postmates's elision hides crucial text and contorts the plain meaning of the delegation clause.  The relevant portion of Section 10A.ii reads in full: "<u>[A]s stated in Section 10B.iv below</u>, the [delegation] clause shall not apply to any dispute relating to or arising out of the Class Action Waiver and Representative Action Waiver, which must proceed in a court of competent jurisdiction and cannot be heard or arbitrated by an arbitrator."  Campbell Decl., Ex. B § 10A.ii (emphasis added).  Section 10B.iv— the referenced provision that defines the narrow exception to the delegation clause—states: "[A]ny claim that all or part of this Class Action Waiver and/or Representative Action Waiver <u>is unenforceable, unconscionable, void, or voidable</u> shall be determined only by a court of competent jurisdiction and not by an arbitrator.  As stated above, <u>all other disputes</u> regarding interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision shall be determined exclusively by an arbitrator"

(emphases added).  Giving effect to all the contractual language, a court may hear only arguments that challenge the validity of the waiver itself.  All other disputes must be arbitrated.[1]

No party here "claims that all or part of [the] Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, void, or voidable."  *Id.*  To the contrary, Petitioners respect the validity of the Fleet Agreement's class waiver.  At most, each of Postmates's complaints raises questions about the interpretation of AAA rules or Postmates's Fleet Agreement—all of which must be arbitrated.  *See* Campbell Decl., Exs. A § 11A.ii, B § 10A.ii.  Under black-letter law, that is the end of the matter.  *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue.  That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (holding that a similar delegation clause delegated threshold arbitrability questions to the arbitrator under the Supreme Court's "clear and unmistakable" standard).  Because the validity of the class-action-waiver provision is not in question, this Court must respect the parties' delegation clause and permit an arbitrator to (i) determine whether any Petitioner is pursuing an impermissible "class action," and (ii) resolve all of Postmates's other complaints that have nothing to do with "class actions" at all.  *See* Section III, *infra*.  That cannot happen until Postmates honors its contract and is compelled to arbitrate.

## II.     Petitioners Unequivocally Do Not Seek "Class Arbitration."

Even if the Court were empowered to interpret the Fleet Agreement, Postmates's arguments are meritless.  Postmates's sole ground for opposing the Motion to Compel is that Petitioners seek "class arbitration" barred by the Fleet Agreement.  *See* Opp'n at 1–2, Dkt No. 112.  The "cross-motion" simply parrots that refrain.  *See, e.g.*, Cross-Mot. at 11.  But repeating the same meritless argument does not make it true.  Incanting the words "class action" and "class arbitration" in a duplicative filing cannot alter the fact that each Petitioner demands individual arbitration to obtain individual relief.

---

[1] Postmates has no compunctions against giving the delegation clause its plain meaning when it wants to avoid judicial review and send a courier to arbitration.  In another case pending in this District, Postmates conceded that its delegation clause has only "two limited exceptions": "[d]isputes <u>challenging</u> the Mutual Arbitration Provision's class action or representative action waiver."  Postmates's Mot. to Compel at 8 n.3, *Costa v. Postmates Inc.*, No. 3:19-cv-03046-JST (June 13, 2019), Dkt. No. 23.

## A.   "Class Arbitration" is a Representative Action.

Postmates repeatedly reminds the Court that a party's labelling of an action is not controlling.  *See* Cross-Mot at 13.  Yet Postmates argues that Petitioners have "clear[ly]" filed "class arbitration demands," *id.* at 12, without offering any substantive definition of a "class action" or "class arbitration."  Postmates relies on labels over substance because class actions are universally understood as actions in which a representative seeks to resolve the claims of absent parties.  Petitioners' demands do not satisfy that definition.  In substance and in form, each Petitioner seeks only to arbitrate his or her own dispute.  That is the opposite of a class action.  None of Postmates's distractions can alter that clear-cut conclusion.

