GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
　tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
　dmanthripragada@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:　213.229.7000
Facsimile:　213.229.7520

MICHELE L. MARYOTT, SBN 191993
　mmaryott@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone:　949.451.3945
Facsimile:　949.475.4668

Attorneys for Respondent POSTMATES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAL ADAMS, et al.,<br><br>　　　　　Petitioners,<br><br>　　v.<br><br>POSTMATES INC.,<br><br>　　　　　Respondent. | CASE NO. 4:19-cv-03042-SBA<br><br>**REPLY IN SUPPORT OF RESPONDENT POSTMATES INC.'S CROSS-MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>**Hearing:**<br>Date:　　September 11, 2019<br>Time:　　2:00 p.m.<br>Judge:　　Hon. Saundra B. Armstrong |

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF RESPONDENT POSTMATES INC.'S CROSS-MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS – CASE NO. 4:19-CV-03042-SBA

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................................. 1

II.    STATEMENT OF ISSUES (L.R. 7-4(a)(3)) ..................................................................... 2

III.    ARGUMENT ....................................................................................................................... 2

    A.    This Court, Not an Arbitrator, Must Enforce the Fleet Agreement's Requirement of Individual Arbitrations ........................................................... 3

    B.    Postmates Seeks an Order Compelling Arbitration on an Individual, and Not a Class, Basis ....................................................................................................... 5

    C.    Postmates' Cross-Motion Seeks Distinct Relief Beyond the Denial of Petitioners' Motion ............................................................................................. 9

    D.    The Court Should Stay Proceedings Pending Arbitration ................................. 9

IV.    CONCLUSION .................................................................................................................. 10

ii
REPLY IN SUPPORT OF RESPONDENT POSTMATES INC.'S CROSS-MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS – CASE NO. 3:19-CV-03042

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied-Bruce Terminix Co., Inc. v. Dobson*,
   513 U.S. 265 (1995) ........................................................................................................... 7

*AT & T Mobility LLC v. Bernardi*,
   2011 WL 5079549 (N.D. Cal. Oct. 26, 2011) .......................................................... 3, 6, 8

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ........................................................................................... 1, 2, 6, 7, 8

*Blair v. Rent-A-Center, Inc.*,
   2019 WL 2701333 (9th Cir. June 28, 2019) ..................................................................... 6

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) ........................................................................................................... 7

*Costa v. Postmates Inc.*,
   No. 3:19-cv-03046-JST (filed July 5, 2019) ..................................................................... 5

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) .......................................................................................... 1, 2, 6, 8

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 ...................................................................................................................... 5

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) ............................................................................................. 3, 4, 6

*Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reserv. v. California*,
   813 F.3d 1155 (9th Cir. 2015) .......................................................................................... 5

*Sakkab v. Luxottica Retail N.A., Inc.*,
   803 F.3d 425 (9th Cir. 2015) ............................................................................................ 6

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ...................................................................................................... 3, 4

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989) ........................................................................................................... 2

**Statutes**

9 U.S.C. § 3 .............................................................................................................................. 9, 10

9 U.S.C. § 4 ................................................................................................................................... 2

Gibson, Dunn & Crutcher LLP

iii
REPLY IN SUPPORT OF RESPONDENT POSTMATES INC.'S CROSS-MOTION TO COMPEL ARBITRATION
AND STAY PROCEEDINGS – CASE NO. 3:19-CV-03042

**Other Authorities**

H.R. Rep. No. 97-542 (1982) ................................................................................................................. 7

iv

REPLY IN SUPPORT OF RESPONDENT POSTMATES INC.'S CROSS-MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS – CASE NO. 3:19-CV-03042

