UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

JAMAL ADAMS, et al.

          Petitioners,

    vs.

POSTMATES, INC.,

          Respondent.

Case No:  19-3042 SBA

**ORDER GRANTING IN PART AND DENYING IN PART PETITIONERS' MOTION TO COMPEL ARBITRATION AND RESPONDENT'S CROSS-MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Dkt. 4, 228

Petitioners are 5,257 individuals who work as "couriers" (i.e., delivery drivers) for Respondent Postmates, Inc. ("Postmates"), which operates a food delivery platform and app.  Couriers are governed by Postmates' Fleet Agreement, which classifies them as independent contractors.  The agreement also contains both a mandatory arbitration clause and class action waiver.  In accordance with arbitration clause, Petitioners have submitted arbitration demands to the designated arbitrator, alleging that they have been misclassified as independent contractors, in violation of the Fair Labor Standards Act ("FSLA"), 29 U.S.C. §§ 206, 207.  However, Postmates has refused to tender its share of the arbitration fees to the arbitrator, claiming that the demands are tantamount to a de facto class action in violation of the class action waiver.  As such, no arbitrations have yet commenced.

The parties are presently before the Court on Petitioners' Motion to Compel Arbitration and Postmates' Cross-Motion to Compel Arbitration and Stay Proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4.  Both parties seek to compel arbitration but with the imposition of additional conditions.  Petitioners request an order compelling Postmates to tender its share of the arbitration fees to the arbitrator so that the arbitrations may proceed.  Postmates seeks an order compelling Petitioners to refile their respective arbitration demands in a manner that, inter alia, includes more details and to proceed before the arbitrator in an "individual" manner.  Having read and considered the

papers filed in connection with this matter and being fully informed, the Court GRANTS both motions insofar as they seek an order compelling arbitration and DENIES them in all other respects.  The Court, in its discretion, find this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

# I.   BACKGROUND

## A.   FACTUAL SUMMARY

Postmates operates an online and mobile platform and app to facilitate food deliveries from restaurants and other sources.  Campbell Decl. in Supp. of Resp't's Opp'n ¶ 2, Dkt. 112-3.  Through the Postmates app, customers can order food from participating merchants, which, in turn, is delivered by couriers compensated by Postmates.  Petition ¶ 14, Dkt. 1.  Individuals who sign up with Postmates to become couriers are required to execute a Fleet Agreement, which classifies couriers as independent contractors, not employees of Postmates.  Id.  As will be discussed below, the agreement also contains various other provisions intended to govern Postmates and the courier's relationship and their respective rights and obligations arising out of that relationship.  Id. ¶ 16; Keller Decl. in Supp. of Mot. to Compel Arb. Ex. B ("Fleet Agt." or "2018 Fleet Agt.") § 1, Dkt. 5-2.[1]

### 1.   Mutual Arbitration Provision

The Fleet Agreement contains a Mutual Arbitration Provision, pursuant to which "[t]he Parties mutually agree to resolve any disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court."  Fleet Agt. § 10A.  With certain specified exceptions not relevant here, any arbitration is governed by the American Commercial Arbitration Association ("AAA") Rules.  Id. § 10B.vi, 10B.viii.

To initiate an arbitration, the claimant must submit to Postmates a demand for arbitration which sets forth: (1) the name and address of the Party seeking arbitration; (2) a

---

[1] There are two relevant versions of this agreement, both of which contain a Mutual Arbitration Provision.  The first agreement, effective May 11, 2018 (the "2018 Agreement"), was updated, effective April 3, 2019 (the "2019 Agreement").  See Keller Decl. in Supp. of Mot. to Compel Arb. Exs. B & C.  Unless otherwise noted, the pinpoint citations to the Fleet Agreement set forth in this Order are to the 2018 Fleet Agreement.

statement of the legal and factual basis of the claim; and (3) a description of the remedy sought.  Id. § 10B.i.  Pursuant to the Class Action Waiver and Representative Action Waiver (collectively "Waivers") section of the Mutual Arbitration Provision, claimants are barred from bringing or participating in a class, collective or representative action; rather, the claimant agrees that the dispute "will be resolved in individual arbitration."  Id. § 10B.i & 10B.ii.

