Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

*Attorneys for Petitioners*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| JAMAL ADAMS, et al.,<br><br>*Petitioners,*<br><br>vs.<br><br>POSTMATES INC.,<br><br>*Respondent.* | Case No. 4:19-cv-03042-SBA<br><br>**DECLARATION OF ASHLEY KELLER IN SUPPORT OF PETITIONERS' MOTION FOR AN ORDER FOR POSTMATES TO SHOW CAUSE WHY IT SHOULD NOT BE HELD IN CIVIL CONTEMPT** |

DECLARATION OF ASHLEY KELLER
CASE NO. 4:19-cv-03042-SBA

I, Ashley Keller, declare based on personal knowledge as follows:

1. I am a partner at Keller Lenkner LLC, counsel for Petitioners in this matter.

2. I have personal knowledge of the facts stated herein, and if called upon as a witness, I could and would testify competently thereto.

3. This declaration is submitted in support of Petitioners' Motion for an Order for Postmates to Show Cause Why It Should Not Be Held in Civil Contempt.

4. On October 22, 2019, in accordance with the Court's Order directing Petitioners and Postmates to arbitrate Petitioners' misclassification claims (Dkt. 253), Keller Lenkner emailed a copy of the Order to AAA. In that same email, Keller Lenkner refiled the individual demands for arbitration on behalf of 5,255 Petitioners and either submitted each Petitioner's portion of the filing fee or a hardship-based fee waiver. Attached as Exhibit A is a true and correct copy of that email.

5. On October 29, 2019, AAA acknowledged receipt of Petitioners' demands and found that Petitioners had met their filing requirements. AAA then directed Postmates to pay the arbitration fees it owed under the Fleet Agreement and the AAA's fee schedule on or before November 19, 2019. Attached as Exhibit B is a true and correct copy of that email.

6. At the same time—between the date of this Court's Order compelling arbitration (Dkt. 253) and November 19, 2019—Postmates was objecting to a separate set of 1,250 individual demands filed by Keller Lenkner on behalf of other Postmates couriers. For example, on October 25, 2019, Postmates's counsel (who also represent Postmates in this matter) sent a letter to AAA in which Postmates argued, among other things, that it should not have to pay the filing fees AAA had imposed for the 1,250 individual demands because an arbitrator first needed to examine the alleged "deficiencies" in those demands. Attached as Exhibit C is a true and correct copy of the referenced letter.

7. On October 29, 2019, Keller Lenkner filed a response to Postmates's letter in those parallel proceedings. Attached as Exhibit D is a true and correct copy of this letter. In the letter, Keller Lenkner explained, among other things, that:

Postmates and its counsel know full well that the Fleet Agreement obligates Postmates to pay AAA and arbitrator fees as required by the Commercial Rules. They also know that, under those Rules—as authoritatively interpreted and applied by AAA—Postmates must deposit initial filing fees and an arbitrator retainer before any arbitration may proceed. And surely they know it is implausible to ask AAA and its arbitrators to conduct 1,250 arbitrations for free. That Postmates believes some arbitrators might eventually dismiss some of Claimants' demands does not mean Postmates can avoid paying the fees necessary to submit its arguments to those arbitrators in the first place, including any arguments that Claimants' demands somehow are insufficient or do not comply with the Fleet Agreement. . . . None of this should come as a surprise to Postmates, given that courts operate in essentially the same way. Whether a complaint adequately states a claim or is subject to a procedural defense is decided by a judge. But the court's clerk must initially review the formatting and docketing requirements of the parties' filing and collect necessary filing fees (which in some courts are collected from both the plaintiff and defendant). A defendant who owes a fee to appear or file a motion in court cannot refuse to pay the fee because it believes the complaint lacks merit. By the same token, Postmates cannot refuse to comply with AAA's administrative determinations because it believes Claimants' demands should be dismissed after an arbitrator is appointed.

8. On November 1, 2019, AAA rejected Postmates's arguments in those parallel proceedings and affirmed that Postmates was required to pay the filing fees so that the 1,250 couriers' claims could proceed. In so determining, AAA explained that "[w]e have made an administrative determination that the minimum filing requirements have been met by Claimants. Respondent may raise any further challenges to the arbitrator(s) once appointed. The AAA will not proceed with administrative until Respondent's filing requirements are satisfied." Attached as Exhibit E is a true and accurate copy of AAA's email.

9. On November 8, 2019, AAA "administratively closed" the files for the 1,250 couriers' claims because Postmates "ha[d] failed to submit the previously requested filing fees for these matters." Attached as Exhibit F is a true and accurate copy of AAA's email.

10. After AAA rejected Postmates's arguments in the parallel proceedings, Postmates did not raise any objection to AAA's administrative determination regarding its obligation to commence arbitrations with Petitioners. The deadline set by AAA for Postmates to pay its portion of the filing fees for Petitioners' arbitrations was November 19, 2019. At 5:48 p.m. Eastern Time on that date, after Postmates had already missed the time by which AAA could have received

payment on the date of the filing-fee deadline, Postmates requested that AAA extend its payment deadline to November 25, 2019. Attached as Exhibit G is a true and accurate copy of that email.

11. On the same day Postmates requested an extension, Petitioners sent an email opposing the extension request. Petitioners argued that Postmates "has demonstrated repeatedly that it has no intention of complying with AAA's administrative determinations and is simply seeking delay in bad faith." Attached as Exhibit H is a true and accurate copy of that email.

