1  THEANE EVANGELIS, SBN 243570
      tevangelis@gibsondunn.com
2  BRADLEY J. HAMBURGER, SBN 266916
      bhamburger@gibsondunn.com
3  DHANANJAY S. MANTHRIPRAGADA, SBN 254433
      dmanthripragada@gibsondunn.com
4  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
5  Los Angeles, CA  90071-3197
   Telephone: 213.229.7000
6  Facsimile:  213.229.7520

7  JAMES P. FOGELMAN, SBN 161584
      jfogelman@gibsondunn.com
8  GIBSON, DUNN & CRUTCHER LLP
   2029 Century Park East, Suite 4000
9  Los Angeles, CA  90067-3026
   Telephone: 310.552.8500
10 Facsimile:  310.551.8741

11 MICHELE L. MARYOTT, SBN 191993
      mmaryott@gibsondunn.com
12 GIBSON, DUNN & CRUTCHER LLP
   3161 Michelson Drive
13 Irvine, CA  92612-4412
   Telephone: 949.451.3800
14 Facsimile:  949.451.4220

15 Attorneys for Respondent POSTMATES INC.

16                  UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18 JAMAL ADAMS, et al.,                  CASE NO. 4:19-cv-03042-SBA

19              Petitioners,             **RESPONDENT POSTMATES INC.'S**
                                         **NOTICE OF MOTION AND MOTION TO**
20         v.                            **STAY ORDER GRANTING IN PART AND**
                                         **DENYING IN PART CROSS-MOTIONS**
21 POSTMATES INC.,                       **PENDING APPEAL**

22              Respondent.

23                                       **Hearing:**
                                         Date:    February 12, 2020
24                                       Time:    2:00 p.m.
                                         Judge:   Hon. Saundra B. Armstrong
25

26

27

28

Gibson, Dunn &
Crutcher LLP

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 12, 2020 at 2:00 p.m., or as soon thereafter as the matter can be heard before the Honorable Saundra B. Armstrong, in the above-entitled Court, 450 Golden Gate Avenue, San Francisco, California 94102, Respondent Postmates Inc. ("Postmates") will, and hereby does, move the Court for an order staying enforcement of the Court's October 22, 2019 order granting in part and denying in part Petitioners' motion to compel arbitration and Postmates' cross-motion to compel arbitration and stay proceedings (Dkt. 253), until the Ninth Circuit issues the mandate in the appeal noticed by Postmates on November 19, 2019 (Dkt. 254); or, in the alternative, for a temporary stay to allow Postmates to seek a stay of the Court's order in the Ninth Circuit.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all papers and pleadings on file with the Court in this matter, any other matters of which the Court may take judicial notice, and any oral argument of counsel.  This Motion is made following the conference of counsel pursuant to this Court's standing order, which took place via telephone on November 27, 2019.

Dated:  December 11, 2019                    GIBSON, DUNN & CRUTCHER LLP


By:      */s/ Theane Evangelis*
                      Theane Evangelis

Attorneys for Respondent POSTMATES INC.

RESPONDENT POSTMATES INC.'S NOTICE OF MOTION AND MOTION TO STAY ORDER PENDING APPEAL

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF CONTENTS**

2

Page

3

I.     INTRODUCTION ................................................................................................. 1

4

II.    BACKGROUND .................................................................................................. 2

5

       A.    Postmates' Fleet Agreement ..................................................................... 2

6

       B.    The Court Orders The Parties To Arbitrate According To The Fleet
             Agreement's Terms .................................................................................... 3

7

       C.    Petitioners Refuse To Commence Any Arbitrations Unless Postmates Pays All
             Filing Fees ................................................................................................. 4

8

9

       D.    The Parties Agree To Begin Fifty Arbitrations While Negotiations Continue ............. 5

10

       E.    Petitioners Move For An Order To Show Cause Despite Ongoing Discussions .......... 6

11

III.   STATEMENT OF THE ISSUES TO BE DECIDED (L.R. 7-4) ........................................ 6

12

IV.    LEGAL STANDARD ............................................................................................ 7

13

V.     ARGUMENT ....................................................................................................... 7

14

       A.    All Four Stay Factors Weigh In Favor Of Ordering A Stay Pending Appeal ............. 7

15

             1.    Postmates' Appeal Is Likely To Succeed On The Merits ................................ 7

16

                   a.    The Determination Whether a Demand Seeks Class Arbitration
                         Cannot Be Delegated Where Parties Have Waived Class
                         Arbitration ....................................................................................... 8

17

18

                   b.    The Fleet Agreement's Delegation Clause Does Not Delegate
                         The Question Whether a Demand Seeks Class Arbitration to the
                         Arbitrator ......................................................................................... 10

19

20

             2.    Postmates Will Suffer Irreparable Harm Absent A Stay ................................. 11

21

             3.    Petitioners Will Suffer No Harm If The Court Stays Its Order ........................ 14

22

             4.    The Public Interest Favors A Stay ............................................................. 14

23

       B.    In The Alternative, The Court Should Temporarily Stay Its Order ............................ 15

24

VI.    CONCLUSION ..................................................................................................... 15

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Exp. Co. v. Italian Colors Rest.*,
    133 S. Ct. 2304 (2013) ...........................................................................................................14

*AT&T Mobility LLC v. Bernardi*,
    2011 WL 5079549 (N.D. Cal. Oct. 26, 2011).................................................................9, 13

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)......................................................................................................8, 13

*AT&T Mobility LLC v. Smith*,
    2011 WL 5924460 (E.D. Pa. Oct. 7, 2011)........................................................................9

*Britton v. Co-op Banking Grp.*,
    916 F.2d 1405 (9th Cir. 1990)............................................................................................8

*Brown v. MHN Gov't Servs., Inc.*,
    2014 WL 2472094 (N.D. Cal. June 3, 2014) .....................................................................7

*California v. Azar*,
    911 F.3d 558 (9th Cir. 2018)............................................................................................12

*California v. U.S. Dep't of Health & Human Servs.*,
    941 F.3d 410 (9th Cir. 2019).............................................................................................12

