THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
  dmanthripragada@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
  Los Angeles, CA  90071-3197
  Telephone:  213.229.7000
  Facsimile:   213.229.7520

JAMES P. FOGELMAN, SBN 161584
  jfogelman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
  Los Angeles, CA  90067-3026
  Telephone:  310.552.8500
  Facsimile:   310.551.8741

MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
  Irvine, CA  92612-4412
  Telephone:  949.451.3800
  Facsimile:   949.451.4220

Attorneys for Respondent POSTMATES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JAMAL ADAMS, et al.,<br><br>              Petitioners,<br><br>    v.<br><br>POSTMATES INC.,<br><br>              Respondent. | Case No. 4:19-cv-03042-SBA<br><br>**POSTMATES INC.'S RESPONSE TO ORDER TO SHOW CAUSE RE CIVIL CONTEMPT**<br><br>**HEARING REQUESTED**<br><br>**Hearing:**<br>Date:    January 8, 2020<br>Time:   2:00 p.m.<br>Place:  Ronald V. Dellums Fed. Bldg.<br>         1301 Clay Street, Oakland, CA<br>Judge:  Hon. Saundra B. Armstrong |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND ................................................................................................................. 3

    A. Postmates' Fleet Agreement ................................................................................... 3

    B. The Court Expressly Declines To Order Postmates To Pay Arbitration Filing Fees ........................................................................................................................... 4

    C. Petitioners Refile Identical Arbitration Demands On Behalf Of Five Thousand Claimants ................................................................................................ 4

    D. Petitioners Refuse To Commence Any Arbitrations Unless Postmates Pays All Fees ...................................................................................................................... 5

    E. The Parties Agree To Begin Fifty Arbitrations While Negotiations Continue ............. 7

III. STATEMENT OF THE ISSUE TO BE DECIDED (L.R. 7-4) ........................................ 8

IV. LEGAL STANDARD ........................................................................................................ 8

V. ARGUMENT ....................................................................................................................... 8

    A. Postmates Has Not Violated A "Specific And Definite" Order ..................................... 8

    B. Postmates Has Substantially Complied With The Court's Order In Good Faith ........ 11

        1. Postmates Has Substantially Complied with the Court's Order to Arbitrate in Accordance with the Terms of the Fleet Agreement ................... 11

        2. Postmates' Conduct Is Based on a Good-Faith, Reasonable Interpretation of the Court's Order .................................................................. 14

    C. Postmates May Not Be Held In Contempt While It Seeks A Stay Pending Appeal ..................................................................................................................... 15

VI. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abernathy v. DoorDash, Inc.*,
  No. 3:19-cv-07545-WHA (N.D. Cal.) ..................................................................................5

*Balla v. Idaho State Bd. of Corr.*,
  869 F.2d 461 (9th Cir. 1989)...........................................................................................8, 9

*In re Carrico*,
  206 B.R. 447 (S.D. Ohio 1997)..........................................................................................16

*In re Dual–Deck Video Cassette Recorder Antitrust Litig.*,
  10 F.3d 693 (9th Cir. 1993)...........................................................................................2, 11

*Evans v. Affiliated Comput. Servs. Inc.*,
  No. 13-7407-JFW, Dkt. 74 (C.D. Cal. Jan. 9, 2015) ...................................................13, 14

*FTC v. Enforma Nat. Prods., Inc.*,
  362 F.3d 1204 (9th Cir. 2004).............................................................................................8

*General Teamsters Union Local No. 439 v. Sunrise Sanitation Servs., Inc.*,
  2006 WL 2091947 (E.D. Cal. July 26, 2006) ..............................................................10, 16

*Int'l Union, UMWA v. Bagwell*,
  512 U.S. 821 (1994)............................................................................................................3

*Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Authority*,
  564 F.3d 1115 (9th Cir. 2009)................................................................................8, 14, 15

*LaPrade v. Kidder Peabody & Co.*,
  146 F.3d 899 (D.C. Cir. 1998) ..........................................................................................14

*Legair v. Circuit City Stores, Inc.*,
  2005 WL 1865373 (S.D. Ohio July 26, 2005) ..................................................................14

*Lifescan v. Premier Diabetics Servs..., Inc.*,
  363 F.3d 1010 (9th Cir. 2004)...........................................................................................10

*O'M and Assoc., LLC v. Ozanne*,
  2011 WL 2160938 (S.D. Cal. June 1, 2011) ................................................................8, 11

*In re Ragar*,
  3 F.3d 1174 (8th Cir. 1993)...............................................................................................15

*Reno Air Racing Ass'n., Inc. v. McCord*,
  452 F.3d 1126 (9th Cir. 2006)..................................................................................2, 8, 10

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Richmark Corp. v. Timber Falling Consultants*,
 959 F.2d 1468 (9th Cir. 1992) ...................................................................................... 3, 15

*Saffady v. Dunn*,
 2009 WL 1868032 (E.D. Mich. June 26, 2009) .......................................................... 15, 16

*Singer v. Postmates, Inc.*,
 No. 4:15-cv-01284-JSW (N.D. Cal.) ............................................................................ 2, 5

*SolarCity Corp. v. Doria*,
 2018 WL 4204024 (S.D. Cal. Sept. 4, 2018) ................................................................. 8, 11

*U.S. Titan, Inc. v. Guangzhou Zhen HUA Shipping Co., Ltd.*,
 2003 WL 23309445 (S.D.N.Y. Sept. 26, 2003) ................................................................ 14

