Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

*Attorneys for Petitioners*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| JAMAL ADAMS, et al.,<br><br>   *Petitioners*,<br><br>vs.<br><br>POSTMATES INC.,<br><br>   *Respondent*. | Case No: 4:19-cv-03042-SBA<br><br>**PETITIONERS' REPLY TO POSTMATES'S RESPONSE TO ORDER TO SHOW CAUSE RE CONTEMPT**<br><br>**Judge:** Hon. Saundra B. Armstrong |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ....................................................................................................... 2

A. Postmates Has Violated the Specific and Definite Terms of the Court's Order. .......... 2

B. Postmates's Attempts to Justify Its Default Ignore the Plain Terms of the Court's Order, and Would Reduce the Order to a Nullity. ......................................................... 5

C. Postmates Did Not Engage in Substantial Compliance With, or Rely on a Reasonable Interpretation Of, the Court's Order. ........................................................................... 7

D. Postmates's Thirteenth-Hour Stay Motion Is No Basis for Avoiding Contempt. ........ 9

E. This Court Should Give Postmates a Grace Period to Comply with AAA's Requirements and Then Impose Escalating Sanctions. .............................................. 10

III. CONCLUSION .................................................................................................. 10

PETITIONERS' REPLY TO POSTMATES'S RESPONSE TO
ORDER TO SHOW CAUSE RE CONTEMPT
CASE NO. 4:19-cv-03042-SBA

# TABLE OF AUTHORITIES

**CASES**                                                                                                                            **PAGE(s)**

*Aerojet-Gen. Corp. v. Am. Arbitration Ass'n*,
  478 F.2d 248 (9th Cir. 1973) ............................................................................................6

*Bradford Techs., Inc. v. NCV Software.com*,
  No. 11-cv-04621-EDL, 2013 WL 75772 (N.D. Cal. Jan. 4, 2013) ..........................................8

*Brown v. Dillard's, Inc.*,
  430 F.3d 1004 (9th Cir. 2005) ......................................................................................1, 3

*C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*,
  532 U.S. 411 (2001) ............................................................................................................3

*In re Cintas Corp. Overtime Pay Arbitration Litig.*,
  No. 06-c-1781-SBA, 2009 WL 1766595 (N.D. Cal. June 22, 2009) ......................................10

*Clemente v. United States*,
  766 F.2d 1358 (9th Cir. 1985) .............................................................................................9

*Donovan v. Mazzola*,
  716 F.2d 1226 (9th Cir. 1983) .............................................................................................9

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  10 F.3d 693 (9th Cir. 1993) .............................................................................................8, 9

*Gen. Teamsters Union Local No. 439 v. Sunrise Sanitation Servs., Inc.*,
  No. CIV. S-05-1208-WBS-JFM, 2006 WL 2091947 (N.D. Cal. July 26, 2006) ......................9

*Gidding v. Anderson*,
  No. 07-cv-4755-JSW-WDB, 2009 WL 10695642 (N.D. Cal. July 6, 2009) ............................8

*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*,
  774 F.3d 935 (9th Cir. 2014) ................................................................................................8

*Kadant Johnson Inc. v. D'Amico*,
  No. 3:12-MC-00126-SI, 2012 WL 2019648 (D. Or. June 5, 2012) ......................................10

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
  363 F.3d 1010 (9th Cir. 2004) ..............................................................................2, 3, 5, 6

*Maness v. Meyers*,
  419 U.S. 449 (1975) ............................................................................................................9

*Perciballi v. Ng*,
  No. 08-cv-01168-JVS-ANX, 2012 WL 13070731 (C.D. Cal. Mar. 26, 2012) ......................10

**CASES (cont.)**                                                                                              **PAGE(s)**

*Pre-Paid Legal Servs., Inc. v. Cahill*,
    786 F.3d 1287 (10th Cir. 2015) ............................................................................................6

*Richmark Corp. v. Timber Falling Consultants*,
    959 F.2d 1468 (9th Cir. 1992) ..............................................................................................9

