Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

*Attorneys for Petitioners*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| JAMAL ADAMS, et al.,<br><br>    *Petitioners*,<br><br> vs.<br><br>POSTMATES INC.,<br><br>    *Respondent*. | Case No:  4:19-cv-03042-SBA<br><br>**PETITIONERS' OPPOSITION TO POSTMATES INC.'S MOTION TO STAY ORDER GRANTING IN PART AND DENYING IN PART CROSS MOTIONS PENDING APPEAL**<br><br>**Judge:** Hon. Saundra B. Armstrong<br>**Date:** February 12, 2020<br>**Time:** 2:00 p.m. |

1

## <u>TABLE OF CONTENTS</u>

I.         INTRODUCTION ................................................................................................. 1

II.       BACKGROUND ................................................................................................. 2

     A.    This Court Orders Postmates to Arbitrate Its Disputes With Petitioners ..................... 2

     B.    Postmates Fails to Comply With AAA's Determinations and Deadlines ................... 3

III.     STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4) ......................................... 5

IV.     LEGAL STANDARD ......................................................................................... 5

V.      ARGUMENT ..................................................................................................... 6

     A.    Postmates Has Not Proven It Is Likely to Succeed on the Merits or Will Present a Substantial Case on the Merits on Appeal. ................................................................. 6

     B.    Postmates Has Not Proven That It Will Suffer Irreparable Harm Absent a Stay. ........ 9

     C.    Petitioners Will Suffer Substantial Injury From a Stay Pending Appeal ................... 13

     D.    The Public Interest Strongly Favors Denying a Stay. ................................................. 13

     E.    The Court Should Deny Postmates's Request for a Temporary Stay. ........................ 15

VI.     CONCLUSION ................................................................................................. 15

1

## TABLE OF AUTHORITIES

2

3

**CASES**                                                                    **PAGE(s)**

*Abernathy v. S. Cal. Edison*,
   885 F.2d 525 (9th Cir. 1989) ................................................................10

*Alascom, Inc. v. ITT N. Elec. Co.*,
   727 F.2d 1419 (9th Cir. 1984) ...........................................................10

*AT&T Broadband, LLC v. Int'l Bhd. of Elec. Workers*,
   317 F.3d 758 (7th Cir. 2003) .............................................................11

*AT&T Mobility LLC v. Bernardi*,
   Nos. C-11-03992-CRB, C-11-04412-CRB, 2011 WL 5079549 (N.D. Cal. Oct.
   26, 2011) ..................................................................................7, 8

*AT&T Mobility LLC v. Smith*,
   No. 11-cv-5157, 2011 WL 5924460 (E.D. Pa. Oct. 7, 2011) ................................7, 8

*Bushley v. Credit Suisse First Boston*,
   360 F.3d 1149 (9th Cir. 2004) ...........................................................14

*Camping Constr. Co. v. Dist. Council of Iron Workers*,
   915 F.2d 1333 (9th Cir. 1990) ...................................................10, 11, 12

*In re Cintas Corp. Overtime Pay Arbitration Litig.*,
   No. C-06-1781-SBA, 2009 WL 1766595 (N.D. Cal. June 22, 2009)..........................10, 12, 14

*Dakota, Minn. & E. R.R. Corp. v. Schieffer*,
   742 F. Supp. 2d 1055 (D.S.D. 2010) .....................................................13

*Divxnetworks, Inc. v. Gericom AG*,
   No. 04-cv-2537, 2007 WL 4538623 (S.D. Cal. Dec. 19, 2007) .......................8, 9, 10

*Dynamex Operations W. v. Superior Court*,
   416 P.3d 1 (2018), *reh'g denied* (June 20, 2018) ...................................14

*In re Excel Innovations, Inc.*,
   502 F.3d 1086 (9th Cir. 2007) ...........................................................12

*FedEx Ground v. Metheany*,
   No. C-00-2744-CRB, 2000 WL 1585267 (N.D. Cal. Oct. 12, 2000) .......................13

*Gillette v. Uber Techs.*,
   No. C-14-5241 EMC, 2015 WL 4481706 (N.D. Cal. July 22, 2015).......................15

1

**CASES CONT.**                                                                 **PAGE(s)**

2

*Graphic Comms. Union, Chi. Paper Handlers' & Electrotypers' Local No. 2 v.*
3      *Chi. Tribune Co.,*
       779 F.2d 13 (7th Cir. 1986) ....................................................................10

4
*Hillis v. Heineman,*
5      626 F.3d 1014 (9th Cir. 2010) ...................................................................7

6    *Iowa Utils. Bd. v. FCC,*
       109 F.3d 418 (8th Cir. 1996) ...................................................................11
7
*Jimenez v. Menzies Aviation Inc,*
8      No. 15-CV-02392-WHO, 2015 WL 5591722 (N.D. Cal. Sept. 23, 2015) ..............14

9    *Kadant Johnson Inc. v. D'Amico,*
       No. 3:12-MC-00126-SI, 2012 WL 2019648 (D. Or. June 5, 2012) .....................15
10
*Lamps Plus, Inc. v. Varela,*
11     139 S. Ct. 1407 (2019) .......................................................................7, 8

12   *Leiva-Perez v. Holder,*
       640 F.3d 962 (9th Cir. 2011) .............................................................5, 6, 13
13
*Morgan Stanley & Co. LLC v. Couch,*
14     134 F. Supp. 3d 1215 (E.D. Cal. 2015)..................................................12, 13
15
*Nken v. Holder,*
16     556 U.S. 418 (2009)...........................................................................5

