THEANE EVANGELIS, SBN 243570
    tevangelis@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
    bhamburger@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
    dmanthripragada@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

JAMES P. FOGELMAN, SBN 161584
    jfogelman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA  90067-3026
Telephone: 310.552.8500
Facsimile:  310.551.8741

MICHELE L. MARYOTT, SBN 191993
    mmaryott@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: 949.451.3800
Facsimile:  949.451.4220

Attorneys for Respondent POSTMATES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAL ADAMS, et al.,<br><br>                    Petitioners,<br><br>        v.<br><br>POSTMATES INC.,<br><br>                    Respondent. | CASE NO. 4:19-cv-03042-SBA<br><br>**RESPONDENT POSTMATES INC.'S REPLY IN SUPPORT OF MOTION TO STAY ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS PENDING APPEAL**<br><br>**Hearing:**<br>Date:        February 12, 2020<br>Time:        2:00 p.m.<br>Judge:      Hon. Saundra B. Armstrong |

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 2

        A.      Postmates' Appeal Is Likely To Succeed on the Merits ....................... 2

                1.      The Determination Whether a Demand Seeks Class Arbitration Cannot
                        Be Delegated Where Parties Have Waived Class Arbitration ......................... 3

                2.      The Fleet Agreement's Delegation Clause Does Not Delegate the
                        Question Whether a Demand Seeks Class Arbitration to the Arbitrator ......... 5

        B.      Postmates Will Suffer Irreparable Harm Absent a Stay ................................. 6

        C.      Petitioners Will Suffer No Harm If the Court Stays Its Order ...................... 9

        D.      The Public Interest Favors a Stay ................................................................ 10

III.    CONCLUSION ................................................................................................. 10

RESPONDENT POSTMATES INC.'S REPLY IN SUPPORT OF MOTION TO STAY ORDER PENDING APPEAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Bernardi*,
    2011 WL 5079549 (N.D. Cal. Oct. 26, 2011) .................................................................2, 4, 7, 8

*Camping Construction Co. v. District Council of Iron Workers*,
    915 F.2d 1333 (9th Cir. 1990) ...................................................................................................6

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ...............................................................................................................4

*Graphic Commc'ns. Union, Chi. Paper Handlers' & Electrotypers' Local No. 2 v.
    Chi. Tribune Co.*,
    779 F.2d 13 (7th Cir. 1985) .......................................................................................................7

*Herbert J. Sims & Co., Inc. v. Roven*,
    548 F. Supp. 2d 759 (N.D. Cal. 2008) .......................................................................................8

*Ingram Micro Inc. v. Signeo Intern., Ltd.*,
    2014 WL 3721197 (C.D. Cal. July 22, 2014) ...........................................................................8

*Iowa Utils. Bd. v. FCC*,
    109 F.3d 418 (9th Cir. 1996) .....................................................................................................6

*Jimenez v. Menzies Aviatioin Inc.*,
    2015 WL 5591722 (N.D. Cal. Sept. 23, 2015) .......................................................................10

*Lair v. Bullock*,
    697 F.3d 1200 (9th Cir. 2012) ...................................................................................................3

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) .....................................................................................................4, 7, 10

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011).............................................................................................2, 3, 5

*McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P.*,
    105 F.3d 1192 (8th Cir. 1997) ...................................................................................................8

*Meijer, Inc. v. Abbott Labs.*,
    2009 WL 723882 (N.D. Cal. Mar. 18, 2009) ...........................................................................9

*Morgan Stanley & Co., LLC v. Couch*,
    134 F. Supp. 3d 1215 (E.D. Cal. 2015).................................................................................6, 8

*Morse v. Servicemaster Global Holdings, Inc.*,
    2013 WL 123610 (N.D. Cal. Jan. 8, 2013) ...............................................................................4

RESPONDENT POSTMATES INC.'S REPLY IN SUPPORT OF MOTION TO STAY ORDER PENDING APPEAL

*Nken v. Holder*,
  556 U.S. 418 (2009) ...................................................................................................... 1, 5

