# Exhibit A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRELL ABERNATHY, et al., <br><br> Petitioners, <br><br> v. <br><br> DOORDASH, INC., <br><br> Respondent. | No. C 19-07545 WHA <br> *Related to* <br> No. C 19-07646 WHA <br><br> **ORDER RE MOTION TO COMPEL ARBITRATION, MOTION TO STAY PROCEEDINGS, AND MOTION TO SEAL** |
| CHRISTINE BOYD, et al., <br><br> Petitioners, <br><br> v. <br><br> DOORDASH, INC., <br><br> Respondent. | |

**INTRODUCTION**

In this labor classification action, petitioners seek to compel arbitration. Respondent moves to stay the proceedings pending preliminary and final approval of a class settlement in a state action. For the reasons stated below, petitioners' motion to compel is **GRANTED IN PART** and is otherwise **DENIED**. Respondent's motion to stay is **DENIED**.

**STATEMENT**

Petitioners are 5,879 couriers who work for respondent, DoorDash, Inc. In order to make deliveries for respondent, petitioners allegedly each clicked through a contract that contained a "Mutual Arbitration Provision," that required among other things, that each petitioner and respondent "mutually agree to this Mutual Arbitration Provision, which is governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16) ("FAA") and shall apply to any and all disputes arising out of or relating to this Agreement, [including] CONTRACTOR's classification as an independent contractor" and required the arbitrations to be administered by the American Arbitration Association (AAA). The agreement also provided that the parties "mutually agree that by entering into this agreement to arbitrate, both waive their right to have any dispute or claim brought, heard or arbitrated as, or to participate in, a class action, collective action and/or representative action . . . ." In turn, AAA's Commercial Arbitration Rules require each individual to pay a filing fee of $300 and the responding company to pay a filing fee of $1,900.

Petitioner couriers say they have been improperly classified as independent contractors rather than employees. Accordingly, in August 2019, petitioners' counsel filed individual demands for arbitration with the AAA on behalf of 2,250 individuals (*Abernathy* petitioners) claiming violations of statutes such as the Fair Labor Standards Act and the California Labor Code. In September 2019, petitioners' counsel filed further demands on behalf of 4,000 more individuals with the AAA (*Boyd* petitioners) making the same claims. Petitioner couriers paid over $1.2 million in filing fees. AAA then imposed a deadline of October 28 for respondent DoorDash to pay its share of the fees for the *Abernathy* arbitrations and a deadline of November 7 for the *Boyd* arbitrations (Keller Decl. ¶¶ 12, 17–21). On October 28, respondent's counsel emailed AAA and petitioners' counsel stating they had "determined that there are significant deficiencies with the claimants' filings," and that "Doordash is under no obligation to, and will not at this time, tender to AAA the nearly $12 million in administrative fees." On November 8, AAA emailed the parties and stated, "Respondent has failed to submit the previous requested fees for the 6,250 individual matters; accordingly, we have administratively closed our files" (Keller Decl. Exs. L, N).

On November 15, petitioner couriers commenced this action to compel arbitration for the *Abernathy* petitioners (Case No. C 19-07545 WHA) and moved for a temporary restraining order a few days later. On November 19, additional petitioners (through the same counsel) sought to compel arbitration in the Superior Court of California for the *Boyd* petitioners. Respondent then removed the *Boyd* action here (Case No. C 19-07646 WHA). All cases wound up before the undersigned judge.

A hearing ensued on the motion for temporary restraining order as to the *Abernathy* petitioners on November 25. DoorDash had begun to require couriers, in order to sign in for new work, to click through a new agreement that required arbitration with the International Institute for Conflict Prevention & Resolution (CPR), instead of AAA. At the hearing, however, respondent DoorDash represented that couriers could opt out of the new arbitration agreement, and instead continue to arbitrate under AAA if they so desired, so petitioners withdrew their motion for temporary restraining order.

