UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JAMAL ADAMS, et al.<br><br>    Petitioners,<br><br>vs.<br><br>POSTMATES, INC.,<br><br>    Respondent. | Case No: 19-3042 SBA<br><br>**ORDER DENYING POSTMATES'<br>MOTION TO STAY PENDING<br>APPEAL**<br><br>Dkt. 261 |

This matter is presently before the Court on Respondent Postmates, Inc.'s ("Postmates") Motion to Stay Order Granting in Part and Denying in Part Cross-Motions Pending Appeal ("Motion to Stay"). Dkt. 261. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the Motion to Stay for the reasons set forth below.[1]

## I. <u>BACKGROUND</u>

Petitioners are 5,257 individuals who work as "couriers" (i.e., delivery drivers) for Postmates, an entity that operates a food delivery platform and mobile app. To work for Postmates, all couriers must sign Postmates' Fleet Agreement, which classifies them as

---

[1] The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

independent contractors, not employees. The agreement contains a Mutual Arbitration Provision, which requires that all disputes between couriers and Postmates be resolved "through final and binding arbitration instead of filing a lawsuit in court." Fleet Agt. § 10A.[2] To initiate an arbitration, either party to the Fleet Agreement must notify the other party by certified mail or by hand delivery of the arbitration demand. The demand must include: "(1) the name and address of the Party seeking arbitration, (2) a statement of the legal and factual basis of the claim, and (3) a description of the remedy sought." Id. § 10B.i.

Within the Mutual Arbitration Provision are a Class Action Waiver and Representative Action Waiver. See id. § 10B.ii (Class Action Waiver); id. § 10B.iii (Representative Action Waiver). The Class Action Waiver bars couriers from bringing "any dispute or claim … as a class and/or collective action" or "participat[ing] in any class and/or collective action…." Id. § 10B.ii. The Representative Action Waiver similarly bars couriers from bringing "any dispute or claim … as a representative action, … including but not limited to, claims brought under any state's Private Attorneys General Act (PAGA)…." Id. § 10B.iii.[3] The net effect of these waivers is that any courier with a legal claim against Postmates is limited to filing an individual arbitration demand with the designated arbitrator, the American Arbitration Association ("AAA").

In March and April 2019, Petitioners tendered a total of 5,274 individual arbitration demands to the AAA, alleging that they have been misclassified as independent contractors, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 206, 207. Petitioners' submission of these demands triggered Postmates' obligation to tender its share of arbitration filing fees, approximately in the sum of $10 million. Postmates refused to pay

---

[2] Both the 2018 and 2019 versions of the Fleet Agreement are relevant to this action and contain the same Mutual Arbitration Provision and Class Action Waiver, albeit in different sections. For simplicity, citations in this Order are to the 2018 Agreement. See Keller Decl. Ex. C, Dkt. 5-3.

[3] Unless otherwise indicated, further reference to the "Class Action Waiver" shall encompass both the Class Action Waiver and the Representative Action Waiver.

any fees, claiming that the arbitration demands were insufficient under the terms of the Mutual Arbitration Provision and therefore the arbitrations had not been properly commenced. The AAA disagreed and continued to demand payment of the fees.

On June 3, 2019, Petitioners filed a Petition to Compel Arbitration in this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, 4. Dkt. 1. Thereafter, the parties filed cross-motions to compel arbitration. Dkt. 4, 228. Petitioners and Postmates both agreed that the Mutual Arbitration Provision is valid and binding and moved for an order compelling arbitration. Each side also requested that the order include specific, additional conditions. Petitioners requested that the Court direct Postmates to tender its share of the arbitration fees to the arbitrator so that the arbitrations may proceed. Postmates countered that it is not yet obligated to tender its share of the filing fees on the ground that the arbitration demands are "generic" and lack the specific information articulated in the Mutual Arbitration Provision. Thus, Postmates asserted that the Court should compel arbitration and "enter an order: (1) requiring each Petitioner to refile his or her demand as an individual arbitration demand that sets forth the facts and legal theories of relief applicable to the particular Petitioner; and (2) requiring each Petitioner, after refiling, to proceed to arbitration on an individual basis…." Dkt. 228 at 20.

