1   Ashley Keller (*pro hac vice*)
      ack@kellerlenkner.com
2   Travis Lenkner (*pro hac vice*)
      tdl@kellerlenkner.com
3   Marquel Reddish (*pro hac vice*)
      mpr@kellerlenkner.com
4   KELLER LENKNER LLC
    150 N. Riverside Plaza, Suite 4270
5   Chicago, Illinois 60606
    (312) 741-5220
6

7   Warren Postman (*pro hac vice*)
      wdp@kellerlenkner.com
8   KELLER LENKNER LLC
    1300 I Street, N.W., Suite 400E
    Washington, D.C. 20005
9   (202) 749-8334

10  Keith A. Custis (#218818)
      kcustis@custislawpc.com
11  CUSTIS LAW, P.C.
    1999 Avenue of the Stars, Suite 1100
12  Los Angeles, California 90067
    (213) 863-4276
13

14  *Attorneys for Petitioners*

Theane Evangelis (#243570)
  tevangelis@gibsondunn.com
Dhananjay S. Manthripragada (#254433)
  dmanthripragada@gibsondunn.com
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Michele L. Maryott (#191993)
  mmaryott@gibsondunn.com
GIBSON DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: (949) 451-3800

*Attorneys for Respondent*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

|  |  |
|---|---|
| JAMAL ADAMS, et al., | Case No. 4:19-cv-03042-SBA |
| *Petitioners*, | **JOINT SUPPLEMENTAL** |
| vs. | **MEMORANDUM** |
| POSTMATES INC., | |
| *Respondent*. | |

1

## **BACKGROUND**

2      On October 8, 2020, this Court ordered:

3
[T]he parties shall submit a joint supplemental memorandum which addresses
4      whether there are any outstanding issues regarding Defendant's compliance with
the Court's order compelling arbitration.  If there are no such issues, the parties
5      shall address whether the order show cause may be discharged.  However, to the
extent that any outstanding issue remain, the parties shall identify those issues and
6      address what course of action the Court should take in terms of resolving the show
cause order.
7

8   Dkt. 276 at 1–2.  The parties have met and conferred, and their positions are as follows:

9   **I.      PETITIONERS' POSITION**

10      Briefing on this Court's Order to Show Cause was completed on December 18, 2019, and

11  this Court denied Postmates's request for a stay pending appeal on March 5, 2020.  Since then,

12  <u>Postmates has not taken a single action to comply with the Court's Order</u>.  Other than 50 Petitioners

13  with whom Postmates arbitrarily elected to commence arbitration before responding to the Show

14  Cause Order, not a single Petitioner is any closer to commencing arbitration than she was when

15  this Court ordered Postmates to arbitrate exactly one year ago.

16      Even after the parties met and conferred regarding this submission, Postmates continues to

17  refuse to commence individual arbitrations with Petitioners.  Postmates's position is still that this

18  Court's Order did not actually order anything at all (query then why Postmates attempted to stay

19  it and appeal it).  Rather, on Postmates's telling, this Court only ordered the parties to meet and

20  confer <u>in hopes</u> of reaching a new agreement about how to start arbitrating.  But Petitioners and

21  Postmates already agreed on a way to commence arbitration: the process set forth in the parties'

22  agreement.  That agreement incorporates the AAA Rules, and the AAA Rules expressly give AAA

23  the authority to say what is required of each party in order to commence arbitration.  AAA has

24  determined that Postmates must pay filing fees before arbitrations will commence.  The Court's

25  Order required that Postmates meet AAA's requirements.

26      Remarkably, Postmates's latest position is that Petitioners should agree to conduct a single,

27  group arbitration to determine whether Petitioners are impermissibly seeking a single, group

28  arbitration.  That head-spinning proposal is plainly inconsistent with the Court's Order.  Postmates

alternatively suggests that it has not violated the Court's Order because <u>Petitioners</u> should have paid Postmates's share of the filing fees.  But neither this Court nor AAA required that Petitioners—low-wage workers who are attempting to bring minimum wage claims against a multi-billion dollar company—satisfy <u>Postmates's</u> filing requirements before they have a right to arbitrate.