As the Supreme Court has observed—in the very cases upon which Postmates relies, *see* Cross-Mot. at 10—"[c]lasswide arbitration <u>includes absent parties</u>."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 347–48 (2011) (emphasis added); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010) (noting that, in class arbitration, the arbitrator "no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties").  Indeed, the Supreme Court's concern over "class arbitration" flows directly from the premise that it resolves the legal rights of absent individuals.  Class arbitration "requires procedural formality," which is inconsistent with traditional bilateral arbitration because "absent parties [will] be bound by the results."  *Concepcion*, 563 U.S. at 349; *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) ("Class arbitration . . . raises serious due process concerns by adjudicating the rights of absent members of the plaintiff class.").  And when many arbitration demands are "decided at once, the risk of an error will often become unacceptable" without multilayered appellate review.  *Concepcion*, 563 U.S. at 350.

The Ninth Circuit defines class arbitration the same way.  A "class action is a procedural device for resolving the claims of <u>absent individuals on a representative basis</u>."  *Sakkab v. Luxottica Retail N.A., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (emphasis added).  Just two weeks ago, the Ninth Circuit confirmed that this definition holds even when arbitration involves a high-stakes dispute that could have repercussions for broad-based business practices.  In *Blair v. Rent-A-Center, Inc.*, the court considered whether the FAA preempts California law that voids contractual provisions purporting to waive a consumer's right to seek public injunctive relief.  No. 17-17221, 2019 WL 2701333, at *3 (9th Cir. June

28, 2019).  The Ninth Circuit upheld California law on the ground that public-injunction claims can be brought in individual arbitration.  *Id.* at *9.  In so holding, the court articulated the difference between individual, bilateral arbitration on the one hand and impermissible "classwide arbitration" (as addressed in *Concepcion*) on the other.  *Id.* at *8.

A class action or class arbitration brought by an employee "'resolve[s] the claims of other employees'" not present at the arbitration.  *Id.* at *5 (quoting *Sakkab*, 803 F.3d at 436).  Thus, "due process compels procedural complexity in class arbitration" that is inconsistent with the informal, speedy arbitration envisioned by the FAA.  *Id.* (citing *Concepcion*, 563 U.S. at 349).  By contrast, public injunctive relief "does not interfere with the bilateral nature of a typical consumer arbitration" because public-injunction claims are not brought "on behalf of specific absent parties," even if the relief sought may flow to absent individuals.  *Id.* at *7.  Though a public injunction claim may "involve high stakes and could affect a lucrative business practice," it may be arbitrated in an "informal, bilateral" manner because it does not bind other parties.  *Id.* at *9.  Likewise, the "substantively complex" nature of a public injunction arbitration does not render it class arbitration, because it does not raise the "procedural complexity" required when a court is resolving the rights of unnamed individuals.  *Id.* at *8.  Put simply, the Ninth Circuit held that it is the <u>representative</u> nature of an arbitration, not its high stakes or complexity—or even the fact that relief may flow to absent individuals—that creates an impermissible "class arbitration."  *Id.*

## B.      Petitioners' Demands Are Individual, Not Representative.

Faced with mountains of authority defining a "class action" as one involving absent parties, even Postmates cannot bring itself to assert that any Petitioner meets that universal definition.  Such an assertion would not pass the straight-face test.  Petitioners' very first communication to Postmates agreed that the Fleet Agreement "requires individual arbitration" and stated that Petitioners intended to "serve individual demands for arbitration" that would result in the empanelment of an individual arbitrator for each Petitioner.  Evangelis Decl., Ex. A, Dkt. No. 228-2.  Petitioners' initial demands to AAA described "each [Petitioner's] claims" and discussed the filing fee for "each [Petitioner's] arbitration."  *Id.*, Ex. B at 1.  Each Petitioner also sent an individualized demand to Postmates on AAA's official form.  *See, e.g.*, *id.*, Ex. H.  Each demand raises only one Petitioner's claims on his or her own behalf, not in any representative

capacity. *Id.* Petitioners' counsel advanced more than $99,000 in individual filing fees. First Decl. of Ashley Keller ¶ 14, Dkt. No. 5. At all times, AAA planned to administer individual arbitrations. Evangelis Decl., Exs. F & I. And each Petitioner seeks individual relief: unpaid wages, liquidated damages, statutory penalties for his or her individual injury, and an injunction requiring Postmates to properly classify only that individual Petitioner as an employee. *Id.*, Ex. H. In a telling slip, Postmates itself admits that Petitioners seek individual arbitration: it complains of financial hardship due to an "onslaught of AAA individual arbitration filing fees." Cross-Mot. at 1 (emphasis added).