## I. INTRODUCTION

Petitioners seek to introduce chaos into a system that demands order. Rather than pursue *individual* arbitration as required by the plain language of the Fleet Agreements that they accepted, Petitioners filed a *de facto* class arbitration demand solely to impose maximum financial pressure on Postmates and coerce a settlement. Petitioners insist that they have sought "individual arbitration that would afford individual relief." Opp. at 2. But they have filed substantively identical arbitration demands requesting the same, non-individualized relief with no mention of any particular facts or legal theories for any particular Petitioner (besides contact information), and a single motion on behalf of thousands of purported couriers, many of whom have apparently never even signed up for the Postmates app. Second Declaration of Ashley Campbell ¶ 2 (noting that of the list of 7,855 alleged clients Keller Lenkner has provided to Postmates, Postmates has no records that 1,074 of them have ever signed up to become a courier). Their tactics betray that Petitioners seek "individual" arbitration in name only.

Not only have Petitioners failed to abide by the terms of the Fleet Agreement, but their tactics flout the letter and the spirit of the FAA and Supreme Court precedent. By agreeing to be bound by the Fleet Agreement, each Petitioner expressly agreed to arbitrate on an individual basis. And the Supreme Court has held repeatedly that, under the FAA's "liberal policy favoring arbitration" (*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)), arbitration agreements must be enforced "according to their terms—including terms providing for *individualized proceedings*" (*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) (emphasis added)). Petitioners purport to have instituted individual proceedings, but their technical argument falls flat under the barest scrutiny. Courts are required to examine substance over form, and there is no question that Petitioners' tactics would not only "sacrifice," but destroy, "the principal advantage[s] of arbitration." *Concepcion*, 563 U.S. at 348.

Moreover, the Court, and not an arbitrator, must resolve the parties' dispute. It is undisputed that neither Postmates nor Petitioners assented to class or collective arbitration. The Fleet Agreement's Mutual Arbitration Agreement, which governs dispute resolution between Postmates and independent contractor couriers, contains an express class and collective action waiver, which states that "any dispute relating to or arising out of the Class Action Waiver and Representative Action Waiver . . .

Gibson, Dunn & Crutcher LLP

1

REPLY IN SUPPORT OF RESPONDENT POSTMATES INC.'S CROSS-MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS – CASE NO. 3:19-CV-03042

***must*** proceed to a court of competent jurisdiction and ***cannot*** be heard or arbitrated by an arbitrator." Campbell Decl., Dkt. 228-4, Ex. B § 10(A) (emphases added). Petitioners' arguments to the contrary distort the plain language of the agreements they accepted.

Accordingly, this Court should enforce the Fleet Agreement's class, collective, and representative action waivers, and order *each* Petitioner seeking to arbitrate claims to file *individual* arbitration demands setting forth the *particular* facts and legal theories applicable to that *particular* Petitioner, and require each Petitioner to proceed to arbitration on an *individual* basis. This Court also should stay all proceedings pending completion of those arbitrations.

## II. STATEMENT OF ISSUES (L.R. 7-4(a)(3))

Whether the Court should compel Petitioners to arbitrate their disputes in a manner that comports with the parties' arbitration agreement.

## III. ARGUMENT

"Arbitration under the Federal Arbitration Act is a matter of consent, not coercion." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Therefore, a court evaluating a motion to compel arbitration under the FAA must require the parties to arbitrate "in accordance with the terms of the agreement." 9 U.S.C. § 4.

The Supreme Court requires courts to be especially vigilant in enforcing the terms of an arbitration provision that requires *individual*, as opposed to classwide, arbitration. *Epic Sys.*, 138 S. Ct. at 1619 (courts must "enforce arbitration agreements according to their terms—including terms providing for individualized proceedings"). After all, "class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Concepcion*, 563 U.S. at 348. And if courts permitted class arbitration in the absence of express assent to such a procedure, "the virtues Congress originally saw in arbitration, its speed and simplicity and inexpensiveness, would be shorn away and arbitration would wind up looking like the litigation it was meant to displace." *Epic Sys.*, 138 S. Ct. at 1623.

It is undisputed that neither Postmates nor Petitioners assented to class or collective arbitration. Petitioners insist that they have sought "individual arbitration that would afford individual relief" (Opp.