The arbitration provision includes a delegation clause, which specifies that the arbitrator has the exclusive authority to determine arbitrability, except as to matters pertaining to the enforceability of the Waivers.  Id. § 10A.ii, 10B.iv.  The delegation clause states:

> Only an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision, including without limitation any dispute concerning arbitrability. However, as stated in Section 10B.iv below, the preceding clause shall not apply to any dispute relating to or arising out of the Class Action Waiver and Representative Action Waiver, which must proceed in a court of competent jurisdiction and cannot be heard or arbitrated by an arbitrator.

Fleet Agt. § 10A.ii, Campbell Decl. Ex. C (emphasis added).  The exception for disputes "relating to or arising out of the Class Action Waiver and Representative Action Waiver" is explained in Section 10b.iv, which states:

> Notwithstanding any other clause contained in this Agreement, this Mutual Arbitration Provision, or the American Arbitration Association Commercial Arbitration Rules ("AAA Rules"), any claim that all or part of this Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, void, or voidable shall be determined only by a court of competent jurisdiction and not by an arbitrator.  As stated above, all other disputes regarding interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision shall be determined exclusively by an arbitrator.

Id. § 10B.iv (emphasis added).

## 2. Arbitration Demands

On March 6, 2019, counsel for Petitioners ("Counsel") informed Postmates that they represented more than 3,000 couriers in California and Illinois who intended to initiate individual arbitrations against Postmates.  Keller Decl. ¶ 4, Dkt. 5.  Counsel's letter posited that if they were to proceed with arbitration, Postmates' share of the filing fee would exceed $20 million.  Id. Ex. A.  Given that cost, Counsel indicated that they were open to an "alternative process" to resolve Petitioners' claims.  Id.  Postmates responded that it would retain outside counsel to handle the matter.  Id. ¶ 5.

At the time Counsel began communicating with Postmates in March 2019, couriers were governed by the 2018 Fleet Agreement, under which Postmates was responsible for payment of all arbitration filing fees.  Beginning in April 2019, after becoming aware of Petitioners' anticipated claims, Postmates issued the 2019 Fleet Agreement and began requiring couriers to split the cost of arbitration equally with Postmates.  Id. ¶¶ 7-8.  Couriers logging into the Postmates app to make deliveries were required to agree to the new terms set forth in the 2019 Fleet Agreement.  Id. ¶ 8.

Despite further discussions, Counsel and Postmates were unable to negotiate an alternative to arbitration.  Id. ¶ 11.  As a result, Counsel, on behalf of Petitioners, filed 4,925 individual arbitration demands with the AAA on April 22, 2019, and another 349 demands on May 13, 2019, for a total of 5,274 individual arbitration demands.  Id. ¶ 12.  In response, the AAA invoiced Petitioners for their share of the filing fees necessary to commence arbitration proceedings with respect to the demands filed on April 22, 2019.  Id. ¶ 14.  The AAA granted fee waivers to eligible claimants; the remaining claimants paid their portion of the fees in the amount of $99,600.  Id.

In the meantime, on May 10, 2019, the AAA informed Postmates that it had until May 31, 2019, to pay its share of the filing fees with respect to the 4,925 demands submitted on April 22, 2019, which was $1,900 per claimant (approximately $9.36 million in aggregate).  Keller Decl. ¶ 16.  Postmates refused to pay any fees, claiming that the individual arbitration demands were insufficient under the terms of the Fleet Agreement to

initiate arbitration proceedings.  Evangelis Decl. in Supp. of Resp't's Cross-Mot. ¶¶ 7, Dkt. 228-1.  The AAA, however, indicated that the arbitrations would move forward and that payment of the filing fees was expected.  Id.  Though maintaining that Petitioners had not properly commenced arbitration, Postmates contacted Counsel to discuss scheduling a mediation (instead of arbitration).  Id.  Counsel was agreeable to mediation, provided it were to take place by May 31, 2019.  Id.  The parties were unable to schedule a mediation by that deadline, however.  Id.

On May 31, 2019, the deadline for Postmates' payment of fees, the AAA contacted Postmates for its position on whether the AAA could properly assess fees against Postmates in light of Petitioners' arbitration demands.  Id. ¶ 10.  Postmates responded that, in its view, no arbitration proceedings or corresponding obligation to pay arbitration fees had been triggered on the ground that Petitioners' arbitration demands were improper.  Id. Ex. E.