12. AAA granted Postmates's request for an extension and set November 25, 2019 as the new deadline by which Postmates was required to pay its portion of the filing fees. Attached as Exhibit I is a true and accurate copy of that email.

13. On November 20, 2019, Postmates emailed AAA and Petitioners and asserted that it was "ready, willing, and able to conduct truly individualized arbitrations." In that same email, Postmates proposed that "an arbitrator be appointed to resolve threshold demand sufficiency issues for fifty randomly-selected claimants; if the arbitrator determines that a claimant's particular demand is sufficient, then the arbitrator would retain the arbitration for a determination on the merits." Attached as Exhibit J is a true and accurate copy of that email.

14. On November 22, 2019, Petitioners opposed Postmates's request and proposal. Attached as Exhibit K is a true and correct copy of that email. In the email, Petitioners noted in particular that they "do not consent to depart from or delay the individual arbitration process that is required by the parties' contract and AAA rules." Petitioners further explained that:

> The [C]ourt in *Adams* held that, under the parties' contract, it is up to AAA to make the administrative determination regarding what is required for individual arbitrations to proceed. AAA has made that determination. Postmates is under a court order to comply with that determination whether it agrees with it or not, and to raise any further objections with individual arbitrators. The only next step to which we will agree is for Postmates to pay the filing fees AAA has determined are required so that Claimants' individual arbitrations can commence. To that end, please confirm that Monday, November 25 is Postmates's final deadline to pay the filing fees it owes in these matters.

15. On November 22, 2019, AAA responded to Postmates's request in its email of November 20, 2019. AAA confirmed that it "must adhere to its Commercial and

Employment/Workplace Fee Schedule and Respondent's fees remain due by November 25, 2019." AAA further noted that "[i]f there is not an agreement on an alternative process and fees are not paid, the AAA will decline to administer these cases and the files will be closed." Attached as Exhibit L is a true and correct copy of that email.

16. On November 24, 2019, Petitioners' counsel emailed Postmates counsel to schedule a meet and confer on the issues raised in this motion. In that email, Petitioners' counsel informed Postmates that, "[i]f Postmates fails to comply with AAA's administrative determination that Postmates's filing fees must be paid by November 25, and if Claimants' arbitrations are closed as a result, Petitioners in *Adams v. Postmates* will be left with no choice but to move for an order to show cause why Postmates should not be held in civil contempt for failing to comply with Judge Armstrong's order compelling arbitration." Attached as Exhibit M is a true and correct copy of that email.

17. On November 25, 2019, Postmates once again emailed AAA requesting an extension of the deadline to pay its filing fee. In that request, it sought to extend the deadline to pay its portion of the filing fees to February 4, 2020, and further requested that "AAA propose or explain how individual arbitration could realistically proceed." Attached as Exhibit N is a true and correct copy of that email.

18. That same day, Petitioners objected to the extension request. Attached as Exhibit O is a true and correct copy of that email.

19. AAA denied the request on the same day, stating that "[t]he AAA stands ready to administer these matters in accordance with our Rules, however we will decline to administer the cases and the files will be closed if payment is not received today." Attached as Exhibit P is a true and correct copy of that email.

20. On November 26, 2019, Postmates responded to Petitioners' request for a meet and confer on the issues raised in this motion and stated that "in light of Claimants' position . . . Postmates will be filing a motion to stay Judge Armstrong's October 22, 2019 order pending appeal." Attached as Exhibit Q is a true and correct copy of that email.

21. That same day, AAA administratively closed Petitioners' files because Postmates "ha[d] failed to submit the previously requested filing fees for these matters." Attached as Exhibit R is a true and correct copy of that email.

22. On November 27, 2019, counsel for Petitioners and Postmates held a telephonic meet and confer regarding the issues addressed in Petitioners' motion as well as Postmates's proposed motion for a stay pending appeal. The meet and confer was ultimately unsuccessful, as Postmates argued that it was not required to proceed with arbitrations until Petitioners agreed to an alternative to the default AAA process for individual arbitrations under the AAA Rules.

23. Attached as Exhibit S is a true and correct copy of Postmates's 2018 Fleet Agreement, effective 11, 2018.

24. Attached as Exhibit T is a true and correct copy of Postmates's 2019 Fleet Agreement, effective April 3, 2019.

25. Attached as Exhibit U is a true and correct copy of Postmates's Motion to Compel Arbitration in *Winns v. Postamtes Inc.*, No. CGC-17-562282 (Cal. Sup. Ct. Jan 23, 2018).

26. Attached as Exhibit V is a true and correct copy of Petitioners and Postmates's chain of email correspondence with AAA regarding Petitioners' arbitrations.

27. Attached as Exhibit W is a true and correct copy of Petitioners and Postmates's chain of email correspondence regarding Petitioners and Postmates's meet and confer regarding Petitioners' motion.

I affirm that the foregoing is true under penalty of perjury under the laws of the United States.

Signed on November 27, 2019 in Chicago, Illinois

/s/ Ashley Keller
Ashley Keller

**CERTIFICATE OF SERVICE**

I certify that I caused the foregoing document to be served on all ECF-registered counsel via the Court's CM/ECF system on November 27, 2019.

Dated: November 27, 2019            /s/ Ashley Keller