*Campbell v. Nat'l Passenger R.R. Corp.*,
    2009 WL 4546673 (N.D. Cal. Nov. 30, 2009).................................................................15

*Conservation Cong. v. U.S. Forest Serv.*,
    2012 WL 3150307 (E.D. Cal. Aug. 1, 2012) ..................................................................15

*Elliot v. Williams*,
    2011 WL 5080169 (D. Nev. Oct. 25, 2011) ....................................................................15

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ................................................................................................9, 13

*Harris v. Klure*,
    205 Cal. App. 2d 574 (1962).............................................................................................10

*Hemphill v. Wright Family, LLC*,
    234 Cal. App. 4th 911 (2015) ...........................................................................................11

*Iowa Utils. Bd. v. FCC*,
    109 F.3d 418 (9th Cir. 1996).............................................................................................12

Gibson, Dunn &
Crutcher LLP

RESPONDENT POSTMATES INC.'S NOTICE OF MOTION AND MOTION TO STAY ORDER PENDING APPEAL

*Lair v. Bullock*,
    697 F.3d 1200 (9th Cir. 2012)......................................................................7, 8

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) ....................................................8, 9, 13, 14

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011)................................................................7, 8, 10

*Martin v. Brunzelle*,
    699 F. Supp. 167 (N.D. Ill. 1988) ....................................................11

*Meijer, Inc. v. Abbott Labs.*,
    2009 WL 723882 (N.D. Cal. Mar. 18, 2009).........................................14

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
    37 F.3d 125 (2d Cir. 2003) ..............................................................13

*Morgan Stanley & Co. v. Couch*,
    134 F. Supp. 3d 1215 (E.D. Cal. 2015)................................................2, 13

*Nken v. Holder*,
    556 U.S. 418 (2009) ......................................................................7

*Orange Belt Dist. Council of Painters No. 48 v. Standard Drywall Inc.*,
    1979 WL 1943 (S.D. Cal. Oct. 16, 1979) ............................................13

*PaineWebber, Inc. v. Hartmann*,
    921 F.2d 507 (3d Cir. 1990).............................................................13

*Pension Plan for Pension Tr. Fund of Operating Eng'r v. Weldway Constr., Inc.*,
    920 F. Supp. 2d 1034 (N.D. Cal. 2013) ..............................................13

*Estate of Petersen*,
    28 Cal. App. 4th 1742 (1994) ...........................................................11

*Pokorny v. Quixtar Inc.*,
    2008 WL 1787111 (N.D. Cal. Apr. 17, 2008) .......................................13

*Roe v. SFBSC Mgmt., LLC*,
    2015 WL 1798926 (N.D. Cal. Apr. 17, 2015) ........................................7

*Shady Grove Orthopedic Assocs. v. Allstate Ins.*,
    559 U.S. 393 (2010)......................................................................14

*Singer v. Postmates Inc.*,
    No. 4:15-cv-01284-JSW (N.D. Cal.) ...................................................4

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)................................................................13, 15

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016)................................................................................12

*Textile Unlimited, Inc. v. A..BMH & Co.*,
    240 F.3d 781 (9th Cir. 2001)...............................................................................13

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989)...........................................................................................10

*Waranch v. Gulf Ins. Co.*,
    218 Cal. App. 3d 356 (1990)..............................................................................11

*Westlands Water Dist. v. Nat. Res. Def. Council*,
    43 F.3d 457 (9th Cir. 1994)................................................................................14

*Whaley v. Pac. Seafood Grp.*,
    2017 WL 4973193 (D. Or. Nov. 1, 2017)..........................................................14

*Winig v. Cingular Wireless LLC*,
    2006 WL 3201047 (N.D. Cal. Nov. 6, 2006)......................................................15

**Statutes**

9 U.S.C. § 4...................................................................................................9, 10

Cal. Civ. Code § 1641 ..........................................................................................10

Cal. Civ. Code § 1650 ..........................................................................................10

Cal. Code Civ. Proc. § 1858..................................................................................11

**Other Authorities**

AAA Employment/Workplace Fee Schedule,
    https://www.adr.org/sites/default/files/Employment_Fee_Schedule1Nov19.pdf.........................12

Gibson, Dunn &
Crutcher LLP

RESPONDENT POSTMATES INC.'S NOTICE OF MOTION AND MOTION TO STAY ORDER PENDING APPEAL

# I.    INTRODUCTION

This Court's October 22, 2019 Order directed Petitioners and Postmates to arbitrate their disputes in accordance with Postmates' Fleet Agreement, but denied both parties' requests for further relief.   Dkt. 253 at 12.   Specifically, the Court denied Petitioners' request for an order directing Postmates to pay all arbitration fees assessed by the American Arbitration Association ("AAA"), and denied Postmates' request for an "order directing each Petitioner to refile his or her demand as an individual arbitration demand."   *Id.* at 12–13.   As to Postmates' request, the Court declined to address Postmates' argument that Petitioners seek impermissible de facto class arbitration, concluding that the Fleet Agreement's delegation clause reserves resolution of that question for the arbitrator.   *Id.* at 7–11. Postmates has appealed the Court's Order, and now moves to stay it pending appeal.

Postmates files this motion out of an abundance of caution.   Postmates has complied and will continue to comply with the Order in the hopes that the parties and AAA can reach agreement on *how* all the arbitrations may proceed.   Indeed, 50 arbitrations are on the brink of beginning, and Postmates has informed AAA that 1,299 of the remaining 5,205 claimants are ineligible for arbitration because 715 claimants never signed the Fleet Agreement, 480 claimants never completed a delivery on the platform, 95 claimants' claims were released in a prior class action settlement, and 9 claimants have elected not to move forward.   Although discussions with AAA are still ongoing to determine how the remaining arbitrations shall proceed, Postmates moves to stay in the event the Court agrees with Petitioners' claim that the Order requires Postmates to pay all arbitration fees—even though the Court expressly declined to do just that.   *See* Dkt. 256.