*United States v. Bright*,
 596 F.3d 683 (9th Cir. 2010) ............................................................................................. 8

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*,
 689 F.2d 885 (9th Cir. 1982) ........................................................................................ 14, 15

**Other Authorities**

AAA Comm. Arb. Rules, Rule R-57 ........................................................................................ 10

# I. INTRODUCTION

Petitioners seek to hold Postmates in civil contempt solely because Postmates has not remitted over $10 million in arbitration filing fees pursuant to AAA's administrative determination. But this Court already expressly declined to order Postmates to pay those fees—a dispositive fact that Petitioners ignore. Indeed, Petitioners requested an "order directing Postmates to tender payment of outstanding and future arbitration fees," and the Court explicitly "denie[d] Petitioners' request." Dkt. 253 at 12–13. The Court held that it lacks "authority to compel Postmates to pay the arbitrator's fee," and that "the payment of arbitration fees … is a procedural condition precedent to be decided by the arbitrator." *Id.* As the Court explained, AAA's Rules "include provisions regarding the payment of arbitration fees" and "the available remedies for non-payment" (*id.*), meaning all disputes concerning the payment of fees must be resolved by an *arbitrator*—not a AAA administrator or this Court. Petitioners repeatedly resisted Postmates' requests that an arbitrator be assigned to resolve this issue, yet they now seek to hold Postmates in contempt for not doing something that this Court did not order Postmates to do. The Court should deny Petitioners' backdoor attempt to modify the Court's Order.

As for what the Court's Order did address, Postmates has complied. Just days after the Court issued its Order, Postmates requested that AAA appoint arbitrators to resolve demand sufficiency issues for fifty randomly-selected Petitioners on a rolling basis, and to resolve the claims of each Petitioner who submitted a sufficient demand. Postmates explained that it was willing to negotiate the terms of this proposal, and urged Petitioners and AAA to offer their own proposals. Postmates also asked AAA *six* times to explain how AAA would administer all 5,255 arbitrations at the same time, and to provide "a list of all arbitrators that AAA would make available for arbitration of these matters and their availability." Declaration of Dhananjay Manthripragada ("Manthripragada Decl."), Ex. A at 4–11. Postmates even offered to compensate AAA for its time answering Postmates' inquiry. *Id.* ¶ 24.

But AAA refused to provide any of the requested information. And Petitioners rejected Postmates' proposal, and refused to offer a proposal of their own. Even though AAA stated that it would administer arbitrations in any manner agreed to by the parties, and even though Petitioners have no legitimate interest in how or when AAA gets paid, Petitioners' counsel repeatedly stated that "[t]he *only* next step to which [they] will agree is for Postmates to pay [all] the filing fees" to AAA. *Id.* ¶ 10,

Ex. A at 17–18 (emphasis added). In other words, Petitioners could have been arbitrating, but their counsel took the position that *no* Petitioner's arbitration may begin until all filing fees have been paid.

Seemingly recognizing that their position cannot be reconciled with the Court's refusal to order Postmates to pay filing fees, Petitioners recently agreed to Postmates' latest offer to remit payment for fifty arbitrations so that fifty Petitioners may begin arbitrating their claims. And AAA has since agreed to reconsider and escalate Postmates' formal request for information—in which Postmates reiterated its willingness to compensate AAA for its time, and identified 715 claimants who never accepted the Fleet Agreement, 480 additional claimants who have never done any work on the Postmates' platform, 95 additional claimants whose claims were released in the class action settlement approved in *Singer v. Postmates, Inc.*, No. 4:15-cv-01284-JSW, Dkt. 98 (N.D. Cal. Apr. 25, 2018), and 9 additional claimants who have elected not to move forward. Manthripragada Decl. ¶ 25, Ex. E. Thus, 50 arbitrations are on the verge of beginning, and talks with AAA are still live as to the remaining 5,205.

Despite the existence of ongoing proceedings before AAA, Petitioners contend that Postmates should be held in civil contempt because it has not paid *all* filing fees—the very action this Court declined to order Postmates to take. Dkt. 256. Petitioners' motion should be denied for three reasons.

*First*, Petitioners cannot prove by clear and convincing evidence that Postmates violated a specific and definite order. *See Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). The Court ordered the parties to arbitrate according to the Fleet Agreement's Mutual Arbitration Provision, but it expressly declined to order Postmates to pay AAA's filing fees. Dkt. 253 at 12–13. And by citing AAA's rules governing "the available remedies for non-payment" (*id.*), the Court made clear that all disputes relating to the payment of fees must be resolved *by the arbitrator*—not a AAA administrator or this Court. Petitioners argue that "Postmates has violated this Court's Order by failing to pay the fees" (Dkt. 256 at 14), but that is the exact remedy Petitioners previously sought (Dkt. 4) and that the Court explicitly did not grant (Dkt. 253 at 12–13).

*Second*, at a minimum, Postmates has substantially complied with the Court's Oder based on a reasonable, good-faith interpretation. *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). The parties' dispute does not concern *whether* arbitrations should proceed, but instead *how* arbitrations should proceed. On this question, the Court held that "it is within

the arbitrator's exclusive authority to determine … how the arbitration[s] should be conducted," and to resolve all disputes over fees and demand sufficiency. Dkt. 253 at 12–13. Thus, Postmates offered multiple proposals for how arbitrators could begin considering these questions. When Petitioners' counsel refused to begin *any* arbitrations until *all* fees are paid, Postmates offered to remit payment for fifty arbitrations so that fifty Petitioners could begin arbitrating. Petitioners' counsel finally agreed to this proposal, and the parties will begin fifty arbitrations as soon as AAA sends Postmates an invoice.