*Salimi v. BMW Fin. Servs. NA, LLC*,
    No. 12-cv-01754-JSW, 2017 WL 4570367 (N.D. Cal. Sept. 29, 2017) ................................8

*Sink v. Aden Enters., Inc.*,
    352 F.3d 1197 (9th Cir. 2003) ..............................................................................................3

*United Computer Sys., Inc. v. AT & T Corp.*,
    298 F.3d 756 (9th Cir. 2002) ................................................................................................6

*United States v. Tervort*,
    No. 07-cv-01295-OWW-SMS, 2008 WL 5273492 (E.D. Cal. Dec. 18, 2008) .....................8

*Williams v. Tully*,
    No. 02-cv-05687-MMC, 2005 WL 645943 (N.D. Cal. Mar. 18, 2005) ................................6

**RULES**

American Arbitration Association Commercial Rules,
    Rule 2 ....................................................................................................................................3
    Rule 56 ............................................................................................................................2, 5, 6
    Rule 8 ................................................................................................................................2, 6

## I.   INTRODUCTION

This Court ordered Postmates to arbitrate with every Petitioner individually. Order at 13. The Court declined to decide either side's arguments about the fees to be paid or the process by which Postmates must arbitrate. *Id.* at 12–13. The Court expressly stated that those issues must instead be submitted to the arbitrator, as required by the AAA Commercial Rules. *Id.* Postmates knows full well the repercussions of this Court's Order. That is why it has noticed an appeal to the Ninth Circuit. Postmates has every right to appeal a decision it does not like. What it cannot do is violate this Court's Order—which remains in full force—and then claim that the Order actually required it to do nothing concrete at all.

Postmates does not dispute the following facts:

- The AAA Rules are incorporated into the parties' arbitration agreements;
- Those rules give AAA the authority to assess filing fees and to interpret and apply its own rules;
- AAA exercised that authority, requiring Postmates to pay an individual filing fee to commence each Petitioner's arbitration;
- Postmates refused to comply with AAA's administrative determinations; and
- Postmates's refusal caused AAA to close Petitioners' arbitrations (again).

Those undisputed facts are all that is required to show that Postmates should be held in contempt. Under controlling precedent, a party breaches its obligation to arbitrate when its failure to comply with AAA's requirements causes AAA to refuse to commence arbitration. *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005). This Court ordered Postmates to arbitrate. Postmates's refusal to comply with AAA's requirements caused Petitioners' arbitrations to be closed and is an unambiguous violation of the Court's Order.

Because Postmates cannot show that it complied with AAA's administrative determinations, Postmates is reduced to arguing that this Court's Order did not require Postmates to comply with anything. According to Postmates, after AAA determined what was required for each individual arbitration to proceed, Postmates was free to ignore AAA's determinations. That is obviously wrong. The Order left no doubt that the parties must comply with AAA's

determinations, including as to filing fees. The Order expressly cited AAA's authority to require the payment of fees under Commercial Rule 56. And it further cited *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012–13 (9th Cir. 2004)—in which the Ninth Circuit conclusively deferred to AAA's determination regarding the parties' fee obligations—explaining that "the AAA Commercial Arbitration Rules confer the arbitrator with discretion regarding the payment of arbitration fees." Order at 13.

Postmates devolves further into absurdity by claiming this Court's Order was merely an invitation for the parties to confer about an alternative process "in the hopes that the parties and AAA c[ould] reach agreement on *how* all the arbitrations may proceed." Stay Mot. at 1. If Postmates's reading were correct, the Order would make no sense. The Order compelled the parties to arbitration; it did not rest on "hopes" that arbitration might one day happen. And as the Order emphasized, the parties already agreed on a process: the process set forth in the Commercial Rules, which give each Petitioner a right to proceed without delay and require Postmates to submit filing fees before AAA will commence arbitrations. Postmates's continued refusal to respect AAA's decisions leaves at least 5,205 Petitioners with no hope of proceeding to arbitration absent further judicial intervention. Postmates's own arguments make clear that it will not promptly commence arbitration with every Petitioner unless this Court forces it to comply with its contractual obligations. This Court should hold Postmates in contempt.