17   *In re Pac. Fertility Ctr. Litig.,*
       No. 18-cv-01586-JSC, 2019 WL 2635539 (N.D. Cal. June 27, 2019)....................8
18
*PaineWebber Inc. v. Farnam,*
19     843 F.2d 1050 (7th Cir. 1988) ..........................................................10, 13
20
*Rent-A-Ctr., W., Inc. v. Jackson,*
21     561 U.S. 63 (2010)............................................................................7

22   *Royal All. Assocs., Inc. v. Mooney,*
       No. 16-CV-2379-PA, 2016 WL 9459288 (C.D. Cal. Nov. 7, 2016) .....................13
23
*Stern v. Marshall,*
24     564 U.S. 462 (2011)...........................................................................7
25
*Stiner v. Brookdale Senior Living, Inc.,*
26     383 F. Supp. 3d 949 (N.D. Cal. 2019) ..................................................6, 9

27

28

1

**OTHER AUTHORITIES**                                                              **PAGE(s)**

2

S.B. 707, S. Judiciary Comm., 2019-2020, Reg. Sess. (Cal. 2019).........................................14, 15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PETITIONERS' OPPOSITION TO POSTMATES'S MOTION TO STAY PENDING APPEAL

## I.   INTRODUCTION

Having violated this Court's Order, Postmates now asks the Court to let it out of the obligations it has shirked for months while it pursues a meritless appeal.  That request finds no support in the facts or the law.  Postmates's latest bid for delay should be denied.

Petitioners first filed their demands for arbitration in April.  Dkt. 4 at 6.  But Postmates has sought delay at every turn.  After AAA granted Postmates repeated extensions, the extended deadlines came and went, and Postmates still refused to comply with AAA's requirements to commence individual arbitrations.  *See* Dkt. 203 at 3–5.  Petitioners sought relief in this Court. For no explicable reason other than delay, Postmates waited until Petitioners' motion to compel was fully briefed before filing a so-called "cross-motion" to compel arbitration, which repeated the same points from Postmates's opposition brief.  Then, after the motion and "cross-motion" were fully briefed, Postmates asked the Court for a stay in light of a proposed class proceeding in California state court. Dkt. 244.  The Court denied Postmates's request. Dkt. 246.  Unwilling to take "no" for an answer, Postmates asked for the same relief again.  Dkt. 248.  The Court instead ordered Postmates to arbitrate with each Petitioner.  Dkt. 253.

Petitioners re-filed their arbitration demands.  Postmates appealed this Court's Order, thereby confirming that it understood the Order to impose obligations on Postmates.  But Postmates did not send a single communication to AAA regarding Petitioners' re-filed demands until the evening its filing fees were due, at which point it requested two more extensions.  Dkt. 256 at 5–8.  When its second request was denied, Postmates again refused to comply with AAA's requirements, causing AAA to close Petitioners' arbitrations for the second time.  *Id.* at 8. Postmates then sent a flurry of emails attempting to get AAA to reverse its position, causing AAA to respond: "Inasmuch as the closed cases are not pending before AAA, we will not consider or respond to any further correspondence on those cases."  *See* Dkt. 263 at 4–5.

Unable to persuade AAA, Postmates suddenly adopted the position that it was not required to comply with AAA's determinations at all.  *Id.* at 5–7.  Likewise, Postmates now claims that the Court's Order did not actually compel arbitration but merely required the parties to confer "in the hopes that the parties and AAA can reach agreement on *how* all the arbitrations may proceed."

1   Dkt. 261 at 1.  In short, Postmates now takes the remarkable position that no decisionmaker—not

2   AAA and not this Court—can make Postmates commence arbitrations.  *See* Dkt. 263 at 5–7.

3        Postmates's stay motion doubles down on the company's attempts to forever delay its

4   contractual obligations.  On Postmates's view, if Petitioners are correct and Postmates has been

5   flouting its obligation to proceed with arbitration for more than eight months, the Court should

6   allow Postmates to further avoid arbitration—potentially for a year or more—while it pursues an

7   appeal in the Ninth Circuit.  Postmates's motion is meritless.  A party seeking a stay must show a

8   likelihood of success on appeal, irreparable harm, comparative hardship, and that a stay will

9   advance the public interest.  Postmates's motion fails every factor.  <u>First</u>, this Court's Order was

10  correct, and Postmates cannot even bring itself to argue that it is likely to be reversed on appeal.

11  <u>Second</u>, Postmates <u>concedes</u> it must arbitrate with each Petitioner individually, and it does not

12  even try to explain why a reversal by the Ninth Circuit would reduce the cost to Postmates of doing

13  so.  And even if a stay would save Postmates money, controlling precedent holds that the costs of

14  proceeding with arbitration pending appeal do not constitute irreparable harm.  <u>Third</u>, Petitioners

15  are by and large low-income workers who have been forced to wait months merely to <u>commence</u>

16  the process of winning the higher wages that will meaningfully improve their daily lives;

17  Postmates's attempts to avoid its own arbitration agreement work real harm on Petitioners.

18  <u>Finally</u>, a stay would conflict with the strong public policies embodied in the Federal Arbitration

19  Act ("FAA") and California law, which favor speedy resort to arbitration.

20       Postmates should be held in contempt, and its motion for a stay should be denied.

21  **II.     BACKGROUND**

22  **A.     This Court Orders Postmates to Arbitrate Its Disputes With Petitioners.**

23       On June 3, 2019, Petitioners filed a motion to compel arbitration against Postmates.  *See*

24  Dkt. 1, 4, 202, 237.  Postmates waited until briefing was complete on that motion and then filed

25  its own "cross-motion" to compel, which did not ask for any independent relief.  *See* Dkt. 112,

26  228, 238.  Even though each Petitioner filed an individual demand on AAA's standard demand

27  form, requested that AAA commence an individual arbitration, and sought exclusively individual