*PaineWebber, Inc. v. Hartmann*,
  921 F.2d 507 (3d Cir. 1990) ................................................................................................ 8

*Pension Plan for Pension Tr. Fund of Op. Eng'r v. Weldway Constr., Inc.*,
  920 F. Supp. 2d 1034 (N.D. Cal. 2013) .............................................................................. 8

*Pokorny v. Quixtar Inc.*,
  2008 WL 1787111 (N.D. Cal. Apr. 17, 2008) ................................................................... 8

*Rimler v. Postmates, Inc.*,
  Case No. CGC-18-567868 (San Francisco Super. Ct.) ...................................................... 9

*Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ....................................................................................................... 4, 10

*Sykes v. Escueta*,
  2010 WL 4942608 (N.D. Cal. Nov. 29, 2010) .................................................................. 8

*Textile Unlimited, Inc. v. A..BMH & Co.*,
  240 F.3d 781 (9th Cir. 2001) .............................................................................................. 8

*Winig v. Cingular Wireless LLC*,
  2006 WL 3201047 (N.D. Cal. Nov. 6, 2006) ................................................................... 10

**Statutes**

Cal. Civ. Code § 1641 ............................................................................................................... 5

Cal. Civ. Code § 1650 ............................................................................................................... 6

Cal. Code Civ. Proc. § 1858 ..................................................................................................... 6

RESPONDENT POSTMATES INC.'S REPLY IN SUPPORT OF MOTION TO STAY ORDER PENDING APPEAL

# I.    INTRODUCTION

Postmates remains ready and willing to arbitrate Petitioners' claims on a truly individual basis. To that end, Postmates tendered $95,600 to AAA on December 23, 2019, so that 50 individual arbitrations may commence expeditiously.  *See* Suppl. Decl. of Dhananjay Manthripragada Ex. A. Although AAA has suggested that it is capable of administering thousands of arbitrations at the same time, it has yet to take any action on the 50 demands for which Postmates has paid its share of the filing fees.  Nevertheless, Petitioners continue to insist that this Court's Order—which expressly declined to direct "Postmates to pay outstanding and future arbitration fees" (Dkt. 253 at 12)—somehow requires Postmates to pay over $10 million in nonrefundable filing fees upfront, even though it is entirely speculative whether AAA could administer over 5,000 arbitrations at the same time.  Postmates has offered reasonable solutions for how all the arbitrations may proceed expeditiously, and even informed AAA that 1,299 claimants indisputably have no claims.  But Petitioners have balked at every turn, and maintained that Postmates must pay filing fees even for claimants who have no right to arbitration.

Although Postmates has appealed this Court's October 22, 2019 Order, Postmates has complied with the Order in good faith, as discussed in its response to the Court's Order to Show Cause.  *See* Dkt. 262.  But because of the extreme positions and untenable reading of the Order advanced by Petitioners, Postmates has asked the Court to stay its Order out of an abundance of caution and to preserve the status quo while it pursues its appeal of the Order in the Ninth Circuit.  Thus, Postmates is undergoing arbitrations on an individual basis, as evidenced by its payment for the commencement of 50 arbitrations, but to the extent the Court interprets its Order as Petitioners suggest (*i.e.*, as requiring an immediate, nonrefundable $10 million payment to AAA by Postmates, even though the Order expressly declined to order the payment of arbitration fees, to cover not only thousands of Petitioners' claims that cannot possibly commence immediately, but also over a thousand petitioners who have *no* claims whatsoever), Postmates respectfully requests that this Court stay enforcement of its Order pending appeal or, in the alternative, for 60 days while Postmates seeks a stay from the Ninth Circuit.