Meanwhile, in 2018, some couriers had filed a class action (through different counsel) in the Superior Court of California, County of San Francisco, alleging respondent had willfully misclassified its couriers. *Marciano v. DoorDash, Inc*, No. CGC-18-567869 (S.F. Super. Ct. Dec. 7, 2018). A class settlement was recently pending preliminary approval there. Some of the unnamed class members in the class action are petitioners in the instant actions. Although the underlying legal issues are dissimilar to those for the motion to compel here, any petitioner who accepts the *Marciano* settlement will release the claims that would be arbitrated here. Petitioners' counsel here filed a brief there on behalf of proposed intervenors to object to the *Marciano* settlement. On January 30, 2020, the *Marciano* court vacated the hearing on the motion for preliminary approval of the settlement and designated the action as a complex case (Dkt. No. 168-1, Ex. L).

Herein, petitioner couriers have now filed an amended motion to compel arbitration with the AAA which seeks to compel arbitration on behalf of 5,879 individuals. Respondent separately moves to stay the motion to compel pending the preliminary and final approval of the settlement agreement in *Marciano*. This order follows full briefing and oral argument.

3

**ANALYSIS**

**1.    MOTION TO COMPEL ARBITRATION.**

Under the Federal Arbitration Act, a district court determines "whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If the court is satisfied "that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

Here, petitioners contend (and respondent does not dispute) that at least 5,010 petitioners have signed declarations attesting to "click[ing] through" DoorDash's AAA arbitration agreement. As stated above, the agreement provides that the parties "mutually agree to this Mutual Arbitration Provision, which is governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16) ("FAA") and shall apply to any and all disputes arising out of or relating to this Agreement, [including] CONTRACTOR's classification as an independent contractor . . . ." Significantly, the agreements for these 5,010 petitioners are valid, cover the claims in suit, and require arbitration before the AAA.

There are 869 petitioners that DoorDash argues do not have a valid agreement with DoorDash. Instead of submitting declarations for these petitioners, petitioners' counsel submitted mere "witness statements" in which they stated, among other things, their residential address, the amount of time they have worked for DoorDash, and that they did not recall opting out of arbitration. The November order, however, specifically asked petitioners to provide a declaration setting forth "the identifying information he or she used to register with DoorDash" and "at least referencing in an ascertainable way the specific arbitration he or she clicked through." The submitted witness statements do not provide such information and without them, this order cannot conclude that an arbitration agreement exists as to those petitioners.

DoorDash has also raised questions as to the authority of petitioners' counsel to represent certain other petitioners and seek relief on their behalf. While the factual requisites have been satisfied to compel arbitration as to 5,010 petitioners, these specific procedural disputes are

4

referred to the AAA for decision. If it turns out that Keller Lenkner has overstated its authority, or for any procedural reason, petitioners have not perfected their right to arbitrate, this order imposes on Keller Lenkner a requirement to fully reimburse DoorDash for all arbitration fees and attorney's fees and expenses incurred by DoorDash in defending the arbitration, and the arbitrator shall so award them.

The motion to compel arbitration is **GRANTED** as to the 5,010 petitioners who submitted declarations. DoorDash is ordered to immediately commence AAA arbitration with these petitioners. The motion is **DENIED** as to the 869 petitioners who submitted mere witness statements.

Petitioner couriers have further requested that respondent pay all attorney's fees and costs related to the arbitration under California Senate Bill 707, which took effect on January 1, 2020. In relevant part, the law states:

> In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration administrator, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration under Section 1281.2.

It further states that if the above occurs, the employee may: "(1) Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction (2) Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration" Cal. Civ. Proc. Code § 1281.97. The law also states "[t]he court shall impose a monetary sanction against a drafting party that materially breaches an arbitration agreement pursuant to subdivision (a) of Section 1281.97 or subdivision (a) of Section 1281.98, by ordering the drafting party to pay the reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach." Cal. Civ. Proc. Code § 1281.99.