In its cross-motion, Postmates argued that by submitting allegedly "generic" arbitration demands with the arbitrator, Petitioners are attempting to proceed with a de facto classwide arbitration, in contravention to the Class Action Waiver. Dkt. 228 at 10, 11, 15. To that end, Postmates argued that this Court, as opposed to the arbitrator, must "determine the threshold issue of whether the parties have agreed to arbitrate on a de facto classwide basis." Id. at 15. The Court rejected Postmates' contention, finding that the Mutual Arbitration Provision contained a delegation clause that vests the arbitrator with the exclusive authority to decide "gateway" questions of arbitrability. Fleet Agt. § 10A.ii. The delegation clause states, in relevant part:

|  | ii. | <u>Only an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision, including without limitation any dispute concerning arbitrability</u>. However, as stated in Section 10B.iv below, the preceding clause shall not apply to any dispute relating to or arising out of the Class Action Waiver and Representative Action Waiver, which must proceed in a court of competent jurisdiction and cannot be heard or arbitrated by an arbitrator. |

Fleet Agt. § 10A.ii (emphasis added).

Relying on the second sentence of the delegation clause quoted above, Postmates argued that any issues pertaining to the Class Action Waiver, including whether Petitioners were attempting to arbitrate on a classwide basis, are excluded from the scope of the delegation clause—meaning that the Court must decide the issue. To support its position, Postmates argued that Sections 10A.ii and 10B.iv in tandem create <u>two</u> independent exceptions to the delegation clause applicable to: (1) any claim "relating to or arising out of" the Class Action Waiver; and (2) any claim that the Class Action Waiver is "unenforceable, unconscionable, void or voidable." Dkt. 253 at 9. The Court rejected Postmates' interpretation of the Fleet Agreement. Applying well settled rules of contract interpretation, the Court concluded that Section 10A.ii expressly incorporates Section 10B.iv, which only excludes claims that the Class Action Waiver is unenforceable, unconscionable, void or voidable from the scope of the delegation clause. <u>Id.</u> at 10. Since there is no claim by Petitioners that the Class Action Waiver is unenforceable, unconscionable, void or voidable, the Court concluded that the carve out was inapplicable.

Alternatively, the Court found that even if Postmates' construction of the Fleet Agreement were correct, the outcome of the cross-motions would be the same. <u>Id.</u> at 11. As noted, Postmates' position is that no arbitration filing fees are due because Petitioners' individual arbitration demands fail to provide the requisite information specified by the Mutual Arbitration Provision. <u>Id.</u> In Postmates' view, Petitioners' omission of such information demonstrates that they are attempting to arbitrate their claims on a de facto classwide basis. <u>Id.</u> But the Court found that Petitioners' purported motivations for

- 4 -

submitting allegedly generalized claims are inapposite. Rather, at its core, the salient issue raised by Postmates is whether Petitioners' arbitration demands comport with the Mutual Arbitration Provision. Under the terms of the Fleet Agreement, any dispute regarding a claimant's compliance with the Mutual Arbitration Provision is reserved exclusively for the arbitrator. Order at 11 (citing Fleet Agt. § 10A.ii).

The Court ultimately granted the parties' motions to compel arbitration but denied their respective requests for the imposition of additional conditions. As to the issue of whether Petitioners' arbitration demands complied with the terms of the Mutual Arbitration Provision, the Court ruled that issue was for the arbitrator to decide. Dissatisfied with the Court's ruling, Postmates has appealed the Court's ruling and filed the instant motion to stay the Court's Order compelling arbitration.[4]

## II. **LEGAL STANDARD**

A stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." Nken v. Holder, 556 U.S. 418, 433 (2009) (internal quotation marks and alterations omitted). There is no right to a stay; rather, it is "an exercise of judicial discretion" that "is dependent upon the circumstances of the particular case." Id. (internal quotations marks and citation omitted). The party seeking a stay bears the burden of demonstrating that a stay is warranted. City and Cty. of S.F. v. USCIS, 944 F.3d 773, 789 (9th Cir. 2019).

In deciding whether to grant a stay pending appellate proceedings, the court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent

---

[4] On the day the Court's issued its ruling, Petitioner's counsel refiled 5,255 demands and requested the AAA to invoice Postmates for its share of the arbitration fees, which Postmates has not yet paid in full. However, the parties have agreed to commence proceedings on 50 of the demands, for which Postmates claims it has paid its share of the filing fees. Separately, the Court notes that, subsequent to the Court's Order compelling arbitration, Petitioners sought, and the Court issued, an Order to Show Cause directing Postmates to show cause why it should not be held in contempt for refusing to proceed with the arbitrations. Dkt. 258. The Court will address that matter in a separate Order.