Petitioners' position remains the same as it was a year ago: Postmates must comply with its contract by meeting the AAA requirements necessary to commence individual arbitrations with each Petitioner.  Postmates's refusal to act—even in the face of an Order to Show Cause from this Court and a unanimous Ninth Circuit decision rejecting Postmates's legal arguments—makes clear that a contempt order from this Court is the only way Petitioners will ever get access to the arbitral forum Postmates promised.

1.  <u>**This Court Orders the Parties to Commence Individual Arbitrations and Comply With the AAA's Requirements Necessary to Do So.**</u>

One year ago today, this Court ruled that Postmates and Petitioners "are obligated to arbitrate Petitioners' misclassification claims <u>and are hereby ordered to do so</u>."  Dkt. No. 253 at 13 (emphasis added).  The Court ordered that arbitrations proceed "in accordance with the Mandatory Arbitration Provision contained in the applicable Fleet Agreement" which in turn provides that "the AAA Commercial Arbitration Rules shall govern any arbitration between the parties."  *Id*. at 12, 13.  The Court declined to decide any further disputes about how Petitioners must file their demands for individual arbitration or what fees are required in order to commence those arbitrations.  *Id*. at 13.  Instead, the Court made clear that those issues are "to be decided by the arbitrator."  *Id*.

Adhering to the Court's Order, Petitioners' counsel immediately provided a copy of the Order to AAA.  Dkt. 257 ¶ 4; Dkt. 253 at 13 ("Petitioners shall serve a copy of this Order on the arbitrator.").  At AAA's instruction, Petitioners recommenced arbitration in accordance with the applicable Fleet Agreement by refiling their individual demands with AAA and submitting the filing fees or fee waivers necessary under the AAA Commercial Rules. Dkt. 257 ¶ 4.  AAA made an administrative determination that Petitioners' demands were sufficient to commence individual

arbitrations. *Id.* ¶ 5.  AAA then set a deadline of November 25, 2019, by which Postmates was required to pay its share of the filing fees in order for the arbitrations to commence. *Id.* ¶ 15  AAA warned that if Postmates failed to pay its fees by November 25, 2019, AAA would "decline to administer these cases and the files will be closed." *Id.*

   **2.  Postmates Refuses to Comply With The AAA Requirements To Commence Individual Arbitrations.**

   November 25 came and went without Postmates paying the filing fees required to commence Petitioners' arbitrations, and AAA administratively closed Petitioners' arbitrations on November 26. *Id.* ¶ 21.  As this Court is aware, Petitioners moved for an Order to Show Cause why Postmates should not be held in contempt, the Court granted that motion, and the parties submitted briefing in response to the Order.

   After the Court issued its Show Cause Order, Postmates filed a Motion to Stay the Court's Order Pending Appeal.  *See* Dkt. 261.  Presumably, that was because Postmates was aware that the Court's Order actually required action.  Otherwise, there would be no reason to seek a stay. On March 5, 2020, the Court denied Postmates Motion to Stay.  *See* Dkt. 270.  The Court noted that each Petitioner had filed "individual arbitration demands" "with the designated arbitrator, the American Arbitration Association ("AAA")," but observed that "no arbitrations have commenced, due largely to Postmates' litigation strategy, which is based on its untenable assertion that Petitioners are attempting to arbitrate on a classwide basis." Dkt. 270 at 2, 13.  Because "the Court [wa]s unpersuaded that Postmates ha[d] any chance of succeeding" on appeal and because "the goal of arbitration is to provide an expeditious and efficient alternative to litigation," the Court denied the stay. *Id.* at 9, 12.  That goal remains frustrated by Postmates's intransigence.