Postmates has not identified anything in the record to suggest that any Petitioner seeks to represent any other individual. Postmates also cites no case in which a court determined that a set of individual arbitration demands seeking only individual relief were deemed a "class arbitration." The cases upon which Postmates does rely are of no help. In *AT&T Mobility LLC v. Bernardi*, the court concluded that claimants sought "the same, non-individualized relief: injunction of the [AT&T]/T-Mobile merger." Nos. C-11-03992 CRB, C-11-04412 CRB, 2011 WL 5079549, at *6 (N.D. Cal. Oct. 26, 2011). The *Bernardi* court expressly acknowledged that no claimant sought "relief affecting only the individual claimants[] such as an adjustment to an individual rate plan." 2011 WL 5079549, at *7. Here, the opposite is true. No Petitioner seeks any relief that will benefit any other Petitioner. Moreover, well after the District Court decided *Bernardi*, the Ninth Circuit in *Blair* determined that even an attempt to seek injunctive relief affecting a company-wide action does not convert bilateral arbitration into a class action. 2019 WL 2701333, at *7–9. But the Court need not reach that issue, because no Petitioner here seeks the sort of broad injunction that was at issue in *Bernardi*; instead, each Petitioner seeks relief only for himself or herself.[2]

III.   **Postmates's Meritless Grievances Are Unrelated to "Class Arbitration."**

Postmates cannot and does not dispute that Petitioners' arbitration demands attempt to resolve only the claims of each Petitioner. Instead, Postmates raises a host of distractions about how Petitioners filed their individual arbitration demands or how AAA administered them. Postmates's complaints are

---

[2] *Desimoni v. TBC Corporation* (Cross-Mot. at 13) is inapposite on its face: the claimant in that case expressly sought class arbitration. No. 2:15-cv-366-FtM-99CM, 2017 WL 1381600, at *3 (M.D. Fla. Apr. 18, 2017). No Petitioner has made such a demand, and as explained in Section I above, an arbitrator could apply the class-action-waiver provision in the Fleet Agreement to strike or dismiss such a demand.

meritless and serve only to confirm that it is Postmates, not Petitioners, that is attempting to add procedural complexity and formality to what is supposed to be an efficient, informal arbitral process.

### A. Petitioners Submitted Detailed, Individualized Demands, the Sufficiency of Which Can Be Decided Only by an Arbitrator.

Postmates claims that Petitioners' demands were "originally filed as a single grievance document submitted to AAA." Cross-Mot. at 12. Not so. Postmates omits that Petitioners simultaneously provided all the individualized information necessary to commence an individual arbitration for each Petitioner <u>and</u> that AAA found Petitioners' method sufficient to institute their <u>individual</u> demands for arbitration. *See* Evangelis Decl., Ex. B (including "a list identifying each Claimant, [and] the Claimant's contact information"); *id.*, Ex. F ("The AAA determined Claimant has met the filing requirements under our Rules and Fee Schedule."). Because each Petitioner challenges the same misclassification policy arising from the same Postmates-wide employment practices, Petitioners' "grievance document" was merely a convenient means of listing facts that underlie each Petitioner's individual claim. *See id.*, Ex. C. The document did not purport to initiate a representative action, as the accompanying cover letter made clear. *See id.*, Ex. B (noting that the document "detail[s] <u>each Claimant's</u> claims against Postmates"). Postmates offers no explanation for why efficient commencement of individual arbitrations would somehow convert each Petitioner's action into a class arbitration. Regardless, to moot Postmates's baseless objection on this issue, each Petitioner served on Postmates's headquarters, by hand delivery, an individual demand on AAA's demand form containing that Petitioner's individualized information. *Id.*, Ex. H.