Gibson, Dunn & Crutcher LLP

2
REPLY IN SUPPORT OF RESPONDENT POSTMATES INC.'S CROSS-MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS – CASE NO. 3:19-CV-03042

at 2), but at every turn, Petitioners' tactics make clear that they seek *de facto* class arbitration despite posturing that they seek individual arbitration. The Court should not permit class arbitration stylized as "individual" actions, and should order that Postmates' Fleet Agreement be enforced according to its terms. *See AT & T Mobility LLC v. Bernardi*, 2011 WL 5079549, at *6 (N.D. Cal. Oct. 26, 2011) (enjoining arbitration where claimants "nominally filed their arbitration demands as individuals" but "filed essentially identical arbitration demands" and sought "the same, non-individualized relief").

### A. This Court, Not an Arbitrator, Must Enforce the Fleet Agreement's Requirement of Individual Arbitrations

The Postmates Fleet Agreement's Mutual Arbitration Agreement, which governs dispute resolution between Postmates and independent contractor couriers, contains an express Class Action Waiver. Campbell Decl., Dkt. 228-3, ¶10. That Class Action Waiver must be enforced by the Court, and not an arbitrator, for two independent reasons. First, "courts *may not* infer consent to participate in class arbitration absent an affirmative 'contractual basis for concluding that the party agreed to do so.'" *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 687 (2010)). And second, the Fleet Agreement's Class Action Waiver states that "any dispute relating to or arising out of the Class Action Waiver and Representative Action Waiver . . . *must* proceed to a court of competent jurisdiction and *cannot* be heard or arbitrated by an arbitrator." Campbell Decl. Ex. B § 10A(ii) (emphasis added). Petitioners' argument that the delegation clause permits an arbitrator, and not a Court, to determine whether an arbitration is class arbitration (Opp. at 4) ignores controlling precedent and distorts the language of the Fleet Agreement.

#### 1. Petitioners Ignore Supreme Court Precedent Prohibiting Courts from Compelling Class Arbitration Without Clear Assent

Just a few months ago, the Supreme Court reaffirmed that courts *may not* send parties to a class arbitration without their express, unambiguous consent. "Silence is not enough; the 'FAA requires more.'" *Lamps Plus*, 139 S. Ct. at 1416 (quoting *Stolt-Nielsen*, 559 U.S. at 687). Accordingly, once a court determines that the parties have agreed to arbitrate a particular claim, it must direct them to individual arbitration unless the contract *expressly* authorizes class arbitration.

Here, the Fleet Agreement's Mutual Arbitration Provision expressly *disavows* class arbitration. Thus, if this Court orders Postmates and Couriers to arbitration, it must order them to arbitrate

3
REPLY IN SUPPORT OF RESPONDENT POSTMATES INC.'S CROSS-MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS – CASE NO. 3:19-CV-03042

Gibson, Dunn & Crutcher LLP

individually—even if the parties' agreement is silent on the issue (it is not), and even if their agreement purports to delegate the issue to an arbitrator (it does not).  *See Lamps Plus*, 139 S. Ct. at 1416. Petitioners ignore this specific Supreme Court mandate prohibiting courts from sending parties to class arbitrations to which they did not assent.  *See* Opp. at 3 (arguing the general rule that a delegation clause may leave arbitrability questions to the arbitrator, but failing to discuss the more specific standard applicable to questions of arbitrability on a classwide basis).  "[S]hifting from individual to class arbitration is a 'fundamental' change" that must be explicitly agreed to.  *Lamps Plus*, 139 S. Ct. at 1414.  Therefore, if there is any "reason to doubt the parties' mutual consent to resolve disputes through classwide arbitration," and any reason to doubt whether the arbitration sought by Petitioners is collective, a court should err on the side of making clear to the parties that they may not proceed in such a manner.  *Stolt-Nielsen*, 559 U.S. at 687.