**B.    PROCEDURAL HISTORY**

On June 3, 2019, Petitioners filed their Petition to Compel Arbitration in this Court under the FAA.  Dkt. 1.  The Petition alleges Postmates has yet to pay any part of the arbitration filing fees owed, and that absent such payment, the AAA will not commence the arbitrations.  Petition ¶¶ 24-25.  As relief, Petitioner seeks to compel arbitration along with an order specifying that (1) "Postmates shall pay all arbitration filing fees due for Petitioners' pending demands for arbitration within 14 days of this Court's Order" and (2) that "Postmates shall pay future AAA invoices related to Petitioners' arbitrations within 14 days of receipt."  Id. ¶ 29.

In support of its Petition, Petitioners have filed a Motion to Compel Arbitration. Dkt. 2.  In response, Postmates filed an opposition and a separate Cross-Motion to Compel Arbitration ("Cross-Motion").  Dkt. 112, 228.  In its Cross-Motion, Postmates agrees that Petitioners' wage and hour claims are subject to and should be resolved by arbitration. However, Postmates contends that the manner in which Petitioners submitted their arbitration demands is tantamount to a de facto class action, which is barred under the Class Action Waiver.  Thus, Postmates asserts that the Court should compel arbitration and "enter

an order: (1) requiring each Petitioner to refile his or her demand as an individual arbitration demand that sets forth the facts and legal theories of relief applicable to the particular Petitioner; and (2) requiring each Petitioner, after refiling, to proceed to arbitration on an individual basis…."  Cross-Mot. at 15, Dkt. 228.  The motions are fully briefed and are ripe for adjudication.

## II.    LEGAL STANDARD

The FAA governs the enforcement of arbitration agreements involving interstate commerce.  9 U.S.C. § 2.  The Act "mandates that district courts shall direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original); 9 U.S.C. § 4.  Thus, on a motion to compel arbitration, the district court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  Kilgore v. KeyBank Nat'l Ass'n, 673 F.3d 947, 955-56 (9th Cir. 2012) (citing Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)).  If these factors are met, the court must enforce the arbitration agreement in accordance with its precise terms.  Id.

Where a district court determines that a dispute is subject to arbitration under a written agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3; Leicht v. Bateman Eichler, Hill Richards, Inc., 848 F.2d 130, 133 (9th Cir. 1988) (noting that the FAA "requires that the court stay judicial proceedings until the matter has been arbitrated according to the terms of the arbitration agreement").

## III.    DISCUSSION

The parties agree that the Mandatory Arbitration Provision is valid and that Petitioners' misclassification claims must be resolved through arbitration.  According to Petitioners, the principal impediment to moving forward with the arbitrations is Postmates' refusal to pay its share of the arbitration fees.  Postmates counters that no fees are due

1   because Petitioners have yet to properly submit their demands.  As support, Postmates

2   points to the arbitration clause, which requires a courier to resolve any disputes "on an

3   individual basis" through final and binding arbitration.  According to Postmates, Petitioners

4   failed to comport with that requirement, instead submitting a single document "setting forth

5   the grievances in generic terms that were not specific to any particular individual," along

6   with a spreadsheet listing the names of the claimants to whom the allegations applied.

7   Resp't's Cross-Mot. at 6, Dkt. 228.  Postmates argues that by presenting their claims to the

8   arbitrator in that manner, Petitioners are attempting to proceed with the arbitration on a de

9   facto classwide or class action basis in violation of the Class Action Waiver.  Id. at 10.[2]

10       **A.    SCOPE OF THE COURT'S INQUIRY**

11       The threshold issue presented by Postmates' Cross-Motion is whether this Court—or

12   the arbitrator—is the appropriate venue to resolve whether Petitioners properly initiated

13   arbitration proceedings in accordance with the Mandatory Arbitration Provision.  The

14   starting point for resolving this issue requires the Court to examine the delegation clause in

15   the arbitration agreement at issue.  See Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68

16   (2010).  Through such a clause, parties may delegate "gateway" questions of arbitrability to

17   an arbitrator.  See Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 527,

18   529 (2019).  To effectively delegate such questions, the parties must do so "clearly and

19   unmistakably."  Id. at 527.

20       The Fleet Agreement clearly and unmistakably confers the arbitrator with the

21   authority to resolve issues concerning arbitrability.  See Fleet Agt. § 10a.ii ("Only an

22

23   _____

24       [2] Throughout its various briefs, Postmates expends considerable energy accusing
     Petitioners of using the cost of the arbitration process as a means of coercing Postmates into
25   settling their claims expeditiously.  However, under the Fleet Agreement drafted by
     Postmates which its couriers are required to sign, Petitioners had no option other than to
26   submit their misclassification claims in the form of an arbitration demand—which is
     precisely what they did.  Since the Fleet Agreement bars class actions, each demand must
27   be submitted on an individual basis.  Thus, the possibility that Postmates may now be
     required to submit a sizeable arbitration fee in response to each individual arbitration
28   demand is a direct result of the mandatory arbitration clause and class action waiver that
     Postmates has imposed upon each of its couriers.