All four relevant factors weigh in favor of a stay.   *First*, Postmates' appeal raises substantial challenges to the Court's interpretation of the Fleet Agreement's delegation clause and ruling that an arbitrator must address Postmates' de facto class arbitration arguments.   Postmates will argue that the parties could not delegate to an arbitrator the question whether Petitioners seek de facto class arbitration, because United States Supreme Court precedent prohibits courts from sending parties to class arbitration without their express consent.   And even if the parties could delegate that question, Postmates will argue that the Court erred in construing the Fleet Agreement as doing so.

*Second*, Postmates would suffer irreparable harm if forced to pay millions of dollars in

1    unrecoverable arbitration filing fees.  By the time the Ninth Circuit issues its mandate, many

2    arbitrations would have completed, and Postmates would have no way to recoup the fees paid if it is

3    ultimately determined that Petitioners' demands are improper.  Moreover, Postmates would suffer

4    irreparable harm if required to arbitrate on a de facto class basis to which the parties never agreed.

5    Indeed, courts regularly hold that a movant suffers irreparable harm where, as here, it is compelled to

6    arbitrate a dispute that the parties did not agree to arbitrate, and it would expend significant resources

7    doing so.  *E.g.*, *Morgan Stanley & Co. v. Couch*, 134 F. Supp. 3d 1215, 1235 (E.D. Cal. 2015).

8        *Third*, Petitioners would not suffer any harm if the Court grants a stay.  The appeal does not

9    affect the substance of their claims, and 50 arbitrations will commence as soon as AAA sends Postmates

10   an invoice.  While Petitioners may experience some delay as to the remaining arbitrations, any delay

11   is the product of Keller Lenkner's decision to file demands on behalf of 5,255 claimants at the same

12   time.  *Fourth*, a stay is in the public interest, as it and the Federal Arbitration Act favor individual

13   arbitration, and discourage class and collective arbitration.  The Court should stay enforcement of its

14   Order pending appeal, or grant a temporary stay while Postmates seeks a stay in the Ninth Circuit.

15                                  **II.       BACKGROUND**

16   **A.    Postmates' Fleet Agreement**

17       Prior briefing and the Court's Order set forth the relevant facts in detail.  *See*, *e.g.*, Dkt. Nos. 4,

18   112, 202, 228, 237, 238, 253.  Postmates' online and mobile platform connects independent contractor

19   couriers with merchants and customers to facilitate the purchase, fulfillment, and local delivery of

20   goods from merchants to customers.  *E.g.*, Dkt. 253 at 2.

21       Petitioners claim to be couriers who assented to Postmates' Fleet Agreement.  Dkt. 4–5.  The

22   Fleet Agreement contains a Mutual Arbitration Provision that includes an unambiguous Class Action

23   Waiver and binds any courier who does not timely opt out.  *Id.*; Dkt. 253 at 3.  The Mutual Arbitration

24   Provision also delegates "any dispute relating to [its] interpretation, applicability, enforceability, or

25   formation" to an arbitrator.  Dkt. 253 at 4.  But the delegation clause contains two provisions carving

26   out disputes concerning the Class Action Waiver.  The first provision states:

27           However, as stated in Section 10B.iv below, the preceding clause shall not apply to any
             dispute relating to or arising out of the Class Action Waiver and Representative Action
28           Waiver, which must proceed in a court of competent jurisdiction and cannot be heard

1     or arbitrated by an arbitrator.

2     *Id.* (quoting Fleet Agreement § 10A.ii).  The second provision states:

3         Notwithstanding any other clause contained in this Agreement, this Mutual Arbitration Provision, or the American Arbitration Association Commercial Arbitration Rules ("AAA Rules"), any claim that all or part of this Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, void, or voidable shall be determined only by a court of competent jurisdiction and not by an arbitrator.  As stated above, all other disputes regarding interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision shall be determined exclusively by an arbitrator.

7     *Id.* (quoting Fleet Agreement § 10B.iv).

8     **B.**    **The Court Orders The Parties To Arbitrate According To The Fleet Agreement's Terms**

9         Petitioners' counsel filed boilerplate arbitration demands on behalf of 5,274 claimants in April

10 and May 2019.  Dkt. 253 at 4.  Postmates explained to AAA that no arbitration proceedings had begun

11 because the purported demands failed to comply with AAA's rules or the Fleet Agreement.  *Id.* at 4-5.

12 AAA nevertheless assessed over $11 million in filing fees.  *Id.* at 4.  Petitioners initiated this lawsuit

13 on June 3, 2019, seeking an order compelling arbitration and directing Postmates to pay all filing fees

14 invoiced by AAA within 14 days.  Dkt. 1, 4.  Postmates opposed on the basis that Petitioners sought to

15 compel de facto class arbitration in violation of the parties' agreement (Dkt. 112), and filed a cross-

16 motion to compel Petitioners to refile their demands on a truly individualized basis (Dkt. 228).

17         On October 22, 2019, the Court granted the motions "insofar as they seek an order compelling

18 arbitration" in accordance with the Fleet Agreement.  Dkt. 253 at 13.  But it denied Petitioners' request

19 for "an order compelling Postmates to pay outstanding and future arbitration fees," and denied

20 Postmates' request for "an order directing each Petitioner to refile his or her demand as an individual

21 arbitration demand containing additional factual information and legal authorities."  *Id.* at 12–13.

22         As to Petitioners' request, the Court explained that it lacks "authority to compel Postmates to

23 pay the arbitrator's fee," as "the payment of arbitration fees … is a procedural condition precedent to

24 be decided by the arbitrator."  Dkt. 253 at 12–13.  Indeed, AAA's Rules "include provisions regarding

25 the payment of arbitration fees" and "the available remedies for nonpayment."  *Id.*

26         As for Postmates' request, the Court determined that the Mutual Arbitration Provision's

27 delegation clause vests the arbitrator with "exclusive authority to resolve any dispute concerning

28 arbitrability," except for "any claim that the Class Action Waiver … is 'unenforceable, unconscionable,

void, or voidable.'" Dkt. 253 at 10.  Thus, the Court held that Postmates' argument that Petitioners' demand "improperly constitute[s] an attempt to arbitrate on a classwide basis … is not within the purview of [the] Court and must instead be decided by the arbitrator." *Id.* at 11.