As for the remaining 5,205, negotiations with AAA are ongoing, and several issues must be resolved before arbitrations begin. For instance, Postmates has identified two claimants who are represented by different counsel and for whom Postmates paid filing fees over a year ago and began arbitrating. Manthripragada Decl. ¶ 32. Postmates has identified 584 claimants who are purportedly represented by other counsel and have threatened to file arbitration demands. *Id.* And Postmates has provided AAA with the names of 1,299 claimants who indisputably have no claims, and has requested information showing that AAA can administer thousands of arbitrations simultaneously. *Id.* ¶¶ 18, 25.

*Third*, a party may not be held in contempt until it has exhausted all efforts to stay the order. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 n.6 (9th Cir. 1992). Here, Postmates has appealed the Court's Order (Dkt. 255), and moved to stay the Order pending appeal (Dkt. 261). Thus, Postmates may not be held in contempt, and Petitioners' motion should be denied.

To the extent the Court has any concerns about Postmates' compliance, Postmates respectfully requests that the Court hold a hearing and allow Postmates to address those concerns. *See Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 827 (1994) ("civil contempt sanctions … may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard").

## II. BACKGROUND

### A.   Postmates' Fleet Agreement

Prior briefing and the Court's Order set forth the relevant facts in detail. *See, e.g.*, Dkts. 4, 112, 202, 228, 237, 238, 253. Postmates' online and mobile platform connects independent contractor couriers with merchants and customers to facilitate the purchase, fulfillment, and local delivery of goods from merchants to customers. Before receiving delivery opportunities, couriers must assent to Postmates' Fleet Agreement. Dkt. 228-3 ¶ 3. The Fleet Agreement contains a conspicuous Mutual

Arbitration Provision, which contains an express Class Action Waiver and provides that Postmates and couriers mutually agree to resolve all disputes through final and binding arbitration. *Id.* ¶ 10.

**B.     The Court Expressly Declines To Order Postmates To Pay Arbitration Filing Fees**

Petitioners are 5,255 individuals who claim to have used Postmates' platform and to have assented to the Mutual Arbitration Provision. Dkt. 4 at 1. In April and May 2019, Petitioners' counsel at Keller Lenkner filed a purported arbitration demand on behalf of 5,274 individuals. Dkt. 253 at 4. Postmates informed AAA that the demand did not comply with the Fleet Agreement or AAA's rules, but AAA nevertheless assessed more than $11 million in filing fees against Postmates. *Id.* at 4–5.

Petitioners initiated this lawsuit on June 3, 2019, seeking an order compelling arbitration and directing Postmates to "pay[] all arbitration filing fees due for Petitioners' pending demands for arbitration" within fourteen days of the Court's Order. Dkt. 4 at 3, 14. Postmates argued that Petitioners impermissibly sought to compel de facto class and collective arbitration (Dkt. 112), and filed a cross-motion to compel truly individualized arbitration (Dkt. 228 at 2).

On October 22, 2019, the Court granted in part and denied in part both motions. Dkt. 253. It granted the motions "insofar as they seek an order compelling arbitration" in accordance with the terms of the Fleet Agreement, but it denied Postmates' request for an order compelling Petitioners to refile individualized arbitration demands, and it explicitly "decline[d] to enter an order compelling Postmates to pay outstanding and future arbitration fees." *Id.* at 12–13. As to Petitioners' request, the Court explained that it lacks "authority to compel Postmates to pay the arbitrator's fee," and that AAA's Commercial Arbitration Rules "include provisions regarding the payment of arbitration fees" and "the available remedies for nonpayment." *Id.* It held that "the payment of arbitration fees … is a procedural condition precedent to be decided by the arbitrator," and therefore "denie[d] Petitioners' request for an order directing Postmates to tender payment of outstanding and future arbitration fees." *Id.* at 13.

**C.     Petitioners Refile Identical Arbitration Demands On Behalf Of Five Thousand Claimants**

The day the Court entered its Order, Keller Lenkner refiled identical, boilerplate arbitration demands on behalf of 5,255 claimants, and asked AAA to invoice Postmates for filing fees. Manthripragada Decl. ¶ 3, Ex. A, at 22–23. Of those claimants, Postmates has no record that 715 ever accepted the Fleet Agreement, and no record that another 480 ever did any work on Postmates'

platform. Declaration of Ashley Campbell ("Campbell Decl.") ¶¶ 4–5. Postmates' records also show that an additional 95 claimants completed their last delivery on or before June 2, 2017, meaning their claims were released in the settlement approved in *Singer v. Postmates, Inc.*, No. 4:15-cv-01284-JSW, Dkt. 98 (N.D. Cal. Apr. 25, 2018). Campbell Decl. ¶ 6. And Keller Lenkner recently disclosed that 9 claimants "have elected not to move forward." Dkt. 256 at 1 n.1.