## II.   ARGUMENT

**A.   Postmates Has Violated the Specific and Definite Terms of the Court's Order.**

The Court ordered Postmates to arbitrate with each Petitioner under the AAA Commercial Rules. Order at 13 ("[T]he parties are obligated to arbitrate Petitioners' misclassification claims and are hereby ordered to do so."); *id.* at 12 ("[T]he AAA Commercial Arbitration Rules shall govern any arbitration between the parties.").

The Court also made clear that AAA has exclusive authority to determine what each party must do to commence arbitration under the AAA Rules. Rule 56—which the Court cited in its Order, *see id.* at 13—states that AAA may "require the parties to deposit" administrative fees. And Rule 8 provides that, before an individual arbitrator is appointed, the Rules "shall be interpreted

and applied by the AAA." Those Rules are binding on Postmates. *See C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.,* 532 U.S. 411, 419 n.1 (2001) (when specified by contract, AAA Rules "are not secondary interpretive aides that supplement [the] reading of the contract; they are prescriptions incorporated by the express terms of the agreement itself"). The Court underscored that AAA's determinations are binding, citing *Lifescan*, 363 F.3d at 1012–13, as holding that "the AAA Commercial Arbitration Rules confer the arbitrator with discretion regarding the payment of arbitration fees." Order at 13. And the Court held that "payment of arbitration fees . . . is a procedural condition precedent to be decided by the arbitrator." *Id.*

Postmates's failure to comply with AAA's requirements violates the clear and definite terms of the Court's Order. Controlling precedent holds that a party defaults on its obligation to arbitrate when its failure to satisfy its fee obligations causes the arbitral forum to close the arbitration. *Brown*, 430 F.3d at 1013; *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1199–1200 (9th Cir. 2003). This well-established rule reflects common sense. Before AAA has closed an arbitration, it retains administrative authority over the parties and will direct them to take the necessary steps to commence arbitration. *See* Commercial Rule 2. But after AAA closes an arbitration, AAA will no longer take steps to commence the arbitration. *See* Declaration of Warren Postman in Support of Petitioners' Motion for an Order to Show Cause ("Postman Decl.") ¶ 8, Ex. A at 20 ("Inasmuch as the closed cases are not pending before AAA, we will not consider or respond to any further correspondence on those cases.").

After Petitioners refiled their individual demands on October 22, 2019, AAA determined that each Petitioner had met his or her requirements to proceed with arbitration. Declaration of Ashley Keller in Support of Petitioners' Motion for an Order to Show Cause ("Keller Decl."), Dkt. 257, Ex. B. Applying the plain terms of the AAA Rules, AAA required Postmates to pay its share of the filing fees for each arbitration by November 19, 2019, so that the arbitrations could commence. *Id.* Postmates ignored that determination for weeks—up until the night of the deadline, when it emailed AAA to seek a one-week extension. *Id.*, Ex. G. Only after being threatened with contempt did Postmates try to get AAA and Petitioners to agree to an alternative arbitration process. *See id.*, Exs. J, W. In response, Petitioners stated that they "do not consent to

depart from or delay the individual arbitration process that is required by the parties' contract and AAA rules." *Id.*, Ex. K. After unsuccessfully attempting to obtain a further extension of more than two months, *id.*, Exs. N–P, Postmates failed to pay any filing fees, causing AAA to close the arbitrations, *id.*, Ex. R.