28  relief, Postmates argued that Petitioners' demands were a "de facto" class arbitration.  *See id.*

1    On October 22, 2019, the Court ordered the parties "to arbitrate Petitioners'

2 misclassification claims . . . . in accordance with the Mandatory Arbitration Provision contained

3 in the applicable Fleet Agreement." Dkt. 253 at 13.  In so holding, the Court held that the Mutual

4 Arbitration Provision's broad delegation clause "clearly and unmistakably confers the arbitrator

5 with the authority to resolve issues concerning arbitrability." *Id.* at 7.  The Court then applied

6 well-settled contract-interpretation principles, *id.* at 7–10, to conclude that an arbitrator must

7 decide Postmates's argument that Petitioners' arbitration claims were "an attempt to arbitrate on a

8 classwide basis," *id.* at 11.  The Court also noted that, "even if the Court were to construe the

9 exception to the delegation clause in the manner urged by Postmates, the outcome of the instant

10 motions would be same." *Id.* at 11.  As the Court explained, Postmates's arguments were actually

11 complaints about the adequacy of Petitioners' demands for individual arbitration, and challenges

12 to the form of Petitioners' demands are plainly delegated to arbitration.  *See id.*

13    **B.    Postmates Fails to Comply With AAA's Determinations and Deadlines.**

14    On the same day the Court issued its Order, Petitioners' counsel provided the Order to

15 AAA as the Court had instructed.  *See* Dkt. 257, Declaration of Ashley Keller ("Keller Decl.") ¶ 4;

16 Dkt. 253 at 13.  At AAA's direction, 5,255 Petitioners refiled their individual demands for

17 arbitration.  Keller Decl. ¶ 4.  On October 29, 2019, AAA acknowledged receipt of Petitioners'

18 demands, determined that Petitioners had met all of their filing obligations, and directed Postmates

19 to pay the arbitration fees it owed under AAA's fee schedule by November 19, 2019.  *Id.* ¶ 5.

20    Between the date of this Court's Order and November 19, 2019, Postmates did not raise

21 any objection to AAA's administrative determination regarding its obligation to commence

22 arbitrations with Petitioners.  *See id.* ¶ 10.  Nor did Postmates seek a stay of this Court's Order.

23 At 5:48 p.m. ET on November 19, 2019—after Postmates had already missed the time by which

24 AAA could have received payment on the date of the filing-fee deadline—Postmates asked AAA

25 to extend the deadline to November 25, 2019.  *Id.*  Petitioners opposed the extension, expressing

26 their view that Postmates "has demonstrated repeatedly that it has no intention of complying with

27 AAA's administrative determinations and is simply seeking delay in bad faith." *Id.* ¶ 11.  That

28 same day, Petitioners also informed Postmates that they intended to seek an order to show cause

why Postmates should not be held in contempt if Postmates did not comply with AAA's administrative determinations.  *See id.*, Ex. W (Nov. 19 email).  AAA granted the extension over Petitioners' objection.  *See id.* ¶ 12.  Postmates then filed a notice of appeal of this Court's Order. Dkt. 254.  Postmates still did not file a motion to stay.

On November 20, 2019—with the knowledge that Petitioners would return to this Court if Postmates refused to proceed to arbitration—Postmates emailed AAA and Petitioners' counsel to assert that it was "ready, willing, and able to conduct truly individualized arbitrations."  *See id.* ¶ 13.  But Postmates then asked AAA and Petitioners to agree to the opposite: to put the overwhelming majority of Petitioners' demands on hold while commencing arbitrations for just "fifty randomly-selected claimants."  *See id.*  Petitioners responded that they "do not consent to depart from or delay the individual arbitration process that is required by the parties' contract and AAA rules."  *Id.* ¶ 14.  Petitioners further explained (*id.*):

> The [C]ourt in *Adams* held that, under the parties' contract, it is up to AAA to make the administrative determination regarding what is required for individual arbitrations to proceed.  Postmates has made that determination.  Postmates is under a court order to comply with that determination whether it agrees with it or not, and to raise any further objections with individual arbitrators.  The only next step to which we will agree is for Postmates to pay the filing fees AAA has determined are required so that Claimants' individual arbitrations can commence.  To that end, please confirm that Monday, November 25 is Postmates's final deadline to pay the filing fees it owes in these matters.

On November 22, 2019, AAA confirmed that it "must adhere to its Commercial Rules and Employment/Workplace Fee Schedule and Respondent's fees remain due by November 25, 2019." *Id.* ¶ 15.  AAA also confirmed that if Postmates failed to pay its fees by November 25, 2019, AAA would "decline to administer these cases and the files will be closed."  *Id.*

On November 24, 2019, Petitioners' counsel again informed Postmates that, "[i]f Postmates fails to comply with AAA's administrative determination that Postmates's filing fees must be paid by November 25, and if Claimants' arbitrations are closed as a result, Petitioners in *Adams v. Postmates* will be left with no choice but to move for an order to show cause why Postmates should not be held in civil contempt for failing to comply with Judge Armstrong's order compelling arbitration."  *Id.* ¶ 16.  On November 25, 2019, Postmates made another last-minute

PETITIONERS' OPPOSITION TO POSTMATES'S MOTION TO STAY PENDING APPEAL
CASE NO. 4:19-cv-03042-SBA

1    request to extend the AAA deadline for its fees—this time by more than two months, to February

2    4, 2020. *Id.* ¶ 17. AAA denied that request on the same day. *Id.* ¶ 19. On November 26, 2019,

3    AAA administratively closed Petitioners' arbitrations due to Postmates's non-payment. *Id.* ¶ 21.

4         On November 27, 2019, counsel for Petitioners and Postmates met and conferred by

5    telephone regarding Petitioners' motion for an order to show cause why Postmates should not be

6    held in contempt. During the meet and confer, Postmates suggested that it would file a motion to

7    stay the Court's Order on December 2, 2019. Dkt. 264 at 5. But Postmates did not seek a stay on

8    that date. On December 3, 2019, the Court ordered Postmates to show cause by December 11,

9    2019 why it should not be held in contempt for violating the Court's Order to arbitrate. Dkt. 258.