All of the relevant factors under *Nken v. Holder*, 556 U.S. 418 (2009), and Ninth Circuit precedent interpreting and applying *Nken* weigh in favor of a stay.  *First*, Postmates will present multiple substantial appellate challenges to the Court's Order that it believes are likely to succeed and

at a minimum present serious and unsettled legal questions, including that whether an agreement provides for class or collective arbitration is not a question of arbitrability that can be delegated to an arbitrator, and that the delegation clause in the parties' arbitration agreement did not delegate that question to the arbitrator. *Second*, Postmates would suffer irreparable harm if imminently forced to pay over $10 million in nonrefundable filing fees to proceed on a de facto class or collective basis, even though it is speculative whether AAA could ever adjudicate all 5,255 claimants' demands. As one of the few courts to confront mass arbitration tactics like Petitioners' has held, irreparable harm stems from "being forced to defend an improper arbitration demand," and is "multiplied exponentially" by de facto class and collective demands seeking to "arbitrate the same claim in" thousands of "separate hearings." *AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549, at *10 (N.D. Cal. Oct. 26, 2011). *Third*, Petitioners would not suffer any harm if a stay is granted because Postmates is committed to pursuing individual arbitrations in an orderly fashion. To the extent there has been any delay, that is not the fault of Postmates. In fact, Postmates paid the fees for 50 arbitrations nearly two weeks ago, yet AAA has yet to take any action since then. And any additional delay is the natural result of the filing of demands for arbitration on behalf of over 5,000 people, as there is no way that AAA or Petitioners' counsel could simultaneously pursue over 5,000 arbitrations at the same time. *Fourth*, a stay is in the public interest, in light of the Federal Arbitration Act's strong public policy favoring the enforcement of arbitration agreements according to their terms. Accordingly, the Court should stay its Order pending appeal or grant a temporary stay while Postmates seeks a stay from the Ninth Circuit.

## II.     ARGUMENT

### A.     Postmates' Appeal Is Likely To Succeed on the Merits

Petitioners' primary argument on the first factor—whether Postmates' appeal raises substantial issues and is reasonably likely to succeed—is that "Postmates cannot even bring itself to argue that it is 'more likely than not that it will win on the merits.'" Dkt. 265 at 6. That is wrong. Postmates adamantly believes that both of its arguments will succeed on appeal, but that is not the standard that must be met for this Court to grant a stay. Rather, under binding Ninth Circuit law, a litigant need only show a "fair prospect" of success coupled with irreparable harm absent a stay. *Leiva-Perez v. Holder*, 640 F.3d 962, 966–68 (9th Cir. 2011). As the Ninth Circuit has explained, "[a] more stringent

requirement would either, in essence, put every case in which a stay is requested on an expedited schedule, with the parties required to brief the merits of the case in depth for stay purposes, or would have the court attempting to predict with accuracy the resolution of often-thorny legal issues without adequate briefing and argument." *Id.* at 967. Thus, the burden imposed on litigants seeking a stay necessarily acknowledges that the district court may not agree with the arguments to be raised on appeal—after all, if it did, no appeal would be necessary in the first place—and accordingly requires only a showing of a "fair prospect" of success. *Id.* at 968; *see also Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). Postmates has at a minimum met that standard as to both issues it has advanced: (1) whether the question whether Petitioners seek class arbitration is non-delegable; and (2) whether this Court's interpretation of the Fleet Agreement erroneously read two harmonious provisions as independent and conflicting.

1. **The Determination Whether a Demand Seeks Class Arbitration Cannot Be Delegated Where Parties Have Waived Class Arbitration**

Postmates' first planned argument in its appeal is that where, as here, parties waived all class, collective, or representative actions, the Court *cannot* compel them to engage in class, collective, or representative arbitration, and therefore *must* determine whether an arbitration demand seeks class, collective, or representative arbitration prior to ordering them to arbitrate it. Dkt. 261 at 8–9.