"A retrospective operation will not be given to a statute which interferes with antecedent rights . . . unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.'" *United States v. Security Industrial Bank,* 459 U.S. 70, 78–79

5

(1982). Senate Bill 707 does not apply retroactively and here, the events at issue all occurred prior to the enactment of the bill. *See* Cal. Civ. Proc. Code § 1281.97; S.B. 707, 2019-2020 Reg. Sess. (Cal. 2019). Petitioners began to file their individual demands for arbitration in August 2019. Following respondent's failure to pay the necessary fees, AAA closed all of the petitioners' files in November 2019. The underlying demands for arbitration and corresponding fee payment requirements are thus not currently pending before AAA. Petitioners' request for relief under California Senate Bill 707 is accordingly **DENIED.**

    **2.    MOTION TO STAY.**

Respondent DoorDash seeks to stay the instant proceedings until final approval of the *Marciano* settlement given, among other things, the potential overlap between the petitioners here and the class members in *Marciano*. Ironically, DoorDash originally sought to dismiss *Marciano* on the ground that the couriers had a duty to arbitrate. Petitioners' counsel then sought to do exactly that. Their clients want individual arbitrations before AAA and this Court accordingly expects all petitioner couriers here to opt out of the class action in *Marciano* — if it ever gets preliminary and final approval. If it turns out that any petitioners attempt to double dip (get both class action relief and individual arbitration), then this order recommends the arbitrator impose on Keller Lenkner an order to fully reimburse DoorDash for all arbitration fees and attorney's fees and expenses incurred by DoorDash in defending the matter twice. As to DoorDash's concern regarding *CenturyLink* and the possibility that petitioners here may prefer the *Marciano* settlement, this order reminds Keller Lenkner that it would be a serious problem to assert that the firm has attorney-client privilege with a DoorDash courier who has not authorized Keller Lenkner to represent him or her, or to initiate arbitration on behalf of a petitioner without his or her informed consent. That said, the motion to stay is **DENIED**.

This order notes a concern that the proposed *Marciano* settlement seeks to prevent opt outs via petitioners' counsel and instead requires an original ink signature by each individual. This provision is an obvious attempt to make it as hard as possible for petitioners to opt out, thus binding them to the *Marciano* settlement. Perhaps the judge overseeing the proposed settlement will give this provision extra scrutiny.

### 3. MOTION TO SEAL.

Petitioners have filed an unopposed motion to file under seal certain portions of their reply brief, Aaron Zigler's declaration, and the exhibits attached to Aaron Zigler's declaration. CPR has designated these materials as confidential purporting that they contain, among other things, trade secrets, proprietary information, and sensitive information. The materials sought to be sealed here all relate to email communications between CPR and respondent's counsel, Gibson Dunn, in 2019. In short, the emails track the following events: in May 2019, Gibson Dunn reached out to CPR to discuss issues DoorDash was having with filing fees for mass arbitrations, and to find a solution to prevent "an abuse of process." In October 2019, CPR provided Gibson Dunn with a draft of a mass arbitration protocol for discussion. A week later, CPR provided Gibson Dunn with another draft of the protocol based on their discussion. Gibson Dunn "interlineated comments, questions, and recommendations" in the new draft. CPR and Gibson Dunn traded additional drafts and revisions in the following weeks. On November 4, CPR notified Gibson Dunn that it had posted the finalized new protocol and asked to be notified when the new DoorDash contracts providing for arbitration under CPR were distributed. Just because such information has been designated as confidential does not mean that it deserves to be kept from the public once filed in the federal district court. The district court should not be a party to concealing this information from the public, especially as it concerns an arbitration organization that holds itself out to the public as impartial. These documents would be useful to the public in evaluating the true extent to which the organization is impartial. The motion to seal is accordingly **DENIED**.

### CONCLUSION

For decades, the employer-side bar and their employer clients have forced arbitration clauses upon workers, thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join collectively to vindicate common rights. The employer-side bar has succeeded in the United States Supreme Court to sustain such provisions. The irony, in this case, is that the workers wish to enforce the very provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of

7

procedural rights left to them.  The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause.  No doubt, DoorDash never expected that so many would actually seek arbitration.  Instead, in irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the workers, to avoid its duty to arbitrate.  This hypocrisy will not be blessed, at least by this order.

This order now gives any party who disagrees with the unsealing order **14 CALENDAR DAYS** to seek relief with our court of appeals.  Failing any relief, petitioners' reply brief, Aaron Zigler's declaration, and the exhibits appended to the declaration shall be made public.  For 14 calendar days, the documents sought to be sealed shall remain under seal.  This order, however, shall be public *ab initio*.

Dated:  February 10, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8