- 5 -

| | |
|---|---|
| 1 | a stay; (3) whether issuance of the stay will substantially injur[e] the other parties interested |
| 2 | in the proceeding; and (4) where the public interest lies." Id. (quoting Nken, 556 U.S. at |
| 3 | 433-34). "The first two factors are the most critical and the last two steps are reached once |
| 4 | an applicant satisfies the first two factors." Washington v. Trump, 847 F.3d 1151, 1164 |
| 5 | (9th Cir. 2017) (internal quotation marks and citations omitted). |

### III. DISCUSSION

#### A. LIKELIHOOD OF SUCCESS

To satisfy the first factor, the movant "must make a strong showing that success on the merits is likely." Lair v. Bullock, 697 F.3d 1200, 1216 (9th Cir. 2012). This means that, "'at a minimum,' a petitioner must show that there is a 'substantial case for relief on the merits.'" Id. (quoting Leiva-Perez v. Holder, 640 F.3d 962, 966 (9th Cir.2011) (per curiam)). However, "[t]he standard does not require the petitioners to show that 'it is more likely than not that they will win on the merits.'" Id. (quoting Leiva-Perez, 640 F.3d at 966).

#### 1. Class Action Waiver

Postmates first contends that the Court erred in declining to address whether Petitioners are attempting to circumvent the Class Action Waiver. Dkt. 261 at 14. According to Postmates, Petitioners' arbitration demands are "generic" and lack the requisite information specified in the Mutual Arbitration Provision. Due to this alleged lack of specificity, Postmates asserts that Petitioners are, in effect, proceeding on a classwide basis in violation of the Class Action Waiver. Postmates asserts that, on appeal, it will argue that this Court, not the arbitrator, must decide whether such a violation occurred in the first instance. Id.

Postmates' contention regarding the Class Action Waiver is meritless. As noted, the salient question presented by Postmates' cross-motion to compel arbitration is simply whether Petitioners' arbitration demands contain the information specified in the Fleet Agreement. See Fleet Agt. § 10B.i (setting forth required contents of an arbitration demand). The Fleet Agreement unequivocally delegates to the arbitrator the exclusive

authority to determine compliance with the Mutual Arbitration Provision, including any dispute concerning the arbitrability of a claim. See Fleet Agt. § 10A.ii ("Only an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision, including without limitation any dispute concerning arbitrability."). As the Court explained in its prior Order, the arbitrator can determine whether the arbitration demands comply with the Mutual Arbitration Provision simply by comparing its requirements alongside each individual arbitration demand. Dkt. 253 at 11. The question of whether Petitioners are attempting to circumvent the Class Action Waiver ultimately has no bearing on whether each demand contains the requisite information to comport with Section 10A.ii of the Fleet Agreement. Stated another way, the arbitration demands either comport with the Mutual Arbitration Provision—or they do not. It is as simple as that.[5]

Postmates cites Lamps Plus, Inc. v. Varela, 139 S.Ct. 1407 (2019) for the proposition that, when a party has waived class arbitration, a court must decide whether an order compelling arbitration would contravene the parties' agreement. Dkt. 261 at 15. In Lamps Plus, the Supreme Court held that an arbitration agreement that is ambiguous on the question of whether class arbitration is permissible cannot support an order compelling class arbitration under the Federal Arbitration Act. 139 S.Ct. at 1418-19. Despite Postmates' suggestion to the contrary, the Supreme Court did not hold that a court, as opposed to an arbitrator, must always decide whether an arbitration demand violates a class action waiver. Nor did Lamps Plus address whether the availability of class arbitration

---

[5] A determination of whether Petitioners are attempting to circumvent the Class Action Waiver in no way informs the sufficiency of the arbitration demands nor the remedy to the extent that the demands are found to be deficient. If the arbitrator finds that the demands are non-compliant, the solution would be for the arbitrator to require Petitioners to submit more detailed arbitration demands. Indeed, that is the relief Postmates sought in its cross-motion. See Dkt. 228 at 7 (seeking an Order requiring "each Petitioner to refile his or her demand as an individual arbitration demand that sets forth the facts and legal theories of relief applicable to the particular Petitioner").