   **3.  The Ninth Circuit Unanimously Affirms This Court.**

   At the same time it was refusing to commence arbitration with every Petitioner, Postmates was telling the Ninth Circuit that this Court's Order should be reversed because it required Postmates to commence arbitration with every Petitioner without delay.  Specifically, Postmates complained that "Keller Lenkner filed over 5,000 boilerplate arbitration demands—and then insisted that Postmates pay over $11 million in arbitration filing fees up front, and that the

1    American Arbitration Association ('AAA') administer all 5,000-plus arbitrations at the same

2    time."  Opening Appellant Br. at 1, *Adams v. Postmates, Inc.*, No. 19-17362 (9th Cir. Feb. 20,

3    2020); *see* Dkt. 272 at 1.  Postmates asserted that "Petitioners have sought to arbitrate in a de facto

4    class manner by simultaneously filing over 5,000 deficient, boilerplate arbitration demands and

5    insisting that they all proceed at the exact same time," and that this Court "erred when it compelled

6    the parties to arbitrate in that way and refused to compel truly individual arbitration."  Opening

7    Appellant Br. at 25–26.

8         On September 9, 2020, the Ninth Circuit rejected Postmates's arguments and affirmed this

9    Court's Order, "agree[ing] with the district court that the parties' agreement clearly delegates

10   responsibility for resolving that dispute to the arbitrator."  Dkt. 275 at 1.  With Postmates's appeal

11   having been denied, the only remaining question is whether Postmates will comply with this

12   Court's Order, which deferred to AAA's unambiguous authority to require Postmates to pay its

13   share of filing fees.  Unfortunately, Postmates still refuses to do so, leaving Petitioners with no

14   recourse but contempt in order to obtain the arbitrations promised by the Fleet Agreement.

15   **4.   <u>Contempt Must Issue to Require Postmates to Comply With This Court's Order.</u>**

16        The parties participated in a meet and confer as required by this Court's October 8 Order,

17   on October 14, 2020.   During the meet and confer, Postmates again refused to commence

18   arbitration with each Petitioner.  Instead, Postmates asked that Petitioners agree to conduct a single,

19   <u>group</u> arbitration in order to determine whether Petitioners are impermissibly seeking a single,

20   group arbitration.  Petitioners decline this proposal as inconsistent with the Fleet Agreement and

21   AAA Rules.  They continue to seek what this Court ordered one year ago:  individual arbitrations

22   required by the MAP and the AAA Rules.

23        Postmates also suggests that it has not violated the Court's order because Petitioners have

24   not availed themselves of the so-called "remedy" of paying Postmates's fees themselves.   But

25   Postmates's contract requires <u>Postmates</u> to pay its share of filing fees, not Petitioners.  And AAA

26   likewise required Postmates to submit its fees, not Petitioners.  If Postmates's position were

27   correct, then defendants would <u>never</u> have any obligation to pay the fees imposed by their contracts

28   and AAA to commence arbitration, because if they decided not to, it would become the claimants'

1   responsibility to pay the fees for them.  That cannot be reconciled with the rule that a party breaches

2   its obligation to arbitrate where, as here, its failure to satisfy its fee obligations causes the arbitral

3   forum to close the arbitration.  *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005);

4   *Sink v. Aden Enters., Inc*., 352 F.3d 1197, 1199–1200 (9th Cir. 2003).  Simply put, Postmates's

5   contract requires that it comply with AAA's requirements to commence arbitration, and this Court

6   has authority under the Federal Arbitration Act to make Postmates comply with its contract.  *Cox*

7   *v. Ocean View Hotel Corp*., 533 F.3d 1114, 1125 (9th Cir. 2008) ("[A]n action to compel

8   arbitration is in essence a suit in equity to compel specific performance of the arbitration

9   agreement.") (internal quotation marks omitted).

10          Petitioners have taken every action necessary to commence arbitrations at AAA, as

11   determined by AAA.  Contrary to Postmates's assertion, the parties' agreement expressly gives

12   AAA the authority to determine what fees each party must pay before an arbitration will be

13   commenced.  Specifically, the agreement incorporates the AAA Rules.  The AAA Rules say that

14   "[w]hen parties agree to arbitrate under these rules . . . thereby authorize the AAA to administer

15   the arbitration."  Commercial Rule 2.  The Rules further state that before an individual arbitrator

16   is appointed,  the AAA Rules "shall be interpreted and applied by the AAA."  Commercial Rule 8.