Recognizing that Petitioners have, in fact, sought individual relief, Postmates argues that each individual demand fails to "set[] forth the facts and legal theories applicable to that specific individual." Cross-Mot. at 14. Again, not so, as set forth below. But as a threshold matter, that is plainly an argument about the sufficiency of the pleadings, which must be decided by an arbitrator under the Fleet Agreement's broad delegation clause. *See* Section I, *supra*. If a defendant in court alleges that a plaintiff's complaint fails to satisfy Rule 8, it does not move to strike "class" pleadings; it moves to dismiss for failure to state a claim. *See* FED. R. CIV. P. 8; *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Likewise, to the extent Postmates is suggesting that the Fleet Agreement imposes some heightened pleading standard, that is a matter of

contract interpretation and is expressly reserved for an individual arbitrator.  *See* Campbell Decl., Exs. A § 11A.ii, B § 10A.ii.

Though not properly before this Court pursuant to the delegation clause, Postmates's objections to the sufficiency of Petitioners' pleadings once again illustrate that it is Postmates that is attempting to add complexity and inefficiency to individual arbitration.  Petitioners' individual demands would be enough to state a claim under the federal pleading standards, let alone the more relaxed pleading requirements that apply in AAA arbitration.  *See Schoenduve Corp. v. Lucent Techs., Inc*., 442 F.3d 727, 733 (9th Cir. 2006) ("The parties agreed to arbitration . . . and must accept the loose procedural requirements along with the benefits which arbitration provides. . . . [W]e will not develop a code of pleading here.") (internal quotation marks omitted).  Each Petitioner's individual demand contains the Petitioner's name, address, phone number, and email address; states that the Petitioner has worked as a Postmates courier; alleges that Postmates has misclassified the Petitioner as an independent contractor; and asserts that Postmates thereby has deprived the Petitioner of a minimum wage, overtime, and other benefits to which the Petitioner is entitled as an employee.  *See, e.g.*, Evangelis Decl., Ex. H.  Each Petitioner's demand also cites the specific Fleet Agreement applicable to that Petitioner's claims, and the state law under which those claims arise. *Id.* (citing the 2019 Fleet Agreement when describing the qualifications an arbitrator should possess). Postmates's insistence on individualized facts beyond those already provided calls for a return to fact pleading that has long since been discarded in federal court.  *See Conley v. Gibson,* 355 U.S. 41, 47 (1957). There is no basis for requiring such heightened pleading standards in <u>arbitration</u>, which is intended to be more informal and efficient than litigation.  *See Schoenduve Corp.*, 442 F.3d at 733.

**B.     Any "Settlement Pressure" Postmates Faces is Due to Its Own Employment Practices.**

All but admitting it is unwilling to arbitrate more than a small number of disputes at once, Postmates complains that the "quantity and timing of [Petitioners'] demands" were "designed to impose collective settlement pressure akin to that of a class action."  Cross-Mot. at 12.  In other words, because Petitioners' individual demands expose Postmates to high stakes in the aggregate, those individual demands must be recharacterized as "class arbitration."  That is not the law.

The Ninth Circuit rejected that very argument in *Blair*.  2019 WL 2701333, at *7–9; *see also Sakkab*, 803 F.3d at 437 ("[T]he FAA would not preempt a state statutory cause of action that imposed

substantial liability merely because the action's high stakes would arguably make it poorly suited to arbitration."). And for good reason. Postmates has inflicted harm on tens of thousands of couriers through its company-wide misclassification policy. If Postmates wants to avoid simultaneous arbitrations—with the costs and pressures such arbitrations create—it should not engage in simultaneous, widespread wage theft. Having harmed a significant number of couriers, Postmates cannot be heard to complain that Petitioners seek to vindicate their individual rights. Any high stakes associated with these individual disputes is based on the high-stakes bets Postmates has placed when violating federal, state, and local labor laws. Any "pressure" associated with Petitioners' demands is entirely of Postmates's making.