### 2. Petitioners Misread the Delegation Clause's Class Waiver Carve-Out

Instead of engaging with the law governing orders compelling class arbitrations, which by itself is sufficient to defeat any delegation argument, Petitioners grossly misread the Fleet Agreement's delegation clause's Class Action Waiver carve-out.  The Fleet Agreement's language could not be clearer: "[A]s stated in Section 10B.iv below, the [delegation] clause ***shall not apply to any dispute relating to or arising out of the Class Action Waiver and Representative Action Waiver, which must proceed in a court*** . . . and cannot be heard or arbitrated by an arbitrator."  Campbell Decl. Ex. B § 10A(ii) (emphasis added).  Petitioners focus on cross-referencing language in the clause ("[A]s stated in Section 10B.iv below"), which links the delegation clause to a provision of the Class Action Waiver itself, and states, "any claim that all or part of this Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, void, or voidable shall be determined only by a court . . . and not by an arbitrator."  *Id*. § 10B(iv).

Petitioners argue that because the delegation clause in Section 10A(ii) refers to Section 10B(iv)'s arbitrability restrictions, Section 10A(ii) cannot possibly impose any further restrictions on delegation beyond Section 10B(iv).  Opp. at 3.  Such a reading renders the Fleet Agreement's two separate paragraphs regarding the arbitrability of the Class Action Waiver redundant and superfluous despite their significantly different language, and renders completely ineffectual Section 10A(ii)'s

Gibson, Dunn & Crutcher LLP

4

REPLY IN SUPPORT OF RESPONDENT POSTMATES INC.'S CROSS-MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS – CASE NO. 3:19-CV-03042

explicit language that "the [delegation] clause shall not apply to any dispute relating to or arising out of the Class Action Waiver and Representative Action Waiver, which must proceed in a court." *See Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reserv. v. California*, 813 F.3d 1155 (9th Cir. 2015) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable").

*All* of the Fleet Agreement's language carving out actions involving the Class Action Waiver from the parties' delegation clause must be given effect, and Petitioners cannot cherry-pick the delegation clause language that they *want* to apply and discard the rest—especially in light of the Supreme Court's requirement that an arbitrability question may only be referred to an arbitrator upon the showing "clear and unmistakable evidence" that that was the parties' intent. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45.[1]

## B. Postmates Seeks an Order Compelling Arbitration on an Individual, and Not a Class, Basis

Petitioners' opposition to Postmates' Cross-Motion largely seeks to re-brief Petitioners' own affirmative motion to compel arbitration, and spends little space addressing whether this Court can or should order Petitioners to arbitrate their disputes on an individual basis and according to the terms of the parties' agreement, as Postmates requests in its Cross-Motion. *Compare* Opp. at 6–10 (arguing the sufficiency of Petitioners' existing purported arbitration demands) *with* Petitioners' Motion to Compel Arbitration, Dkt. 4 (Petitioners moving to compel arbitration on those demands). Instead, Petitioners seem to argue that their existing purported arbitration demands are individual demands that would already comply with such an order. Opp. at 6–7. Petitioners are mistaken.

---

[1] Petitioners note that Postmates has sought to enforce the terms of the Fleet Agreement's delegation clause in other cases involving different factual and legal threshold issues. Opp. at 4 n.1. That is true. But the case cited by Petitioners, *Costa v. Postmates Inc.*, involves the threshold issue whether the plaintiffs validly opted out of arbitration, and has nothing to do with whether they brought a class arbitration demand. As such, the Fleet Agreement's delegation clause applies, the Class Action Waiver carve-out does not, and it is not clear why Postmates' position in that case (or Petitioners' counsel's position, for that matter, which is also opposite to its position here) are at all relevant to this dispute. *See* Reply in Support of Motion to Compel Arbitration and Stay Proceedings, *Costa v. Postmates Inc.*, No. 3:19-cv-03046-JST, Dkt. 30 at 3–6 (filed July 5, 2019).