1    arbitrator … shall have the exclusive authority to resolve … any dispute concerning

2    arbitrability.").[3]  The only matters excepted from the delegation clause are certain disputes

3    regarding the Class Action Waiver and Representative Action Waiver.  See id. § 10a.ii,

4    10B.iv.  Section 10a.11 states, in relevant part:

5              However, as stated in Section 10B.iv below, the preceding
               clause [conferring the arbitrator with the authority to determine
6              arbitrability] shall not apply to any dispute relating to or arising
               out of the Class Action Waiver and Representative Action
7              Waiver, which must proceed in a court of competent
               jurisdiction and cannot be heard or arbitrated by an arbitrator.

8

9    Fleet Agt. § 10A.ii, Campbell Decl. Ex. C (emphasis added).  The exception for disputes

10   "relating to or arising out of the Class Action Waiver and Representative Action Waiver" is

11   explained in Section 10b.iv, which states:

12             Notwithstanding any other clause contained in this Agreement,
               this Mutual Arbitration Provision, or the American Arbitration
13             Association Commercial Arbitration Rules ("AAA Rules"), any
               claim that all or part of this Class Action Waiver and/or
14             Representative Action Waiver is unenforceable,
               unconscionable, void, or voidable shall be determined only by a
15             court of competent jurisdiction and not by an arbitrator….

16   Id. § 10B.iv (emphasis added).

17        The parties disagree regarding the scope of the exception to the delegation clause.

18   Petitioners take the position that, pursuant to Section 10B.iv, the exception to the delegation

19   clause is limited to challenges that the Class Action or Representative Action Waiver "is

20   unenforceable, unconscionable, void, or voidable"—and contends that no such claim has

21   been made.  Opp'n to Cross-Mot. at 3.  In response, Postmates, relying on Section 10A.ii,

22   asserts that the exception more broadly encompasses "any dispute relating to or arising out

23

24   _____

25        [3] The Mutual Arbitration Clause also incorporates the AAA rules, which further
     supports the conclusion that the arbitrator determines arbitrability.  See Brennan v. Opus
26   Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (holding that the incorporation by reference of the
     AAA's rules in a delegation clause "constitutes clear and unmistakable evidence that
27   contracting parties agreed to arbitrate arbitrability," as one of the AAA arbitration rules
     specifically provides that the "arbitrator shall have the power to rule on his or her own
28   jurisdiction, including any objections with respect to the ... validity of the arbitration
     agreement").

of the Class Action Waiver and Representative Action Waiver."  Reply at 4 (emphasis

added).  In other words, Postmates' position is that Sections 10A.ii and 10B.iv together

provide <u>two</u> independent exceptions to the delegation clause in cases involving: (1) "any

dispute relating to or arising out of the Class Action Waiver and Representative Action

Waiver"; <u>and</u> (2) any claim that the aforementioned Waivers are unenforceable,

unconscionable, void, or voidable.  Resp't's Reply in Supp. of Cross-Mot. at 4-5, Dkt. 238.

Postmates contends that the question of whether Petitioners are improperly pursuing a de

facto class action falls within the "any dispute" exception.  For reasons that follow,

however, the Court concurs with Petitioners' interpretation of the delegation clause and

finds Postmates' interpretation of the clause untenable.

A court interpreting an arbitration clause applies state law principles of contract

interpretation.  <u>Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.</u>, 489

U.S. 468, 475 (1989).  Under California law, "the meaning of a contract must be derived

from reading the whole of the contract, with individual provisions interpreted together, in

order to give effect to all provisions and to avoid rendering some meaningless."  <u>Zalkind v.</u>

<u>Ceradyne, Inc.</u>, 194 Cal. App. 4th 1010, 1027 (2011); Cal. Civ. Code § 1641 ("The whole

of a contract is to be taken together, so as to give effect to every part, if reasonably

practicable, each clause helping to interpret the other.").  "Under the plain meaning rule,

courts give the words of the contract ... their usual and ordinary meaning."  <u>Valencia v.</u>

<u>Smyth</u>, 185 Cal. App. 4th 153, 162 (2010).  "Contract terms must be interpreted as a whole

and in context, rather than in isolation."  <u>Elijahjuan v. Superior Court</u>, 210 Cal. App. 4th

15, 28 (2012).  "[W]hen interpreting a contract, [courts] strive to interpret the parties'

agreement to give effect to all of a contract's terms, and to avoid interpretations that render

any portion superfluous, void or inexplicable."  <u>Brandwein v. Butler</u>, 218 Cal. App. 4th

1485, 1507 (2013).