Postmates timely filed a notice of appeal to the Ninth Circuit.  Dkt. 254.

**C.**    **Petitioners Refuse To Commence Any Arbitrations Unless Postmates Pays All Filing Fees**

The day the Court issued its Order, Keller Lenkner refiled identical arbitration demands on behalf of 5,255 claimants, and asked AAA to invoice Postmates for filing fees.  Declaration of Dhananjay Manthripragada ("Manthripragada Decl.") ¶ 3, Ex. A.  Of those claimants, Postmates has no record that 715 ever accepted the Fleet Agreement, and no record that another 480 ever did any work on Postmates' platform.  Declaration of Ashley Campbell ("Campbell Decl.") ¶¶ 4–5.  Postmates' records also show that an additional 95 claimants completed their last delivery on or before June 2, 2017, meaning their claims were released in the settlement approved in *Singer v. Postmates, Inc.*, No. 4:15-cv-01284-JSW, Dkt. 98 (N.D. Cal. Apr. 25, 2018).  Campbell Decl. ¶ 6.  Further, Postmates has learned that multiple law firms are purporting to represent about 586 claimants in connection with separate arbitrations against Postmates—including two for whom Postmates paid fees and began arbitrating over a year ago.  Manthripragada Decl. ¶ 32.  And Keller Lenkner recently disclosed that 9 claimants "have elected not to move forward."  Dkt. 256 at 1 n.1.  Thus, Keller Lenkner asked AAA to assess fees for 1,195 claimants who have done no work on the platform, 95 claimants whose claims have been released, 586 claimants who the firm may not represent, and 9 who do not wish to continue.

Before the Court issued its Order, Keller Lenkner filed additional arbitration demands on behalf of 1,250 claimants.  Manthripragada Decl. ¶ 4.  As part of those parallel proceedings, Postmates sent AAA a letter on October 25, 2019, proposing a method for commencing arbitrations in a manner that comports with this Court's Order.  *Id.*, Ex. B.  Postmates proposed that individual arbitrators resolve demand sufficiency and filing fee disputes for 50 randomly-selected claimants, and address the merits for any claimant who submitted a sufficient demand.  *Id.*  The proposal provided that as the first 50 arbitrations are resolved, the process shall repeat so "fifty arbitrations are proceeding at all times."  *Id.*

AAA never voiced any objection to Postmates' proposal, and actually stated that it "is available to work with the parties where they are able to reach agreement" on a method for administering the

1    arbitrations, "such as moving forward on a rolling basis." *Id.*, Ex. D at 4.

2           But Keller Lenkner rejected Postmates' proposal, asserting that it would not assent to a "cap"

3    on the number of arbitrations that AAA would administer at a given time. *Id.* ¶ 5, Ex. C at 7.  Keller

4    Lenkner offered no suggestion for how arbitrations may commence.  Instead, it insisted that Postmates

5    "submit payment for each Claimant's individual arbitration without further delay"—even though the

6    Court had not ordered Postmates to do so.  *Id.*

7           The parties traded emails with AAA over the next several weeks.  Postmates repeatedly made

8    clear that it "is ready, willing, and able to conduct truly individualized arbitrations," and reiterated its

9    proposal that individual arbitrators begin considering demand sufficiency issues for 50 claimants.  *Id.*,

10   Ex. A at 10, 13, 18.  Postmates also invited Petitioners to offer a proposal, and asked AAA to explain

11   how 5,255 arbitrations could proceed at the same time.  *Id.* at 10, 18.

12          Although AAA did not explain how it would administer 5,255 arbitrations at the same time, it

13   reiterated its openness to proceed in any manner agreed to by the parties.  *Id.* at 14, 16.  But Keller

14   Lenkner again refused to allow 50 of its clients to proceed to arbitration, proclaiming that "[t]he only

15   next step to which [it] will agree is for Postmates to pay the filing fees AAA has determined are

16   required."  *Id.* at 17–18.  As a result, AAA closed the cases after "the parties were unable to agree on

17   *how* all of Claimants' demands could proceed."  *Id.* at 11–12.

18          Postmates promptly "request[ed] that AAA reopen the arbitration demands," and "offer[ed] to

19   remit payment for 50 randomly-selected arbitrations" so that the parties could "begin arbitrating

20   expeditiously and in a manner that allows them to better understand how AAA intends to administer

21   all 5,000-plus arbitrations simultaneously."  *Id.* at 10.  Postmates also asked AAA to explain how it

22   would administer 5,255 arbitrations at the same time, and to share a "list of all arbitrators that AAA

23   would make available for arbitration of these matters."  *Id.* at 11.  But AAA would not provide any

24   such information, and Keller Lenkner would not deviate from its position that *no* arbitrations may begin

25   unless *all* filing fees have been paid.  *Id.* at 5–7.

26   **D.     The Parties Agree To Begin Fifty Arbitrations While Negotiations Continue**

27          During an administrative conference held on December 6, 2019, the parties finally agreed that

28   Postmates would remit payment so that 50 arbitrations could begin, but Keller Lenkner refused to allow

all the matters to be reopened.  *Id.* ¶ 24.  The AAA administrator also refused to provide the requested information because AAA had not been paid.  *Id.*  To address that concern, and to ensure that it has enough information to evaluate how AAA would administer the other 5,205 arbitrations, Postmates offered to pay AAA for its time gathering the information, and for an additional hearing on Postmates' requests for information and for the reopening of all the matters.  *Id.*  The administrator stated that Postmates may submit a formal request, which would be reconsidered and escalated within AAA.  *Id.*

Postmates submitted its formal request on December 10, 2019.  *Id.* ¶ 25.  Postmates requested specific categories of information, and identified 50 claimants "for whom arbitration will commence expeditiously."  *Id.*, Ex. E.  Postmates also identified 1,299 claimants who have no claims:  715 who never accepted the Fleet Agreement, 480 who did no work on Postmates' platform, 95 whose claims had been released in *Singer*, and 9 who "elected not to move forward."  *Id.*  Postmates explained that there is no reason for it to pay fees for these claimants.  *Id.*  In response, Keller Lenkner did not deny that numerous claimants have no claims, but seemed to suggest that they should proceed to arbitration anyway.  *Id.* ¶¶ 27–28.  As of this filing, discussions with AAA are ongoing, and Postmates is waiting for AAA to send an invoice for the 50 arbitrations and to schedule a hearing on its requests.  *Id.* ¶ 31.