Postmates also has learned that multiple law firms distinct from Keller Lenkner claim to represent about 586 Petitioners in separate arbitration proceedings against Postmates. Specifically, two Petitioners filed arbitration demands against Postmates more than a year ago through separate counsel. Manthripragada Decl. ¶ 32. Postmates paid the filing fees for those two arbitrations, and those arbitrations have commenced. *Id.* Yet, Keller Lenkner filed demands seemingly on those two Petitioners' behalf, asserting claims that are identical or substantially similar to the claims they previously asserted. *Id.* And Keller Lenkner and AAA have demanded that Postmates pay filing fees for these individuals *again*. *Id.* Postmates does not know who actually represents these two Petitioners, but it makes no sense for Postmates to pay fees twice for the same arbitration. *Id.*

Moreover, a separate law firm recently told Postmates that it represents 8,964 claimants, and threatened to file arbitration demands on behalf of each. *Id.* That firm provided Postmates with a list of each purported claimant's name. *Id.* That list includes the names of 584 Petitioners here, and a total of 1,368 names that also appear on a client list provided by Keller Lenkner in October 2019 for purposes of demanding data for its purported California clients. *Id.* Postmates cannot guarantee that each overlapping name corresponds to the same person, but that so many names match raises serious questions about who actually represents these individuals. *Id.* For example, do both law firms actually represent these individuals in their pursuit of identical claims? Or does neither law firm actually represent them? Either scenario raises a host of ethical questions that must be explored.[1]

**D.     Petitioners Refuse To Commence Any Arbitrations Unless Postmates Pays All Fees**

The Court's Order implicitly directed the parties to work with AAA to develop a path forward.

---

[1] Postmates submits that the Court may find the Declaration of Professor Richard Zitrin, professor of legal ethics at the University of California, Hastings College of the Law, informative as to the ethical issues raised by Keller Lenkner's mass arbitration strategy. *See Abernathy v. DoorDash, Inc.*, No. 3:19-cv-07545-WHA, Dkt. 35-1 (N.D. Cal. Nov. 22, 2019).

As a result, Postmates sent AAA a letter on October 25, 2019, proposing that individual arbitrators resolve demand sufficiency and filing fee disputes for fifty randomly-selected claimants, and address the merits for any claimant who submitted a sufficient demand. Manthripragada Decl. ¶ 4, Ex. B at 7. Under this proposal, the parties would have "fifty arbitrations proceeding at all times." *Id.*

AAA never voiced any objection to Postmates' proposal, and actually stated that it is "available to work with the parties where they are able to reach agreement" on a method for administering the arbitrations, "such as moving forward on a rolling basis." Manthripragada Decl. ¶ 7, Ex. D at 4.

But Keller Lenkner rejected Postmates' proposal, asserting that it would not consent to a "cap" on the number of arbitrations that AAA would administer at a given time. *Id.* ¶ 5, Ex. C at 7. Thus, Keller Lenkner insisted that Postmates "submit payment for each Claimant's individual arbitration without further delay." *Id.*, Ex. C at 7. Keller Lenkner did not offer any proposal for how arbitrations may commence, aside from demanding that Postmates immediately pay all filing fees upfront—even though the Court had not ordered Postmates to do so. Dkt. 253 at 12–13.

The parties traded emails with AAA over the next several weeks. Postmates repeatedly made clear that it is "ready, willing, and able to conduct truly individualized arbitrations in a manner that is workable and manageable for all involved." Manthripragada Decl. ¶ 9, Ex. A at 18; *see also id.*, Ex. A at 16. And Postmates reiterated its proposal that individual arbitrators begin considering demand sufficiency issues for fifty claimants. *Id.*, Ex. A at 18. Postmates also invited Petitioners to offer a counter-proposal for how arbitrations could begin, and urged AAA to propose a solution or explain how 5,255 individual arbitrations could realistically proceed at the same time. *Id.*, Ex. A at 16.

Although AAA did not explain how it would administer 5,255 arbitrations at the same time, it reiterated its openness to proceed in any manner agreed to by the parties. *Id.*, Ex. A at 14, 16. Yet, Keller Lenkner continued to insist that *no* arbitrations could proceed unless Postmates paid fees for *all* arbitrations upfront. *Id.* at 13, 17–18. Thus, Keller Lenkner would not allow fifty of its clients to begin arbitrating, and proclaimed that "[t]he *only next step* to which [it] will agree is for Postmates to pay the filing fees AAA has determined are required." *Id.* at 17–18 (emphasis added); *see also id.* at 13.

AAA stated that it would close the cases if the parties could not agree on a process for administering the arbitrations and payment was not received. *Id.*, Ex. A at 14. In response, Postmates

wrote to clarify that "AAA has no objection to Postmates' proposal," that "the reason AAA will not administer the demands according to Postmates' proposal is that Claimants' counsel will not agree" unless all fees are paid, and that "AAA will not propose any alternative process to commence arbitrations for the same reason." *Id.*, Ex. A at 13. Rather than clarify, AAA closed its files after "the parties were unable to agree on *how* all of Claimants' demands could proceed." *Id.*, Ex. A at 11.

Postmates promptly "request[ed] that AAA reopen the arbitration demands," and "offer[ed] to remit payment for 50 randomly-selected arbitrations" so that the parties could "begin arbitrating expeditiously and in a manner that allows them to better understand how AAA intends to administer all 5,000-plus arbitrations simultaneously." *Id.*, Ex. A at 10. Postmates also asked AAA—no less than *six* times—to explain how it would administer all 5,255 arbitrations at the same time, and to share a "list of all arbitrators that AAA would make available for arbitration of these matters … if Postmates were to pay filing fees." *Id.* at 5, 8, 10–11. But AAA would not provide any information establishing that it is truly capable of administering 5,255 arbitrations at the same time. And Keller Lenkner would not deviate from its position that Postmates was obligated to pay all fees immediately. *Id.* at 5–7.