Postmates recognized that AAA's closure of Petitioners' arbitrations placed Postmates in default of its obligations. That is why Postmates desperately tried to get AAA to reopen Petitioners' arbitrations without actually requiring Postmates to move forward with all of them. As part of its campaign, Postmates sent roughly a dozen emails to AAA, many of which involved transparent attempts to distort statements by Petitioners or AAA. *See* Postman Decl., Ex. A. When Postmates mischaracterized Petitioners' position as refusing to proceed with any arbitrations unless Postmates proceeded with all arbitrations, Petitioners' counsel explained:

> If Postmates identified a subset of 50 Claimants and paid its share of the filing fees necessary to move their cases forward, <u>we of course would have no objection to AAA's reopening those Claimants' cases so they could proceed</u>. But Postmates's willingness to proceed with 50 Claimants' arbitrations would not help the remaining Claimants, whose cases have been closed because of Postmates's refusal to pay the fees necessary to commence their arbitrations. Unfortunately, the remaining 5,205 Claimants still would be required to continue to seek judicial relief to force Postmates to arbitrate with them.

*Id.* ¶ 7, Ex. A at 6 (emphasis added).[1] AAA then confirmed that it would not place arbitrations on indefinite hold without Petitioners' consent. *See id.* ¶ 8. Postmates later identified 50 arbitrations for which it claims it will pay filing fees—though as of this filing, it not clear whether those fees have actually been paid. *See id.* ¶¶ 9–10. Regardless, at least 5,205 of Petitioners' arbitrations remain closed. *Id.* ¶ 8. Although Postmates claims that "negotiations with AAA are ongoing," Resp. at 3, and "talks with AAA" are "still live as to the remaining 5,205," Resp. at 2, that is not accurate. On December 13, 2019, AAA made clear that those 5,205 Petitioners' arbitrations

---

[1] Postmates twists the record when it asserts that Petitioners' counsel "continued to insist that *no* arbitrations could proceed unless Postmates paid fees for *all* arbitrations upfront." Resp. at 6. Postmates alters and truncates an email from Petitioners counsel to add the word "all" and eliminate the phrase "so that Claimants' individual arbitrations can commence." *Compare* Keller Decl., Ex. K *with* Resp. at 6. The email was responding to Postmates's proposal to move forward only with 50 Petitioners' arbitrations and <u>place the remaining Petitioners' arbitrations indefinitely on hold</u>. Petitioners' counsel made clear they would welcome moving forward with 50 arbitrations. Postman Decl. ¶ 7.

4
PETITIONERS' REPLY TO POSTMATES'S RESPONSE TO
ORDER TO SHOW CAUSE RE CONTEMPT
CASE NO. 4:19-cv-03042-SBA

"remain closed." Postman Decl. ¶ 8, Ex. A at 20. Postmates's attempts to get AAA and Petitioners to agree to an alternative process did not change that fact. And in that same December 13, 2019 email, AAA informed the parties that, "[i]nasmuch as the closed cases are not pending before AAA, we will not consider or respond to any further correspondence on those cases." *Id*.

In short, Postmates's refusal to comply with AAA's determinations caused AAA to close Petitioners' arbitrations. Postmates breached its obligation to arbitrate with each Petitioner, which was the precise obligation imposed by the Court's Order.

**B.  Postmates's Attempts to Justify Its Default Ignore the Plain Terms of the Court's Order, and Would Reduce the Order to a Nullity.**

Postmates claims it was under no obligation to comply with AAA's administrative determinations regarding filing fees because the Court did not expressly order Postmates to pay filing fees. That is a willful misreading of the Court's Order. To be sure, the Court concluded that it would not itself determine the filing fees required and order Postmates to pay them. Order at 12–13. But the Court made equally clear that AAA was empowered to make that determination. The Court cited Commercial Rule 56, which states that AAA may "require" the parties to pay administrative fees. *Id.* at 13. The Court cited *Lifescan,* 363 F.3d at 1012, for its holding that "the AAA Commercial Arbitration Rules confer the arbitrator with discretion regarding the payment of arbitration fees." *Id*. And the Court held that "the payment of arbitration fees, including related expenses, is a procedural condition precedent to be decided by the arbitrator." *Id*.