10   Postmates then waited until December 11 to file its stay motion—more than seven weeks after this

11   Court's Order requiring Postmates to arbitrate (Dkt. 253), more than three weeks after Postmates

12   filed its notice of appeal (Dkt. 254), and nine days after the date Postmates itself proposed to file

13   its stay motion (*see* Dkt. 264 at 5). *See* Dkts. 261–62.

14                        **III.    STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4)**

15        Whether the Court should deny Postmates's requests to completely or temporarily stay the

16   Court's Order of October 22, 2019 pending Postmates's appeal, where application of the *Nken*

17   factors tip heavily against a stay.

18                              **IV.    LEGAL STANDARD**

19        To obtain a stay pending appeal, Postmates "bears the burden of showing that the

20   circumstances justify an exercise of [the Court's] discretion." *Nken v. Holder*, 556 U.S. 418, 434

21   (2009). In exercising its discretion, this Court should consider: "'(1) whether the stay applicant

22   has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will

23   be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the

24   other parties interested in the proceeding; and (4) where the public interest lies.'" *Id.*

25        Courts apply a "sliding scale" approach to stay motions. Where the movant shows a

26   "strong likelihood of success" on appeal, it must prove that "irreparable harm is probable absent a

27   stay." *Leiva-Perez v. Holder*, 640 F.3d 962, 971 (9th Cir. 2011). If the movant "is unable to show

28   a 'strong likelihood of success,' then [it] must at least demonstrate that the appeal presents 'a

1    substantial case on the merits,' or that there are 'serious legal questions' raised." *Stiner v.*

2    *Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 953 (N.D. Cal. 2019) (quoting *Leiva-Perez*,

3    640 F.3d at 965–68). But if this "lower threshold" is invoked, the movant must make a stronger

4    showing on the other factors by proving that "the second and third factor[s] tip[] sharply in [its]

5    favor." *Id.* Where, as here, the movant has not demonstrated "irreparable harm[,] . . . a stay may

6    not issue, regardless of [its] proof regarding the other stay factors." *Leiva-Perez*, 640 F.3d at 965.

7    **V.    ARGUMENT**

8         Postmates has not come close to proving that a stay is warranted. Indeed, it does not satisfy

9    <u>any</u> of the *Nken* factors. The motion's failure to apply controlling precedent to the undisputed

10   facts reflects Postmates's true motivations: to belatedly avoid being held in contempt for violating

11   this Court's Order, and to continue delaying the arbitration of Petitioners' meritorious claims. This

12   conduct should not be tolerated. The Court should deny Postmates's stay motion and hold

13   Postmates in contempt.

14        **A.    Postmates Has Not Proven It Is Likely to Succeed on the Merits or Will**

15            **Present a Substantial Case on the Merits on Appeal.**

16        Postmates identifies two arguments that it intends to present on appeal: "(1) whether the

17   determination of whether Petitioners seek class arbitration is a non-delegable threshold question;

18   and (2) whether this Court's interpretation of the Fleet Agreement's delegation clause erroneously

19   read two harmonious provisions as independent and conflicting." Dkt. 261 at 8. Postmates cannot

20   even bring itself to argue that it is "more likely than not that it will win on the merits"; rather,

21   Postmates claims only that these arguments present "serious legal questions." *Id.* They do not.

22        Postmates's first argument—that the question of whether Petitioners seek class arbitration

23   is <u>categorically</u> non-delegable—was never presented to this Court. Postmates's briefs argued only

24   that <u>the terms of the Fleet Agreement</u> required the Court to decide the question. Dkt. 112 at 14

25   (arguing only that "the parties [had not] agreed to submit *this* arbitrability question to an arbitrator,

26   so the Court should not assume that the parties agreed to arbitrate arbitrability on this issue")

27   (internal quotation marks omitted); Dkt. 228 at 10 (arguing that the Court could decide whether

28   Petitioners sought class arbitration because the Fleet Agreement carved the question out of its

1    delegation clause); Dkt 238 at 4 (arguing not that the parties' agreement was irrelevant, but that

2    Petitioners' position "misread[s] the Fleet Agreement's delegation clause[]").   Arguments raised

3    for the first time on appeal are waived.  *Hillis v. Heineman,* 626 F.3d 1014, 1019 (9th Cir. 2010).

4    "No procedural principle is more familiar to this Court than that a . . . right of any other sort, may

5    be forfeited . . . by the failure to make timely assertion of the right before a tribunal having

6    jurisdiction to determine it."  *Stern v. Marshall*, 564 U.S. 462, 482 (2011) (internal quotation marks

7    and citations omitted).   "The consequences" of Postmates's decision to "sandba[g] the court—

8    remaining silent" about its first argument until appealing this Court's Order—will be "particularly

9    severe."  *Id.*  The Ninth Circuit will not consider Postmates's belated argument, so its likelihood

10   of success on appeal is nil.

11          Even putting waiver to one side, Postmates's first argument is meritless.   Fundamentally,

12   "arbitration is a matter of contract."  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010).   And

13   the FAA "requires courts to enforce [agreements to arbitrate] according to their terms."  *Id.*  at 67.

14   Accordingly, if the terms of an agreement state that an arbitrator must decide whether the plaintiffs

15   have complied with the requirements to bring individual arbitrations, those terms must be enforced.