Petitioners argue that Postmates waived this argument, asserting that "Postmates's briefs argued only that <u>the terms of the Fleet Agreement</u> required the Court to decide this question." Dkt. 265 at 6 (emphasis in original). Petitioners' waiver argument is meritless. Postmates made its argument explicit in its opposition to Petitioners' motion and in its own cross-motion. For instance, Postmates argued that "even if the Fleet Agreement did not reserve issues regarding the Fleet Agreement's individualized arbitration requirements to a court, that would *still* be an issue for this Court's determination, because, following *Concepcion* and *Lamps Plus*, a court may not order parties to proceed to arbitration on a collective basis without first ensuring that the parties' contract provides for such a proceeding." Dkt. 112 at 14 (emphasis in original). Postmates' cross-motion made the same argument. Dkt. 228 at 11 ("[E]ven if the Fleet Agreement did not expressly reserve issues regarding its individualized arbitration requirements to a court, that would still be an issue for this Court's determination."). That is the exact argument that Postmates intends to advance on appeal and that it discussed in its motion for a stay.

Petitioners next argue that the question whether an arbitration demands seeks class arbitration is a "threshold issue of arbitrability" that litigants may, as a matter of course, delegate to an arbitrator. Dkt. 265 at 7.  But as the Supreme Court explained in *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019), it "has not decided whether the availability of class arbitration is a so-called 'question of arbitrability'" that may be delegated.  *Id.* at 1417 n.4.  Postmates' appeal therefore implicates an open and important legal question that the Supreme Court has gone out of its way to note has not been definitively resolved.  This alone warrants a stay.  *See Morse v. Servicemaster Global Holdings, Inc.*, 2013 WL 123610, at *3 (N.D. Cal. Jan. 8, 2013) ("Often a 'substantial case' is one that raises genuine matters of first impression . . . .").

Moreover, Postmates is likely to prevail on the unsettled issue of first impression in the Ninth Circuit, given the Supreme Court's clear instruction that parties "cannot be compelled to submit their dispute to class arbitration" where, as here, there is no "contractual basis for concluding that the part[ies] *agreed*" to conduct class arbitration.  *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684, 687 (2010); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) ("[C]ourts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent.").  In *Stolt-Nielsen*, for instance, the Court held that the district court erred in entering an award from an arbitration conducted on a classwide basis despite contractual silence on whether the parties agreed to such a procedure.  559 U.S. at 686.  The Court held that the availability of class arbitration "is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate," and that courts *must* prevent the entry of an award stemming from an arbitration conducted in excess of the arbitrator's "limited powers under the FAA" to conduct arbitration in a manner agreed to by the parties.  *Id.* at 687.

Here, the case against permitting class arbitration to proceed is even stronger, as the parties' agreement expressly and unambiguously *forbids* class arbitration.  Dkt. 253 at 3.  If under *Stolt-Nielsen* a court is prohibited from entering a class arbitration award where the parties' contract is *silent* on class arbitration (559 U.S. at 687), it surely cannot compel parties to engage in class or collective arbitration where the parties' agreement expressly *prohibits* it.  This necessarily requires a court asked to compel arbitration to first inquire into whether the party seeking such an order seeks class or collective

arbitration.  *See AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549, at *6 (N.D. Cal. Oct. 26, 2011) (conducting inquiry into whether nominally individual arbitration demands are actually de facto class demands that "run afoul of the agreement's prohibition of 'any form of a representative or class proceeding'").[1]  Postmates has a strong likelihood of appellate success on this issue.

### 2. The Fleet Agreement's Delegation Clause Does Not Delegate the Question Whether a Demand Seeks Class Arbitration to the Arbitrator

Postmates' second appellate argument is that this Court erred when it construed the Fleet Agreement's delegation clause in a manner contrary to its expressed intent.  Dkt. 261 at 10–11.  Postmates has at least a "fair prospect" of succeeding on this argument.  *Leiva-Perez*, 640 F.3d at 968.