constitutes a "question of arbitrability" because the arbitration agreement did not contain a delegation clause. Lamps Plus, 139 S.Ct. at 1417 n.4 (noting that "the parties [had] agreed that a court, not an arbitrator, should resolve the question about class arbitration"). For the same reason, the other cases cited by Postmates are inapt. As in Lamps Plus, the agreements in those cases assigned the question of arbitrability to the court, see AT&T Mobility LLC v. Bernardi, Nos. C 11-03992 CRB, C 11-04412 CRB, 2011 WL 5079549 at *2 (N.D. Cal. Oct. 2, 2011); AT&T Mobility LLC v. Smith, No. 11-CV-5157, 2011 WL 5924460 at *2 (E.D. Pa. Oct. 7, 2011)—which is not the case here.[6]

### 2. The Delegation Clause

Postmates' second argument in relation to its likelihood of success on appeal rests on the notion that the Court's construction of the delegation clause set forth in Section 10A.ii of the Fleet Agreement is incorrect. Dkt. 261 at 16-17. The Court ruled that the carve out from the delegation clause only applies to claims that the Class Action Waiver is unenforceable, unconscionable, void or voidable. Here, Postmates renews its contention that Section 10A.ii must be read more broadly to exclude any claims relating to the Class Action Waiver from the purview of the arbitrator. Dkt. 261 at 14-16. However, the mere fact that Postmates disagrees with the Court's analysis and ruling does not establish a serious legal question. See In re Pac. Fertility Ctr. Litig., No. 18-CV-01586-JSC, 2019 WL 2635539, at *3 (N.D. Cal. June 27, 2019) ("Defendants' rehash of arguments the Court previously considered and rejected at length fails to raise a serious legal question; otherwise, every time a party disagreed with a court's ruling, a serious question would exist.").

---

[6] As an ancillary matter, Postmates also suggests that this Court erred "because Supreme Court precedent establishes that a court cannot compel parties to class arbitration when they have not explicitly agreed to do so." Dkt. 261 at 8. Postmates cited Lamps Plus for that proposition in its prior cross-motion briefing as well. Dkt. 112 at 14; Dkt. 228 at 16 n.7. The flaw in this contention is that the Court did not "compel [Postmates] to class arbitration." Dkt. 261 at 8. Rather, the Court compelled Postmates to arbitrate the demands as it had agreed to do under the Fleet Agreement—which all parties agree requires individual arbitration—and to raise any objections about whether Petitioners had met the requirements for individual arbitration with the arbitrator. Dkt. 253 at 12.

The above notwithstanding, the Court is unpersuaded that Postmates has any chance of succeeding on its interpretation of the delegation clause. The operative language of Section 10A.ii recites: <u>as stated in Section 10B.iv below</u>, the preceding clause shall not apply to any dispute relating to or arising out of the Class Action Waiver and Representative Action Waiver…." Fleet Agt. § 10A.ii (emphasis added). Under the rules of contract construction, the phrase "any dispute relating to or arising out of the Class Action Waiver" must be read in context with Section 10B.iv. See <u>Zalkind v. Ceradyne, Inc.</u>, 194 Cal. App. 4th 1010, 1027 (2011) ("[T]he meaning of a contract must be derived from reading the whole of the contract, with individual provisions interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless."); <u>Elijahjuan v. Superior Court</u>, 210 Cal. App. 4th 15, 28 (2012) ("Contract terms must be interpreted as a whole and in context, rather than in isolation."); Cal. Civ. Code § 1641. Thus, the carve out for "any dispute relating to or arising out of the Class Action Waiver" necessarily is subject to Section 10B.iv, which plainly states that only a judge may decide claims that the Class Action Waiver is unenforceable, unconscionable, void or voidable. If the carve out were construed in the manner advocated by Postmates, Section 10B.iv would be swallowed by Section 10A.ii, since a claim challenging the enforceability of the Class Action Waiver is, by definition, a "dispute relating to or arising out of the [Class Action Waiver]," <u>id.</u> § 10A.ii.

The Court finds that Postmates has neither met its burden of showing that success on the merits is likely nor set forth a substantial case for relief on the merits. <u>Lair</u>, 697 F.3d at 1204. Thus, Postmates has failed to satisfy the first factor of the four-part test.