17   And the Rules specifically provide that "the AAA may require the parties to deposit in advance of

18   any hearings such sums of money as it deems necessary to cover the expense of the arbitration."

19   Commercial Rule 56.  Indeed, courts routinely hold that parties are bound by AAA determinations

20   about threshold administrative issues.  *See, e.g., Aerojet-Gen. Corp. v. Am. Arbitration Ass'n*, 478

21   F.2d 248, 252 (9th Cir. 1973) ("Aerojet's contentions amount to no more than a lengthy statement

22   that the AAA acted erroneously . . . . The 'correctness' of the arbitrator's rulings is not a proper

23   concern of the reviewing court."); *United Computer Sys., Inc. v. AT&T Corp*., 298 F.3d 756, 765

24   (9th Cir. 2002) ("Since the arbitration clause also binds the parties to the rules of the California

25   AAA, UCS will have to abide by these administrative requirements, including the payment of the

26   necessary filing fees, in order to obtain [arbitration]."); *Williams v. Tully*, No. 02-cv-05687-MMC,

27   2005 WL 645943, at \*7 (N.D. Cal. Mar. 18, 2005) ("[T]he arbitrators, as noted above, had the

28   authority, under the AAA Rules, to determine whether the arbitration agreement was individually

negotiated.  After deciding that the agreement was individually negotiated, the AAA further had the authority, under the AAA Rules, to require Williams to pay certain of the estimated arbitration fees in advance, and to terminate the arbitration when Williams failed to do so.").

AAA determined that Postmates was required to pay certain filing fees before arbitrations would commence.  And AAA never required Petitioners to pay Postmates's share of the filing fees.  The only step remaining is for Postmates to comply with the determination of its chosen arbitral forum so that arbitrations can commence.  But Postmates has made clear that—even in the face of this Court's Orders compelling arbitration and denying a stay and a unanimous decision form the Ninth Circuit affirming this Court—Postmates will still not commence arbitration with Petitioners.  Federal court orders are not mere suggestions, asking the parties to act unless they prefer not to.  Postmates was ordered to arbitrate by this Court and, now, the Ninth Circuit.  Its continued delay is as inexcusable as it is prejudicial to the thousands of Petitioners seeking the minimum wages and other protections to which they are entitled.

Enough is enough.  Petitioners respectfully request that Postmates be held in contempt and ordered to comply within one week with the requirements AAA has set to commence each Petitioner's individual arbitration.  If Postmates will comply with the Court's order within one week, Petitioners have no objection to the Court rescinding any contempt order.  But if, even then, Postmates continues to flout the Court's Order, Petitioners submit that the Court should impose a daily fine that increases each day by the amount necessary to force a company of Postmates's size and intransigence to comply.  *Cf. Perciballi v. Ng*, No. 08-cv-01168-JVS-ANX, 2012 WL 13070731, at *3 (C.D. Cal. Mar. 26, 2012) ("[T]he Court finds that the threat of an escalating sanction is the only means likely to compel compliance.").

## II.   RESPONDENT'S POSITION

Petitioners seek to enforce portions of this Court's October 22, 2019 order that do not exist and ignore portions of the order that do.  In addition to ordering both parties to arbitrate "in accordance with the Mandatory Arbitration Provision," this Court concluded that all "other relief sought" in the parties' cross-motions to compel arbitration must be addressed "by the arbitrator." Dkt. 253 at 12–13.  The Court explicitly "denie[d] Petitioners' request for an order directing Postmates to tender payment of outstanding and future arbitration fees," explaining that it lacks "authority to compel Postmates to pay" fees and that all disputes concerning "the payment of arbitration fees" must "be decided by the arbitrator."  *Id.*  And the Court directed Petitioners to AAA's Rules "regarding the payment of arbitration fees" and "the available remedies for non-payment."  *Id.*  Instead of running back to Court, Petitioners should have invoked the available remedies expressly provided in AAA's Rules as ordered by the Court.  For instance, Petitioners could have "advance[d] the required payment," or—as AAA has repeatedly suggested, and Postmates has repeatedly offered—sought to reach agreement on an alternative process for administering the cases.  AAA Comm. Arb. Rules, Rule R-57; *see also* Dkt. 262-1 ¶¶ 11, 13.