Moreover, the Fleet Agreement that Postmates asks this Court to "enforce" is silent on this issue. The agreement imposes no limit on the number of individual arbitrations that may be pending at once, nor does it allow Postmates to obtain time extensions, "payment plans," or other special treatment if it is subject to too many demands. That is unsurprising, as an agreement containing such terms would plainly be unconscionable. *See, e.g.*, *Zaborowski v. MHN Gov't Servs., Inc.*, 601 F. App'x 461, 463 (9th Cir. 2014) ("Granting [Defendant] near-unfettered discretion to select its three preferred arbitrators is 'unjustifiably one-sided,' and unreasonably reallocates risks to the weaker bargaining party." (internal citations omitted)). Postmates has consistently sought to force its couriers to raise their claims in arbitration, *see, e.g.*, Postmates's Mot. to Compel at 1, *Costa v. Postmates Inc.*, No. 3:19-cv-03046-JST (June 13, 2019), Dkt. No. 23 ("The clear terms of Plaintiffs' agreement with Postmates provide that these disputes may only be resolved in a particular forum—bilateral arbitration proceedings."), yet now it seeks to avoid arbitration when too many couriers have accepted its offer. This Court should not allow such a blatant about-face.

### C.    Postmates Seeks Class Treatment Through an Arbitration "Payment Plan."

Postmates complains that AAA has administered Petitioners' claims "on a classwide basis." Cross-Mot. at 12. Of course, it was <u>Postmates</u>, not Petitioners, that selected AAA to oversee Petitioners' arbitrations. *See* Campbell Decl., Exs. A § 11B.iv, vi, B § 10B.iv, vi. And it was Postmates, not Petitioners, that decided to arbitrate under AAA's procedures. *Id.* Postmates apparently failed to investigate AAA's methods of administration before requiring Petitioners to agree to those methods, and it now seeks to punish Petitioners for its own carelessness. This Court should not allow Postmates to

construct an ironclad arbitration regime that severely limits Petitioners' recourse to the courts, only to run to court itself when its own chosen forum takes an administrative action it does not like.

Moreover, this argument once again reflects Postmates's confusion over the definition of a class action. There is no dispute that AAA plans to empanel individual arbitrators once Postmates abides by the Fleet Agreement and pays its share of AAA filing fees. Efficient administration of those individual arbitrations does nothing to convert those arbitrations into class actions. Had AAA sent 5,000 individual emails to Postmates, containing 5,000 individual invoices, and imposing the same deadline 5,000 times, it would not have made Petitioners' demands any more "individual." It simply would have produced pointless inefficiency. Postmates demands that this Court enforce the Fleet Agreement's terms; AAA is not a party to the Fleet Agreement and thus is not bound by it. Postmates points to no term in the Fleet Agreement that requires grossly inefficient administrative policies to institute individual arbitrations. And there is no authority to suggest that AAA's administrative practices convert individual demands for arbitration into a forbidden representative action.

Postmates also claims that Petitioners are engaging in "class arbitration" because they have not supported Postmates's efforts to secure a "payment plan" from AAA under which Postmates can escape its obligations under the Fleet Agreement and instead pay to commence only a subset of Petitioners' arbitrations. Cross-Mot. at 15. Petitioners have not agreed to that approach because each Petitioner wants to commence arbitration immediately. Petitioners' counsel will not prioritize one client's right to arbitrate over another's merely because Postmates wants to create a waiting list for access to justice.

On Postmates's twisted logic, Petitioners are pursuing an impermissible class arbitration because they insist on proceeding individually rather than coordinating as a group to sequence their arbitrations in a fashion that Postmates deems acceptable and sufficiently economical. That through-the-looking-glass argument only confirms that it is Postmates, not Petitioners, that wishes to place Petitioners into a more manageable "class" structure, even after expressly foreclosing that very structure in the Fleet Agreement it required Petitioners to sign. Petitioners' refusal to proceed in that manner speaks to Postmates's refusal to arbitrate, not Petitioners'. Cf. Rapaport v. Soffer, No. 2:10-CV-00935-KJD-RJJ, 2011 WL 1827147, at *3 (D. Nev. May 12, 2011) ("[T]he fact that the AAA arbitration rules allow the arbitrator to ask [Petitioner] whether [Petitioner] would like to pay in order to prevent termination does not create an