Gibson, Dunn & Crutcher LLP

5
REPLY IN SUPPORT OF RESPONDENT POSTMATES INC.'S CROSS-MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS – CASE NO. 3:19-CV-03042

**1.   Petitioners Misapprehend the Distinction Between a Class and Individual Arbitration**

The bulk of Petitioners' brief is devoted to defining class actions as those "in which a representative seeks to resolve the claims of absent parties." Opp. at 5. Petitioners argue that if that particular test is not met here, then their claims must be individual in nature and do not run afoul of the Fleet Agreement's express Class Action Waiver. *Id.* But the Supreme Court's antipathy to class arbitration does not stem simply from class arbitration's representation of absent parties, but from class arbitration's propensity to "sacrifice[] the principal advantage of arbitration—its informality—[making] the process slower, more costly, and more likely to generate procedural morass than final judgment." *Concepcion*, 563 U.S. at 348. Thus, whether an arbitration is a "class" arbitration that is disfavored under the Supreme Court's precedent hinges on the extent to which an arbitration is "different from the 'traditional individualized arbitration' contemplated by the FAA" and the extent to which it "undermines the most important benefits of that familiar form of arbitration." *Lamps Plus*, 139 S. Ct. at 1415 (quoting *Epic Sys.*, 138 S. Ct. at 1623). Moreover, "the mere labeling of the demand is not dispositive," and the Court must consider "substance over function" in determining whether an arbitration demand seeks class arbitration that undermines the benefits the FAA seeks to protect. *AT & T Mobility LLC v. Bernardi*, 2011 WL 5079549, at *8 (N.D. Cal. Oct. 26, 2011).

The two cases that Petitioners cite support Postmates. Although Petitioners portray both *Sakkab v. Luxottica Retail N.A., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015), and *Blair v. Rent-A-Center, Inc.*, 2019 WL 2701333 (9th Cir. June 28, 2019), as turning on whether an arbitration petitioner sought relief on behalf of absent parties, both cases explicitly turned on the *Concepcion* test and a fulsome evaluation of the extent to which an arbitration rule contravenes the traditional benefits of bilateral arbitration. In *Sakkab*, the Ninth Circuit explained that "***[w]hether a claim is technically denominated 'representative' is an imperfect proxy for whether refusing to enforce waivers of that claim will deprive parties of the benefits of arbitration.*** Instead, *Concepcion* requires the Court to examine whether the waived claims mandate procedures that interfere with arbitration, as the class claims in *Concepcion* did." 803 F.3d at 436 (emphasis added). And in *Blair*, the Court reaffirmed that framework, again explaining that to determine whether a rule runs afoul of *Concepcion*, "we look at whether refusing to enforce waivers of a claim that is technically denominated as representative ***will***

Gibson, Dunn & Crutcher LLP

6

REPLY IN SUPPORT OF RESPONDENT POSTMATES INC.'S CROSS-MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS – CASE NO. 3:19-CV-03042

*deprive parties of the benefits of arbitration*." 2019 WL 2701333, at *7 (emphasis added). In other words, whether an arbitration demand seeks relief reaching beyond the individual claimant is, at most, one factor in the analysis required by *Concepcion*.

Applying the *Concepcion* test here, there is no question that an order requiring individual arbitrations is necessary to protect the "principal advantage[s] of arbitration." *Concepcion*, 563 U.S. at 348. The core of the FAA's policy in favor of bilateral arbitration is that it is "cheaper and faster than litigation." *Allied-Bruce Terminix Co., Inc. v. Dobson*, 513 U.S. 265, 280 (1995) (quoting H.R. Rep. No. 97-542, at 13 (1982)). Indeed, that policy is "of particular importance" to the resolution of disputes involving independent contractors and employees, since "[a]rbitration agreements allow parties to avoid the costs of litigation" in matters that "often involve[] smaller sums of money than disputes concerning commercial contracts." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001).