Applying the foregoing principles, the Court finds that the exception to the

delegation clause is limited specifically to challenges to the <u>enforceability</u> of the Class

Action and Representative Action Waivers—and not more generally to "any dispute"

1  concerning the waivers, as Postmates contends.  This conclusion is supported by the plain

2  language and structure of the exception to the delegation clause, which begins, "as stated in

3  Section 10B.iv below, the preceding clause [conferring the arbitrator with the authority to

4  determine arbitrability] shall not apply to any dispute relating to or arising out of the Class

5  Action Waiver and Representative Action Waiver …."  Fleet Agt. § 10A.ii (emphasis

6  added).  By prefacing the exception with "as stated in Section 10B.iv below," the maxims

7  of contract interpretation require the Court to construe "any dispute" in tandem with the

8  provisions of Section 10B.iv.  See Zalkind, 194 Cal. App. 4th at 1027.

9       As noted, Section 10B.iv explicitly limits the delegation clause exception to "any

10  claim that all or part of this Class Action Waiver and/or Representative Action Waiver is

11  unenforceable, unconscionable, void, or voidable."  Fleet Agt. § 10B.iv (emphasis added).

12  Postmates' contention that Sections 10A.ii and 10B.iv together provide two independent

13  exceptions to the delegation clause is uncompelling.  Construing the "any dispute"

14  language as a separate exception would impermissibly render the more specific provisions

15  in Section 10B.iv superfluous, since "any dispute" would always include a claim that the

16  Waivers are unenforceable.  See Hemphill v. Wright Family, LLC, 234 Cal. App. 4th 911,

17  915 (2015) (noting that contracts cannot be construed in a manner that render any provision

18  "nugatory, inoperative or meaningless").  Moreover, to the extent there is any inconsistency

19  in terms of whether the exception applies to "any dispute" as opposed to the enforceability

20  of the class action waiver, the more specific limitation set forth in Section 10B.iv controls

21  the more general statement in Section 10A.ii.  See S. Cal. Gas Co. v. City of Santa Ana,

22  336 F.3d 885, 891 (9th Cir. 2003) (noting that it is "[a] standard rule of contract

23  interpretation … that when provisions are inconsistent, specific terms control over general

24  ones.") (emphasis added).

25       In sum, the Court finds that the Fleet Agreement delegates to the arbitrator the

26  exclusive authority to resolve any dispute concerning arbitrability.  The only exception to

27  that delegation is for any claim that the Class Action Waiver and/or Representative Action

28  Waiver is "unenforceable, unconscionable, void, or voidable."  Fleet Agt. § 10B.iv

(emphasis added).  No party in this action has made any claim that either Waiver is unenforceable, unconscionable, void, or voidable.  As such, the argument made by Postmates—i.e., that Petitioners' arbitration claims, in the form presented to the arbitrators, improperly constitute an attempt to arbitrate on a classwide basis—is not within the purview of this Court and must instead be decided by the arbitrator.  Henry Schein, 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue.").

Finally, it bears noting that even if the Court were to construe the exception to the delegation clause in the manner urged by Postmates, the outcome of the instant motions would be same.  Despite Postmates' assertions to the contrary, the matter of whether Petitioners are attempting to circumvent the Class Action Waiver is ultimately inapposite.  As noted, the crux of Postmates' position is that no arbitration fees are due because Petitioners allegedly failed to submit individual arbitration demands in accordance with the Mutual Arbitration Provision.  In resolving that issue, it is unnecessary to resolve Petitioners' purported motivations with respect to the Class Action Waiver.  To the contrary, the salient issue is simply whether Petitioners' demands comport with the requirements of the Mutual Arbitration Provision.  That determination is within the arbitrator's exclusive authority.  See AAA Comm. Arb. Rules, Rule R-4(c) ("It is the responsibility of the filing party to ensure that any conditions precedent to the filing of a case are met prior to filing for an arbitration, as well as any time requirements associated with the filing.  Any dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination."); Fleet Agt. § 10A.ii (delegating to the arbitrator the exclusive authority to "resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision").