**E.  Petitioners Move For An Order To Show Cause Despite Ongoing Discussions**

On November 27, 2019, while discussions with AAA were still ongoing, Petitioners filed a motion for an order to show cause why Postmates should not be held in civil contempt.  Dkt. 256.  On December 3, the Court issued an Order to Show Cause ordering Postmates to submit its response by December 11.  Dkt. 258.  Although Postmates explains in its response why it should not be held in contempt, Postmates seeks to stay the October 22 Order pending appeal out of an abundance of caution.

**III.   STATEMENT OF THE ISSUES TO BE DECIDED (L.R. 7-4)**

Postmates' appeal of the Court's Order will raise substantial questions on the Court's interpretation of the Fleet Agreement's delegation clause, and Postmates would suffer irreparable harm if, as Petitioners contend, Postmates is required to pay over $10 million in unrecoverable filing fees to commence de facto class arbitration.  Should the Court stay enforcement of its Order pending appeal or for sixty days so Postmates may seek a stay in the Ninth Circuit?

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.   LEGAL STANDARD

In determining whether to grant a stay pending appeal of an order on a motion to compel arbitration, courts apply the test provided in *Nken v. Holder*, 556 U.S. 418 (2009), and *Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) (per curiam).  *See, e.g.*, *Brown v. MHN Gov't Servs., Inc.*, 2014 WL 2472094, at *2 (N.D. Cal. June 3, 2014); *Roe v. SFBSC Mgmt., LLC*, 2015 WL 1798926, at *1–2 (N.D. Cal. Apr. 17, 2015).  Specifically, the Court should consider:  (1) whether Postmates' appeal raises substantial issues; (2) whether Postmates will be irreparably harmed absent a stay; (3) whether issuance of the stay will substantially injure the opposing party; and (4) where the public interest lies.  *See Nken*, 556 U.S. at 426; *Leiva-Perez*, 640 F.3d at 964.  These factors are evaluated on a "continuum, with the relative hardships to the parties providing the critical element in determining at what point on the continuum a stay pending review is justified."  *Leiva-Perez*, 640 F.3d at 970.

## V.   ARGUMENT

Postmates has complied with this Court's October 22, 2019 Order and should not be held in civil contempt, as detailed in Postmates' response to the Court's Order to Show Cause.  But out of an abundance of caution, Postmates requests that the Court stay enforcement of its Order while the Ninth Circuit considers Postmates' appeal.  Postmates understands that the Court may not agree with the arguments Postmates intends to advance on appeal, but it does not need to in order to grant a stay. Rather, the Court need only agree that Postmates has a "fair prospect" of success—not "that it is more likely than not that [it] will win"—and that Postmates will suffer irreparable harm absent a stay.  *Leiva-Perez*, 640 F.3d at 966–68; *see also Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012) (likelihood of success and irreparable injury factors "are the most critical").  Because Postmates has met that standard, the Court should stay enforcement of its Order until the Ninth Circuit issues its mandate, or issue a temporary stay until the Ninth Circuit rules on Postmates' stay motion in that Court.

### A.   All Four Stay Factors Weigh In Favor Of Ordering A Stay Pending Appeal

Each relevant factor weighs in favor of staying enforcement of the Court's Order.

#### 1.   Postmates' Appeal Is Likely To Succeed On The Merits

A stay is warranted where the party seeking a stay demonstrates that it has a "minimum quantum of likely success" on appeal—*i.e.*, that its appeal has a "reasonable probability or fair prospect" of

1  success, or raises "substantial" or "serious" legal questions. *Leiva-Perez*, 640 F.3d at 967–68; *Britton*

2  *v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990). Although Postmates must show that "the

3  likelihood of success on the merits is better than negligible," it does not have to show that "it is more

4  likely than not that [it] will win on the merits." *Lair*, 697 F.3d at 1204.

5        Here, Postmates' appeal will present at least two serious legal questions: (1) whether the

6  determination of whether Petitioners seek class arbitration is a non-delegable threshold question; and

7  (2) whether this Court's interpretation of the Fleet Agreement's delegation clause erroneously read two

8  harmonious provisions as independent and conflicting.

9        **a.**    **The Determination Whether a Demand Seeks Class Arbitration Cannot Be Delegated Where Parties Have Waived Class Arbitration**

10        A central issue in this case has been whether Petitioners seek de facto class and collective

11  arbitration (which is prohibited by the Mutual Arbitration Provision) or whether they seek truly

12  individualized arbitrations (which is required by the Mutual Arbitration Provision). The parties spent

13  multiple rounds of briefing on this issue, yet the Court concluded that "the matter of whether Petitioners

14  are attempting to circumvent the Class Action Waiver is ultimately inapposite." Dkt. 253 at 11. Thus,

15  the Court expressly declined to rule on that issue, instead leaving it for the arbitrator pursuant to the

16  Fleet Agreement's delegation clause. Postmates has a reasonable likelihood of prevailing on appeal on

17  this issue because Supreme Court precedent establishes that a court *cannot* compel parties to class

18  arbitration when they have not explicitly agreed to do so. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*,

19  563 U.S. 333, 348 (2011). To comply with that mandate, it necessarily follows that a court must be

20  empowered to determine *whether* a party seeking to compel arbitration seeks to do so on a class basis.