E. **The Parties Agree To Begin Fifty Arbitrations While Negotiations Continue**

During an administrative conference held on December 6, 2019, the parties finally agreed that Postmates would remit payment so that fifty arbitrations may begin. *Id.* ¶ 24. But Keller Lenkner refused to allow all the matters to be reopened, and the AAA administrator refused to provide the requested information because AAA had not been paid. *Id.* To address that concern, Postmates offered to pay AAA for its time gathering the information, and for an additional hearing on Postmates' requests for information and for the reopening of all the matters. *Id.* The administrator stated that Postmates may submit a formal request, which would be reconsidered and escalated within AAA. *Id.*

Postmates submitted its formal request on December 10, 2019, in which it requested specific categories of information, and identified fifty claimants for whom arbitrations shall commence. *Id.* ¶ 25, Ex. E. Postmates also identified 1,299 claimants who clearly have no claims: 715 claimants who never accepted the Fleet Agreement, 480 who did no work on Postmates' platform, 95 whose claims had been released in *Singer*, and 9 who "elected not to move forward." *Id.* Postmates explained that there is no reason for AAA to assess fees for these claimants. *See id.* In response, Keller Lenkner did

not deny that a significant number of claimants have no claims, but seemingly suggested that they should proceed to arbitration anyway. *Id.* ¶ 28. As of this filing, discussions with AAA are ongoing, and Postmates is awaiting an invoice for the fifty arbitrations and a hearing on its requests. *Id.* ¶ 31.

### III.  STATEMENT OF THE ISSUE TO BE DECIDED (L.R. 7-4)

The Court "denie[d] Petitioners' request for an order directing Postmates to tender payment of outstanding and future arbitration fees," and explained that the arbitrator has "exclusive authority to determine … how the arbitration[s] should be conducted" and to provide "remedies for non-payment" of arbitration fees. Dkt. 253 at 12–13. Should the Court decline to hold Postmates in civil contempt because all disputes relating to arbitration fees must be resolved by an arbitrator, not a AAA administrator or this Court, and Postmates has, at a minimum, substantially complied with the Order?

### IV.  LEGAL STANDARD

"Civil contempt is appropriate only when a party fails to comply with a court order that is both specific and definite." *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989); *see Reno Air*, 452 F.3d at 1130. "[T]he moving party has the burden of showing by clear and convincing evidence that the [nonmoving party] violated a specific and definite order of the court." *FTC v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004). The moving party must also prove by clear and convincing evidence that the purported violation was "beyond substantial compliance" with the order and "not based on a good faith and reasonable interpretation of the order." *Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Authority*, 564 F.3d 1115, 1123 (9th Cir. 2009); *see United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010). "Any doubts as to whether these requirements have been met in a particular case must be resolved in favor of the party accused of the civil contempt." *O'M and Assoc., LLC v. Ozanne*, 2011 WL 2160938, at *4 (S.D. Cal. June 1, 2011); *see SolarCity Corp. v. Doria*, 2018 WL 4204024, at *9 (S.D. Cal. Sept. 4, 2018) (same).

### V.  ARGUMENT

**A.     Postmates Has Not Violated A "Specific And Definite" Order**

Petitioners cannot establish by clear and convincing evidence that Postmates violated a "specific and definite" order, and thus Postmates may not be held in contempt. *Balla*, 869 F.2d at 465.

Petitioners argue that "Postmates has violated this Court's Order by failing to pay the fees

required by AAA to commence arbitration." Dkt. 256 at 14.  But Petitioners already requested an order requiring Postmates to pay all arbitration filing fees (Dkt. 4 at 8, 14) and the Court *explicitly denied* Petitioners' request (Dkt. 253 at 12–13).  The Court explained that it lacks "authority to compel Postmates to pay the arbitrator's fees," and therefore "***decline[d] to enter an order compelling Postmates to pay outstanding and future arbitration fees***." Dkt. 253 at 12 (emphasis added).

Far from specifically and definitively ordering Postmates to pay arbitration filing fees, the Court specifically and definitively *declined* to order Postmates to pay such fees.  Petitioners ignore this aspect of the Court's Order, but it is fatal to their motion.  Indeed, it makes no sense that an order specifically denying to compel a party to pay filing fees could lead to a contempt finding for not paying filing fees.

Instead of trying to reconcile their position with the Court's ruling, Petitioners contend that Postmates should be held in contempt because:  the Court ordered the parties to arbitrate according to the Mutual Arbitration Provision; AAA administratively determined that Petitioners have done everything required of them to begin arbitrations; AAA administratively determined that Postmates must pay more than $10 million in filing fees upfront, absent an agreement on an alternative process for administering the arbitrations; Petitioners have declined to agree to any alternative process; and Postmates did not "comply with AAA's administrative [fee] determination." Dkt. 256 at 1–3, 10–14.