In an attempt to avoid the plain meaning of these statements, Postmates contends that AAA has no authority to require it to pay its fees because only an individual arbitrator—whom AAA cannot appoint until Postmates pays its fees—can require Postmates to pay its fees. That semantic dodge does not withstand scrutiny. The Court's Order made clear that the "arbitrator" in this context refers to the arbitral forum—i.e., AAA. The Court described Petitioners' submissions to AAA by stating that "Petitioners have submitted arbitration demands <u>to the designated arbitrator</u>," *id.* at 1, and the Court directed that "Petitioners <u>shall serve a copy of this Order on the arbitrator</u>," *id.* at 13 (emphases added). The Court was well aware that individual arbitrators had not yet been appointed. *See id*. at 4–5. The Order's references to the "arbitrator" were references to AAA.

That is not surprising, as the AAA Rules expressly provide that AAA is the decisionmaker on administrative issues until an arbitrator has been appointed. *See* Commercial Rule 8. For that reason, courts routinely refer to AAA as the "arbitrator" where it is exercising its administrative authority under the AAA Rules. *See, e.g.*, *Aerojet-Gen. Corp. v. Am. Arbitration Ass'n*, 478 F.2d 248, 252 (9th Cir. 1973); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1289 (10th Cir. 2015); *Williams v. Tully*, No. 02-cv-05687-MMC, 2005 WL 645943, at *7 (N.D. Cal. Mar. 18, 2005). Indeed, contrary to Postmates's misleading description of *Lifescan*, Resp. at 10, that case involved a deadline set by AAA and a determination by AAA to close the arbitration if the party responsible for fees did not comply with its deadline. *See Lifescan*, 363 F.3d at 1011 ("The AAA declined to proceed without Premier and suspended the proceedings.").

Postmates's argument not only strains credulity, but also is beside the point. Even if AAA were not an "arbitrator" in this context, the Court's Order made clear that Postmates was required to arbitrate under the AAA Rules, which necessarily means that Postmates must take the steps necessary to commence arbitration at AAA. Under the AAA Rules, arbitration cannot commence unless the parties comply with the authority given to AAA under Commercial Rule 56 to "require the parties to deposit" administrative fees. *See United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 765 (9th Cir. 2002) ("Since the arbitration clause also binds the parties to the rules of the California AAA, UCS will have to abide by these administrative requirements, including the payment of the necessary filing fees, in order to obtain [arbitration].").[2]

Postmates tries to hide its non-compliance with AAA's administrative determinations by complaining that Petitioners refused to help craft an alternative to AAA's plan for how to conduct Petitioners' arbitrations. *See* Resp. at 1, 3, 6, 12. But as the Court recognized, the parties <u>already</u> agreed on a process for conducting individual arbitrations: the process set forth by the AAA Commercial Rules. Order at 12–13. Once AAA determined that Petitioners had met all their filing requirements and directed Postmates to pay its filing fees in order for arbitrations to commence, Petitioners were not required to agree to any alternative process. Postmates's response—that it

---

[2] Postmates cannot claim that the Order was ambiguous because it failed to set a date for performance. *See* Resp. at 10. The Court made clear that Postmates was required to comply with AAA's fee determinations, which includes a specific deadline: the deadline set by AAA.