16   Indeed, parties may delegate <u>every</u> threshold issue of arbitrability to an arbitrator.   *Id.* at 68

17   (upholding delegation clause that delegated without limitation "any dispute relating to the . . .

18   enforceability . . . of this Agreement").

19          Postmates does not cite a single case to the contrary.   It first claims that *Lamps Plus, Inc.*

20   *v. Varela*, 139 S. Ct. 1407 (2019), "addressed a similar situation."  Dkt. 261 at 8.  But *Lamps Plus*

21   involved an agreement <u>without a delegation clause</u>.  139 S. Ct. at 1417 ("[T]he parties agree[] that

22   a court, not an arbitrator, should resolve the question about class arbitration.").   *Lamps Plus* simply

23   answered the underlying question of whether the parties had agreed to class arbitration; it said

24   nothing about the analytically distinct issue of whether the parties could have delegated that

25   question to an arbitrator.   Postmates also relies on *AT&T Mobility LLC v. Bernardi*, Nos. C-11-

26   03992-CRB, C-11-04412-CRB, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011), and *AT&T Mobility*

27   *LLC v. Smith*, No. 11-cv-5157, 2011 WL 5924460 (E.D. Pa. Oct. 7, 2011).  Dkt. 261 at 9.  But

28   those cases involved the same situation as *Lamps Plus*: "the arbitration agreement itself assign[ed]

1   the question of arbitrability generally to the courts." *Bernardi*, 2011 WL 5079459, at *2; *see also*

2   *Smith*, 2011 WL 5924460, at *2 (same).   None of the cases Postmates cites stands for the

3   proposition that whether claimants have met the requirements to bring individual arbitrations is

4   the <u>one</u> question parties can <u>never</u> delegate to an arbitrator.[1]

5     Postmates's second claim is that it stands a "reasonable probability or fair prospect" of

6   demonstrating on appeal that the Mutual Arbitration Provision did not delegate to an arbitrator its

7   argument that Petitioners are seeking a class arbitration.  *See* Dkt. 261 at 10–11.  But this Court

8   has already applied well-settled contract-interpretation principles and authorities to reject that

9   argument. Dkt. 253 at 8–11.  As the Court explained, the "plain language and structure of the

10   exception to the delegation clause" provide that the exception is limited "as stated in Section

11   10B.iv," and Section 10B.iv "explicitly limits the delegation clause exception" to arguments that

12   the Class Action Waiver is unenforceable.  *Id.* at 10.  Moreover, Postmates's contrary reading

13   "would impermissibly render the more specific provisions in Section 10B.iv superfluous, since

14   'any dispute' would always include a claim that the Waivers are unenforceable." *Id.*

15     Nothing in Postmates's motion undermines this Court's sound conclusion or reasoning.

16   The mere fact that Postmates disagrees with the Court's decision does not establish a serious legal

17   question. *See In re Pac. Fertility Ctr. Litig.*, No. 18-cv-01586-JSC, 2019 WL 2635539, at *3 (N.D.

18   Cal. June 27, 2019) ("Defendants' rehash of arguments the Court previously considered and

19   rejected at length fails to raise a serious legal question; otherwise, every time a party disagreed

20   with a court's ruling, a serious question would exist.").  And Postmates cannot dispute that, on

21   Postmates's reading, the more specific language of Section 10B.iv could be stricken from the Fleet

22   Agreement <u>entirely</u> without changing the agreement's meaning.  Postmates is not likely to succeed

23   on appeal when its position would indisputably "render the more specific provisions in [its

24   agreement] superfluous." Dkt. 253 at 10; *see also Divxnetworks, Inc. v. Gericom AG*, No. 04-cv-

---

[1] Postmates also suggests that this Court erred "because Supreme Court precedent establishes that a court *cannot* compel parties to class arbitration when they have not explicitly agreed to do so [*sic*]." Dkt. 261 at 8.  Postmates cited *Lamps Plus* for that proposition in its prior briefing as well. *See* Dkt. 112 at 14; Dkt. 228 at 10–11; Dkt 238 at 3.  The obvious answer to that argument is that the Court did <u>not</u> "compel [Postmates] to class arbitration." Dkt. 261 at 8.  It compelled Postmates to arbitrate under the Fleet Agreement—which all parties <u>agree</u> requires individual arbitration— and to raise any objections about whether Petitioners had met the requirements for individual arbitration with individual arbitrators. Dkt. 253 at 12.

2537, 2007 WL 4538623, at *3 (S.D. Cal. Dec. 19, 2007) (finding "no likelihood of success on the merits" where the appeal "involve[d] questions of contract formation and interpretation . . . none of which are 'admittedly difficult' or novel"); *Stiner*, 383 F. Supp. 3d at 954 (finding no "substantial questions" on appeal where "the Court resolved [the movant's] argument through application of well-settled contract and agency principles").

Finally, even if the Ninth Circuit decided to take up the question of whether Petitioners seek "class arbitration," there would be no basis to reverse this Court's Order, because Petitioners obviously do not seek class arbitration. As Petitioners have explained in their prior filings: (1) Supreme Court and Ninth Circuit precedent clearly define "class arbitration" as a <u>representative</u> action that seeks <u>representative</u> relief, *see* Dkt. 202 at 3–5, Dkt. 237 5–6; (2) each Petitioner filed a separate demand on his or her own behalf that seeks only individual relief, *see* Dkt. 202 at 5–7, Dkt. 237 at 6–12; and (3) the mere fact that a large number of individual actions puts pressure on Postmates does not make Petitioners' claims representative in any way, *see* Dkt. 237 at 8–10. Postmates does not credibly explain how Petitioners' demands could constitute a representative action; rather, as this Court already found, Postmates's arguments are actually complaints about the adequacy of Petitioners' demands for individual arbitration. *See* Dkt. 253 at 11. As this Court concluded, "[d]espite Postmates' assertions to the contrary, the matter of whether Petitioners are attempting to circumvent the Class Action Waiver is ultimately inapposite." *Id.* So even if the Ninth Circuit reached the merits of Postmates's "class arbitration" argument, Postmates does not have a serious argument for reversal.