Petitioners' first response is that Postmates' argument is a "'rehash of arguments the Court previously considered and rejected at length,'" and boils down to "[t]he mere fact that Postmates disagrees with the Court's decision."  Dkt. 265 at 8 (citation omitted).  But under Petitioners' logic, a stay could never be granted because the party seeking a stay necessarily disagrees with the Court's resolution of its arguments.  That is obviously not the law, and it ignores that the function of appellate courts is to correct error.  *See Nken*, 556 U.S. at 427 (stay pending appeal is "a means of ensuring that appellate courts can responsibly fulfill their role in the judicial process").

On the merits, Petitioners insist that Section 10B(iv) of the Fleet Agreement—which lists several specific claims that are excluded from the delegation clause—is not a non-exhaustive list exemplifying the types of claims falling within Section 10A(ii)'s broader term that the delegation clause "shall not apply to any dispute relating to or arising out of the Class Action Waiver and Representative Action Waiver."  Dkt. 265 at 8.  This is so, Petitioners argue, because Postmates' reading would render Section 10B(iv) superfluous, which is discouraged under California law.  *Id.*

Petitioners are correct that courts should avoid constructions that render contract language superfluous.  Cal. Civ. Code § 1641.  But they ignore that their own interpretation of the delegation clause creates a greater superfluity problem:  it reads Section 10A(ii), which states that Class Action

---

[1]  Petitioners' only substantive response to this argument is that "the Court did not 'compel [Postmates] to class arbitration.'"  Dkt. 265 at 8 n.1.  That argument is circular and puts the cart before the horse by ignoring that the Court did not make a finding on that issue, concluding instead that "the matter of whether Petitioners are attempting to circumvent the Class Action Waiver is ultimately inapposite."  Dkt. 253 at 11.  Obtaining an appellate ruling directing the Court to determine *whether* Petitioners' arbitration demands seek class arbitration is the central issue on appeal in this case.

Waiver-related disputes are exempt from the delegation clause right out of the Fleet Agreement, as meaning the exact *opposite* of what it says. Petitioners and the Court interpret the Fleet Agreement's clear language that "***any*** dispute" involving the Class Action Waiver is not subject to the delegation clause to mean that only "***certain*** disputes" involving the waiver are exempt. That is error under California contract construction principles requiring courts to "give effect to all" provisions of a contract (Cal. Code Civ. Proc. § 1858), and to read "particular clauses of a contract [as] subordinate to its general intent" (Cal. Civ. Code § 1650). Thus, Postmates is likely to succeed on appeal on its arguments regarding the interpretation of the Fleet Agreement under California law.

## B.     Postmates Will Suffer Irreparable Harm Absent a Stay

Postmates will be irreparably harmed if this Court's Order is not stayed because under Petitioners' reading of this Court's Order, Postmates must immediately pay over $10 million in *unrecoverable* filing fees to trigger the commencement of 5,255 arbitrations, even if that many arbitrations cannot actually be simultaneously separately pursued or administered. Dkt. 261 at 12–13; *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (9th Cir. 1996) ("threat of unrecoverable economic loss" is irreparable harm); *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1235 (E.D. Cal. 2015) ("[M]ost, if not all courts hold that being required to arbitrate a dispute that the parties did not agree to arbitrate is per se irreparable harm."). Further, AAA has denied Postmates' request for a determination by an arbitrator whether Petitioners seek de facto class arbitration (which this Court ordered an arbitrator to decide, Dkt. 253 at 11), leaving the courts as Postmates' only recourse (Dkt. 262-2 at 12).