### B. IRREPARABLE HARM

To satisfy the second factor for a stay pending appeal, the movant must show that "there is a probability of irreparable injury if the stay is not granted." <u>Id.</u> at 1214. "Simply showing some possibility of irreparable injury" is insufficient. <u>Nken</u>, 556 U.S. at 434-35. In the instant case, Postmates contends that, absent a stay, it will be required to pay substantial filing fees to the AAA that it has "no way to recover even if it prevails on

appeal." Dkt. 261 at 18. While acknowledging that monetary harm generally does not constitute irreparable injury, see L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir. 1980), Postmates argues that the "threat of unrecoverable economic loss" qualifies as irreparable harm, Dkt. 261 at 18 (quoting in part Iowa Utilities Bd. v. F.C.C., 109 F.3d 418, 426 (8th Cir. 1996)).

The Court is unpersuaded by Postmates' showing of irreparable harm. First, "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." Renegotiation Bd. v. Bannercraft Clothing Co. Inc., 415 U.S. 1, 24 (1974); accord Nationwide Biweekly Admin., Inc. v. Owen, 873 F.3d 716, 736 n.25 (9th Cir. 2017).[7] Second, being compelled "to arbitrate disputes that may not be arbitrable" is not irreparable injury. See Camping Constr. Co. v. Dist. Council of Iron Workers, 915 F.2d 1333, 1349 (9th Cir. 1990) ("The district court's principal error lies in its assumption that unnecessarily undergoing arbitration proceedings constitutes irreparable injury. That is simply not the case."). Third, a favorable resolution on appeal will not, as Postmates suggests, render the arbitrations unnecessary. As discussed, Postmates agrees that Petitioners' misclassification claims are arbitrable but that Petitioners should be required to refile their demands with more specific information. Thus, even if Postmates prevails on appeal, Petitioners will have the opportunity to resubmit their demands. Unless Petitioners abandon their claims,

---

[7] The cases cited by Postmates for the proposition that unrecoverable monetary loss constitutes irreparable harm are distinguishable. Each of those cases involved situations where a party was challenging a government agency's proposed rule that would cause the party to incur expenses that could not later be recouped from the agency. See California v. U.S. Dep't of Health & Human Servs., 941 F.3d 410, 431 (9th Cir. 2019) (proposed rule modification to the Affordable Care Act would cause States to suffer monetary damages that could not be recouped from the government); Texas v. United States E.P.A., 829 F.3d 405, 434 (5th Cir. 2016) (noting that power companies would be unable to recover compliance costs incurred if the Environmental Protection Agency's Final Rule is invalidated on the merits); Iowa Utilities Bd., 109 F.3d at 426 (finding irreparable harm where Federal Communication Commission's pricing rules required telephone carriers to offer their services at prices that are below actual costs). None of these cases have any bearing on nor has any case extended their reasoning cases involving motions to compel arbitration based on a private arbitration agreement.

which seems unlikely, Postmates will be required at some point to pay its share of the filing fee for each demand submitted to the arbitrator.[8]

Postmates attempts to distinguish the above cases on the ground that they involved individual arbitration proceedings, as opposed to this case in "which Postmates risks immediately paying over $10 million in nonrefundable fees [for arbitrations] that will not commence for months or years, if ever." Dkt. 266 at 10. As noted, however, the prospect of substantial arbitration fees does not establish irreparable harm. See Renegotiation Bd., 415 U.S. at 24. Nor can Postmates demonstrate irreparable harm, given that both sides agree that Petitioners' wage and hour claims are subject to arbitration. Postmates also is hard-pressed to complain about the amount of filing fees due. Under the Mutual Arbitration Provision, a courier cannot sue Postmates in court; rather, the courier has no choice other than to submit a demand to the arbitrator to adjudicate his or her grievance. Because of the Class Action Waiver, each courier cannot proceed on a class basis but must instead submit an individual demand. As a result, Petitioners did what they are contractually required to do: submit individual arbitration demands to the arbitrator. The mere fact that Petitioners filed over 5,000 demands within a short span of time does not transform those individual demands into a de facto class arbitration, as Postmates posits. But more fundamentally, Postmates' obligation to tender $10 million in filing fees as a result of those arbitration demands is a direct result of the Fleet Agreement—which Postmates drafted and which Postmates required each courier to sign as a condition of