But Petitioners have done neither.  They have *never* invoked AAA's remedies for nonpayment incorporated into the Mutual Arbitration Provision.  And they have balked each time Postmates has offered a sensible proposal so that an arbitrator may resolve the fundamental disputes between the parties that both this Court and the Ninth Circuit have held are for "an *arbitrator* [to] decide."  *Adams v. Postmates, Inc.*, --- F. App'x ---, 2020 WL 5793745, at *1 (9th Cir. Sept. 29, 2020) (emphasis added).  Rather, Petitioners continue to insist that "[t]he only step remaining" is for Postmates to pay all fees and that Postmates should be held in contempt until it does so—even though this Court explicitly "denie[d] Petitioners' request for an order directing Postmates to tender payment of outstanding and future arbitration fees."  Dkt. 253 at 13. Petitioners urge this Court to reconsider that ruling, citing many of the same cases previously presented to this Court.  *Compare supra* at 5, *with* Dkt. 4 at 11.  But having failed to timely move for reconsideration or appeal this Court's decision, Petitioners cannot now seek to hold Postmates

1   in contempt for not doing something that no court—neither this Court nor the Ninth Circuit—has

2   ever ordered Postmates to do.

3       Petitioners argue that this Court ordered Postmates to comply with AAA's administrative

4   determinations, that AAA administratively determined that Postmates must pay all fees upfront,

5   and that Postmates should be held in contempt for the nonpayment of fees.  But where, as here,

6   the forum provides specific remedies for such violations, seeking contempt sanctions from this

7   court makes no sense, as it would convert the federal judiciary into arbitration supervisors and

8   introduce a host of delays that undermine the many benefits of arbitration recognized by Congress

9   and the Supreme Court.  *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619–21 (2018).

10      Moreover,  Petitioners also are wrong that this Court ordered Postmates to comply with

11  AAA's administrative determinations concerning the payment of fees.  Rather, "the Court

12  conclude[d] that the payment of arbitration fees, including related expenses, is a procedural

13  condition precedent to be decided by the *arbitrator*"—not this Court or a AAA administrator.  Dkt.

14  253 at 13 (emphasis added).  Petitioners insist that the Court really meant "administrator" when it

15  said "arbitrator" in its order.  But the Mutual Arbitration Provision does not delegate to an

16  administrator any authority to resolve the threshold issues between the parties, and administrators

17  obviously are not arbitrators.  An administrator is analogous to a docketing clerk while an arbitrator

18  is analogous to a judge.  And to date, not a single arbitrator has ever addressed whether Postmates

19  must pay filing fees for the arbitration demands that Petitioners filed in violation of the Mutual

20  Arbitration Provision's individual arbitration requirement.

21      Postmates is ready to commence arbitrations according to this Court's order, AAA's Rules,

22  and the Mutual Arbitration Provision.  And to facilitate resolution of the parties' threshold

23  disputes, Postmates recently offered another solution that would allow Petitioners to begin

24  arbitrating expeditiously.  Consistent with the Ninth Circuit's decision, Postmates proposed that

25  an arbitrator or panel of arbitrators decide whether Petitioners have sought to arbitrate in a manner

26  that violates the individual arbitration requirement before fees come due, and agreed to be bound

27  by any decision rendered in those proceedings.  But Petitioners declined that sensible compromise.

28  Petitioners now criticize Postmates for even offering a compromise solution that would adjudicate

the manner-of-arbitration issue as a group, but Petitioners ignore that they filed thousands of arbitration demands as a group, filed this lawsuit as a group, and then sought an order from this Court as a group.  And in any event, Petitioners have *never* offered a solution to the standoff between the parties.  Rather, Petitioners seek to prevent both this Court and an arbitrator (or panel of arbitrators) from deciding whether Petitioners have breached the individual arbitration requirement before fees come due for inappropriately filed arbitration demands.  That is not only unfair, but it also violates due process.