obligation for [Petitioner] to do so, nor does it change the fact that [Respondent] owed the unpaid fees."). To the extent Postmates suggests it should be excused from arbitration because it disagrees with AAA's method of administration, the Ninth Circuit has made clear that if "an arbitration has been terminated in accordance with the rules governing the arbitration, as [Petitioners'] arbitration[s] w[ere] here, it may be contrary to the structure and purpose of the FAA to allow a party to an arbitration agreement to benefit from [its] intentional noncompliance with an arbitrator's rules." *Tillman v. Tillman*, 825 F.3d 1069, 1075 n.1 (9th Cir. 2016).

### D. Postmates Admits that Each Individual Petitioner Has Joined This Action to Individually Compel Arbitration.

Postmates argues that because Petitioners joined in a single Motion to Compel Arbitration, they must be pursuing class arbitration. Cross-Mot. at 12.[3]  Just the opposite is so. As Postmates correctly notes, Petitioners "took more than three weeks to add all of the Petitioners to the docket over the course of 203 'Notices of Additional Parties' filed via ECF." *Id.*  That was necessary precisely because each <u>individual</u> Petitioner seeks <u>individual</u> relief. If Petitioners were pursuing a representative action, only the representative Petitioner would need to appear, just as only the lead plaintiff needs to appear in a class action.  Instead, each Petitioner appeared individually.[4]  Each Petitioner seeks an order compelling Postmates to honor the Fleet Agreement and pay its share of individual filing fees.

---

[3] Postmates also argues that by joining each Petitioners' individual motion to compel, this action "undermines judicial economy because it prevents the Court from entertaining evidence from each individual Petitioner regarding whether he or she [sic] entered into a contractual relationship with Postmates." Cross-Mot. at 13. Once again, that is not true. Each Petitioner has alleged that he or she is a courier, and Postmates has admitted that all couriers signed arbitration agreements. Second Keller Decl. ¶ 32, Dkt. No. 203. Postmates has had since March 6, 2019, when Petitioners' counsel first served its client list, to meet and confer with Petitioners' counsel about this issue. It has never done so. Fourth Keller Decl. ¶ 12. Further, Postmates has "cross-moved" to compel each Petitioner into arbitration, which of course requires "a written agreement for arbitration" between the parties. 9 U.S.C. § 4. Postmates thus has conceded the very evidentiary question it raises.

[4] Postmates again raises "serious concerns regarding whether Keller Lenkner actually represents each of the 5,724 Petitioners." Cross-Mot. at 7 n.5. Again, Postmates has misrepresented the factual record to take an unsupported jab at Petitioners' counsel. Petitioners' counsel offered to show the mediator a random sample of Petitioners' retention agreements if (i) Postmates would agree that doing so would not waive any privileges, and (ii) Postmates would choose the Petitioners for the random sample to avoid any allegation of cherry-picking. Fourth Keller Decl. ¶¶ 5–6. Postmates never responded to that offer when Petitioners' counsel made it, or when the mediator renewed the offer in follow-up discussions. *Id.* ¶ 7. Petitioners' counsel stands ready and willing to provide the Court with any retainers it wishes to review *in camera*. And Postmates provides no evidence that Petitioners' counsel is unable to capably arbitrate Petitioners' claims. Petitioners' counsel is under no obligation to explain its strategy to its adversary.

**IV.**     **Postmates's "Cross-Motion To Compel" is a Transparent Effort to Delay Arbitration and Should Be Denied in an Expedited Manner.**

The Supreme Court has admonished that a petition to compel arbitration should receive a "summary and speedy disposition," particularly when "the party opposing arbitration is the one from whom payment or performance is sought." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 27–29 (1983); *see also Dees v. Billy*, 394 F.3d 1290, 1291–92 (9th Cir. 2005). The record in this case is clear: Postmates not only has refused to arbitrate, but also has attempted to delay Petitioners' efforts to remedy that refusal. Postmates's obstructionist tactics run counter to the principles embodied in the FAA and the very Fleet Agreement that Postmates has vociferously defended in the past. Petitioners respectfully request that this Court resolve the pending motions expeditiously to prevent Postmates from further denying Petitioners their right to a prompt and efficient arbitral process.