As explained in Postmates' Cross-Motion (Cross-Mot. at 11–12), Petitioners' arbitration demands were specifically designed to *increase* the costs of arbitration for the purpose of imposing early aggregate settlement pressure on Postmates. Evangelis Decl., Dkt. 228-1 ¶ 4 & Ex. A (Petitioners' counsel threatening to "proceed with every arbitration simultaneously" to impose coercive financial pressure in light of potential administrative fee assessments). That alone demonstrates that an order from this Court is required to prevent Petitioners from intentionally "undermin[ing] the most important benefits of [bilateral] arbitration" and, therefore, bringing a *de facto* class arbitration.

Petitioners distort the record to misleadingly argue that Postmates admitted in a "telling slip" that "Petitioners seek individual arbitration" by "complain[ing] of financial hardship due to an 'onslaught of AAA <u>individual arbitration</u> fees.'" Opp. at 7 (emphasis in original). In context, it is clear that Postmates is describing *Petitioners' strategy* of seeking to impose individual arbitration filing fees, and that it vigorously contests that those fees are proper: "By filing thousands of identical, generic arbitration demands and labeling them as 'individual,' all while urging the American Arbitration Association ('AAA') to administer them collectively for all purposes besides fee assessments, Petitioners have sought to impose coercive financial pressure on Postmates through an onslaught of AAA individual arbitration filing fees." Cross-Mot. at 1.

Gibson, Dunn & Crutcher LLP

7
REPLY IN SUPPORT OF RESPONDENT POSTMATES INC.'S CROSS-MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS – CASE NO. 3:19-CV-03042

"Just as judicial antagonism toward arbitration before the Arbitration Act's enactment 'manifested itself in a great variety of devices and formulas declaring arbitration against public policy,' *Concepcion* teaches that ***we must be alert to new devices and formulas that would achieve much the same result today***." *Epic Systems*, 138 S. Ct. at 1623 (emphasis added) (quoting *Concepcion*, 563 U.S. at 342). Here, Petitioners' shakedown tactics are exactly such a device, and instead of permitting Petitioners to manipulate the arbitration process for the specific purpose of undermining the benefits of arbitration, this Court should require Postmates and independent contractor couriers to arbitrate on an individual basis—just as the Mutual Arbitration Provision requires.[2]

### 2. Even Adopting Petitioners' Narrow Definition of "Class" Proceedings, Petitioners Do Not Seek Individualized Arbitration or Relief

Even if this Court were to adopt Petitioners' narrow definition of a class arbitration, Petitioners' arguments fail on their own terms. That is because they *do* seek relief extending beyond each individual claimant, as evidenced by the fact that their purportedly "individual" demands were intentionally aggregated by Petitioners' counsel to impose maximum financial pressure on Postmates, thus increasing the value of each independent claimant's claims. *See Bernardi,* 2011 WL 5079549, at *6 (enjoining arbitration where claimants "nominally filed their arbitration demands as individuals, and do not explicitly purport to represent anyone but themselves individually," but were "represented by the same firm, filed essentially identical arbitration demands," and "all [sought] the same, non-individualized relief"). Indeed, that Petitioners' counsel has insisted on pursuing more than 5,000 arbitrations simultaneously, despite the implausibility of that endeavor for a law firm employing twelve attorneys, leads to the inescapable conclusion that Petitioners realize that their only strength is in numbers, and that they are seeking to use that as leverage to improve the value of each particular claimant's case.

Petitioners' counsel has fastidiously avoided representing to the Court that it is actually capable of simultaneously prosecuting 5,000 arbitrations without delay, and has instead skirted the issue in all of its filings. *See* Opp. at 12 n.4 ("And Postmates provides no evidence that Petitioners' counsel is

---

[2] Even if Petitioners' omnibus arbitration demand is not a "class action," it is certainly a "collective action," which is also expressly prohibited under the Fleet Agreement. *See* Campbell Decl., Dkt. 228-3, Exs. A § 11B(ii), B § 10B(ii).