**B.   RELIEF SOUGHT**

**1.   Postmates' Request**

Postmates seeks an order directing each Petitioner to refile his or her demand as an individual arbitration demand containing additional factual information and legal authorities and to proceed on an "individual basis." Cross-Mot at 2, 15. As discussed in the preceding section, it is within the arbitrator's exclusive authority to determine the sufficiency of Petitioners' arbitration demands and how the arbitration should be conducted. See AAA Comm. Arb. Rules, Rule R-4(c) (conferring the arbitrator with the authority to determine whether the conditions precedent have been satisfied) & Rule R-32 (conferring the arbitrator with discretion in conducting the proceedings). Therefore, the matter of whether Petitioners' arbitration demands comport with the Mandatory Arbitration Provision is for the arbitrator, not this Court, to decide. Postmates' request that the Court direct Petitioners to refile their demands and to proceed in a specific manner is denied.

**2.   Petitioners' Request**

Petitioners seek an order requiring Postmates to (1) pay all arbitration filing fees due for Petitioners' pending demands for arbitration within 14 days of this Court's Order, and (2) pay future invoices related to Petitioners' arbitrations within 14 days of receipt of those invoices. Mot. to Compel at 14, Dkt. 2. Petitioners' request for the payment of fees and future invoices is predicated on Postmates' refusal to tender the requisite payment to the arbitrator. However, Petitioners' motion fails to cite any authority holding or suggesting that the Court has the authority to compel Postmates to pay the arbitrator's fee within a prescribed time-period or to pay future invoices related to the arbitrations. Postmates' response brief is equally unhelpful, as it is silent on the issue.

Upon reviewing the record and relevant authorities, the Court declines to enter an order compelling Postmates to pay outstanding and future arbitration fees. The Fleet Agreement specifies that the AAA Commercial Arbitration Rules shall govern any arbitration between the parties. Fleet Agt. § 10B.vi, viii. Those Rules include provisions regarding the payment of arbitration fees, see AAA Comm. Arb. Rules, Rule R-53

(Administrative Fees), id. R-56 (Deposits), as well the available remedies for non-payment, see id. R-57.  In view of those provisions and the fact that they have been incorporated into the Fleet Agreement, the Court concludes that the payment of arbitration fees, including related expenses, is a procedural condition precedent to be decided by the arbitrator.  Dealer Computer Servs., Inc. v. Old Colony Motors, Inc., 588 F.3d 884, 887 (5th Cir. 2009) ("Payment of fees is a procedural condition precedent that the trial court should not review."); accord JPD, Inc. v. Chronimed Holdings, Inc., 539 F.3d 388, 392 (6th Cir. 2008); see also Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012-13 (9th Cir. 2004) (holding that the AAA Commercial Arbitration Rules confer the arbitrator with discretion regarding the payment of arbitration fees).  For these reasons, the Court denies Petitioners' request for an order directing Postmates to tender payment of outstanding and future arbitration fees.

## IV.    **CONCLUSION**

The Court finds that, pursuant to Section 4 of the FAA, the parties are obligated to arbitrate Petitioners' misclassification claims and are hereby ordered to do so.  All other matters raised by the parties in this action, including their respective requests for an order directing Petitioners to refile their arbitration demands and Postmates to tender payment of the arbitration fees, are for the arbitrator to decide.  The Court stays this action "until arbitration has been had in accordance with the terms of the [applicable Fleet Agreement]." See 9 U.S.C. § 3.  Accordingly,

IT IS HEREBY ORDERED THAT Petitioner's Motion to Compel Arbitration and Postmates' Cross-Motion to Compel Arbitration and Stay Proceedings are GRANTED IN PART and DENIED IN PART.  The Court GRANTS the motions insofar as they seek an order compelling arbitration in accordance with the Mandatory Arbitration Provision contained in the applicable Fleet Agreement.  All other relief sought in the motions is DENIED.  The instant action is STAYED as set forth above.  The Clerk shall administratively close the action.  Petitioners shall serve a copy of this Order on the arbitrator.

1        IT IS SO ORDERED.

2  Dated:  10/22/19

3                                SAUNDRA BROWN ARMSTRONG

                                  Senior United States District Judge