21        The Supreme Court addressed a similar situation in *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407

22  (2019). There, "the District Court granted the motion to compel arbitration . . . . But the court rejected

23  Lamps Plus's request for individual arbitration, instead authorizing arbitration on a classwide basis.

24  Lamps Plus appealed the order, arguing that the court erred by compelling class arbitration" in light of

25  the ambiguity of the parties' contract on whether class arbitration was permitted. *Id.* at 1414. The

26  Supreme Court agreed, noting that "Lamps Plus did not secure the relief it requested. It sought an order

27  compelling *individual* arbitration. What it got was an order rejecting that relief and instead compelling

28  arbitration on a classwide basis. . . . [S]hifting from individual to class arbitration is a 'fundamental'

Gibson, Dunn &
Crutcher LLP

8

1    change that 'sacrifices the principal advantage of arbitration' and 'greatly increases risks to

2    defendants.'"  *Id.*  Because "the FAA requires courts to 'enforce arbitration agreements according to

3    their terms," and because the terms of the parties' agreement did not permit class arbitration, the Court

4    reversed.  *Id.* at 1415; *see also* 9 U.S.C. § 4 (courts must compel arbitration only "in accordance with

5    the terms of the agreement"); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) ("courts may not

6    allow a contract defense to reshape traditional individualized arbitration by mandating classwide

7    arbitration procedures without the parties' consent").

8            Other courts have come to similar conclusions, holding that when a party that has waived class

9    arbitration seeks to compel arbitration, the court has an obligation to determine whether the order

10   sought would force parties to class arbitration in contravention of the parties' agreement.  In *AT&T*

11   *Mobility LLC v. Bernardi*, 2011 WL 5079549, at *6 (N.D. Cal. Oct. 26, 2011), for example, "over

12   1,000 people [], represented by the same firm, filed essentially identical arbitration demands, all

13   seeking the same, non-individualized relief: injunction of the ATTM/T–Mobile merger."  Although the

14   claimants filed their demands nominally as individuals, the court looked past that issue in determining

15   that the demands were de facto class demands that expressly contravened the parties' class action

16   waiver.  *Id.* ("The demands bear all the critical hallmarks of class and representative actions, and thus,

17   run afoul of the agreement's prohibition of 'any form of a representative or class proceeding.'").  The

18   court *enjoined* the arbitrations, reasoning that whether the demands were class or individual in nature

19   fell within the court's duty to determine "whether the dispute demand would proceed within the scope

20   of, and in the manner provided for, in the agreement."  *Id.* at *5; *see also AT&T Mobility LLC v. Smith*,

21   2011 WL 5924460, at *3 (E.D. Pa. Oct. 7, 2011) (enjoining arbitration where in light of class action

22   waiver, court "must determine whether [claimant] brings her claim in her 'individual capacity,' or

23   rather as part of 'any form of representative or class proceeding'").

24           This case is no different.  The FAA requires a court compelling arbitration to "direct[] that such

25   arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  Here, the parties'

26   agreement expressly and unambiguously sets forth a "manner" of arbitration that precludes class

27   arbitration.  Dkt. 253 at 3.  Thus, Postmates has a reasonable likelihood of appellate success on whether

28   the Court should have conducted an inquiry into whether Petitioners' demands are class or collective

in nature, before denying Postmates' request for an order compelling individual arbitration, and granting Petitioners' request for an order compelling arbitration on their existing claims.

### b. The Fleet Agreement's Delegation Clause Does Not Delegate The Question Whether a Demand Seeks Class Arbitration to the Arbitrator

Even if the parties could delegate the question whether an arbitration demand seeks class or collective arbitration in the face of an unambiguous class waiver, Postmates has a "reasonable probability or fair prospect" of showing on appeal that they have not done so here. *Leiva-Perez*, 640 F.3d at 966–68. This issue rests at the core of this Court's Order. Dkt. 253 at 9–10.

Arbitration agreements are interpreted according to state law. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989). Under California law, courts must "consider the contract as a whole," "giv[ing] effect to every part thereof if reasonably practicable," and "favor[ing] an 'interpretation which gives effect to the main apparent purpose of the contract.'" *Harris v. Klure*, 205 Cal. App. 2d 574, 578 (1962). Courts should adopt a construction in which "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641. "Particular clauses of a contract are subordinate to its general intent." *Id.* § 1650. Here, the delegation clause unambiguously demonstrates a general intent to exclude "any dispute relating to or arising out of the Class Action Waiver":

> However, as stated in Section 10B.iv below, the [delegation clause] shall not apply to any dispute relating to or arising out of the Class Action Waiver and Representative Action Waiver, which must proceed in a court of competent jurisdiction and cannot be heard or arbitrated by an arbitrator.

Dkt. 253 at 3 (quoting Fleet Agreement § 10A.ii).

Section 10B(iv), in turn, provides: "any claim that all or part of this Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, void, or voidable shall be determined only by a court of competent jurisdiction and not by an arbitrator. As stated above, all other disputes regarding interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision shall be determined exclusively by an arbitrator." *Id.* (quoting Fleet Agreement § 10B(iv)).

The Court's Order interpreted these two provisions as conflicting independent exemptions, and viewed the specific list of claims in Section 10B(iv) as a *limit* on the general statement in Section 10A.ii. Dkt. 253 at 10. That was error, as the most natural interpretation of the two phrases puts them

in harmony:  the specific enumerated claims in the second clause are *illustrative* of the types of claims that fall within the general carve-out established by the first clause.  *See* Cal. Code Civ. Proc. § 1858 (when interpreting instruments, "where there are *several provisions or particulars*, such a construction is, if possible, to be adopted as will *give effect to all*") (emphases added).  They are not a restrictive universe, as the second clause is not prefaced with any sort of limiting language.  Thus, far from "expressly limit[ing] the delegation clause exception" to the types of disputes noted in Section 10B(iv) (Dkt. 253 at 10), the list of claims identified in the second clause can be read in harmony with the general carve-out in the first clause.  Indeed, that is the *only* way to read the two clauses without rendering one of them "nugatory, inoperative or meaningless"—as the Court itself notes that it must if at all possible.  *Id.* (quoting *Hemphill v. Wright Family, LLC*, 234 Cal. App. 4th 911, 915 (2015)).