But again, Petitioners ignore that the Court expressly "denie[d] Petitioners' request for an order directing Postmates to tender payment of outstanding and future arbitration fees." Dkt. 253 at 13.  And they ignore that the Court concluded that the *arbitrator*—not a AAA administrator or the Court—has "exclusive authority" to determine "how the arbitration[s] should be conducted" and to resolve all disputes relating to filing fees.  *Id.* at 12–13.  Indeed, AAA's rules "include provisions regarding the payment of arbitration fees," and "the available remedies for non-payment." *Id.*  Thus, instead of running to court, Petitioners should have availed themselves of the remedies and procedures expressly provided in AAA's rules.  For instance, Petitioners could have "advance[d] the required payment" or sought to suspend proceedings while the parties reached an agreement on how arbitrations would proceed.  AAA Comm. Arb. Rules, Rule R-57.  But Petitioners did neither, and instead urged AAA to close the matters so it could return to Court despite its clear ruling.  Manthripragada Decl., Ex. A at 17.

Throughout their motion, Petitioners blur the distinction between an arbitration organization

and an arbitrator, and argue that "a court must enforce [an arbitration] organization's determinations regarding how arbitration should proceed." Dkt. 253 at 12.  Petitioners rely on *Lifescan v. Premier Diabetics Services., Inc.*, 363 F.3d 1010, 1011–13 (9th Cir. 2004), but there a panel of three arbitrators had been appointed in accordance with the parties' agreement.  Thus, it was the arbitrators—not a AAA administrator—who required the payment of fees. *Id.* at 1011.  The court emphasized that AAA's rules "give *arbitrators* the authority to apportion fees and expenses as appropriate," and that "the *arbitrators* acted well within their discretion" by requiring the payment of fees. *Id.* at 1012–13.  Here, an arbitrator has yet to weigh in on the parties' dispute; rather, all decisions have been made by a AAA administrator.

Absent a specific and definite order requiring Postmates to pay arbitration filing fees, Postmates cannot be held in contempt for not paying filing fees. *Reno Air*, 452 F.3d at 1130.  The court's decision in *General Teamsters Union Local No. 439 v. Sunrise Sanitation Services, Inc.*, 2006 WL 2091947 (E.D. Cal. July 26, 2006), is instructive.  There, the court ordered the parties to arbitrate a labor grievance. *Id.* at *1.  The defendant declined to proceed with arbitration, arguing that it was not bound by the arbitration agreement in question. *Id.*  After several months, the plaintiff filed a motion to hold the defendant in contempt "for its failure to proceed to arbitration in a timely manner." *Id.*  The court declined to issue sanctions because its order to arbitrate "did not specify a time for compliance." *Id.* at *7.  Because the order did not establish a deadline for the commencement of arbitration, "the fact that arbitration is still not underway nearly three months later is not in violation of a specific and definite court order." *Id.*  Here, not only did the Court decline to set a deadline for the commencement of arbitration, it expressly declined to order Postmates to pay filing fees in the first place.

The contrast between parties' conduct following the Court's Order shows that Petitioners truly seek a modification of the Order.  The Court declined to "direct[] each Petitioner to refile his or her demand as an individual arbitration demand containing additional factual information and legal authorities." Dkt. 253 at 12.  But when Petitioners refiled their demands, they did not correct any of these deficiencies or include the amount in controversy.  Manthripragada Decl. ¶ 3, Ex. A at 23.  Postmates did not respond by running back to Court and arguing that Petitioners should be held in contempt for not arbitrating according to the Fleet Agreement.  Nor could it, given the absence of a "specific and definite order" requiring Petitioners to refile their demands in a specific manner.

Yet, that is exactly what Petitioners have done here—they have returned to Court, arguing that Postmates should be held in contempt for not doing something that the Court explicitly declined to order it to do. In short, nonpayment of all filing fees is not a violation of a specific and definite order.

## B. Postmates Has Substantially Complied With The Court's Order In Good Faith

Postmates may not be held in contempt for the independent reason that Postmates has repeatedly sought to commence arbitrations based on a reasonable and good-faith interpretation of the Court's Order, and the parties are currently on the brink of commencing at least fifty arbitrations.

### 1. Postmates Has Substantially Complied with the Court's Order to Arbitrate in Accordance with the Terms of the Fleet Agreement

"'Substantial compliance' with [a] court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Any doubts as to whether Postmates has substantially complied with the Court's Order must be resolved in Postmates' favor. *See SolarCity*, 2018 WL 4204024, at *9; *O'M and Assoc.*, 2011 WL 2160938, at *4.

The parties agree that Petitioners must arbitrate their claims. The Court granted the parties' cross-motions "insofar as they seek an order compelling arbitration in accordance with the Mandatory Arbitration Provision," but the Court declined to dictate the "specific manner" in which arbitrations shall proceed. Dkt. 253 at 12–13. Thus, the parties' dispute concerns only *how* (not *whether*) arbitrations should proceed. On this question, the Court held that "it is within the arbitrator's exclusive authority to determine … how the arbitration[s] should be conducted." Dkt. 253 at 12. For instance, it is up to an arbitrator (not an administrator) "to determine the sufficiency of Petitioners' arbitration demands," and to resolve all questions surrounding "the payment of arbitration fees"—which, as the Court recognized, "is a procedural condition precedent to be decided by the arbitrator." *Id.* at 12–13.

Consistent with the Court's ruling, Postmates has repeatedly requested that an arbitrator resolve threshold disputes concerning demand sufficiency and filing fees. Specifically, on October 25, 2019, Postmates proposed that fifty randomly-selected arbitrations begin so individual arbitrators could begin resolving threshold questions. Manthripragada Decl. ¶ 4, Ex. B at 8. Under this proposal, "[i]f the arbitrator decides that the demand is sufficient, the arbitrator may order Postmates to pay its share of

1  the filing fees and retain the arbitration for determination on the merits." *Id.*  Postmates explained that
2  this process would repeat itself so that fifty arbitrations are proceeding at any given time. *Id.*  Postmates
3  reiterated this proposal again on November 20, 25, and 26. *Id.*, Ex. A at 11, 13, 18.