6
PETITIONERS' REPLY TO POSTMATES'S RESPONSE TO
ORDER TO SHOW CAUSE RE CONTEMPT
CASE NO. 4:19-cv-03042-SBA

1  would not comply with AAA's requirements and instead wanted to proceed with arbitrations for
2  only a small fraction of Petitioners—was not plausibly an attempt to comply with this Court's
3  Order; it was an attempt to avoid compliance with regard to all but 50 Petitioners.
4        If Postmates's reading of the Order were correct, the Order would make no sense.  On
5  Postmates's account, it was not obligated to comply with AAA's administrative determinations.
6  Rather, it was required only to <u>confer</u> with Petitioners "in the hopes that the parties and AAA
7  c[ould] reach agreement on *how* all the arbitrations may proceed."  Stay Mot. at 1.  Because
8  Postmates claims AAA is powerless to require Postmates to submit fees, and because no arbitrator
9  can be appointed until Postmates submits fees, Postmates's position is that no decisionmaker can
10 <u>ever</u> require Postmates to arbitrate on terms other than those it deems acceptable.
11       As the record shows, not even Postmates believes Postmates's story.  If Postmates thought
12 the Court's Order required it to confer with Petitioners "in the hopes" of finding an alternative to
13 what AAA ordered, *id.*, Postmates would have attempted to do so promptly.  But after Petitioners
14 refiled their demands, Postmates did not send a single communication to Petitioners or AAA until
15 the night its fees were due.  Postmates's first communication did not attempt to confer regarding
16 "*how* all the arbitrations may proceed," *id.*, but instead requested an extension of AAA's payment
17 deadline, thereby confirming that Postmates knew fees actually were due.  *See* Keller Decl., Ex.
18 G.  And if Postmates thought it was not required to arbitrate unless it agreed with AAA's process,
19 it would have had no reason to appeal the Court's Order.
20       Petitioners have submitted a complete set of the parties' communications since this Court's
21 Order.  *See* Keller Decl., Exs. V–W (Oct. 22 to Nov. 26); Postman Decl., Ex. A (Nov. 27 to Dec.
22 18).  Those communications show that Postmates did not think the Court's Order left it free to
23 disregard AAA's determinations. Only after Postmates faced the prospect of contempt did it adopt
24 the theory that AAA's deadlines and the Court's Order were effectively precatory.
25 **C.**  **Postmates Did Not Engage in Substantial Compliance With, or Rely on a Reasonable**
26     **Interpretation Of, the Court's Order.**
27       Postmates has willfully frustrated the express purpose of the Court's Order, which was to
28 require Postmates to commence individual arbitration with each Petitioner.  So Postmates cannot

avoid contempt by claiming it substantially complied.  "Substantial compliance with a court order is a defense to civil contempt," where the accused party has merely engaged in a "few technical violations where every reasonable effort has been made to comply."  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).  The Court's Order required Postmates to arbitrate with each Petitioner; belatedly agreeing to arbitrate with 50 Petitioners is not substantial, or even minimal, compliance.  *See Gidding v. Anderson*, No. 07-cv-4755-JSW-WDB, 2009 WL 10695642, at *8 (N.D. Cal. July 6, 2009), report and recommendation adopted, 2009 WL 10695634 (N.D. Cal. Aug. 31, 2009) ("As the authorities make clear, the 'substantial compliance' defense is meant to protect a party who has made every reasonable effort to obey the letter and spirit of a court order but, despite those efforts, has breached its terms in some technical or *de minimis* sense."); *Bradford Techs., Inc. v. NCV Software.com*, No. 11-cv-04621-EDL, 2013 WL 75772, at *7 (N.D. Cal. Jan. 4, 2013) ("'[S]ubstantial compliance' does not encompass serious, direct violations" that "negate[] the central purpose of the [order].").

       Similarly, Postmates cannot claim that it relied in good faith on a reasonable interpretation of the Court's Order.  Courts have "recognized a narrow 'good faith' exception to the general rule that intent is irrelevant in civil contempt proceedings."  *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 953 (9th Cir. 2014).  That "narrow" exception is "based on the well-established rule that a 'vague' order may not be enforced," *id.*; it is therefore reserved for situations in which "the order was so vague or ambiguous that [the accused party's] interpretation of it was reasonable," *Salimi v. BMW Fin. Servs. NA, LLC*, No. 12-cv-01754-JSW, 2017 WL 4570367, at *10 (N.D. Cal. Sept. 29, 2017).  The exception is not available where, as here, a party strains to manufacture ambiguity in an attempt to avoid the central purpose of the order.  *See Inst. of Cetacean Research*, 774 F.3d at 954–55 (imposing contempt where party cited technical ambiguity but failed to seek clarification and adopted an unreasonable interpretation of that ambiguity).  Here, Postmates has willfully misread the Court's Order to avoid the single result the Court ordered: arbitration with each Petitioner.[3]