### B. Postmates Has Not Proven That It Will Suffer Irreparable Harm Absent a Stay.

Because Postmates does not even attempt to argue that it is more likely than not to prevail on the merits, it must show that it is highly likely to suffer irreparable injury absent a stay. *See Stiner*, 383 F. Supp. 3d at 953. Postmates cannot show any irreparable injury at all, let alone one that is highly likely. Postmates argues it will suffer irreparable harm absent a stay because it will have to pay millions of dollars in filing fees to AAA that <u>might</u> not be recoverable. Dkt. 261 at 11–12. And Postmates further argues it will suffer irreparable injury from being "forced to defend

PETITIONERS' OPPOSITION TO POSTMATES'S MOTION TO STAY PENDING APPEAL
CASE NO. 4:19-cv-03042-SBA

1    arbitrations that may be determined after appeal to be de facto class or collective arbitrations." *Id.*

2    at 12–14.  Controlling precedent holds that such assertions do not establish irreparable injury.

3        The Ninth Circuit has made clear that a party <u>does not</u> suffer irreparable harm simply by

4    having to undergo what it believes to be "unnecessary" or improper arbitration proceedings.  *See*

5    *Camping Constr. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990) ("The

6    district court's principal error lies in its assumption that unnecessarily undergoing arbitration

7    proceedings constitutes irreparable injury.  That is simply not the case."); *see also Abernathy v. S.*

8    *Cal. Edison*, 885 F.2d 525, 529 (9th Cir. 1989) ("[I]t seems clear that an order compelling

9    arbitration does not ordinarily harm the losing party irreparably."); *cf. Alascom, Inc. v. ITT N. Elec.*

10   *Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984) ("[A]ny harm caused by the denial of a stay will

11   ordinarily be neither serious nor irreparable.").  And as this Court and many others have held, <u>as a</u>

12   <u>matter of law</u>, a party is <u>not</u> irreparably harmed by the costs and expenses associated with

13   arbitration.  *See In re Cintas Corp. Overtime Pay Arbitration Litig.*, No. C06-1781-SBA, 2009 WL

14   1766595, at *5 (N.D. Cal. June 22, 2009) ("Moreover, any additional cost resulting from the

15   Respondents' involvement in the pending arbitration, as a matter of law, does not constitute

16   irreparable harm.") (citing *Graphic Commc'ns. Union, Chi. Paper Handlers' & Electrotypers'*

17   *Local No. 2 v. Chi. Tribune Co.,* 779 F.2d 13 (7th Cir. 1985)); *Divxnetworks, Inc.*, 2007 WL

18   4538623, at *3 (same); *see also PaineWebber Inc. v. Farnam*, 843 F.2d 1050, 1051 (7th Cir. 1988)

19   (same).

20       This principle is so well-settled that courts not only have denied motions to stay that raised

21   these types of "irreparable harm" arguments, but also have found such arguments sanctionable.

22   The decision in *Chicago Tribune Co.* is instructive.  In that case, the defendants were compelled

23   to arbitration and sought a stay pending appeal, arguing that they would be irreparably harmed by

24   "incur[ring] a substantial expense in time and money" from undergoing arbitration.  779 F.2d at

25   15.  The court rejected that argument, holding that "an opportunity cost of time or an out-of-pocket

26   expense . . . does not show irreparable harm."  *Id.*  Were it otherwise, "every order to arbitrate

27   would be deemed to create irreparable harm, and it would be easy to get such orders stayed."  *Id.*

28   That "would fly in the face of the strong federal policy in favor of arbitrating disputes."  *Id.*  The

court denied the stay motion and noted that "employers who seek stays merely on the ground that the arbitration may turn out to be a wasted expense of time and money are whistling in the dark, and . . . we will not hesitate to mete out sanctions in future cases to persons who make applications for stays of arbitration in circumstances such as disclosed by the record of this case." *Id.* at 16; *see also AT&T Broadband, LLC v. Int'l Bhd. of Elec. Workers*, 317 F.3d 758, 762 (7th Cir. 2003) ("[I]t has long been established that the expense of adjudication is not irreparable injury . . . . So fundamental is this principle that we have held it sanctionably frivolous to seek an anti-arbitration injunction.").

Rather than confront these squarely-on-point precedents, Postmates completely ignores them. *See* Dkt. 261 at 11–14. Instead, Postmates cites several cases to suggest that "threat of unrecoverable economic loss" constitutes irreparable injury. *Id.* at 12. But all the cases upon which Postmates relies for that broad proposition involved a narrow, inapplicable context: a party challenging a government agency's proposed rule that would cause the party to suffer expenses that, categorically, could not be recouped in a later suit against the agency. *See, e.g.*, *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996). None of the cases have anything to do with private arbitration, and as the Ninth Circuit has made clear, undergoing even "unnecessary" arbitration proceedings is not irreparable harm. *See Camping Constr. Co.*, 915 F.2d at 1349.