Petitioners argue that the "costs and expenses" of unnecessary arbitration proceedings cannot constitute irreparable harm. Dkt. 265 at 10–11. But Petitioners rely exclusively on cases involving *single*, *individual*, and *bilateral* arbitration proceedings, and cite no case like this one in which Postmates risks immediately paying over $10 million in nonrefundable fees for arbitrations that will not commence for months or years, if ever. For instance, in Petitioners' leading case, *Camping Construction Co. v. District Council of Iron Workers*, the Ninth Circuit held that "the ***short time*** and ***slight expense*** involved in the ***typical arbitration*** . . . scarcely qualify as irreparable injury." 915 F.2d 1333, 1349 (9th Cir. 1990) (emphases added). Indeed, the *Camping Construction Co.* panel noted that the objecting party in that case "would probably save time and money" by submitting to arbitration in

1    the individual setting at issue there.  That is simply not the case here, where Petitioners seek to leverage

2    the Court's Order to force an unrecoverable upfront payment of over $10 million regardless whether

3    Petitioners have actually filed sufficient, individual arbitration demands—and regardless whether AAA

4    could actually administer all 5,000-plus arbitrations simultaneously and immediately.  Contrary to

5    Petitioners' assertion (Dkt. 265 at 10), *none* of the cases Petitioners cite hold that being forced into

6    improper arbitrations *cannot* constitute irreparable injury—in fact, the Seventh Circuit has held the

7    exact opposite.  *Graphic Commc'ns. Union, Chi. Paper Handlers' & Electrotypers' Local No. 2 v. Chi.*

8    *Tribune Co.*, 779 F.2d 13, 16 (7th Cir. 1985) ("[W]e decline to say that a party ordered to arbitrate can

9    never show irreparable harm such as might support a request that the order be stayed pending appeal.").

10   And *none* of Petitioners' cases involve anything remotely resembling the tactics that Petitioners have

11   employed here to weaponize massive amounts of nonrefundable arbitration fees in order to extract a

12   settlement irrespective of the merits of their claims.  These coordinated tactics raise the stakes of

13   arbitration astronomically, leaving far behind the "lower costs" and "greater efficiency and speed" of

14   individual arbitrations.  *Lamps Plus*, 139 S. Ct. at 1416.

15          Petitioners' argument that a finding of irreparable harm is precluded by "well-settled" law

16   when, in fact, *no appellate court has ever been confronted with these mass arbitration tactics* is another

17   instance of Petitioners sticking their head in the sand and pretending that their mass demands are no

18   different from any standard individual arbitration.  But another district court that *has* confronted mass

19   arbitration tactics *enjoined* the petitioners' demands, finding irreparable harm stemming from "being

20   forced to defend an improper arbitration demand" which "requires expending human and monetary

21   capital for which there is no adequate remedy at law" and which is "***multiplied exponentially***" by de

22   facto class demands seeking to force AT&T to "arbitrate the same claim in at least 24, but potentially

23   up to over 1,000, separate hearings."  *Bernardi*, 2011 WL 5079549, at *10 (emphasis added).

24          In fact, courts routinely find irreparable harm where an appeal would determine whether a party

25   has been ordered to proceed with arbitrations to which it did not agree, and "most, if not all courts hold

26   that being required to arbitrate a dispute that the parties did not agree to arbitrate is *per se* irreparable

27

28

harm." *Couch*, 134 F. Supp. 3d at 1235.[2]  Petitioners acknowledge this line of cases, but seek to cabin it to instances in which "no agreement to arbitrate existed or where an arbitration agreement did not cover the parties."  Opp. 12.  But as *Bernardi* demonstrates, this doctrine is not so limited, and in fact expressly applies when a party claims that it will suffer irreparable harm by being forced to undergo de facto class or collective arbitrations in contravention of its arbitration agreement.  *Bernardi*, 2011 WL 5079549, at *10.  Further, even if the doctrine were limited to cases in which a party was compelled to arbitrate claims that it never agreed to arbitrate, *that exact dynamic exists in this case*.  Indeed, Petitioners have "asked AAA to assess fees for 1,195 claimants who have done no work on [Postmates] platform, 95 claimants whose claims have been released, 586 claimants who [Keller Lenkner] may not represent, and 9 who do not wish to continue."  Dkt. 261 at 4; *see also* Dkt. 262 at 4–5.  Petitioners' opposition ignores that they are seeking to require Postmates to pay filing fees for individuals who indisputably have no basis for asserting any claims whatsoever.  Thus, even if the Court agrees with Petitioners' narrow reading of *Couch* and its progeny, Postmates would *still* suffer irreparable harm if forced to pay millions of dollars of arbitration fees to commence proceedings with individuals who have no right to arbitrate.  Such a finding of irreparable harm "makes sense given the underlying (and obvious) principle that a party should not be required to arbitrate disputes where the party initiating the arbitration has no right to do so."  *Couch*, 134 F. Supp. 3d at 1236.