---

[8] Postmates disputes that it will eventually have to arbitrate all 5,255 demands, asserting that because some claimants, if forced to resubmit their demands after the conclusion of the appeal, may instead opt to participate in the pending settlement in the state court class action, Rimler v. Postmates, Inc., Case No. CGC-18-567878 (San Francisco Super. Ct.). Dkt. 266 at 13. However, as Postmates itself recognizes, it is entirely speculative whether any claimants will choose to abandon their arbitration demands in favor of the state court class action settlement.

working for Postmates. It strains credulity for Postmates to argue that the amount of filing fees due constitute irreparable harm when that "harm" is entirely of its own making.[9]

The Court finds that Postmates has failed to carry its burden of showing a probability of irreparable injury if the stay is not granted. Lair, 697 F.3d at 1204. As Postmates has failed to meet the first two factors, the court need not reach the last two factors, except as discussed below. See Washington, 847 F.3d at 1164.

### C. ALTERNATIVE REQUEST

Postmates also argues that, if this Court denies its request for a stay pending appeal, the Court should nevertheless stay its Order for "sixty days while Postmates seeks a stay from the Ninth Circuit." Dkt. 261 at 15. Postmates asserts that that it would "suffer irreparable harm" in the absence of a temporary stay. Id. However, as discussed above, Postmates fails to demonstrate how a successful appeal would relieve it of its obligation to pay its share of the arbitration fees—an obligation that emanates from an agreement that Postmates drafted and compelled its couriers to sign.

Moreover, further delay weighs against the public interest and inures to Petitioners' detriment. It is beyond cavil that the goal of arbitration is to provide an expeditious and efficient alternative to litigation. See Bushley v. Credit Suisse First Bos., 360 F.3d 1149, 1153 (9th Cir. 2004) ("The Federal Arbitration Act represents Congress's intent 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'") (citation omitted); see PaineWebber Inc. v. Farnam, 843 F.2d 1050, 1052 (7th Cir. 1988) (noting that arbitration "is supposed to be a speedy and inexpensive alternative to litigation"). As such, a stay is contrary to and undermines those goals. See In re Cintas Corp. Overtime Pay Arbitration Litig., No. C 06-1781 SBA, 2009 WL 1766595, at *5

---

[9] In this respect, Postmates' alleged injury and the relief it seeks are fundamentally at odds. Is it precisely because the couriers must file individual arbitration demands that Postmates must pay $10 million. That will not change, even if the couriers are required to refile their demands. The only way that Postmates would not be required to pay $10 million is if the couriers were able to proceed with a class arbitration, which all parties and the Court agree they cannot do.

(N.D. Cal. June 22, 2009) ("Imposing a stay of the arbitration would serve only to delay conclusion of the dispute further, which is antithetical to the spirit and intent of the arbitration process.").

Here, Petitioners filed their arbitration demands over eight months ago but no arbitrations have commenced, due largely to Postmates' litigation strategy, which is based on its untenable assertion that Petitioners are attempting to arbitrate on a classwide basis. Postmates dispute Petitioners' will not be harmed from a stay since they "never explained how all 5,255 arbitrations could proceed at the same time." Dkt. 266 at 13. This argument misses the point. The process of how the arbitrator should adjudicate those demands is a matter beyond the purview of the Court. Tellingly, Postmates cites no authority holding that potential logistical challenges in managing a large number of arbitration demands justifies a stay pending appeal.

Petitioners have a right to have each of their demands heard expeditiously, even if that means all demands are not heard simultaneously. The Court therefore finds that further delay both undermines the public interest and harms Petitioners. E.g., Dakota, Minn. & E. R.R. Corp. v. Schieffer, 742 F. Supp. 2d 1055, 1064 (D.S.D. 2010) (noting that staying arbitration pending appeal would "significantly prejudice" the nonmovant because "it would protract this dispute by considerably delaying resolution of [his] claim in the arbitral forum"); Gillette v. Uber Techs., No. C-14-5241 EMC, 2015 WL 4481706, at *7 (N.D. Cal. July 22, 2015) (denying alternative request for a temporary stay pending appeal "because the Ninth Circuit would be obligated to perform the same analysis this Court just engaged in if Uber asks the Circuit for a stay pending appeal"). Postmates' alternative request for a temporary stay is therefore denied.

//
//
//
//
//

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Postmates' motion for stay pending appeal is DENIED.

IT IS SO ORDERED.

Dated: March 5, 2020

_____
SAUNDRA BROWN ARMSTRONG
Senior United States District Judge