The Court should discharge the order to show cause and decline to hold Postmates in contempt.

### A. This Court Denied Petitioners' Request For An Order To Pay Filing Fees And Held That An Arbitrator, Not An Administrator, Must Decide Whether Petitioners Have Violated The Class Action Waiver

On October 22, 2019, this Court issued an order granting in part and denying in part the parties' cross-motions to compel arbitration.  Dkt. 253.  The Court granted the motions "insofar as they seek an order compelling arbitration in accordance with the [Mutual] Arbitration Provision contained in the applicable Fleet Agreement," but denied them "in all other respects."  *Id.* at 2, 13.

As to Postmates' request, the Court concluded that the "Fleet Agreement delegates to the arbitrator the exclusive authority to resolve any dispute concerning arbitrability," and that "the argument made by Postmates—i.e., that Petitioners' arbitration claims, in the form presented to the arbitrators, improperly constitute an attempt to arbitrate on a classwide basis—is not within the purview of this Court and must instead be decided by the arbitrator."  Dkt. 253 at 10–11.  The Court therefore declined to address whether Petitioners' tactics violates the Mutual Arbitration Provision's Class Action Waiver, determining instead that the issue "is for the arbitrator, not this Court, to decide."  *Id.* at 12.

As to Petitioners' request, the Court "decline[d] to enter an order compelling Postmates to pay outstanding and future arbitration fees."  Dkt. 253 at 12–13.  The Court explained that it lacks "authority to compel Postmates to pay" filing fees, and that AAA's Commercial Arbitration Rules "include provisions regarding the payment of arbitration fees" and "the available remedies for nonpayment."  *Id.*  It further held that "the payment of arbitration fees … is a procedural condition

1    precedent to be decided by the arbitrator," and thus "denie[d] Petitioners' request for an order

2    directing Postmates to tender payment of outstanding and future arbitration fees." *Id.* at 13.

3              **B. The Ninth Circuit Held Only That An Arbitrator Must Decide Whether**
                 **Petitioners Have Violated The Class Action Waiver**

4

5              Postmates filed a notice of appeal to the Ninth Circuit.  Dkt. 254.  Postmates argued that

6    this Court erred when it concluded that the Mutual Arbitration Provision's delegation clause

7    requires an arbitrator—rather than a court—to determine whether Petitioners violated the

8    individual arbitration requirement in the Mutual Arbitration Provision's Class Action Waiver.  *See*

9    Opening Appellant Br. at 27–33, *Adams v. Postmates, Inc.*, No. 19-17362 (9th Cir. Feb. 20, 2020).

10   Postmates also urged the Ninth Circuit to address in the first instance whether Petitioners' mass

11   arbitration tactic violates the individual arbitration requirement in the event the panel agreed with

12   Postmates' construction of the delegation clause.  *Id.* at 33.  For their part, Petitioners did not

13   challenge this Court's ruling that an arbitrator must resolve all fee disputes, but argued that the

14   panel could address the manner-of-arbitration question in order to affirm on alternative grounds.

15   *See* Appellees' Response Br. at 33, *Adams*, No. 19-17362 (9th Cir. Apr. 22, 2020).

16             Contrary to Petitioners' suggestion that the Ninth Circuit "rejected" Postmates' argument

17   that Petitioners sought to arbitrate in an impermissible manner, the Ninth Circuit held only "that

18   an *arbitrator* must decide whether petitioners have violated the Class Action Waiver."  *Adams*,

19   2020 WL 5793745, at *1 (emphasis added).  In other words, having concluded that an *arbitrator*

20   must decide whether Petitioners violated the Class Action Waiver's individual arbitration

21   requirement, the Ninth Circuit properly refrained from expressing any opinion on that question.

22   *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("[a] court has

23   no business weighing the merits" of a dispute that the court has determined "is assigned by contract

24   to an arbitrator").  And when the Ninth Circuit said "arbitrator" it meant "arbitrator"—not

25   administrator.  Indeed, the parties' briefing and AAA's Rules make clear the obvious distinction

26   between an arbitrator and an administrator.  *See, e.g.*, Appellant's Reply Br. at 15 (explaining that

27   a AAA administrator is akin to a docketing clerk); AAA Comm. Arb. Rules, Rule R-8.  And if the

28

Ninth Circuit intended for an administrator to address the manner-of-arbitration issue, then it certainly would have and could have said so.