**A.**     **Postmates's "Cross-Motion To Compel" Individual Arbitration is Simply Another Attempt to Delay It.**

A brief review of the record demonstrates that Postmates's "cross-motion" is nothing but an improper surreply in opposition to Petitioners' Motion to Compel. After Petitioners filed their Motion to Compel on June 3, 2019, the parties exchanged multiple scheduling emails and met and conferred by telephone on June 17. *See* Maryott Decl., Ex. A at 6–9, Dkt. No. 231-2; Keller Decl. ¶ 7, Dkt. No. 234. At no point in any of those communications did Postmates's counsel state that they planned to file a "cross-motion" to compel arbitration; instead, they withheld that information until the day <u>after</u> Petitioners filed their Reply in support of their motion to compel. Maryott Decl., Ex. A at 6; Keller Decl. ¶ 7.

As is evident from the content of the "cross-motion," Postmates could have filed it when it filed its Opposition on June 18. The "cross-motion" and Postmates's Opposition contain identical section headers, and large portions of the text are repeated verbatim. *Compare* Cross-Mot. at 4:15–8:21, *with* Opp'n at 4:8–8:8. The briefs assert the same four arguments, worded only slightly differently, for why Petitioners supposedly seek "*de facto*" class arbitration. *Compare* Cross-Mot. at 12, *with* Opp'n at 11–13. The briefs cite the same cases. *Compare* Cross-Mot. at iv–v, *with* Opp'n at iii–iv. And the briefs request the same relief: Postmates wants the Court to foreclose arbitration until those who <u>wish</u> to invoke it stop proceeding in a manner that Postmates defines as a "class action." Under these circumstances, it

1  is hard to see any reason for Postmates's "cross-motion" other than to spill more ink in opposition to the
2  Motion to Compel and delay Petitioners' access to arbitration.  The Court should not reward those tactics.

3  **B.  The Relief Postmates Seeks is Inconsistent With a Proper Motion to Compel**.

4  As further proof that the so-called "cross-motion" is but a retread of the Opposition, the Court need
5  only consult Postmates's amorphous request for relief.  The proposed order makes clear that Postmates
6  merely seeks a denial of Petitioners' Motion to Compel and no independent relief.  *Compare* Cross-Mot.
7  Proposed Order at 1 (requesting that each Petitioner "seeking" arbitration "refile his or her demand as an
8  individual arbitration demand" and "proceed to arbitration on an individual basis"), *with* Opp'n at 6–7
9  (requesting that the Court deny Petitioners' motion to compel because "arbitrations must take place on an
10  individualized basis").  The "cross-motion" to compel does not actually compel Petitioners to do anything.
11  It simply invites those who still wish to arbitrate to try to meet the "individualized" pleading requirement
12  that the Opposition introduces but does not explain.  Said differently, if the Court denies Petitioners'
13  Motion to Compel, Petitioners will be in the exact same position as if this Court grants Postmates's so-
14  called "cross-motion."

15  Further, Postmates offers no guidance as to what it means to file an "individual arbitration demand"
16  that adequately "sets forth the facts and legal theories of relief."  Cross-Mot. Proposed Order at 1.  The
17  dispute between the parties is based on a disagreement about how to distinguish between individual versus
18  class arbitration and whether Petitioners have adequately pleaded claims for individual arbitration
19  (although the issue is not properly before this Court).  An order directing the parties to engage in
20  "individual arbitration" and to "set[] forth the facts and legal theories of relief" would not resolve anything
21  in this case.