Gibson, Dunn & Crutcher LLP

8

REPLY IN SUPPORT OF RESPONDENT POSTMATES INC.'S CROSS-MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS – CASE NO. 3:19-CV-03042

unable to capably arbitrate Petitioners' claims. Petitioners' counsel is under no obligation to explain its strategy."); Dkt. 202 at 2 ("[W]hile Postmates asserts that Petitioners' counsel 'obviously' are incapable and 'have no intention' of litigating these matters [citation], Postmates has no knowledge with which to assess its opponents' resources or legal strategy, and it is gravely mistaken."). That is perhaps understandable, given the implausibility of any such claim, but it reinforces that Petitioners' counsel are engaged in shakedown tactics designed specifically to eliminate the benefits of arbitration and impose coercive financial pressure through aggregated filing fees (*see* Evangelis Decl., Dkt. 228-2, Ex. A)—and not to actually engage in arbitrations.

C.  **Postmates' Cross-Motion Seeks Distinct Relief Beyond the Denial of Petitioners' Motion**

Petitioners criticize Postmates for even filing its Cross-Motion, claiming that it is "inconsistent with a proper motion to compel." Opp. at 14. That is wrong.

First, Petitioners argue that the Cross-Motion seeks "no independent relief" aside from "a denial of Petitioners' Motion to Compel" because the Cross-Motion "does not actually compel Petitioners to do anything." Not so. If Petitioners' motion is denied, Postmates would be relieved from paying any filing fees relating to the *de facto* class arbitration that Petitioners have already filed. On the contrary, the relief Postmates seeks in its Cross-Motion is no different than the relief sought in any other motion to compel arbitration—an order compelling Petitioners to resolve their claims in an orderly fashion *according to the plain language and individual arbitration requirement set forth in the Fleet Agreement*.

Second, Petitioners feign ignorance, claiming it is unclear "what it means to file an 'individual arbitration demand' that adequately 'sets forth the facts and legal theories of relief.'" Opp. at 14. This argument is belied by the fact that at least two Petitioners in this lawsuit have already instituted individual arbitration proceedings according to the terms of the Fleet Agreement. *See* Dkt. 228-1 ¶ 17.

D.  **The Court Should Stay Proceedings Pending Arbitration**

If this Court orders Petitioners to arbitrate their claims on an individual basis, it "shall on application of one of the parties stay the trial of the action" until arbitration is completed. 9 U.S.C. § 3. As with the Fleet Agreement, Petitioners seek to avoid the plain language of the statute, arguing that it applies only when "a litigant attempts to bring a claim in court." Opp. at 15 n.5. But the word

Gibson, Dunn & Crutcher LLP

9

REPLY IN SUPPORT OF RESPONDENT POSTMATES INC.'S CROSS-MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS – CASE NO. 3:19-CV-03042

"claim" appears nowhere in the statute; rather, it states that a stay is available in "*any suit or proceeding* … brought in any of the courts of the United States" concerning "any issues referable to arbitration." 9 U.S.C. § 3 (emphasis added). That is precisely the situation here. Thus, the Court should apply the clear terms of the statute, just as it should apply the clear terms of the Fleet Agreement.

### IV.   CONCLUSION

The Court should grant Postmates' Cross-Motion to Compel Arbitration and Stay Proceedings, and should enter an order: (1) requiring each Petitioner seeking to assert claims to file his or her demand as an *individual* arbitration demand that sets forth the facts and legal theories of relief applicable to the particular Petitioner; and (2) requiring each Petitioner, after filing, to proceed to arbitration on an *individual* basis—i.e., without improperly invoking the benefits of class arbitration, such as collective administration by AAA, the application of settlement pressure stemming from the aggregate assessment of fees, or objecting to a payment plan that compensates AAA for arbitrations as they proceed and are prosecuted.

Dated: July 18, 2019                    GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Theane Evangelis*
                    Theane Evangelis

Attorneys for Respondent POSTMATES INC.

10
REPLY IN SUPPORT OF RESPONDENT POSTMATES INC.'S CROSS-MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS – CASE NO. 3:19-CV-03042

Gibson, Dunn & Crutcher LLP