By contrast, the Court's Order created a superfluity problem of its own by reading the general carve-out right out of the Fleet Agreement, even though it could have given every substantive term of the Agreement meaning by reading the second clause as "part of a more complete definition" of the types of claims falling within the carve-out.  *Waranch v. Gulf Ins. Co.*, 218 Cal. App. 3d 356, 360 (1990) (quoting *Martin v. Brunzelle*, 699 F. Supp. 167, 170 (N.D. Ill. 1988)); *see also Estate of Petersen*, 28 Cal. App. 4th 1742, 1753 n.4 (1994) (even if terms are inconsistent or contradictory, the court should "interpret[] the language in such a manner that will give effect to the entire contract" and the contract "should not be construed to render some of its provisions meaningless or irrelevant").

In short, Postmates has a strong appellate argument that the Court should have given meaning to the general provision stating that the delegation clause "shall not apply to any dispute relating to or arising out of the Class Action Waiver" (Dkt. 253 at 3 (quoting Fleet Agreement § 10A.ii)), *and* to the more specific (but not inconsistent) provision that "any claim that all or part of this Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, void, or voidable shall be determined only by a court of competent jurisdiction and not by an arbitrator" (*id.* at § 10B(iv)).  Thus, Postmates' appeal will present serious legal issues warranting a stay pending appeal.

## 2. Postmates Will Suffer Irreparable Harm Absent A Stay

Petitioners have interpreted the Court's Order as requiring Postmates to pay *all* filing fees upfront, and therefore they have taken the position that *no* arbitrations may properly commence unless

1   *all* arbitrations commence at the same time.  Dkt. 256 at 14.  This is not individual arbitration, and
2   forcing simultaneous commencement of 5,255 arbitrations while Postmates litigates an appeal directly
3   addressing whether those demands are individual in nature would cause Postmates irreparable harm.

4         *First*, under Petitioners' interpretation of the Order, Postmates would have to immediately pay
5   millions of dollars in filing fees to AAA to commence the arbitrations.  Although economic loss
6   ordinarily does not constitute irreparable harm, the "threat of unrecoverable economic loss" does.  *Iowa*
7   *Utils. Bd. v. FCC*, 109 F.3d 418, 426 (9th Cir. 1996); *see also California v. U.S. Dep't of Health &*
8   *Human Servs.*, 941 F.3d 410, 431 (9th Cir. 2019) (economic harm would be "irreparable because the
9   states will not be able to recover monetary damages" to recoup their losses); *California v. Azar*, 911
10  F.3d 558, 581 (9th Cir. 2018) (same); *Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016).

11        Here, Postmates will have no way to recover the fees even if it prevails on appeal.  By the time
12  the Ninth Circuit issues its mandate, many arbitrations would have run their course, and the payments
13  Petitioners seek to compel would flow to AAA—a third party—making it all the more difficult for
14  Postmates to recover than in cases in which money is paid to a litigation adversary.  While AAA's
15  Rules provide a mechanism for recovering fees in some cases (*see* AAA Employment/Workplace Fee
16  Schedule),[1] the Rules do not permit parties to reopen closed proceedings for the purpose of seeking a
17  fee-shifting order.  This stems directly from the nature of the fees at issue, which are designed to
18  compensate AAA for its services.  If arbitrations are, in fact, administered, then there is no basis for a
19  refund of those fees.  So too with arbitrator compensation and other AAA administrative costs, which,
20  at the scale contemplated by Petitioners' 5,000-plus nominally individual arbitration demands, would
21  result in millions of dollars of *additional* payments to third parties (including numerous different
22  arbitrators) that are nonrefundable compensation for services actually rendered.  *See id.*; *see also U.S.*
23  *Dep't of Health & Human Servs.*, 941 F.3d at 431; *Azar*, 911 F.3d at 581; *EPA*, 829 F.3d at 434; *Iowa*
24  *Utils. Bd.*, 109 F.3d at 426.  Thus, Postmates would suffer irreparable harm if forced to pay
25  unrecoverable arbitration filing fees during the pendency of the appeal.

26        *Second*, Postmates would be irreparably harmed if forced to defend arbitrations that may be
27  determined after appeal to be de facto class or collective arbitrations that contravene the Fleet

---

[1]  Available at https://www.adr.org/sites/default/files/Employment_Fee_Schedule1Nov19.pdf.

Gibson, Dunn &
Crutcher LLP

RESPONDENT POSTMATES INC.'S NOTICE OF MOTION AND MOTION TO STAY ORDER PENDING APPEAL

Agreement's Class Action Waiver.  "[M]ost, if not all courts hold that being required to arbitrate a dispute that the parties did not agree to arbitrate is per se irreparable harm." *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1235 (E.D. Cal. 2015); *see also PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990) (party "would suffer irreparable harm if it were forced to submit to the arbitrator's jurisdiction, if even just for a determination of the scope of that jurisdiction"); *Orange Belt Dist. Council of Painters No. 48 v. Standard Drywall Inc.*, 1979 WL 1943, at *1 (S.D. Cal. Oct. 16, 1979) (a stay order "preserve[s] the status quo pending appeal" and "the status quo would be served by delaying arbitration proceedings, with their attendant time and expense, until the appellate court's resolution" of threshold issues).  Postmates also would suffer irreparable harm by having to expend significant, unrecoverable human and monetary resources conducting those class and collective arbitrations during the appeal.  *See Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001) (affirming irreparable harm finding stemming from incurring unrecoverable arbitration costs in arbitration proceeding to which party did not agree); *see also Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 37 F.3d 125, 129 (2d Cir. 2003); *Pension Plan for Pension Tr. Fund of Operating Eng'r v. Weldway Constr., Inc.*, 920 F. Supp. 2d 1034, 1049 (N.D. Cal. 2013); *Bernardi*, 2011 WL 5079549, at *10; *Pokorny v. Quixtar Inc.*, 2008 WL 1787111, at *2 (N.D. Cal. Apr. 17, 2008).