4  More recently, on November 27, 2019, Postmates requested that AAA reopen its files, and
5  offered "to remit payment for 50 randomly-selected arbitrations" so that the parties could "begin
6  arbitrating expeditiously and in a manner that allows them to better understand how AAA intends to
7  administer all 5,000-plus arbitrations simultaneously." *Id.* ¶ 18, Ex. A at 10.  Indeed, Postmates
8  requested that AAA send Postmates an invoice so that fifty arbitrations may begin without delay. *Id.*

9  Postmates explained that it is open to negotiating these proposals, and invited Petitioners and
10 AAA to offer proposals of their own. *Id.*  But AAA never offered a proposal.  And Keller Lenkner
11 rejected Postmates' proposals, and refused to offer a single solution of its own—even though AAA
12 stated that it would administer arbitrations in any manner agreed to by the parties. *Id.*, Ex. A at 14, 16.
13 Instead, Keller Lenkner insisted that "[t]he only next step to which [it] will agree is for Postmates to
14 pay the filing fees." *Id.* ¶ 10, Ex. A at 17–18.  Thus, even though the Court declined to order Postmates
15 to pay filing fees, and even though Keller Lenkner has no legitimate interest in how or when AAA gets
16 paid, Keller Lenkner took the position that *no* arbitrations could properly commence unless over $10
17 million in filing fees for *all* 5,255 arbitrations have been paid.

18 Seemingly recognizing that its position cannot be squared with this Court's Order, Keller
19 Lenkner finally agreed on December 6, 2019 that fifty arbitrations may begin.  *Id.* ¶ 24.  Postmates
20 promptly submitted a list of fifty claimants whose arbitrations shall commence, and is currently waiting
21 for AAA to send it an invoice for the filing fees attributable to those claimants. *Id.* ¶¶ 25, 31.

22 Petitioners argue that Postmates' substantial efforts to comply with the Court's Order actually
23 constitute attempts to circumvent it.  Petitioners assert that Postmates has "refus[ed] to arbitrate with
24 even a single Petitioner," but that is false.  Dkt. 256 at 10–11.  Postmates has repeatedly offered to
25 conduct fifty arbitrations at a time (Manthripragada Decl., Exs. A at 5–6, 8, 10–11, 13, 18; B at 8), and
26 the parties will, in fact, commence fifty arbitrations as soon as AAA invoices Postmates  (*id.* ¶ 31).

27 Petitioners also characterize Postmates' proposals as "[a]sking more than 99 percent of
28 Petitioners to abandon their hard-won rights," and complain that the proposal would require claimants

"to wait in line." Dkt. 256 at 11. But Postmates has not asked Petitioners to abandon anything. Rather, it has proposed solutions that would allow fifty arbitrations to begin expeditiously and in a methodical manner, with no prejudice whatsoever to any other Petitioner's claims. To be sure, some arbitrations would necessarily begin before others. But that is because Keller Lenkner chose to file a simultaneous arbitration demand on behalf of 5,255 claimants. And neither AAA nor Keller Lenkner has ever explained how—let alone *whether*—5,255 arbitrations could possibly proceed at the same time.

Indeed, Postmates has repeatedly asked AAA to explain how it intends to administer 5,255 individual arbitrations at the same time, and requested that AAA send the parties a list of all the arbitrators it would make available for arbitrating these matters and their availability over the next year. Manthripragada Decl., Ex. A at 5–6, 8, 10–11. Postmates requested this information to determine whether AAA could actually administer 5,255 arbitrations at the same time. *Id.*, Ex. A at 8, 11. This was certainly a reasonable request given the amount in filing fees at stake; the necessary limitations on AAA's ability to administer 5,255 arbitrations at the same time; and the fact that 1,299 claimants have no claims and thus no business before AAA. *Id.* ¶ 25; Campbell Decl. ¶¶ 4–6. On December 10, 2019, Postmates submitted a formal request for information and for the reopening of all of the matters, and the AAA administrator stated that Postmates' requests would be reconsidered and escalated within AAA. Manthripragada Decl. ¶ 25, Ex. E. But to date, AAA has not shown that it is truly capable of administering 5,255 arbitrations at the same time. *See id.* ¶ 24, Ex. A at 2.

Petitioners cite several cases purporting to support the issuance of a contempt order, but all their cases are inapposite. For example, in *Evans v. Affiliated Computer Services Inc.*, the court granted a contempt motion after the plaintiff delayed initiating arbitration for several months, engaged in "bad faith efforts to recuse" the arbitrator, and made "baseless threats to sue the arbitrator she selected." No. 13-7407-JFW, Dkt. 74 (C.D. Cal. Jan. 9, 2015). In *LaPrade v. Kidder Peabody & Co.*, plaintiff's counsel sought to evade an order compelling arbitration by filing an action in state court on the eve of arbitration, seeking to stay the arbitration or disqualify the arbitration panel. 146 F.3d 899, 901 (D.C. Cir. 1998). And in *Legair v. Circuit City Stores, Inc.*, claimant's counsel openly disrupted an existing arbitration by failing to conduct any discovery after requesting and receiving an extension to conduct discovery, filing motions that "brazenly accused [the arbitrator] of bias," and ultimately refusing to

appear at the arbitration altogether. 2005 WL 1865373, at *4–5 (S.D. Ohio July 26, 2005). Petitioners' cases thus stand for the unremarkable proposition that parties compelled to arbitration may be held in contempt for "actively [seeking] to avoid arbitration" and openly challenging the authority of the district court, the arbitrator, or both. *U.S. Titan, Inc. v. Guangzhou Zhen HUA Shipping Co., Ltd.*, 2003 WL 23309445, at *3–5 (S.D.N.Y. Sept. 26, 2003).