---

[3] Postmates asserts that some Petitioners "indisputably have no claims."  *See* Resp. at 2–5, 7–8.  But Postmates waived those assertions three times over: it never raised them with AAA when Petitioners first filed their demands, never raised them with this Court in connection with

8
PETITIONERS' REPLY TO POSTMATES'S RESPONSE TO
ORDER TO SHOW CAUSE RE CONTEMPT
CASE NO. 4:19-cv-03042-SBA

1    **D.    Postmates's Thirteenth-Hour Stay Motion Is No Basis for Avoiding Contempt.**

2    Postmates's argument that it "may not be held in contempt because it is seeking a stay of

3    the Court's Order pending appeal," Resp. at 15, misstates the law.  "[A]bsent a stay, [a party] must

4    comply promptly with [an] order pending appeal."  *Maness v. Meyers*, 419 U.S. 449, 458 (1975).

5    In other words, a stay <u>must have been granted</u>, not merely sought, for a party to avoid being held

6    in contempt for violating an order.  *See Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983).

7    The decision in *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 n.6

8    (9th Cir. 1992), is not to the contrary.  In fact, the Ninth Circuit imposed contempt sanctions in

9    that case, and the dicta on which Postmates relies refers to a case involving <u>criminal</u> contempt.  *Id.*

10   (citing *Clemente v. United States*, 766 F.2d 1358, 1367 (9th Cir. 1985)).  In *Clemente*, the Ninth

11   Circuit explained that criminal contempt requires the movant to prove "beyond a reasonable doubt"

12   that a party was in "<u>willful</u> disobedience," and that such a showing could not be made in that case

13   because the alleged contemnor "immediately sought" a stay.  766 F.2d at 1367 (emphasis added).

14   And Postmates's reliance on *Gen. Teamsters Union Local No. 439 v. Sunrise Sanitation Servs.,*

15   *Inc.*, No. CIV. S-05-1208-WBS-JFM, 2006 WL 2091947 (N.D. Cal. July 26, 2006), is misplaced

16   for the same reason.  *See id.* at *7 (denying <u>criminal</u> contempt based on prompt stay motion).

17   Here, the Court has ordered Postmates to show cause why it should not be held in <u>civil</u>

18   contempt; Petitioners do not have to prove willfulness.  *See In re Dual-Deck*, 10 F.3d at 695.  And

19   far from having sought an immediate stay, Postmates tactically waited to file its stay motion until

20   Petitioners' motion to compel or its own "cross-motion," and never raised them with AAA prior
21   to AAA's closing of Petitioners' re-filed demands.  *See United States v. Tervort*, No. 07-cv-01295-OWW-SMS, 2008 WL 5273492, at *4 (E.D. Cal. Dec. 18, 2008) ("A contempt proceeding does
     not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed.").
22   And despite undersigned counsel's repeated offers—since <u>May</u>—to help Postmates identify
     Petitioners in its records and address any other issues, Postmates did not identify a single Petitioner
23   of concern until last week.  *See* Postman Decl. ¶¶ 11–12.  Regardless, Postmates's assertions are
     disingenuous at best.  Postmates appears to have searched its records using only Petitioners' first
24   and last names, refusing to cross-reference email addresses and other information Petitioners have
     provided.  *Id.* ¶ 15.  Thus, Postmates's lists of supposed issues are riddled with inaccuracies.  *See*
25   *id*. ¶ 16.  Furthermore, most of the issues Postmates identifies—such as whether certain Petitioners'
     claims were "released in [a] class action settlement," Resp. at 2—are merits defenses or arguments
26   that must be presented to individual arbitrators.  Finally, Postmates asserts that Petitioners' counsel
     "did not deny that a significant number of claimants have no claims."  Resp. at 7–8.  That is false,
27   and Postmates knows it.  In fact, Petitioners' counsel wrote Postmates's counsel to say that "we
     disagree with your assertions and believe supplemental information will show that the individuals
28   . . . have valid claims."  Postman Decl., Ex. A at 18.