What's more, Postmates's argument that it would suffer unrecoverable costs from having to pay arbitration expenses is factually unsupported. First, Postmates has not shown that the fees it would pay absent a stay would be any different than the fees it would have to pay even it if wins on appeal. If Postmates were to win on appeal (which it will not), each Petitioner would still file an individual arbitration demand, and AAA would still assess the same fees. As this Court explained, "[s]ince the Fleet Agreement bars class actions, each demand must be submitted on an individual basis. Thus, the possibility that Postmates may now be required to submit a sizeable arbitration fee in response to each individual arbitration demand is a direct result of the mandatory arbitration clause and class action waiver that Postmates has imposed upon each of its couriers." Dkt. 253 at 7 n.2. Postmates does not even try to explain how it would pay one dollar less to arbitrate Petitioners' claims if it prevailed on appeal, and if the Ninth Circuit concluded that

11

PETITIONERS' OPPOSITION TO POSTMATES'S MOTION TO STAY PENDING APPEAL
CASE NO. 4:19-cv-03042-SBA

1   Petitioners must file what Postmates describes as "truly" individual arbitrations.  Postmates's

2   failure to make any showing at all on this point is, by itself, dispositive.

3        Second, as Postmates concedes, the AAA Rules allow for the recovery of filing fees.  Dkt.

4   261 at 12.  Thus, even if forcing every Petitioner to refile "truly" individual demands would

5   somehow save Postmates money, Postmates could attempt to recover those fees in arbitration.

6   Postmates's claim that fees would be unrecoverable because "many arbitrations would have run

7   their course" by the time the appeal ends is doubly speculative: it assumes that the arbitrator will

8   reject Postmates's argument that each Petitioner has brought a class arbitration (which is only

9   likely if the argument lacks merit); and it assumes that the Ninth Circuit will not grant relief in

10  time for Postmates to rely on the decision.  Speculation twice over is not proof that irreparable

11  harm is probable, let alone highly probable.  *See In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098

12  (9th Cir. 2007) ("Speculative injury cannot be the basis for a finding of irreparable harm.").

13       Postmates also argues it would be irreparably harmed "if forced to defend arbitrations that

14  may be determined after appeal to be de facto class or collective arbitrations that contravene the

15  Fleet Agreement's Class Action Waiver."  Dkt. 261 at 12–13.  But that argument again fails on the

16  facts and the law.  Petitioners are not seeking class or collective arbitration; this Court did not

17  order class or collective arbitration; and as explained above, "unnecessarily undergoing arbitration

18  proceedings" is not irreparable injury, *Camping Constr. Co.*, 915 F.2d at 1349.

19       The cases on which Postmates relies to support its contrary argument are inapposite.  True,

20  *Morgan Stanley & Co. LLC v. Couch*, 134 F. Supp. 3d 1215, 1235 (E.D. Cal. 2015), states that

21  "'most, if not all courts hold that being required to arbitrate a dispute the parties did not agree to

22  arbitrate is per se irreparable harm.'"  Dkt. 261 at 13 (quoting *Couch*).  But *Couch*, the cases it

23  relies on, and other cases that Postmates cites for this proposition involved a party being dragged

24  into arbitration where no agreement to arbitrate existed or where an arbitration agreement did not

25  cover the parties.  This Court as well as others have soundly rejected similar arguments in

26  situations where there is no dispute that the parties are subject to a valid arbitration agreement

27  covering the asserted claims.  *See In re Cintas Corp. Overtime Pay Arbitration Litig.*, 2009 WL

28  1766595, at *5 ("The cases cited by Cintas for the notion that it will suffer irreparable harm absent

PETITIONERS' OPPOSITION TO POSTMATES'S MOTION TO STAY PENDING APPEAL
CASE NO. 4:19-cv-03042-SBA

1    a stay are readily distinguishable.  Each of those cases involved situations where a party was

2    required to arbitrate a dispute when, in fact, there was no agreement to do so."); *see also Royal*

3    *All. Assocs., Inc. v. Mooney*, No. 16-CV-2379-PA, 2016 WL 9459288, at *2 (C.D. Cal. Nov. 7,

4    2016) (similar).  Here, in contrast to *Couch* and the other cited cases, Petitioners and Postmates

5    <u>did</u> enter into an arbitration agreement that requires arbitration of Petitioners' misclassification

6    claims.  So Postmates cannot credibly argue that it will be irreparably harmed by having to arbitrate

7    claims it agreed to arbitrate.  *See FedEx Ground v. Metheany*, No. C-00-2744-CRB, 2000 WL

8    1585267, at *10 (N.D. Cal. Oct. 12, 2000).

9        Despite Postmates's best efforts to hide from controlling precedent, the injuries it will

10   purportedly suffer from having to arbitrate pending appeal <u>do not</u> constitute irreparable harm.  That

11   alone is fatal to its stay motion.  *See Leiva-Perez*, 640 F.3d at 965.

12       **C.    Petitioners Will Suffer Substantial Injury From a Stay Pending Appeal.**

13       Postmates argues that Petitioners will not be "substantially injured" by a stay of arbitration

14   pending appeal, and that any "further delay" is the result of Petitioners' counsel filing so many

15   demands simultaneously.  Dkt. 261 at 14.  Wrong again.  As this Court noted, Postmates forced

16   Petitioners to file separate arbitration demands.  *See* Dkt. 253 at 7 n.2.  ("Petitioners had no option

17   other than to submit their misclassification claims in the form of an arbitration demand—which is

18   precisely what they did.").  Those demands were filed more than eight months ago, but thanks to

19   Postmates's delay tactics and refusal to arbitrate, Petitioners still have not commenced arbitration.

20   That is not how arbitration is supposed to work.  *See PaineWebber Inc.*, 843 F.2d at 1052

21   ("[A]rbitration . . . is supposed to be a speedy and inexpensive alternative to litigation.").  To grant

22   a stay of Petitioners' already-delayed arbitrations would result in further substantial injury to

23   Petitioners, who are fighting for the bare minimum wage the law so clearly affords them, and doing

24   so in the only forum available to them.  *See, e.g., Dakota, Minn. & E. R.R. Corp. v. Schieffer*, 742

25   F. Supp. 2d 1055, 1064 (D.S.D. 2010) (staying arbitration would "significantly prejudice" the non-

26   movant because it would "delay[] resolution of [his] claim in the arbitral forum").