Finally, Petitioners argue that the harm Postmates will incur if forced to pay over $10 million in upfront, nonrefundable arbitration filing fees is "speculative" because if Postmates wins its appeal and Petitioners are forced to file their arbitration demands on a truly individual basis, as Postmates' cross-motion requested, then each Petitioner will do so, ultimately resulting in the same total bill being imposed on Postmates.  Dkt. 261 at 11.  This argument fails for two reasons.  *First*, it assumes that every Petitioner would elect to refile its demand after Postmates' appeal, rather than, for instance,

---

[2]  *See also Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001); *McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P.*, 105 F.3d 1192, 1194 (8th Cir. 1997); *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990); *Pension Plan for Pension Tr. Fund of Op. Eng'r v. Weldway Constr., Inc.*, 920 F. Supp. 2d 1034, 1049 (N.D. Cal. 2013); *Herbert J. Sims & Co., Inc. v. Roven*, 548 F. Supp. 2d 759, 766 (N.D. Cal. 2008); *Ingram Micro Inc. v. Signeo Intern., Ltd.*, 2014 WL 3721197, at *4 (C.D. Cal. July 22, 2014); *Bernardi*, 2011 WL 5079549, at *10; *Pokorny v. Quixtar Inc.*, 2008 WL 1787111, at *2 (N.D. Cal. Apr. 17, 2008); *Sykes v. Escueta*, 2010 WL 4942608, at *4 (N.D. Cal. Nov. 29, 2010).

RESPONDENT POSTMATES INC.'S REPLY IN SUPPORT OF MOTION TO STAY ORDER PENDING APPEAL

Gibson, Dunn &
Crutcher LLP

1   choosing to participate in Postmates' pending settlement in state court. *Rimler v. Postmates, Inc.*, Case

2   No. CGC-18-567868 (San Francisco Super. Ct.). *That* is speculation by Petitioners, who cannot predict

3   the future independent decisions of more than 5,000 individuals (and there is no evidence that

4   Petitioners' counsel has investigated what each of its 5,000 purported clients plans to do in the future).

5   And *second*, even if Petitioners' scenario were to unfold, it would only reinforce the irreparable harm

6   suffered by Postmates, since it would very likely result in Postmates paying *twice* for AAA's services

7   in a number of cases:  once for de facto class and collective proceedings commenced during the

8   pendency of Postmates' appeal (Postmates has already tendered $95,600 to AAA to commence 50

9   arbitrations, Suppl. Manthripragada Decl. Ex. A), and *again* to commence arbitrations with those same

10  individuals on an *individual* basis after Postmates' appeal is resolved and the original proceedings are

11  determined to have been invalid.  Because AAA's fee shifting rules do not provide for the shifting of

12  administrative fees collected in arbitrations later determined to have been invalid, *see* AAA

13  Employment/Workplace Fee Schedule,[3] Postmates would be unable to recover those fees, and may

14  then *also* face fees related to newly filed demands seeking to commence individual proceedings.