### C. Petitioners Seek Sanctions Solely For The Nonpayment Of Filing Fees Even Though This Court Declined To Order Postmates To Pay Filing Fees

Petitioners continue to insist that Postmates should be held in contempt solely for the nonpayment of arbitration fees.  But this Court expressly "decline[d] to enter an order compelling Postmates to pay outstanding and future arbitration fees," holding that it lacks "authority to compel Postmates to pay" fees.  Dkt. 253 at 12–13.  The Ninth Circuit did not disturb that conclusion. And if the Court lacks authority to order Postmates to pay fees, then it also lacks authority to hold Postmates in contempt for the nonpayment of fees.  Thus, as explained in Postmates' response to the order to show cause, Dkt. 262, Petitioners cannot show "by clear and convincing evidence that [Postmates] violated a specific and definite" directive in this Court's October 22, 2019 order, *FTC v. Enforma Nat. Prods., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004); *see also Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989) ("[c]ivil contempt is appropriate only when a party fails to comply with a court order that is both specific and definite").  On the contrary, this Court's order provides clear and convincing evidence that Postmates *cannot* be held in contempt for the nonpayment of fees—as Petitioners specifically sought an order requiring the payment of fees, and this Court explicitly denied that request.

Petitioners belatedly urge this Court to reconsider its prior ruling, citing many of the same cases previously presented to this Court.  *Compare supra* at 5, *with* Dkt. 4 at 11.  But Petitioners failed to timely move for reconsideration or appeal this Court's decision, and thus Postmates cannot be held in contempt for not doing something that it has never been ordered to do.  And no case Petitioners cite, including *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005) and *Sink v. Aden Enters., Inc.*, 352 F.3d 1197 (9th Cir. 2003), supports holding Postmates in contempt for not paying fees when this Court expressly declined to order Postmates to pay fees.

Petitioners argue that this Court's October 22, 2019 order must have required Postmates to pay fees, otherwise why else would have Postmates filed a motion to stay the order.  But as Postmates explained on the very first page of its motion, Postmates sought a stay "out of an

abundance of caution" "in the event the Court agrees with Petitioners' claim that the [October 22, 2019] Order requires Postmates to pay all arbitration fees—even though the Court expressly declined to do just that." Dkt. 261 at 1.

### D. Petitioners Have Repeatedly Stood In Their Own Way And Prevented Arbitrations From Commencing Despite Postmates' Numerous Proposals

Petitioners assert that if Postmates' position is correct, defendants would never have to pay their share of filing fees in arbitrations if they simply declined to do so, *supra* at 4–5, but that is wrong. Postmates has repeatedly sought to commence arbitrations, and the only thing stopping arbitrations from commencing are Petitioners themselves. In its October 22, 2019 order, the Court explained that AAA's Rules "include provisions regarding the payment of arbitration fees" and "the available remedies for non-payment." Dkt. 253 at 12–13. But to date, Petitioners have never availed themselves of the available remedies for nonpayment. Nor have they consented to Postmates' repeated proposals to commence arbitrations in a manner that complies with the individual arbitration requirement in Postmates' arbitration agreement. *See generally* Dkt. 262-1.

Postmates has proposed that an arbitrator be appointed to resolve threshold demand sufficiency and filing fee disputes for fifty randomly-selected claimants on a rolling basis so that fifty arbitrations proceed at all times. *See* Dkt. 262-1 ¶¶ 4–9. Petitioners rejected that proposal, stating that "the only next step to which [Petitioners] will agree is for Postmates to pay the filing fees" that this Court expressly declined to order Postmates to pay. *Id.* ¶ 10. Although Petitioners eventually agreed to commence fifty arbitrations, and those arbitrations are currently underway, Petitioners have continued to reject Postmates' proposals regarding the commencement of the remaining 5,205 arbitrations.