22  Petitioners attempted to meet and confer with Postmates regarding this issue after Postmates
23  belatedly informed Petitioners it intended to file its "cross-motion."  Keller Decl. ¶ 9.  Because Petitioners
24  themselves seek an order compelling individual arbitration, Petitioners' counsel stated that Petitioners
25  might have been willing to stipulate to all or some of the relief sought by Postmates's motion.  *Id.* ¶ 10.
26  The meet-and-confer was largely unproductive, however, because Postmates's counsel refused to share
27  its proposed order before filing the "cross-motion" and was unable to articulate what Postmates believed
28  Petitioners must do to proceed with individual arbitrations.  *Id.*

Postmates <u>still</u> has not articulated what Petitioners must do.  Postmates cannot ask the Court for a more specific order—or even tell Petitioners what it would take to file individual demands that satisfy Postmates—because doing so would make even more plain that Postmates (i) is asking this Court to resolve issues that are committed to arbitration by the delegation clause and (ii) is in fact attempting to eliminate the informality of arbitration and replace it with a heightened pleading standard.  This Court should not entertain that attempted end-around of the Fleet Agreement's terms.[5]

## CONCLUSION

A petition to compel arbitration must receive a "summary and speedy disposition," particularly when "the party opposing arbitration is the one from whom payment or performance is sought."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 27–29.  Delay always frustrates the purpose of the FAA, but Postmates's dilatory tactics in this case are particularly prejudicial.  Petitioners allege that Postmates has failed to pay them the minimum wage required by federal, state, and local law.  Thousands of Petitioners earn so little income that they are excused from paying a $300 arbitral filing fee pursuant to California law and the American Arbitration Association's rules.  Yet by the time Postmates's "cross-motion" is fully briefed, Postmates will already have delayed nearly five months without commencing a single arbitration with a single Petitioner.  For low-income workers, that is a meaningful period to go without the basic level of subsistence to which the law entitles them.  Petitioners request that the Court reject Postmates's attempt to delay and derail the arbitral process.  The Court should grant Petitioners' Motion to Compel and deny Postmates's "cross-motion" as soon as practicable.  Petitioners respectfully assert that no hearing is necessary to grant the requested relief.

---

[5] Postmates requests that the Court, if it grants Postmates's "cross-motion," also stay all proceedings under 9 U.S.C. § 3.  Cross-Mot. at 14–15.  Like the rest of Postmates's "cross-motion," that request is improper and contrary to law.  Section 3 provides for a stay when a litigant attempts to <u>bring a claim</u> in court "upon any issue referable to arbitration"—in other words, a claim that was subject to an arbitration agreement and therefore is compelled to arbitration.  9 U.S.C. § 3.  No Petitioner has brought a suit or proceeding raising underlying misclassification claims—i.e., "upon any issue referable to arbitration."  *Id*.  There is thus no "suit or proceeding" to stay, regardless of how the Court rules on the parties' competing motions.

Dated: July 11, 2019                Respectfully submitted,

                                    /s/ Ashley Keller
                                    Ashley Keller (*pro hac vice*)
                                      ack@kellerlenkner.com
                                    Travis Lenkner (*pro hac vice*)
                                      tdl@kellerlenkner.com
                                    Marquel Reddish (*pro hac vice*)
                                      mpr@kellerlenkner.com
                                    KELLER LENKNER LLC
                                    150 N. Riverside Plaza, Suite 4270
                                    Chicago, Illinois 60606
                                    (312) 741-5220

                                    Warren Postman (*pro hac vice*)
                                      wdp@kellerlenkner.com
                                    KELLER LENKNER LLC
                                    1300 I Street, N.W., Suite 400E
                                    Washington, D.C. 20005
                                    (202) 749-8334

                                    Keith A. Custis (#218818)
                                      kcustis@custislawpc.com
                                    CUSTIS LAW, P.C.
                                    1875 Century Park East, Suite 700
                                    Los Angeles, California 90067
                                    (213) 863-4276

                                    *Attorneys for Petitioners*

OPPOSITION TO CROSS-MOTION TO COMPEL ARBITRATION
CASE NO. 4:19-cv-03042-SBA

1

**CERTIFICATE OF SERVICE**

2

I certify that I caused the foregoing document to be served on all ECF-registered counsel via the

3

Court's CM/ECF system on July 11, 2019.

4

5

Dated: July 11, 2019                    /s/ Ashley Keller_____

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28