Indeed, Supreme Court precedent illustrates that class arbitration is so intrinsically different from individual arbitration that it fundamentally changes the scope of the dispute—further adding to the irreparable harm at stake.  "In individual arbitration, 'parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes.'" *Lamps Plus*, 139 S. Ct. at 1416.  But "[c]lass arbitration lacks those benefits.  It sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id.*; *see also Epic Sys.*, 138 S. Ct. at 1622; *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010); *Concepcion*, 563 U.S. at 350.  If Postmates is required to engage in de facto class arbitration, but is later vindicated on appeal, Postmates will not be able to retroactively receive the benefits of individual arbitration after having arbitrated Petitioners' claims in a fundamentally different posture than the parties agreed to.

Thus, if the Court were to deny this motion, and if Petitioners' interpretation of the October 22 Order were credited, Postmates would be compelled to defend against *thousands* of arbitration demands that the Ninth Circuit or this Court after remand may find to be insufficient to trigger an obligation to arbitrate in in the first place. *See Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2312 (2013). That is irreparable harm favoring a stay.

### 3. Petitioners Will Suffer No Harm If The Court Stays Its Order

Petitioners, in contrast, would not be "substantially injure[d]" by a stay pending appeal to determine whether their demands impermissibly seek class arbitration. *Whaley v. Pac. Seafood Grp.*, 2017 WL 4973193, at *1 (D. Or. Nov. 1, 2017). Even if their demands are ultimately adjudicated to be individual, or if the Ninth Circuit affirms this Court's decision that that determination must be made by an arbitrator, Petitioners' substantive claims would be unaffected. *See Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393, 402 (2010) (enforcement of a class action waiver "affect[s] only the procedural means by which the remedy may be pursued").

The only conceivable harm Petitioners could suffer is temporary delay in obtaining relief, but 50 arbitrations are about to begin. And any further delay is the product of Keller Lenkner's decision to file demands on behalf of 5,255 claimants at the same time. Indeed, neither Keller Lenkner nor AAA has ever been able to explain how 5,255 arbitrations could proceed at the same time—meaning the arbitrations must necessarily proceed sequentially. Manthripragada Decl. ¶¶ 18–24 Petitioners would not suffer any harm if the Court grants a stay. *See Meijer, Inc. v. Abbott Labs.*, 2009 WL 723882, at *4 (N.D. Cal. Mar. 18, 2009) (granting stay where it would not "put Plaintiffs at a strategic disadvantage" and would "last only as long as it takes for the Ninth Circuit panel to issue its opinion").

### 4. The Public Interest Favors A Stay

The public interest strongly weighs in favor of granting a stay. *See Westlands Water Dist. v. Nat. Res. Def. Council*, 43 F.3d 457, 459 (9th Cir. 1994) ("If the public interest is involved, the district court must also determine whether the public interest favors the [movant].").

The issues Postmates intends to raise on appeal implicate two of the predominant public policies reflected in the FAA. *First*, the FAA reflects a public policy of *favoring* individual arbitration. *See*, *e.g.*, *Lamps Plus*, 139 S. Ct. at 1416 (benefits of individual arbitration include "lower costs, greater

1  efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes").

2  *Second*, the FAA *disfavors* class arbitration to which parties have not agreed.  *See*, *e.g.*, *id* at 1416

3  ("with class arbitration the virtues Congress originally saw in arbitration, its speed and simplicity and

4  inexpensiveness, would be shorn away and arbitration would wind up looking like the litigation it was

5  meant to displace.").  Indeed, the "primary purpose of the FAA is to ensure that private agreements to

6  arbitrate are enforced according to their terms."  *Stolt-Nielsen*, 559 U.S. at 682.  Here, Postmates'

7  appeal seeks to vindicate exactly that important right that lies at the heart of FAA jurisprudence:

8  fidelity to the terms of the parties' arbitration agreement.

9       On the other hand, any public policy interests behind Petitioners' claims would not be

10  undermined by a stay because Petitioners can ultimately vindicate such rights after the appeal is

11  resolved—whether in the form of their current demands or in the form of individual demands.  *See*

12  *Winig v. Cingular Wireless LLC*, 2006 WL 3201047, at *3 (N.D. Cal. Nov. 6, 2006) ("Although the

13  Court is cognizant of the public interest in vindicating consumer rights, the Court finds the requested

14  stay will not materially impact that interest.").  The public interest weighs in favor of granting a stay.

15  **B.    In The Alternative, The Court Should Temporarily Stay Its Order**

16       Even if the Court declines to stay its Order pending appeal, Postmates requests that the Court

17  temporarily stay its Order for sixty days while Postmates seeks a stay from the Ninth Circuit.  Courts

18  routinely grant such requests.  *See*, *e.g.*, *Conservation Cong. v. U.S. Forest Serv.*, 2012 WL 3150307,

19  at *2 (E.D. Cal. Aug. 1, 2012); *Elliot v. Williams*, 2011 WL 5080169, at *10 (D. Nev. Oct. 25, 2011);

20  *Campbell v. Nat'l Passenger R.R. Corp.*, 2009 WL 4546673, at *2 (N.D. Cal. Nov. 30, 2009).  There

21  is no reason to decline a temporary stay here because Postmates stands to suffer irreparable harm if it

22  is not permitted time to seek a stay from the Ninth Circuit, while Petitioners will not suffer any

23  irreparable harm if a stay is granted.  Thus, at the very least, a temporary stay is warranted.

24                  **VI.    CONCLUSION**

25       Postmates respectfully requests that the Court (i) stay enforcement of its October 22, 2019

26  Order until the Ninth Circuit issues its mandate; or, in the alternative, (ii) temporarily stay enforcement

27  of its order for sixty days so that Postmates has an opportunity to seek a stay in the Ninth Circuit.

28

Gibson, Dunn &
Crutcher LLP

RESPONDENT POSTMATES INC.'S NOTICE OF MOTION AND MOTION TO STAY ORDER PENDING APPEAL

1    Dated:  December 11, 2019                    GIBSON, DUNN & CRUTCHER LLP

2

3                                                By:        */s/ Theane Evangelis*
                                                            Theane Evangelis

4
                                                 Attorneys for Respondent POSTMATES INC.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESPONDENT POSTMATES INC.'S NOTICE OF MOTION AND MOTION TO STAY ORDER PENDING APPEAL