But here, Postmates has actively sought to *commence* arbitration by making proposals that would allow individual claims to be heard by individual arbitrators. And fifty arbitrations are on the verge of beginning. Thus, Postmates has, at a minimum, substantially complied with the Court's Order.

### 2. Postmates' Conduct Is Based on a Good-Faith, Reasonable Interpretation of the Court's Order

Postmates may not be held in contempt for the additional reason that its conduct is "based on a good faith and reasonable interpretation" of the Court's Order. *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982); *see also Labor/Cmty. Strategy Ctr.*, 564 F.3d at 1123. To determine whether a party's conduct was based on a good-faith and reasonable interpretation, courts analyze the literal language of the order and resolves all ambiguity in favor of the accused party. *See Labor/Cmty. Strategy Ctr.*, 564 F.3d at 1123–24; *Vertex Distrib.*, 689 F.2d at 890–91.

In *Labor/Community Strategy Center*, the district court ordered the Los Angeles Metropolitan Transit Authority ("MTA") to purchase a certain number of buses and add a certain number of "service hours" to the bus system to reduce congestion. 564 F.3d at 1123. MTA purchased buses and added service hours, but petitioners argued that MTA had violated the court's order by "failing to allocate all of the newly purchased buses and additional service hours to peak time periods." *Id.* The district court denied petitioners' motion for contempt sanctions, and the Ninth Circuit affirmed. *Id.* at 1124. The Ninth Circuit held that the court's order contained "no express language directing MTA" to allocate all new buses to "peak time periods," and did "not literally state that the additional hours and buses must be added during peak times." *Id.* at 1123–24. Thus, "even if MTA's interpretation of the Final Order were ultimately deemed incorrect, it was not unreasonable." *Id.* at 1124.

Similarly, here, the Court's Order does not "literally state" that Postmates is required to pay arbitration filing fees upfront—in fact, the Court explicitly declined to do so. Dkt. 253 at 12–13.

Petitioners argue that the Order requires Postmates to submit to "AAA's administrative determinations" (Dkt. 256 at 14), but the Court did not state that Postmates must comply with the decisions of an administrator. On the contrary, the Court made clear that "it is within the arbitrator's exclusive authority to determine the sufficiency of Petitioners' arbitration demands," and to resolve all issues surrounding "the payment of arbitration fees." Dkt. 253 at 12–13. Postmates interpreted the Order to mean that all disputes about demand sufficiency and filing fees must be resolved by an arbitrator—not a AAA administrator. Thus, when Petitioners refused to submit even a single claim to an arbitrator for determination of these threshold issues, Postmates believed that no obligation to pay filing fees had been triggered. Postmates respectfully submits that this is a reasonable and good-faith interpretation given the literal language of the Court's Order. *See Labor/Cmty. Strategy Ctr.*, 564 F.3d at 1123–24.

To the extent the Court's Order is ambiguous as to Postmates' obligation to pay filing fees, it "would be an invalid exercise of judicial authority" to hold Postmates in contempt. *Vertex Distrib.*, 689 F.2d at 889–91. Thus, any ambiguity in the Court's Order concerning Postmates' obligation to the pay all filing fees means Postmates may not be held in contempt for not paying all filing fees.

### C.     Postmates May Not Be Held In Contempt While It Seeks A Stay Pending Appeal

Postmates may not be held in contempt because it is seeking a stay of the Court's Order pending appeal. Dkt. 261. "[A] district court cannot find a party in contempt because it has not complied with an order until all attempts to stay that order have been exhausted." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 n.6 (9th Cir. 1992); *see also In re Ragar*, 3 F.3d 1174, 1180 (8th Cir. 1993) ("[a] court's order must, in all but the most extreme cases, be obeyed unless the party against whom the order is directed can obtain a stay"); *Saffady v. Dunn*, 2009 WL 1868032, at *4 (E.D. Mich. June 26, 2009); *In re Carrico*, 206 B.R. 447, 454 (S.D. Ohio 1997). After all, the ability to move for a stay "would be meaningless if … parties could be held in contempt before the trial court was given an opportunity to consider such motions." *Gen. Teamsters Union*, 2006 WL 2091947, at *7. Because Postmates has sought a stay, any ruling on the Order to Show Cause would be premature. *See id.* (denying contempt motion where respondent sought stay of order compelling arbitration).

## VI.  CONCLUSION

Postmates respectfully submits that it has complied with the Court's October 22, 2019 Order.

Dated: December 11, 2019

                THEANE EVANGELIS
                BRADLEY J. HAMBURGER
                DHANANJAY S. MANTHRIPRAGADA
                JAMES P. FOGELMAN
                MICHELE L. MARYOTT
                GIBSON, DUNN & CRUTCHER LLP


                By:   /s/ *Theane Evangelis*
                                   Theane Evangelis

                Attorneys for Respondent POSTMATES INC.