a week <u>after</u> this Court issued the order to show cause.[4]  Moreover, as Petitioners will show in their opposition brief, Postmates's stay motion is meritless.  Indeed, this Court decisively rejected a request for a stay in similar circumstances.  *See In re Cintas Corp. Overtime Pay Arbitration Litig.*, No. 06-c-1781-SBA, 2009 WL 1766595, at *5 (N.D. Cal. June 22, 2009).  This Court should exercise its inherent authority to hold Postmates in contempt notwithstanding its baseless motion to stay.  *See, e.g.*, *Kadant Johnson Inc. v. D'Amico*, No. 3:12-MC-00126-SI, 2012 WL 2019648, at *4 (D. Or. June 5, 2012) (denying a stay pending appeal in part because it reflected "litigation gamesmanship and delay[] tactics," and imposing sanctions for violation of underlying order).

### E.  This Court Should Give Postmates a Grace Period to Comply with AAA's Requirements and Then Impose Escalating Sanctions.

Petitioners respectfully request that Postmates be held in contempt and ordered to comply within one week with the requirements AAA has set to commence each Petitioner's arbitrations.[5]  If Postmates will comply with the Court's order within one week, Petitioners have no objection to the Court rescinding any contempt order.  But if, even then, Postmates continues to flout the Court's Order, Petitioners submit that a daily fine that increases by $10,000 each day is necessary to force a company of Postmates's size and intransigence to comply.  *Cf. Perciballi v. Ng*, No. 08-cv-01168-JVS-ANX, 2012 WL 13070731, at *3 (C.D. Cal. Mar. 26, 2012) ("[T]he Court finds that the threat of an escalating sanction is the only means likely to compel compliance.").

### III.  CONCLUSION

For the foregoing reasons, Postmates should be held in contempt.

---

[4] When Petitioners conferred with Postmates regarding their motion for an order to show cause, Postmates suggested that it intended to file its motion for a stay on December 2.  Postman Decl. ¶ 18.  Postmates's decision to <u>delay</u> its request to stay the Court's Order can only reflect that it hoped to disrupt the Court's consideration of contempt by filing a new motion as late in the process as possible.  The Court should not reward such gamesmanship.  Briefing on the Court's Order to Show Cause is now complete, and contempt is plainly warranted.  The Court need not wait to review full briefing on the stay motion.  Postmates can hardly complain that the Court refused to wait to enforce the plain terms of its Order when it is Postmates that waited for nearly two months before seeking a stay.

[5] Based on AAA's response to Postmates's agreeing to pay filing fees for 50 Petitioners, it is clear that AAA will reopen the remaining arbitrations if Postmates pays the fees it owes.

| | | |
|---|---|---|
| 1 | Dated: December 18, 2019 | Respectfully submitted, |
| 2 | | |
| 3 | Warren Postman (*pro hac vice*) | /s/ Ashley Keller |
| | wdp@kellerlenkner.com | Ashley Keller (*pro hac vice*) |
| 4 | KELLER LENKNER LLC | ack@kellerlenkner.com |
| | 1300 I Street, N.W., Suite 400E | Travis Lenkner (*pro hac vice*) |
| 5 | Washington, D.C. 20005 | tdl@kellerlenkner.com |
| | (202) 749-8334 | Marquel Reddish (*pro hac vice*) |
| 6 | | mpr@kellerlenkner.com |
| 7 | Keith A. Custis (#218818) | KELLER LENKNER LLC |
| | kcustis@custislawpc.com | 150 N. Riverside Plaza, Suite 4270 |
| 8 | CUSTIS LAW, P.C. | Chicago, Illinois 60606 |
| | 1875 Century Park East, Suite 700 | (312) 741-5220 |
| 9 | Los Angeles, California 90067 | |
| 10 | (213) 863-4276 | *Attorneys for Petitioners* |

11
PETITIONERS' REPLY TO POSTMATES'S RESPONSE TO
ORDER TO SHOW CAUSE RE CONTEMPT
CASE NO. 4:19-cv-03042-SBA