27       **D.    The Public Interest Strongly Favors Denying a Stay.**

28       Contrary to Postmates's contentions, Dkt. 261 at 15, the public interest strongly tips in

favor of <u>denying</u> a stay.  The FAA reflects "Congress's intent to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 (9th Cir. 2004) (internal quotation marks omitted).  That purpose and intent would be undermined by granting a stay pending appeal.  *See In re Cintas Corp. Overtime Pay Arbitration Litig.*, 2009 WL 1766595, at *5 (declining to stay arbitration because it would be "antithetical to the spirit and intent of the arbitration process").

A stay also would undermine two strong public interests embodied in California law.  First, California has a strong public interest in enforcing its wage-and-hour laws, especially where, as here, an employer misclassifies its workers to circumvent those laws.  *See Jimenez v. Menzies Aviation Inc*, No. 15-CV-02392-WHO, 2015 WL 5591722, at *4 (N.D. Cal. Sept. 23, 2015); *Dynamex Operations W. v. Superior Court*, 416 P.3d 1, 4–5 (2018), *reh'g denied* (June 20, 2018) ("Under both California and federal law, the question whether an individual worker should properly be classified as an employee or, instead, as an independent contractor has considerable significance for workers, businesses, and the public generally.").

Second, the California Legislature recently enacted a statute to codify the law governing remedies for a breach of an arbitration agreement.  *See* S.B. 707, 2019–2020 Reg. Sess. (Cal. 2019).[2]  As codified by Senate Bill 707, California law allows a party to an arbitration agreement to require specific performance of a breaching party, including an order that the breaching party pay the fees necessary to proceed with arbitration.  *Id.*  Tellingly, the impetus for Senate Bill 707 was the exact tactic Postmates engaged in here: "Some employers have been refusing to pay fees and costs required to initiate arbitration, effectively placing their employees in procedural limbo. This bill is intended to affirm that these practices constitute material breach of an employment or consumer arbitration agreement and provide procedures for employees or consumers to pursue in order to have their claims heard in the event of such a breach."  California Senate Judiciary Committee Hearing on S.B. 707, 2019–2020 Reg. Sess. (Cal. 2019) (Executive Summary).[3]

---

[2] Available at http://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200SB707.

[3] Available at http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200SB707.

1     Staying Petitioners' arbitrations would frustrate these important public interests.

2            **E.     The Court Should Deny Postmates's Request for a Temporary Stay.**

3            Postmates also argues that, if this Court denies its request for a stay pending appeal, the

4 Court should still stay its Order for "sixty days while Postmates seeks a stay from the Ninth

5 Circuit." Dkt. 261 at 15. Postmates asserts that that it would "suffer irreparable harm" if not

6 provided a temporary stay. *Id.* But Postmates cannot explain how a victory on appeal would save

7 it a single dollar. And Postmates has not even attempted to argue that Petitioners' arbitrations will

8 conclude in the next sixty days, thereby preventing it from recouping its fees when the appeal is

9 resolved.

10            On the other hand, Petitioners would suffer substantial injury from having their arbitrations

11 further delayed. Postmates's stay requests are nothing more than an attempt to obscure its

12 violations of this Court's Order and further delay Petitioners' arbitrations. If Postmates wanted to

13 seek a stay pending appeal from the Ninth Circuit before commencing arbitrations with Petitioners,

14 it could have filed its stay motion immediately after the Court issued its Order, while it still had

15 weeks before AAA's deadline to commence arbitrations. Instead, Postmates waited until after

16 AAA's deadline, after Petitioners' contempt motion, and after the Court's Order to Show Cause

17 before deciding time was of the essence. Given Postmates's gamesmanship and delay tactics, as

18 well as its complete failure to satisfy the *Nken* factors, the Court should also deny Postmates's

19 request for a temporary stay. *See Kadant Johnson Inc. v. D'Amico*, No. 3:12-MC-00126-SI, 2012

20 WL 2019648, at *4 (D. Or. June 5, 2012) (denying request for a temporary stay after denying

21 underlying motion, because it appeared that the stay requests were implemented as a "delay[]

22 tactic[]"); *see also Gillette v. Uber Techs.*, No. C-14-5241 EMC, 2015 WL 4481706, at *7 (N.D.

23 Cal. July 22, 2015) (denying temporary stay).

24                          **VI.     CONCLUSION**

25            For the foregoing reasons, Postmates's motion for a stay should be denied.

26

27

28

1    Dated: December 26, 2019                 Respectfully submitted,

2                                              /s/ Ashley Keller

3    Warren Postman (*pro hac vice*)          Ashley Keller (*pro hac vice*)
       wdp@kellerlenkner.com                    ack@kellerlenkner.com
4    KELLER LENKNER LLC                       Travis Lenkner (*pro hac vice*)
     1300 I Street, N.W., Suite 400E            tdl@kellerlenkner.com
5    Washington, D.C. 20005                   Marquel Reddish (*pro hac vice*)
     (202) 749-8334                             mpr@kellerlenkner.com
6                                             KELLER LENKNER LLC
7    Keith A. Custis (#218818)               150 N. Riverside Plaza, Suite 4270
       kcustis@custislawpc.com                Chicago, Illinois 60606
8    CUSTIS LAW, P.C.                         (312) 741-5220
     1875 Century Park East, Suite 700
9    Los Angeles, California 90067
     (213) 863-4276                           *Attorneys for Petitioners*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28