15  **C.   Petitioners Will Suffer No Harm If the Court Stays Its Order**

16       The third factor—harm to the party opposing a stay—also favors Postmates.  Postmates has

17  paid filing fees for 50 arbitrations (*id.*), and AAA has never explained how all 5,255 arbitrations could

18  proceed at the same time.  In fact, AAA's delay to commence even 50 arbitrations (*id.* ¶ 3) shows that

19  it simply cannot administer thousands of arbitrations at the exact same time without resorting to class

20  or collective administration procedures.  Thus, individual arbitrations can and should take place, but

21  must *necessarily* proceed in sequence, and forcing Postmates to pay over $10 million upfront would

22  have no bearing on the expediency with which all claims will actually be arbitrated.  Regardless

23  whether Postmates pays all fees upfront, or pays for arbitrations as they are commenced, the need for

24  sequencing will not change, and Petitioners will suffer no "strategic disadvantage" from any delay that

25  stems from the logistical challenge—brought on by Petitioners themselves—of litigating each

26  Petitioner's claims.  *Meijer, Inc. v. Abbott Labs.*, 2009 WL 723882, at *4 (N.D. Cal. Mar. 18, 2009)

27  (granting stay that would "last only as long as it takes for the Ninth Circuit panel to issue its opinion").

28

[3]  Available at https://www.adr.org/sites/default/files/Employment_Fee_Schedule1Nov19.pdf.

Gibson, Dunn &
Crutcher LLP

9

**D.      The Public Interest Favors a Stay**

Finally, the balance of the public interest supports Postmates because Postmates intends to argue on appeal that the Court's Order rejected Postmates' request to compel *individual* arbitration, which is favored by the policy of the FAA, while simultaneously compelling the parties to de facto *class and collective* arbitration, which is disfavored by the FAA. *E.g.*, *Lamps Plus*, 139 S. Ct. at 1416 (benefits of individual arbitration include "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes"); *id* at 1416 ("with class arbitration the virtues Congress originally saw in arbitration, its speed and simplicity and inexpensiveness, would be shorn away and arbitration would wind up looking like the litigation it was meant to displace").

Petitioners argue that "California has a strong public interest in enforcing its wage-and-hour laws." Dkt. 265 at 14 (citing *Jimenez v. Menzies Aviatioin Inc.*, 2015 WL 5591722, at *4 (N.D. Cal. Sept. 23, 2015)).  Postmates agrees that wage-and-hour laws reflect the state's public interest, but that has no bearing on Postmates' motion.  Postmates has never argued that wage-and-hour laws should not be enforced; in fact, Postmates itself moved to compel Petitioners to bring those claims in individual arbitrations.  Dkt. 228.  Here, the only issue at stake is *how* claims may be brought, which does not implicate public policy.  *See Winig v. Cingular Wireless LLC*, 2006 WL 3201047, at *3 (N.D. Cal. Nov. 6, 2006) ("Although the Court is cognizant of the public interest in vindicating consumer rights, the Court finds the requested stay will not materially impact that interest.").  The FAA, in contrast, embodies a strong federal policy interested in the issue of how *arbitrations* may proceed:  in the manner agreed to by the parties.  *See Stolt-Nielsen*, 559 U.S. at 684 ("the foundational FAA principle" is "that arbitration is a matter of consent").  That tips the balance of the public interest in Postmates' favor.[4]

### III.      CONCLUSION

Postmates respectfully requests that the Court (i) stay enforcement of its October 22, 2019 Order until the Ninth Circuit issues its mandate; or, in the alternative, (ii) temporarily stay enforcement of its order for sixty days so that Postmates has an opportunity to seek a stay in the Ninth Circuit.

---

[4] Petitioners also argue that a California statute imposing penalties for the breach of arbitration agreements indicates that the public interest favors Petitioners.  Dkt. 265 at 14.  This statute is inapposite because Postmates has not breached its obligations to arbitrate, as Petitioners have filed de facto class and collective arbitration demands prohibited by the Fleet Agreement.  *See* Dkt. 228 at 11.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  January 2, 2020

GIBSON, DUNN & CRUTCHER LLP


By:  _____*/s/ Theane Evangelis*_____
Theane Evangelis

Attorneys for Respondent POSTMATES INC.

Gibson, Dunn &
Crutcher LLP

RESPONDENT POSTMATES INC.'S REPLY IN SUPPORT OF MOTION TO STAY ORDER PENDING APPEAL