When the parties met and conferred on October 14, 2020, Postmates again proposed a solution on how the remaining arbitrations could commence expeditiously. Under this proposal, Petitioners would refile their arbitration demands with AAA via email, copying Postmates' counsel, and explain that:

- This Court granted in part and denied in part the parties' cross-motions to compel arbitration; declined to order Postmates to pay all arbitration fees up front; and ordered

the parties to arbitrate their disputes, including the dispute whether Petitioners have violated the individual arbitration requirement in the Mutual Arbitration Provision's Class Action Waiver;

- To resolve the impasse, the parties agree to have a special master or a panel of arbitrators decide whether Petitioners have violated the individual arbitration requirement, which includes a determination of whether Petitioners have an agreement to arbitrate with Postmates;

- The special master or panel of arbitrators would be selected according to AAA's ordinary arbitrator-selection procedures;

- Either party may seek discovery tailored to the manner of arbitration question according to AAA's Employment Arbitration Rules concerning discovery;

- After discovery is complete, the parties shall submit briefing on whether Petitioners have violated the individual arbitration requirement, including whether all Petitioners have an agreement to arbitrate with Postmates;

- The special master or panel of arbitrators shall hold a hearing and issue a written decision;

- Either party may appeal any decision according to AAA's Optional Appellate Arbitration Rules;

- Postmates will pay for the special master or panel of arbitrators and any appeals;

- The parties agree to be bound by the final decision issued in these proceedings.  For example, if it is determined that Petitioners have violated the individual arbitration requirement, then their demands shall be dismissed.  Petitioners may refile their demands, but they must do so individually as ordered by the special master or panel of arbitrators.  If it is determined that Petitioners have not violated the individual arbitration requirement, then the parties shall proceed as directed by the special master or panel of arbitrators; and

- The decision may not be used as res judicata for any other proceedings.

Petitioners would not agree to the foregoing proposal during the meet and confer, even though the court in another action filed by Petitioners' counsel recently held that requiring Postmates to pay "all fees up front would be *premature*" until "the arbitrator [has] a chance" to determine whether claimants sought to arbitrate in an impermissible manner.  *McClenon v. Postmates Inc.*, --- F. Supp. 3d ---, 2020 WL 4053472, at *7 (N.D. Ill. July 20, 2020) (emphasis added).  This Court should similarly give an arbitrator a chance to resolve the threshold manner-of-arbitration issue before Postmates is required to pay filing fees.

Petitioners note that this Court previously expressed skepticism as to the merits of Postmates' argument that Petitioners have sought to arbitrate in a manner that violates the individual arbitration requirement.  But having concluded that the arbitration agreement delegates that issue to the arbitrator, this Court's skepticism is not grounds to deny Postmates a forum and an opportunity to have that issue resolved.  *See Henry Schein*, 139 S. Ct. at 529.

Postmates respectfully requests that the Court discharge the order to show cause.

Dated: October 22, 2020                    Respectfully submitted,

/s/ Ashley Keller                          /s/ Theane Evangelis
Ashley Keller (*pro hac vice*)             Theane Evangelis (#243570)
  ack@kellerlenkner.com                      tevangelis@gibsondunn.com
KELLER LENKNER LLC                         GIBSON DUNN & CRUTCHER LLP
150 N. Riverside Plaza, Suite 4270         333 South Grand Avenue
Chicago, Illinois 60606                    Los Angeles, CA 90071-3197
(312) 741-5220                             Telephone: (213) 229-7000
                                           Facsimile: (213) 229-7520

1

## **DECLARATION OF FILER PURSUANT TO CIVIL LOCAL RULE 5-1(i)**

2

     I attest that concurrence in the filing of this document has been obtained from each

3

signatory.

4

5

     Dated: October 22, 2020                  /s/ Ashley Keller

6

                                      Ashley Keller (*pro hac vice*)
                                       ack@kellerlenkner.com

7

                                       KELLER LENKNER LLC
                                       150 N. Riverside Plaza, Suite 4270

8

                                       Chicago, Illinois 60606
                                       (312) 741-5220

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28